UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION



03 - 21296

CIV-MARTINEZ

MAGISTRATE JUDGE
DUBÉ

---

KENNETH A. THOMAS, M.D. and MICHAEL
KUTELL, M.D., on behalf of themselves and all others
similarly situated and CONNECTICUT STATE
MEDICAL SOCIETY,

               Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD ASSOCIATION,
AMERIHEALTH HMO, INC., ANTHEM, INC.,
BLUE CROSS AND BLUE SHIELD OF ALABAMA,
BLUE CROSS AND BLUE SHIELD OF ALASKA
(PREMERA), BLUE CROSS AND BLUE SHIELD OF
ARIZONA, BLUE CROSS AND BLUE SHIELD OF
ARKANSAS, BLUE SHIELD OF CALIFORNIA, BLUE
CROSS OF CALIFORNIA (WELLPOINT HEALTH
NETWORKS, INC.), ANTHEM BLUE CROSS AND
BLUE SHIELD OF CONNECTICUT, ANTHEM BLUE
CROSS AND BLUE SHIELD OF COLORADO, BLUE
CROSS AND BLUE SHIELD OF DELAWARE,
CAREFIRST BLUE CROSS AND BLUE SHIELD OF
THE DISTRICT OF COLUMBIA, BLUE CROSS AND
BLUE SHIELD OF FLORIDA, BLUE CROSS AND
BLUE SHIELD OF GEORGIA, HAWAII MEDICAL
SERVICE ASSOCIATION, BLUE CROSS OF IDAHO,
REGENCE BLUE SHIELD OF IDAHO, BLUE CROSS
AND BLUE SHIELD OF ILLINOIS, ANTHEM BLUE
CROSS AND BLUE SHIELD OF INDIANA,
WELLMARK BLUE CROSS AND BLUE SHIELD OF
IOWA, BLUE CROSS AND BLUE SHIELD OF
KANSAS, ANTHEM BLUE CROSS AND BLUE
SHIELD OF KENTUCKY, ANTHEM BLUE CROSS
AND BLUE SHIELD OF LOUISIANA, ANTHEM
HEALTH PLANS OF MAINE, CAREFIRST BLUE
CROSS AND BLUE SHIELD OF MARYLAND, BLUE
CROSS AND BLUE SHIELD OF MASSACHUSETTS,
BLUE CROSS AND BLUE SHIELD OF MICHIGAN,
BLUE CROSS AND BLUE SHIELD OF MINNESOTA,
HMO OF MISSISSIPPI, INC., BLUE CROSS AND
BLUE SHIELD OF MISSOURI, BLUE CROSS AND

---

FILED BY _____ D.C.

03 MAY 22 PM 2: 37

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FL - MIAMI



BLUE SHIELD OF MISSOURI-KANSAS CITY, BLUE
CROSS AND BLUE SHIELD OF MONTANA, BLUE
CROSS AND BLUE SHIELD OF NEBRASKA,
ANTHEM BLUE CROSS AND BLUE SHIELD OF
NEVADA, ANTHEM BLUE CROSS AND BLUE
SHIELD OF NEW HAMPSHIRE, BLUE CROSS AND
BLUE SHIELD OF NEW JERSEY, BLUE CROSS AND
BLUE SHIELD OF NEW MEXICO, EMPIRE BLUE
CROSS AND BLUE SHIELD OF NEW YORK, BLUE
CROSS AND BLUE SHIELD OF NORTH CAROLINA,
BLUE CROSS AND BLUE SHIELD OF NORTH
DAKOTA, ANTHEM BLUE CROSS AND BLUE
SHIELD OF OHIO, BLUE CROSS AND BLUE
SHIELD OF OKLAHOMA,BLUE CROSS AND BLUE
SHIELD OF OREGON,  CAPITAL BLUE CROSS OF
PENNSYLVANIA, HIGHMARK, INC.,
INDEPENDENCE BLUE CROSS, BLUE CROSS OF
NORTHEASTERN PENNSYLVANIA – WILKES
BARRE, TRIPLE S, INC. OF PUERTO
RICO,WELLPOINT HEALTH NETWORKS, INC.,
BLUE CROSS AND BLUE SHIELD OF RHODE
ISLAND, BLUE CROSS AND BLUE SHIELD OF
SOUTH CAROLINA, WELLMARK BLUE CROSS
AND BLUE SHIELD OF SOUTH DAKOTA , BLUE
CROSS AND BLUE SHIELD OF TEXAS, REGENCE
BLUE CROSS AND BLUE SHIELD OF UTAH,
ANTHEM BLUE CROSS AND BLUE SHIELD OF
VIRGINIA, INC., PREMERA BLUE CROSS OF
WASHINGTON, REGENCE BLUE SHIELD OF
WASHINGTON, MOUNTAIN STATE BLUE CROSS
AND BLUE SHIELD OF WEST VIRGINIA, BLUE
CROSS AND BLUE SHIELD OF WISCONSIN, BLUE
CROSS AND BLUE SHIELD OF WYOMING,

Defendants.

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs, by and through their undersigned attorneys, submit the following Class Action Complaint (the "Complaint").

## NATURE OF THE CASE

1.      The Individual Plaintiffs (hereinafter referred to as Plaintiffs) bring this action on behalf of themselves and a class of similarly situated physicians seeking redress for the illegal acts of the Defendants which have resulted in a loss of their property and a detriment to their businesses, and for declaratory and injunctive relief to end those practices and prevent further losses.

2.      The Connecticut State Medical Society also seeks injunctive relief on behalf of its members who will continue to suffer as a result of Defendants' illegal conduct unless it is stopped.

3.      Additionally, although this action is based upon the relationships which exist between doctors and insurers rather than the relationship between the insured and insurer, Plaintiffs are also motivated by their belief that Defendants' scheme is detrimental to the health of their patients and to the welfare of the general public.  By taking funds that have been rightfully earned by physicians and diverting them to their own use, Defendants deprive physicians of the adequate and timely payments they need to maintain their practices.

4.      As set forth below, the fundamental premise of the relationship between Defendants and the doctors who treat their insureds, either pursuant to or without a contract, is that the doctors will be paid, in a timely manner, for the covered, medically necessary services they render.

5.      However, Defendants, on their own and as part of a common scheme, systemically deny, delay and diminish the payments due to doctors so that they are not paid in a timely manner for the covered, medically necessary services they render.

6.      This is done by covertly denying payments to physicians based on financially expedient cost and actuarial criteria rather than medical necessity, processing physicians' bills using automated programs which manipulate standard coding practices to artificially reduce the amount they are paid, and by systematically delaying payments to gain increased use of the physicians' funds.

7.      When physicians treat Defendants' insureds pursuant to capitation agreements, i.e. agreements to pay groups of physicians based on the number of patients they agree to treat rather than on the services they actually render, Defendants use the same scheme both to deny, delay and diminish payments due to the doctors and to reduce capitation payments.  In addition, Defendants covertly manipulate the capitation process so as to undermine its actuarial basis and further deprive doctors of the payments they are entitled to.

8.      Defendants collectively insure such a large pool of patients that they are able to perpetuate this scheme through their combined economic power and market dominance.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §§ 1961, 1962, 1964, 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. § 1132(e).  The Court has personal jurisdiction over the Defendants pursuant to 18 U.S.C. §§ 1965(b) and (d).

10.      Venue is proper in this district pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b).

2

## PARTIES

## THE INDIVIDUAL PLAINTIFFS

11.     Plaintiff Kenneth A. Thomas, M.D., an obstetric surgeon, is a resident of Connecticut and a citizen of the United States.  During material times Dr. Thomas has provided and billed for medical services to insureds of Anthem Blue Cross and Blue Shield, pursuant to contract.

12.     Plaintiff Michael Kutell, M.D., a hematologist/oncologist, is a resident of Florida and a citizen of the United States.  During material times Dr. Kutell has provided and billed for medical services to insureds of Blue Cross and Blue Shield of Florida, pursuant to contract.  During the year 2000, Dr. Kutell's contract with Blue Cross and Blue Shield of Florida was terminated; since that time, Dr. Kutell has provided and billed for medical services to insureds of Blue Cross and Blue Shield of Florida outside of any contractual relationship.

### Connecticut State Medical Society

13.     Connecticut State Medical Society ("CSMS") is a federation of eight county medical associations and a constituent state entity of the American Medical Association, with its headquarters located at 160 St. Ronan Street, New Haven, Connecticut, and a total membership in excess of 7,000 physicians including Connecticut physicians in the private practice of medicine in all specialties..

14.     The philosophy and purpose of CSMS is promoting the highest standards of medical care in the State of Connecticut, facilitating its physician members in providing top quality care to their patients and supporting the sanctity of the physician-patient relationship for the benefit of the public.

3

15.     CSMS is duly authorized to bring this action against the Blue Cross and Blue Shield entities on its own behalf and on behalf of its members, and whenever it is included as a plaintiff in any count it seeks relief only against these Defendants.  Many of CSMS's members do not have the time or resources to pursue this litigation and fear retribution if they become named Plaintiffs.  In addition, Defendants have caused CSMS to expend its own resources fighting their tactics.

16.     CSMS has been directly and adversely impacted in this endeavor by the egregious acts and practices of defendants as set forth in this Complaint.

## DEFENDANTS

17.     Defendants pay doctors in two basic ways – pursuant to capitation agreements and on a fee for service basis.  Regardless of the method of payment, all of the substantive practices, policies, and procedures of the Defendants' health plans are established, implemented, monitored and ratified by the Defendants themselves.  Local subsidiaries or affiliates of the named Defendants do not function as independent corporate entities but rather have an alter-ego relationship with the named Defendants and function as agents under the Defendants' direction and control.

18.     When the Defendants pay capitation, they sometimes delegate certain functions to independent physicians' associations ("IPAs"), including claims handling.  The IPAs then carry out the delegated functions on behalf of and at the direction of the Defendants pursuant to mandated policies and procedures. The IPAs are monitored and audited by the Defendants, and the delegated functions may be revoked at any time.  In performing these delegated functions the IPAs are mere conduits through which the Defendants conduct business.  The IPAs are not co-conspirators of the

4

Defendants and, lacking the requisite intent, do not aid and abet the unlawful conduct described herein.

19.     Whenever this Complaint alleges that any Defendant did any act or thing, it is meant that it, its directors, officers, agents, or employees, or the directors, officers, agents or employees of its subsidiaries or affiliates, performed or participated in such act or thing, and in each instance that such act or thing was authorized or ratified by, and done on behalf of, that Defendant.

## BLUE CROSS AND BLUE SHIELD ASSOCIATION

20.     Defendant Blue Cross and Blue Shield Association ("the Association") is an Illinois corporation and the trade association for the 44 licensed Blue Cross and Blue Shield plans (the "Plans") located throughout the country.  Blue Cross and Blue Shield Association's corporate headquarters is located at 225 North Michigan Avenue, Chicago, Illinois 60601.

21.     Although the Association does not provide health services to the public directly by offering HMOs, POS plans, PPOs, Indemnity Plans and Self-Funded Plans (hereafter "health care plans"), the Association does contract with the federal government to provide health coverage to federal employees, which is then subcontracted to each of the Blue Cross and Blue Shield licensed state entities to provide coverage for the federal plans that are within that plan's coverage area.  The Association itself is owned and controlled by the individual member Plans and is governed by a board of directors, two-thirds of which must be composed of either plan chief executive officers or Plan board members.

22.     Furthermore, the Association provides direct assistance to the member Plans to enable them to perpetuate their fraudulent scheme.  For example, meetings of the Association's

board of directors are held where the defendants discuss the administration and management of the Plans. Specific committees hold meetings on issues such as utilization management, provider contracting and claims processing where attendees who are representatives from different Plans around the country share information on such issues. The information that is gathered at these committee meetings is later disseminated by the Association and shared with all of the Plans.

23.    The Association also provides other forms of direct assistance to the member Plans to enable them to perpetuate their fraudulent scheme. In fact, the Association has brought in third party actuarial companies, such as Milliman and Robertson ("M&R"), to make presentations to representatives of member Plans about the services that M&R provides in order to encourage member Plans to use the services of such third parties. M&R's services assist member Plans in controlling healthcare expenses through application of its stringent guidelines, even though M&R guidelines are not "based on sound scientific research findings, professional literature, clinical experience, appropriate, well-recognized methodologies," and do not "reflect the standard of care practiced in the medical/hospital community in the clinical practice of medicine," as is required by The Board of Trustees of the American College of Medical Quality.

24.    The Association also provides support services for all member Plans. One such support service provided by the Association is a private telecommunication system which provides computer access for and links all of the Plans. In addition, the Association provides and runs the Inter-Plans Service Benefit Bank which conducts all transfers of funds between the Plans. A transfer of funds between Plans occurs when an enrollee of one Plan receives medical services from a provider contracting with a different Plan and the enrollee's Plan needs to reimburse the provider's

6

Plan. The Association facilitates these transfers, thus allowing all Plans nationwide to operate jointly with regard to provision of medical services to enrollees.

25.    The Association represents the interests of all of the Plans through its involvement with numerous healthcare groups, including other national healthcare plans with which the Association shares information, as described in more detail below, meeting with representatives of the American College of Physicians and other physician groups, contracting and coordinating with third party administrators to assist in claim management and utilization management and retaining lobbying organizations to represent the interests of the Plans.

26.    At all relevant times all Blue Cross and Blue Shield licensees and the Blue Cross and Blue Shield health care plans were the agents of the other Blue Cross entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield entities, even though they may have been contrary to corporate policy.

## AMERIHEALTH HMO, INC.

27.    Amerihealth HMO Inc., is a Pennsylvania corporation with its corporate headquarters at 1901 Market Street, Philadelphia, Pennsylvania 19103. Amerihealth HMO Inc., through its subsidiaries, provides health services to the public through various health care plans in several states. Amerihealth HMO Inc., its subsidiaries and health care plans are collectively referred to as "Amerihealth" in this Complaint.

7

28.     At all relevant times all Amerihealth entities and health care plans were the agents of the other Amerihealth entities and health care plans, and in committing the acts alleged herein acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interests and the interests of other Defendants they aided and abetted, and with whom the conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Amerihealth entities even though they may have been contrary to corporate policy.

## ANTHEM, INC.

29.     Anthem, Inc., is an Indiana corporation with its corporate headquarters at 120 Monument Circle, Indianapolis, Indiana.  Through its subsidiary Anthem Insurance Companies, Inc., also an Indiana corporation, Anthem, Inc., provides health services to the public on a nationwide basis through numerous health care plans, most notably the Blue Cross and Blue Shields of Colorado, Indiana, Kentucky, Ohio, Nevada, Maine, New Hampshire and Connecticut.  Anthem, Inc., its subsidiaries and health care plans are collectively referred to as "Anthem" in this Complaint.

30.     At all relevant times all Anthem entities and health care plans were the agents of the other Anthem entities and health care plans, and in committing the acts alleged herein acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interests and the interests of other Defendants they aided and abetted, and with whom the conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Anthem entities even though they may have been contrary to corporate policy.

8

## BLUE CROSS AND BLUE SHIELD OF ALABAMA

31.     Defendant Blue Cross and Blue Shield of Alabama is an Alabama corporation with its corporate headquarters located at 450 Riverchase Parkway East Birmingham, Alabama 35242. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 3 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Alabama, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Alabama" in this Complaint.

32.     Defendant Blue Cross and Blue Shield of Alabama provides health services to the public on a statewide basis by offering and operating health care plans.

33.     At all relevant times all Blue Cross and Blue Shield of Alabama entities and the Blue Cross and Blue Shield of Alabama health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF ALASKA (PREMERA)

34.     Defendant Blue Cross and Blue Shield of Alaska is an Alaska corporation with its corporate headquarters located at 2550 Denali Street, Suite 1404, Anchorage, Alaska 99503.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately

9

1.3 million enrollees in various health care plans statewide. Blue Cross and Blue Shield of Alaska, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Alaska" in this Complaint.

35.    Defendant Blue Cross and Blue Shield of Alaska provides health services to the public on a statewide basis by offering and operating health care plans.

36.    At all relevant times all Blue Cross and Blue Shield of Alaska entities and the Blue Cross and Blue Shield of Alaska health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF ARIZONA

37.    Defendant Blue Cross and Blue Shield of Arizona is an Arizona corporation with its corporate headquarters located at 2444 W Las Palmaritas Drive, Phoenix, Arizona 85021. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 1.4 million enrollees in various health care plans statewide. Blue Cross and Blue Shield of Arizona, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Arizona" in this Complaint.

10

38.     Defendant Blue Cross and Blue Shield of Arizona provides health services to the public on a statewide basis by offering and operating health care plans.

39.     At all relevant times all Blue Cross and Blue Shield of Arizona entities and the Blue Cross and Blue Shield of Arizona health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF ARKANSAS

40.     Defendant Blue Cross and Blue Shield of Arkansas is an Arkansas corporation with its corporate headquarters located at 26 Corporate Hill Drive, Little Rock, Arkansas 72205.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 860,000 enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Arkansas, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Arkansas" in this Complaint.

41.     Defendant Blue Cross and Blue Shield of Arkansas provides health services to the public on a statewide basis by offering and operating health care plans.

42.     At all relevant times all Blue Cross and Blue Shield of Arkansas entities and the Blue Cross and Blue Shield of Arkansas health care plans were the agents of the other Blue Cross and

11

Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

### BLUE CROSS OF CALIFORNIA
### (WELLPOINT HEALTH NETWORKS, INC.)

43.     Defendant Blue Cross of California is a California corporation with its corporate headquarters located at 4553 Latienda Drive, Thousand Oaks, California.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 6.7 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of California, its subsidiaries and health care plans are collectively referred to as "Blue Cross of California" in this Complaint.

44.     Defendant Blue Cross of California provides health services to the public on a statewide basis by offering and operating health care plans.

45.     At all relevant times all Blue Cross of California entities and the Blue Cross of California health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other

Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE SHIELD OF CALIFORNIA

46.     Defendant Blue Shield of California is a California corporation with its corporate headquarters located at 50 Beale Street, 22nd Floor, San Francisco, California 94105. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.3 million enrollees in various health care plans statewide. Blue Shield of California, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of California" in this Complaint.

47.     Defendant Blue Cross and Blue Shield of California provides health services to the public on a statewide basis by offering and operating health care plans.

48.     At all relevant times all Blue Shield of California entities and the Blue Shield of California health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## ANTHEM BLUE CROSS AND BLUE SHIELD OF COLORADO

49.     Defendant Anthem Blue Cross and Blue Shield of Colorado is a Colorado corporation with its corporate headquarters located at 555 Middle Creek Parkway, Colorado Springs, Colorado, 80921.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 1 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Colorado, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Colorado" in this Complaint.

50.     Defendant Blue Cross and Blue Shield of Colorado provides health services to the public on a statewide basis by offering and operating health care plans.

51.     At all relevant times all Blue Cross and Blue Shield of Colorado entities and the Blue Cross and Blue Shield of Colorado health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## ANTHEM BLUE CROSS AND BLUE SHIELD OF CONNECTICUT

52.     Defendant Anthem Blue Cross and Blue Shield of Connecticut is a Connecticut corporation with its corporate headquarters located at 370 Bassett Road, North Haven, Connecticut 06473.  It is the parent corporation of a number of subsidiaries that provide health care services to

14

approximately 1.2 million enrollees in various health care plans statewide. Blue Cross and Blue Shield of Connecticut, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Connecticut" in this Complaint.

53.    Defendant Anthem Blue Cross and Blue Shield of Connecticut provides health services to the public on a statewide basis by offering and operating health care plans.

54.    At all relevant times all Anthem Blue Cross and Blue Shield of Connecticut entities and the Anthem Blue Cross and Blue Shield of Connecticut health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF DELAWARE

55.    Defendant Blue Cross and Blue Shield of Delaware is a Delaware corporation with its corporate headquarters located at One Brandywine Gateway, Wilmington, Delaware 19899. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 3.2 million enrollees in various health care plans statewide. Blue Cross and Blue Shield of Delaware, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Delaware" in this Complaint.

56.    Defendant Blue Cross and Blue Shield of Delaware provides health services to the public on a statewide basis by offering and operating health care plans.

57.    At all relevant times all Blue Cross and Blue Shield of Delaware entities and the Blue Cross and Blue Shield of Delaware health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## CAREFIRST BLUE CROSS AND BLUE SHIELD OF THE DISTRICT OF COLUMBIA

58.    Defendant Blue Cross and Blue Shield of the District of Columbia is a Washington D.C. corporation with its corporate headquarters located at 550 12th Street Southwest, Washington D.C. 20065.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 3.2 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of the District of Columbia, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of the District of Columbia" in this Complaint.

59.    Defendant Blue Cross and Blue Shield of the District of Columbia provides health services to the public on a statewide basis by offering and operating health care plans.

60.    At all relevant times all Blue Cross and Blue Shield of the District of Columbia entities and the Blue Cross and Blue Shield of the District of Columbia health care plans were the

16

agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

**BLUE CROSS AND BLUE SHIELD OF FLORIDA**

61.     Defendant Blue Cross and Blue Shield of Florida is a Florida corporation with its corporate headquarters located at P.O. Box 60729, Jacksonville, Florida, 32236.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 5 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Florida, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Georgia" in this Complaint.

62.     Defendant Blue Cross and Blue Shield of Florida provides health services to the public on a statewide basis by offering and operating health care plans.

63.     At all relevant times all Blue Cross and Blue Shield of Florida entities and the Blue Cross and Blue Shield of Florida health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved

17

by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF GEORGIA

64.     Defendant Blue Cross and Blue Shield of Georgia is a Georgia corporation with its corporate headquarters located at 3350 Peachtree Road, N.E., Atlanta, Georgia 30326.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.1 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Georgia, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Georgia" in this Complaint.

65.     Defendant Blue Cross and Blue Shield of Georgia provides health services to the public on a statewide basis by offering and operating health care plans.

66.     At all relevant times all Blue Cross and Blue Shield of Georgia entities and the Blue Cross and Blue Shield of Georgia  health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## HAWAII MEDICAL SERVICE ASSOCIATION

67.     Defendant Hawaii Medical Service Association is a Hawaii corporation with its corporate headquarters is located at 407 Uluniu Street, Suite 313, Kailua, Hawaii.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 635,000 enrollees in various health care plans statewide.  Hawaii Medical Service Association, its subsidiaries and health care plans are collectively referred to as "Hawaii Medical Service Association" in this Complaint.

68.     Defendant Hawaii Medical Service Association provides health services to the public on a statewide basis by offering and operating health care plans.

69.     At all relevant times all Hawaii Medical Service Association entities and the Hawaii Medical Service Association health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS OF IDAHO

70.     Defendant Blue Cross of Idaho is an Idaho corporation with its corporate headquarters is located at Statehouse Mail, Boise, Idaho 83720.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 300,000 enrollees in

19

various health care plans statewide.  Blue Cross of Idaho, its subsidiaries and health care plans are collectively referred to as "Blue Cross of Idaho" in this Complaint.

71.     Defendant Blue Cross of Idaho provides health services to the public on a statewide basis by offering and operating health care plans.

72.     At all relevant times all Blue Cross of Idaho entities and the Blue Cross and Blue Shield of Idaho health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## REGENCE BLUE SHIELD OF IDAHO

73.     Defendants Regence Blue Shield of Idaho is an Idaho corporation with its corporate headquarters located at 1602 21st Avenue, Lewiston, Idaho 83501.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 500,000 enrollees in various health care plans statewide.  Regence Blue Shield of Idaho, its subsidiaries and health care plans is collectively referred to as "Blue Cross and Blue Shield of Idaho" in this Complaint.

74.     Defendant Regence Blue Shield of Idaho provides health services to the public on a statewide basis by offering and operating health care plans.

20

75.    At all relevant times all Regence Blue Shield of Idaho entities and the Blue Cross and Blue Shield of Idaho health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF ILLINOIS

76.    Defendant Blue Cross and Blue Shield of Illinois is an Illinois corporation with its corporate headquarters located at 300 East Randolph Street, Chicago, Illinois 60601.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 3 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Illinois, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Illinois" in this Complaint.

77.    Defendant Blue Cross and Blue Shield of Illinois provides health services to the public on a statewide basis by offering and operating health care plans.

78.    At all relevant times all Blue Cross and Blue Shield of Illinois entities and the Blue Cross and Blue Shield of Illinois health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance

21

of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## ANTHEM BLUE CROSS AND BLUE SHIELD OF INDIANA

79.     Defendant Blue Cross and Blue Shield of Indiana is an Indiana corporation with its corporate headquarters located at 120 Monument Circle, Indianapolis, Indiana 46204.  It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Indiana, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Indiana" in this Complaint.

80.     Defendant Blue Cross and Blue Shield of Indiana provides health services to the public on a statewide basis by offering and operating health care plans.

81.     At all relevant times all Blue Cross and Blue Shield of Indiana entities and the Blue Cross and Blue Shield of Indiana health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

22

## WELLMARK BLUE CROSS AND BLUE SHIELD OF IOWA

82.     Defendant Blue Cross and Blue Shield of Iowa is an Iowa corporation with its corporate headquarters located at 636 Grand Avenue, Des Moines, Iowa 50309.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 1.4 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Iowa, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Iowa" in this Complaint.

83.     Defendant Blue Cross and Blue Shield of Iowa provides health services to the public on a statewide basis by offering and operating health care plans.

84.     At all relevant times all Wellmark Blue Cross and Blue Shield of Iowa entities and the Wellmark Blue Cross and Blue Shield of Iowa health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF KANSAS

85.     Defendant Blue Cross and Blue Shield of Kansas is a Kansas corporation with its corporate headquarters located at P.O. Box 3518, Topeka, Kansas 66601.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 700,000 enrollees in

23

various health care plans statewide. Blue Cross and Blue Shield of Kansas, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Kansas" in this Complaint.

86.     Defendant Blue Cross and Blue Shield of Kansas provides health services to the public on a statewide basis by offering and operating health care plans.

87.     At all relevant times all Blue Cross and Blue Shield of Kansas entities and the Blue Cross and Blue Shield of Kansas health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## ANTHEM BLUE CROSS AND BLUE SHIELD OF KENTUCKY

88.     Defendant Anthem Blue Cross and Blue Shield of Kentucky is a Kentucky corporation with its corporate headquarters located at 9901 Linn Station Road, Louisville, Kentucky 40223. It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans statewide. Anthem Blue Cross and Blue Shield of Kentucky, its subsidiaries and health care plans are collectively referred to as "Anthem Blue Cross and Blue Shield of Kentucky" in this Complaint.

24

89.     Defendant Anthem Blue Cross and Blue Shield of Kentucky provides health services to the public on a statewide basis by offering and operating health care plans.

90.     At all relevant times all Anthem Blue Cross and Blue Shield of Kentucky entities and the Anthem Blue Cross and Blue Shield of Kentucky health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## ANTHEM BLUE CROSS AND BLUE SHIELD OF LOUISIANA

91.     Defendant Anthem Blue Cross and Blue Shield of Louisiana is a Louisiana corporation with its corporate headquarters located at 1775 North Achord Road, Baton Rouge, Louisiana 70817.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 858,000 enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Louisiana, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Louisiana" in this Complaint.

92.     Defendant Anthem Blue Cross and Blue Shield of Louisiana provides health services to the public on a statewide basis by offering and operating health care plans.

93.     At all relevant times all Blue Cross and Blue Shield of Louisiana entities and the Blue Cross and Blue Shield of Louisiana health care plans were the agents of the other Blue Cross and

25

Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope

of their agency, with the consent, permission, authorization and knowledge of the others, and in

furtherance of both their interest and the interests of other Defendants they aided and abetted, and

with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified

and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have

been contrary to corporate policy.

### ANTHEM HEALTH PLANS OF MAINE

94.     Defendant Anthem Health Plans of Maine is a Maine corporation with its corporate

headquarters located at 2 Gannett Drive, South Portland, Maine 04016.  It is the parent corporation

of a number of subsidiaries that provide health care services to approximately 140,000 enrollees in

various health care plans statewide.  Anthem Blue Cross and Blue Shield of Maine, its subsidiaries

and health care plans are collectively referred to as "Anthem Blue Cross and Blue Shield of Maine"

in this Complaint.

95.     Defendant Anthem Blue Cross and Blue Shield of Maine provides health services to

the public on a statewide basis by offering and operating health care plans.

96.     At all relevant times all Anthem Blue Cross and Blue Shield of Maine entities and

the Anthem Blue Cross and Blue Shield of Maine health care plans were the agents of the other Blue

Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within

the scope of their agency, with the consent, permission, authorization and knowledge of the others,

and in furtherance of both their interest and the interests of other Defendants they aided and abetted,

and with whom they conspired, as set forth below.  In addition, the actions alleged herein were

26

ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## CAREFIRST BLUE CROSS AND BLUE SHIELD OF MARYLAND

97.     Defendant Carefirst Blue Cross and Blue Shield of Maryland is a Maryland corporation with its corporate headquarters located at 10455 and 10453 Mill Run Circle, Owings Mills, Maryland 21117.  It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Maryland, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Maryland" in this Complaint.

98.     Defendant Blue Cross and Blue Shield of Maryland, provides health services to the public on a statewide basis by offering and operating health care plans.

99.     At all relevant times all Blue Cross and Blue Shield of Maryland entities and the Blue Cross and Blue Shield of Maryland health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

27

## BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS

100.    Defendant Blue Cross and Blue Shield of Massachusetts is a Massachusetts corporation with its corporate headquarters located at 401 Park Drive, Boston, Massachusetts 02215.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.4 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Massachusetts, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Massachusetts" in this Complaint.

101.    Defendant Blue Cross and Blue Shield of Massachusetts provides health services to the public on a statewide basis by offering and operating health care plans.

102.    At all relevant times all Blue Cross and Blue Shield of Massachusetts entities and the Blue Cross and Blue Shield of Massachusetts health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF MICHIGAN

103.    Defendant Blue Cross and Blue Shield of Michigan is a Michigan corporation with its corporate headquarters located at 25925 Telegraph Road, BF340, Southfield, Michigan 48086. It is the parent corporation of a number of subsidiaries that provide health care services to

28

approximately 4.8 million enrollees in various health care plans statewide. Blue Cross and Blue Shield of Michigan, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Michigan" in this Complaint.

104.    Defendant Blue Cross and Blue Shield of Michigan provides health services to the public on a statewide basis by offering and operating health care plans.

105.    At all relevant times all Blue Cross and Blue Shield of Michigan entities and the Blue Cross and Blue Shield of Michigan health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF MINNESOTA

106.    Defendant Blue Cross and Blue Shield of Minnesota is a Minnesota corporation with its corporate headquarters is located at 3535 Blue Cross Road, St. Paul, Minnesota 55164. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2 million enrollees in various health care plans statewide. Blue Cross and Blue Shield of Minnesota, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Minnesota" in this Complaint.

107.    Defendant Blue Cross and Blue Shield of Minnesota provides health services to the public on a statewide basis by offering and operating health care plans.

108.    At all relevant times all Blue Cross and Blue Shield of Minnesota entities and the Blue Cross and Blue Shield of Minnesota health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

### HMO OF MISSISSIPPI, INC.

109.    Defendant HMO of Mississippi, Inc., is a Mississippi corporation with its corporate headquarters located at Post Office Box 1043, 3545 Lakeland Drive, Jackson, Mississippi  39215. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 1 million enrollees in various health care plans statewide.  HMO of Mississippi, Inc., its subsidiaries and health care plans are collectively referred to as "HMO of Mississippi Inc." in this Complaint.

110.    Defendant HMO of Mississippi, Inc., provides health services to the public on a statewide basis by offering and operating health care plans.

111.    At all relevant times all HMO of Mississippi Inc., entities and the Blue Cross and Blue Shield of Mississippi health care plans were the agents of the other Blue Cross and Blue Shield

licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF MISSOURI

112.    Defendant Blue Cross and Blue Shield of Missouri is a Missouri corporation with its corporate headquarters located at P.O. Box 419169, Kansas City, Missouri 64141.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.8 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Missouri, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Missouri" in this Complaint.

113.    Defendant Blue Cross and Blue Shield of Missouri provides health services to the public on a statewide basis by offering and operating health care plans.

114.    At all relevant times all Blue Cross and Blue Shield of Missouri entities and the Blue Cross and Blue Shield of Missouri health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved

31

by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF MISSOURI - KANSAS CITY

115.   Defendant Blue Cross and Blue Shield of Missouri – Kansas City is a Missouri corporation with its corporate headquarters located at 2301 Main Street, One Pershing Square, Kansas City, Missouri 64108.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 805,000 enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Missouri – Kansas City, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Missouri – Kansas City" in this Complaint.

116.   Defendant Blue Cross and Blue Shield of Missouri – Kansas City provides health services to the public on a statewide basis by offering and operating health care plans.

117.   At all relevant times all Blue Cross and Blue Shield of Missouri – Kansas City entities and the Blue Cross and Blue Shield of Missouri – Kansas City health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

32

## BLUE CROSS AND BLUE SHIELD OF MONTANTA

118.    Defendant Blue Cross and Blue Shield of Montana is a Montana corporation with its corporate headquarters located at P.O. Box 4309, Helena, Montana 59604.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 280,000 enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Montana, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Montana" in this Complaint.

119.    Defendant Blue Cross and Blue Shield of Montana provides health services to the public on a statewide basis by offering and operating health care plans.

120.    At all relevant times all Blue Cross and Blue Shield of Montana entities and the Blue Cross and Blue Shield of Montana health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF NEBRASKA

121.    Defendant Blue Cross and Blue Shield of Nebraska is a Nebraska corporation with its corporate headquarters located at P.O. Box 241739, Omaha, Nebraska 68124.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 620,000

enrollees in various health care plans statewide. Blue Cross and Blue Shield of Nebraska, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Nebraska" in this Complaint.

122.    Defendant Blue Cross and Blue Shield of Nebraska provides health services to the public on a statewide basis by offering and operating health care plans.

123.    At all relevant times all Blue Cross and Blue Shield of Nebraska entities and the Blue Cross and Blue Shield of Nebraska health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## ANTHEM BLUE CROSS AND BLUE SHIELD OF NEVADA

124.    Defendant Anthem Blue Cross and Blue Shield of Nevada is an Indiana corporation with its corporate headquarters located at 120 Monument Circle, Indianapolis, Indiana 46204. It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans statewide. Anthem Blue Cross and Blue Shield of Nevada, its subsidiaries and health care plans are collectively referred to as "Anthem Blue Cross and Blue Shield of Nevada" in this Complaint.

125.     Defendant Anthem Blue Cross and Blue Shield of Nevada provides health services to the public on a statewide basis by offering and operating health care plans.

126.     At all relevant times all Anthem Blue Cross and Blue Shield of Nevada entities and the Anthem Blue Cross and Blue Shield of Nevada health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## ANTHEM BLUE CROSS AND BLUE SHIELD OF NEW HAMPSHIRE

127.     Defendant Anthem Blue Cross and Blue Shield of New Hampshire is a New Hampshire corporation with its corporate headquarters located at 300 Goffs Falls Road, Manchester, New Hampshire, 03111.  It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans statewide.  Anthem Blue Cross and Blue Shield of New Hampshire, its subsidiaries and health care plans are collectively referred to as "Anthem Blue Cross and Blue Shield of New Hampshire" in this Complaint.

128.     Defendant Anthem Blue Cross and Blue Shield of New Hampshire provides health services to the public on a statewide basis by offering and operating health care plans.

129.     At all relevant times all Anthem Blue Cross and Blue Shield of New Hampshire entities and the Anthem Blue Cross and Blue Shield of New Hampshire health care plans were the

35

agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

### BLUE CROSS AND BLUE SHIELD OF NEW JERSEY

130.    Defendant Blue Cross and Blue Shield of New Jersey is a New Jersey corporation with its corporate headquarters located at Three Penn Plaza East, Newark, New Jersey 07105. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2 million enrollees in various health care plans statewide. Blue Cross and Blue Shield of New Jersey, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of New Jersey" in this Complaint.

131.    Defendant Blue Cross and Blue Shield of New Jersey provides health services to the public on a statewide basis by offering and operating health care plans.

132.    At all relevant times all Blue Cross and Blue Shield of New Jersey entities and the Blue Cross and Blue Shield of New Jersey health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified

and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF NEW MEXICO

133.    Defendant Blue Cross and Blue Shield of New Mexico is a New Mexico corporation with its corporate headquarters located at 12800 Indian School Road Northeast, Albuquerque, New Mexico 87112.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 236,000 enrollees in various health care plans statewide.  Blue Cross and Blue Shield of New Mexico, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of New Mexico" in this Complaint.

134.    Defendant Blue Cross and Blue Shield of New Mexico provides health services to the public on a statewide basis by offering and operating health care plans.

135.    At all relevant times all Blue Cross and Blue Shield of New Mexico entities and the Blue Cross and Blue Shield of New Mexico health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

37

## EMPIRE BLUE CROSS AND BLUE SHIELD OF NEW YORK

136.    Defendant Empire Blue Cross and Blue Shield of New York is a New York corporation with its corporate headquarters located at 11 W. 42nd Street, New York, New York 10036. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 4 million enrollees in various health care plans statewide. Empire Blue Cross and Blue Shield of New York, its subsidiaries and health care plans are collectively referred to as "Empire Blue Cross and Blue Shield of New York" in this Complaint.

137.    Defendant Empire Blue Cross and Blue Shield of New York provides health services to the public on a statewide basis by offering and operating health care plans.

138.    At all relevant times all Empire Blue Cross and Blue Shield of New York entities and the Empire Blue Cross and Blue Shield of New York health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Empire Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA

139.    Defendant Blue Cross and Blue Shield of North Carolina is a North Carolina corporation with its corporate headquarters located at 1830 US 15-501 North Chapel Hill, North Carolina 27514. It is the parent corporation of a number of subsidiaries that provide health care

38

services to approximately 2.8 million enrollees in various health care plans statewide. Blue Cross and Blue Shield of North Carolina, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of North Carolina" in this Complaint.

140.   Defendant Blue Cross and Blue Shield of North Carolina provides health services to the public on a statewide basis by offering and operating health care plans.

141.   At all relevant times all Blue Cross and Blue Shield of North Carolina entities and the Blue Cross and Blue Shield of North Carolina health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## **BLUE CROSS AND BLUE SHIELD OF NORTH DAKOTA**

142.   Defendant Blue Cross and Blue Shield of North Dakota is a North Dakota corporation with its corporate headquarters located at 4510 13th Avenue Southwest, Fargo, North Dakota 58121. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 400,000 enrollees in various health care plans statewide. Blue Cross and Blue Shield of North Dakota, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of North Dakota" in this Complaint.

143.    Defendant Blue Cross and Blue Shield of North Dakota provides health services to the public on a statewide basis by offering and operating health care plans.

144.    At all relevant times all Blue Cross and Blue Shield of North Dakota entities and the Blue Cross and Blue Shield of North Dakota health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

### ANTHEM BLUE CROSS AND BLUE SHIELD OF OHIO

145.    Defendant Anthem Blue Cross and Blue Shield of Ohio is an Ohio corporation with its corporate headquarters located at 221 East 4th Street, Suite 2600, Cincinnati, Ohio 45206 .  It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans statewide.  Anthem Blue Cross and Blue Shield of Ohio, its subsidiaries and health care plans are collectively referred to as "Anthem Blue Cross and Blue Shield of Ohio" in this Complaint.

146.    Defendant Anthem Blue Cross and Blue Shield of Ohio provides health services to the public on a statewide basis by offering and operating health care plans.

147.    At all relevant times all Anthem Blue Cross and Blue Shield of Ohio entities and the Anthem Blue Cross and Blue Shield of Ohio health care plans were the agents of the other Blue

40

Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF OKLAHOMA

148.    Defendant Blue Cross and Blue Shield of Oklahoma is an Oklahoma corporation with its corporate headquarters located at 1400 South Boston, Tulsa, Oklahoma 74119. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 770,000 enrollees in various health care plans statewide. Blue Cross and Blue Shield of Oklahoma, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of North Dakota" in this Complaint.

149.    Defendant Blue Cross and Blue Shield of Oklahoma provides health services to the public on a statewide basis by offering and operating health care plans.

150.    At all relevant times all Blue Cross and Blue Shield of Oklahoma entities and the Blue Cross and Blue Shield of Oklahoma health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified

41

and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## REGENCE BLUE CROSS AND BLUE SHIELD OF OREGON

151.    Defendant Blue Cross and Blue Shield of Oregon is an Oregon corporation with its corporate headquarters located at P.O. Box 1271, Portland, Oregon 97207.  It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Oregon, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Oregon" in this Complaint.

152.    Defendant Blue Cross and Blue Shield of Oregon provides health services to the public on a statewide basis by offering and operating health care plans.

153.    At all relevant times all Blue Cross and Blue Shield of Oregon entities and the Blue Cross and Blue Shield of Oregon health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## CAPITAL BLUE CROSS OF PENNSYLVANIA

154.    Defendant Capital Blue Cross of Pennsylvania is a Pennsylvania corporation with its corporate headquarters located at 100 Pine Street, Harrisburg, Pennsylvania 17101.  It is the parent

42

corporation of a number of subsidiaries that provide health care services to approximately 1.4 million enrollees in various health care plans statewide. Capital Blue Cross of Pennsylvania, its subsidiaries and health care plans are collectively referred to as "Capital Blue Cross of Pennsylvania" in this Complaint.

155.     Defendant Capital Blue Cross of Pennsylvania provides health services to the public on a statewide basis by offering and operating health care plans.

156.     At all relevant times all Capital Blue Cross of Pennsylvania entities and Capital Blue Cross of Pennsylvania health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## HIGHMARK, INC.

157.     Defendant Highmark, Inc. is a Pennsylvania corporation with its corporate headquarters located at 1800 Center Street, Camp Hill, Pennsylvania 17011. It is the parent corporation of a number of subsidiaries that provide health care services through health care plans on a statewide basis to over 1,900,000 members in Pennsylvania. Highmark, Inc., its subsidiaries and health care plans are collectively referred to as "Highmark" in this Complaint.

43

158.    Defendant Highmark provides health services to the public on a statewide basis by offering and operating health care plans.

159.    At all relevant times all Highmark entities and the Highmark health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## INDEPENDENCE BLUE CROSS

160.    Defendant Independence Blue Cross is a Pennsylvania corporation with its corporate headquarters located at 1901 Market Street, Philadelphia, PA 19103.  It is the parent corporation of a number of subsidiaries that provide health care services through health care plans on a statewide basis to over 3 million members in Pennsylvania.  Independence Blue Cross, its subsidiaries and health care plans are collectively referred to as "Independence Blue Cross" in this Complaint.

161.    Defendant Independence Blue Cross provides health services to the public on a statewide basis by offering and operating health care plans.

162.    At all relevant times all Independence Blue Cross entities and the Independence Blue Cross health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and

the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS OF NORTHEASTERN PENNSYLVANIA - WILKES-BARRE

163.    Defendant Blue Cross of Northeastern Pennsylvania is a Pennsylvania corporation with its corporate headquarters located at 19 North Main Street, Wilkes-Barre, Pennsylvania 18711.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 570,000 enrollees in various health care plans statewide.  Blue Cross of Northeastern Pennsylvania – Wilkes-Barre, its subsidiaries and health care plans are collectively referred to as "Blue Cross of Northeastern Pennsylvania – Wilkes-Barre" in this Complaint.

164.    Defendant Blue Cross of Northeastern Pennsylvania – Wilkes-Barre, provides health services to the public on a statewide basis by offering and operating health care plans.

165.    At all relevant times all Blue Cross of Northeastern Pennsylvania – Wilkes-Barre entities and the Blue Cross of Northeastern Pennsylvania – Wilkes-Barre health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## TRIPLE-S, INC., OF PUERTO RICO

166.    Defendant Triple-S, Inc., of Puerto Rico is a Puerto Rican corporation with its corporate headquarters located at 1441 F.D. Roosevelt Avenue, San Juan, Puerto Rico, 00920.  It is the parent corporation of a number of subsidiaries that provide health care services through health care plans to over 617,667 members in Puerto Rico.  Triple-S, Inc., of Puerto Rico, its subsidiaries and health care plans are collectively referred to as "Triple-S, Inc., of Puerto Rico" in this Complaint.

167.    Defendant Triple-S, Inc., of Puerto Rico provides health services to the public on a statewide basis by offering and operating health care plans.

168.    At all relevant times all Triple-S, Inc., of Puerto Rico entities and the Blue Cross and Blue Shield of Puerto Rico health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF RHODE ISLAND

169.    Defendant Blue Cross and Blue Shield of Rhode Island is a Rhode Island corporation with its corporate headquarters is located at 15 LaSalle Square, Providence, Rhode Island  02903.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 600,000 enrollees in various health care plans statewide.  Blue Cross and Blue Shield

of Rhode Island, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Rhode Island" in this Complaint.

170.    Defendant Blue Cross and Blue Shield of Rhode Island provides health services to the public on a statewide basis by offering and operating health care plans.

171.    At all relevant times all Blue Cross and Blue Shield of Rhode Island entities and the Blue Cross and Blue Shield of Rhode Island health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA

172.    Defendant Blue Cross and Blue Shield of South Carolina is a South Carolina corporation with its corporate headquarters located at 7410 Northside Drive, Suite 208, North Charleston, South Carolina 29420.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 1 million enrollees in various health care plans statewide.  Blue Cross and Blue Shield of South Carolina, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of South Carolina" in this Complaint.

173.    Defendant Blue Cross and Blue Shield of South Carolina provides health services to the public on a statewide basis by offering and operating health care plans.

47

174.    At all relevant times all Blue Cross and Blue Shield of South Carolina entities and the Blue Cross and Blue Shield of South Carolina health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## WELLMARK BLUE CROSS AND BLUE SHIELD OF SOUTH DAKOTA

175.    Defendant Wellmark Blue Cross and Blue Shield of South Dakota is a South Dakota corporation with its corporate headquarters is located at 1601 W. Madison, Sioux Falls, South Dakota.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 250,000 enrollees in various health care plans statewide.  Blue Cross and Blue Shield of South Dakota, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of South Dakota" in this Complaint.

176.    Defendant Wellmark Blue Cross and Blue Shield of South Dakota provides health services to the public on a statewide basis by offering and operating health care plans.

177.    At all relevant times all Wellmark Blue Cross and Blue Shield of South Dakota entities and the Wellmark Blue Cross and Blue Shield of South Dakota health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and

48

knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF TEXAS

178.    Defendant Blue Cross and Blue Shield of Texas is a Texas corporation with its corporate headquarters is located at 901 South Central Expressway, Richardson, Texas 75080. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.9 million enrollees in various health care plans statewide. Blue Cross and Blue Shield of Texas, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Texas" in this Complaint.

179.    Defendant Blue Cross and Blue Shield of Texas provides health services to the public on a statewide basis by offering and operating health care plans.

180.    At all relevant times all Blue Cross and Blue Shield of Texas entities and the Blue Cross and Blue Shield of Texas health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

.    49

## REGENCE BLUE CROSS AND BLUE SHIELD OF UTAH

181.    Defendant Regence Blue Cross and Blue Shield of Utah is a Utah corporation with its corporate headquarters is located at 2890 East Cottonwood Parkway, Salt Lake City, Utah 84121. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 600,000 enrollees in various health care plans statewide.  Regence Blue Cross and Blue Shield of Utah, its subsidiaries and health care plans are collectively referred to as "Regence Blue Cross and Blue Shield of Utah" in this Complaint.

182.    Defendant Regence Blue Cross and Blue Shield of Utah provides health services to the public on a statewide basis by offering and operating health care plans.

183.    At all relevant times all Regence Blue Cross and Blue Shield of Utah entities and the Blue Cross and Blue Shield of Utah health care plans were the agents of the other Regence Blue Cross and Blue Shield Utah licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## ANTHEM BLUE CROSS AND BLUE SHIELD OF VIRGINIA INC.

184.    Defendant Anthem Blue Cross and Blue Shield of Virginia, Inc., is a Virginia corporation with its corporate headquarters located at 2235 Staples Mill Road, Suite 401, Richmond, Virginia 23230.  It is the parent corporation of a number of subsidiaries that provide health care

50

services to approximately 2.2 million enrollees in various health care plans statewide.  Anthem Blue Cross and Blue Shield of Virginia, Inc., its subsidiaries and health care plans are collectively referred to as "Anthem Blue Cross and Blue Shield of Virginia" in this Complaint.

185.    Defendant Anthem Blue Cross and Blue Shield of Virginia provides health services to the public on a statewide basis by offering and operating health care plans.

186.    At all relevant times all Health Plans of Virginia, Inc., entities and the Blue Cross and Blue Shield of Virginia health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## PREMERA - BLUE CROSS OF WASHINGTON

187.    Defendant Premera - Blue Cross of Washington is a Washington corporation with its corporate headquarters located at 520 Pike Street, Seattle, Washington 98101.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 1.1 million enrollees in various health care plans statewide.  Premera - Blue Cross of Washington, its subsidiaries and health care plans are collectively referred to as "Premera - Blue Cross of Washington" in this Complaint.

51

188.    Defendant Premera - Blue Cross of Washington provides health services to the public on a statewide basis by offering and operating health care plans.

189.    At all relevant times all Premera - Blue Cross of Washington entities and the Blue Cross and Blue Shield of Washington health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## REGENCE BLUE SHIELD OF WASHINGTON

190.    Defendant Regence Blue Shield of Washington is a Washington corporation with its corporate headquarters located at 1800 Ninth Avenue, MS/S305, Seattle, Washington 98111.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.1 million enrollees in various health care plans statewide.  Regence Blue Shield of Washington, its subsidiaries and health care plans are collectively referred to as "Regence Blue Shield of Washington" in this Complaint.

191.    Defendant Regence Blue Shield of Washington provides health services to the public on a statewide basis by offering and operating health care plans.

192.    At all relevant times all Regence Blue Shield of Washington entities and the Regence Blue Shield of Washington health care plans were the agents of the other Blue Cross and Blue Shield

licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

### MOUNTAIN STATE BLUE CROSS AND BLUE SHIELD OF WEST VIRGINIA

193.    Defendant Mountain State Blue Cross and Blue Shield of West Virginia is an West Virginia corporation with its corporate headquarters located at 700 Market Square, Parkersburg, West Virginia  26101.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 250,000 enrollees in various health care plans statewide.  Mountain State Blue Cross and Blue Shield of West Virginia, its subsidiaries and health care plans are collectively referred to as "Mountain State Blue Cross and Blue Shield of West Virginia" in this Complaint.

194.    Defendant Mountain State Blue Cross and Blue Shield of West Virginia provides health services to the public on a statewide basis by offering and operating health care plans.

195.    At all relevant times all Mountain State Blue Cross and Blue Shield of West Virginia entities and the Mountain State Blue Cross and Blue Shield of West Virginia health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests

53

of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## BLUE CROSS AND BLUE SHIELD OF WISCONSIN

196.    Defendant Blue Cross and Blue Shield of Wisconsin is a Wisconsin corporation with its corporate headquarters located at 2215 Nine Street, Suite E, Hudson, Wisconsin 54016.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 700,000 enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Wisconsin, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Wisconsin" in this Complaint.

197.    Defendant Blue Cross and Blue Shield of Wisconsin provides health services to the public on a statewide basis by offering and operating health care plans.

198.    At all relevant times all Blue Cross and Blue Shield of Wisconsin entities and the Blue Cross and Blue Shield of Wisconsin health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

54

## BLUE CROSS AND BLUE SHIELD OF WYOMING

199.    Defendant Blue Cross and Blue Shield of Wyoming is a Wyoming corporation with its corporate headquarters is located at P.O. Box 2266, Cheyenne, Wyoming 82003.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 100,000 enrollees in various health care plans statewide.  Blue Cross and Blue Shield of Wyoming, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Wyoming" in this Complaint.

200.    Defendant Blue Cross and Blue Shield of Wyoming provides health services to the public on a statewide basis by offering and operating health care plans.

201.    At all relevant times all Blue Cross and Blue Shield of Wyoming entities and the Blue Cross and Blue Shield of Wyoming health care plans were the agents of the other Blue Cross and Blue Shield licensed entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of other Defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other Blue Cross and Blue Shield licensed entities, even though they may have been contrary to corporate policy.

## WELLPOINT HEALTH NETWORKS INC.

202.    Defendant WellPoint Health Networks, Inc., is a California corporation with corporate headquarters at One WellPoint Way, Thousand Oaks, California 91362.  It provides, directly and through a number of subsidiaries, including Blue Cross of California, Blue Cross and

Blue Shield of Georgia, Blue Cross and Blue Shield of Missouri and Unicare, health care services on a nationwide basis through health care plans. WellPoint Health Networks, Inc., its subsidiaries and health care plans are collectively referred to as "WellPoint" in this Complaint.

203. At all relevant times all WellPoint entities and health care plans were the agents of the other Wellpoint entities and plans, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of their interests and the interests of the other Defendants they aided and abetted, or with whom they conspired, as set forth below. In addition, the actions of each WellPoint entity alleged herein were ratified and approved by the other WellPoint entities even though they may have been contrary to corporate policy.

## FACTUAL ALLEGATIONS AGAINST ALL DEFENDANTS
## FEE FOR SERVICE CONTRACTS AND NONCONTRACT DOCTORS

204. Plaintiffs and class members provide medical services to Defendants' insureds on a fee for service basis both pursuant to and without contracts. These services are provided based upon the fundamental premise that, if the services are covered by Defendants and are medically necessary, the Plaintiffs and class members will be compensated in a timely manner for rendering those services.

205. Each fee for service contract Defendants enter into, as well as the accompanying material they provide, represents that doctors will be paid in a timely manner for rendering covered, medically necessary services to Defendants' insureds in accordance with standard medical coding procedures.

206.     Defendants also represent to the medical profession at large that they will pay doctors in a timely manner for rendering covered, medically necessary services to their insureds.  These representations are made in numerous ways, including:

(a)     By providing in their insureds' plans or policies that doctors both within and without defined networks will be compensated for rendering covered, medically necessary services;

(b)     By providing insurance cards to their insureds to show treating doctors;

(c)     By disseminating billing information to the profession at large;

(d)     By confirming coverage for medically necessary services when contacted by doctors prior to treatment;

(e)     By insisting that payment requests describe the covered, medically necessary services rendered in a standard coded fashion;

(f)     By explaining payments so as to make it appear that doctors are being paid for the covered, medically necessary services they render; and

(g)     By operating in jurisdictions that require timely payment by law.

207.     In addition, although it goes to the heart of the relationship, and is necessary to prevent doctors from being misled by their apparent actions and statements, Defendants fail to disclose that the automated processing schemes described in paragraphs 214-226 will be used to deny, diminish and delay payment for covered, medically necessary services.  At best, Defendants state only that automated programs will be used to "correct" improper coding and payment requests – yet another misrepresentation.

208.   Following the provision of medical services on a fee for service basis, whether pursuant to contract or otherwise, Plaintiffs and class members are required to submit a standard coded claim form.

209.   By far the most commonly used form is the HCFA-1500, which was developed by the Health Care Financing Administration in conjunction with the American Medical Association ("AMA") for use in the Medicare and Medicaid programs.   The Health Care Financing Administration is now known as the Center for Medicare and Medicaid Services ("CMS"), and the HCFA-1500 form is now known as the CMS-1500.  The HCFA/CMS-1500 form incorporates the AMA's Current Procedural Terminology, or CPT coding procedure, and includes a code identifying the diagnosis and procedure performed as well as modifiers for the degree of difficulty, complexity and multiplicity.

210.   The purpose of the coded information contained on the HCFA/CMS-1500 and other standard claim forms is to provide a uniform language that accurately describes the medical, surgical and diagnostic services a doctor has rendered, and to give Defendants or their designated payors the information they need to process a claim for payment.

211.   Each Plaintiff and class member relies upon Defendants' representations, both express and implied, that they will be paid for rendering covered, medically necessary services by, *inter alia,* providing those services, by not billing the insured, and by requesting payment for those services from the Defendants or a designated payor in the manner required by the Defendants, i.e. using the HCFA/CMS-1500 or other prescribed standard claims form and standardized coding.

212.    However, the uniform coding process embodied in these forms allows automated logic to be applied to physician payment requests, and rather than paying Plaintiffs and class members for covered, medical necessary services in accordance with standard coding practices, Defendants engage in a common fraudulent scheme designed to systematically deny, delay and diminish payments to Plaintiffs and class members using the devices and techniques set forth below. Each of the Plaintiffs and class members has been victimized by these schemes.

## DENIAL OF PAYMENT REQUESTS BASED
## UPON COST CRITERIA RATHER THAN COVERAGE AND MEDICAL NECESSITY

213.    Defendants secretly do not use "medical necessity" or coverage as the criteria for making payment decisions.  Instead, they use cost-based or other actuarial criteria unrelated to medical necessity to approve or deny claims submitted by Plaintiffs and the class.  For example, the Plans routinely and automatically deny payment for certain CPT codes without any inquiry into or analysis of medical necessity.  These undisclosed cost-based criteria include Defendants' own guidelines and criteria as well as guidelines developed in concert with third parties, including but not limited to Milliman & Robertson and InterQual.

214.    Defendants systematically deny valid claims submitted for payment by Plaintiffs and class members on this basis.

## DOWNCODING AND BUNDLING

215.    Defendants have also implemented systematic claims processes to manipulate the CPT codes contained in the claims forms submitted by Plaintiffs and class members by "downcoding" or "bundling" claims.  To accomplish this Defendants use software sold and licensed

59

by McKesson HBOC, or comparable software capable of modifying CPT code protocols set by the American Medical Association.

216.    "Downcoding" denies or diminishes the payment of claims submitted by physicians by arbitrarily, and without prior notice, changing the code assigned to a particular service to a less expensive one.

217.    "Bundling" denies or diminishes the payment of claims submitted by physicians by arbitrarily, and without prior notice, combining the codes of two or more procedures into one.

218.    These processes are not used, as Defendants would have it, to correct improper coding, but to cheat doctors out of payment for services rendered.

## REFUSAL TO RECOGNIZE MODIFIERS

219.    Defendants' automated processing systems also manipulate the data contained on HCFA/CMS-1500 or other standard claims forms by refusing to recognize "modifiers" – codes which indicate the degree of multiplicity, complexity or difficulty of the evaluation or procedure at issue.

220.    Rather than compensate Plaintiffs and class members for the services reflected by these enhancement codes, or question them on the basis of medical necessity, they are simply ignored.

221.    Nothing in standard coding guidelines requires the submission of additional documentation when modifiers are used, or permits them to be ignored.

## INTENTIONAL DELAY OF PAYMENTS

222.    In addition to denying and diminishing payments to Plaintiffs and class members, Defendants also intentionally delay them.

223.    One way this is done is through automated programs that "pend" claims, i.e. put them in a state of suspense before they are processed even though no additional information is needed or requested from Plaintiffs and class members.

224.    Delay is also accomplished through calculated understaffing.

225.    The end result is that average payment times exceed by multiples the time provided for by law in most states as well as the time set by contract and industry practice.  This provides the Defendants with a significant float and deprives Plaintiffs and class members of the time value of their money as well as one of the incentives to treat patients at reduced rates in a managed care context.

## EXPLANATION OF BENEFITS/FRAUDULENT CONCEALMENT

226.    Once Plaintiffs' and class members' payment requests have been improperly denied or diminished, Defendants provide Plaintiffs and class members with an explanation of benefits ("EOB").

227.    Through coded explanations, the EOBs misrepresent or conceal the actual manner in which Plaintiffs' and the class members' payment requests were processed so as to induce them to accept reduced payments in reliance thereon.

228.   Defendants also conceal the manner in which they actually process requests for payment by refusing to disclose it, by taking affirmative steps to keep it secret, and by depriving Plaintiffs and class members of information that might enable them to discover their processing techniques, including such basic information as the schedule of fees in effect for various procedures.

229.   As a result of Defendants' fraudulent concealment, the applicable statutes of limitations have been tolled or have not begun to run.

## CAPITATION AGREEMENTS

230.   Defendants also enter into capitation agreements with Plaintiffs and class members through the groups in which they practice or through IPAs – associations of independent physicians or physician groups that deal collectively with one or more of the Defendants on their behalf.

231.   The principal feature of capitation agreements is that doctors are paid based on the number of patients they agree to treat rather than on a fee for service basis, the premise being that, if doctors practice efficient, preventative medicine, capitation payments will fairly compensate them and their patients will receive better and more affordable health care.

232.   When Defendants enter into capitation agreements they expressly or impliedly represent to Plaintiffs and class members, or to IPAs on their behalf, that the capitation rates are actuarially sound, and that they will be set based upon the covered, medically necessary services the group is actually required to render.  Undisclosed, however, are the criteria actually used to set payments, including administrative costs, and the techniques Defendants use to manipulate the capitation system so that funds will never be available to fairly compensate the doctors.

233.    For example, Defendants represent that Plaintiffs, the class or the IPAs will receive monthly payments for each patient enrolled in the group they are to treat.  In addition, capitation rolls, which supposedly list the universe of enrolled patients, are sent to Plaintiffs, class members or the IPAs on a monthly basis.

234.    The capitation rolls do not, however, include all of the patients who have enrolled in the plan.  Instead, Defendants withhold payments for insureds who are enrolled in a plan but have yet to seek any treatment, thus dramatically altering the actuarial underpinnings of the capitation agreement by withholding payments for "well" members that are needed to offset the cost of treating the sick.

235.    Defendants also reduce Plaintiffs' and class members' capitation payments by misrepresenting the workings of "pharmacy risk pools."  The capitation agreements state that the Defendants will pay for prescription drugs for insureds and charge a risk fund, which ultimately reduces capitation payments, the "actual cost" of the prescription drugs.  In actuality, however, Defendants charge the fund a set price that does not reflect the substantial rebates/refunds/discounts granted by drug manufacturers, does not represent Defendants' "actual cost," and operates to artificially reduce capitation payments.

236.    Defendants' capitation agreements also state that they will pay incentives to the Plaintiffs and members of the class at the end of each year if charges against the pharmacy risk pool are under projections.   Undisclosed, however, is the fact that Defendants "adjust" year-end statements to avoid paying the incentives.  The adjustments are reflected in year-end statements sent to Plaintiffs, class members and/or their IPAs.

237.   Finally, during each capitation year doctors submit HCFA/CMS-1500 or other standard coded forms reflecting the covered, medically necessary services they have rendered to patients enrolled in the group.  Defendants manipulate the coded information on these forms in the same way they do with fee for service providers, and use the resulting data to reduce capitation payments the following year.

238.   Plaintiffs and the class rely upon the Defendants capitation misrepresentations by agreeing to treat, and treating, patients on a capitated basis, by accepting reduced monthly capitation payments based on false lists of enrolled patients, by accepting inflated charges against their capitation payments based upon false drug costs, and by accepting the lack of incentive payments based upon false year-end statements.

239.   Plaintiffs and class members operating under capitation agreements are harmed in the following ways.  First, even under capitation agreements, Defendants pay for some services on a fee for service basis, and in those instances doctors are subjected to the same automated processing schemes described above.  Second, Plaintiffs and class members also submit HCFA/CMS-1500 or other standard coded forms to IPAs to receive individual or group payments for rendering covered, medically necessary services from the capitation fund.  The forms are processed using the same automated programs to deny and reduce payment, and, when the capitation fund runs dry, there is no payment at all.  Finally, to the extent that Plaintiffs and members of the class share directly in capitation payments, they are not fully or fairly compensated for the services they render because the capitation payments have been fraudulently reduced in the manner described in this section.

240. Defendants not only fail to disclose the fraudulent capitation practices described in this section, they take affirmative steps to conceal them, thereby tolling the running of any relevant limitation period.

241. Defendants control a large percentage of the subscribers and providers in the managed care market in most states, and in some local areas.

242. In order to perpetuate the above scheme, Defendants use their overwhelming economic power and market dominance to coerce Plaintiffs and the class, at the risk of being denied patient referrals and/or "black-listed" altogether, into providing care under Defendants' policies and practices on a "take it or leave it" basis, and providing care on a capitated as opposed to fee for service basis pursuant to "all products" requirements.

243. Defendants further wield their economic power and market dominance by reserving the right to unilaterally amend contracts with physicians, refusing to provide information concerning pricing or fee structures to Plaintiffs or class members, and failing to provide any feasible mechanism for review of the automated payment reductions – all in furtherance of the scheme described above.

244. Defendants' fraudulent conduct is made more effective by, and enforced through, the conspiracy and RICO enterprise described below as well as Defendants' efforts to aid and abet each other in confiscating Plaintiffs' and class members' property.

## CONSPIRACY

245. Defendants have not undertaken the above practices and activities in isolation, but instead have done so as part of a common scheme and conspiracy, which includes not only the

Defendants but other managed care and health insurance companies as well as other industry trade associations.

246. Each Defendant and members of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud to relieve Plaintiffs of their rightful compensation, and actually committed such acts.

247. Indeed, for the fraudulent schemes described above to be successful, each Defendant and other members of the conspiracy had to agree to enact and utilize the same devices and fraudulent tactics against the Plaintiffs and members of the class.

248. Numerous common facts and similar activities, which reflect the above reality and imply the existence of a conspiracy, exist among all of the Defendants and other members of the conspiracy, including:

      (a)     the payment provisions in contracts with physicians;

      (b)     the claims procedures, including the data physicians are required to provide in submitting claims, the forms they must submit the data on, and the coding they must use to submit the data;

      (c)     medical necessity criteria, and Defendants' use of guidelines developed in concert with third parties;

      (d)     the automated processes used in manipulating CPT codes, including downcoding and bundling;

      (e)     the deliberate purchasing of software systems that do not recognize modifiers;

(f)      refusing to give doctors fee schedules;

(g)      institutionalized techniques to delay payment of claims;

(h)      the payment procedures under capitation agreements, including but not

limited to:

(i)      retaining premiums from enrolled insureds until they need services from

physicians;

(j)      the manipulation of pharmacy risk pools;

(k)      failing to pass along pharmaceutical rebates and discounts.

249.      During the past ten years the conspiracy was conducted through and implemented by:

(a)      the sharing and dissemination of claims processing, utilization

management and physician contracting information through meetings conducted by the

Association, including board of directors meetings and committee meetings at which attendees

from different Plans around the country share information which is later disseminated by the

Association and shared with all of the Plans;

(b)      the development and adoption, through the Association, of specific clinical

practice guidelines and related healthcare review criteria such as those established by Milliman &

Robertson;

(c)      the development and utilization of automated and integrated claims

processing and other systems such as those generated by McKesson HBOC, and the

configuration and use of such systems to similarly deny, diminish and delay payments to

physicians;

67

(d)     the joint development of accreditation standards and industry information by the  National Committee for Quality Assurance;

(e)     the utilization, participation in development and purchase of reimbursement guidelines such as those offered by the Health Insurance Association of America ("HIAA");

(f)     participation and coordination in other trade associations, such as the HIAA and the American Association of Health Plans ("AAHP"), that develop common industry standards and/or act as vehicles for the exchange of sensitive business information;

(g)     participation and coordination in industry groups such as the Coalition for Quality Healthcare that disseminate unified information and messages; and

(h)     participation in and coordination through private, jointly owned corporations such as MedUnite which facilitate Defendants' claims processing procedures.

## THE NEED FOR DECLARATORY AND INJUNCTIVE RELIEF

250.    Defendants' automated scheme to deny, reduce and delay payments to doctors who treat their insureds on a fee for service basis, and their use of the same automated programs as well as other manipulative devices to reduce capitation payments due doctors working under capitation agreements, are ongoing problems that will continue to cause Plaintiffs and members of the class economic losses and threaten their ability to practice medicine and serve the public health.

251.    A money judgment in this case will only compensate Plaintiffs and members of the class for past losses.  It will not stop Defendants' interference in medical treatment decisions, and

it will not stop the Defendants from continuing to confiscate the money doctors earn, and that is necessary to maintain their practice on an ongoing basis.

252.    No individual doctor has a practical or adequate remedy, either administratively or at law, to recover these future losses.  The cost of pursuing such claims far exceeds the amount at issue.

253.    Even a class action such as the one contemplated in this case is a monumental undertaking that cannot be mounted on a regular basis.

254.    Where multiple lawsuits are required to redress repeated wrongs, there is no adequate remedy at law and irreparable harm exists.

## RICO ALLEGATIONS
## THE BLUE CROSS AND BLUE SHIELD ENTERPRISE

255.    Plaintiffs, the class members and Defendants are  "persons" within the meaning of 18 U.S.C. § 1961(3).

256.    Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals associated in fact that Plaintiffs refer to as the "Blue Cross and Blue Shield Enterprise" ("BCBSE"): (1) Defendants; (2) other health insurance companies not named as defendants herein; (3) Milliman & Robertson and other third party entities which promulgate purported patient care guidelines; (4) HBOC McKesson and other third party entities which develop claims processing systems or components; (5) American Association of Health Plans; (6) Health Insurance Association of America; (7) MedUnite, an entity utilized by Defendants to facilitate claims processing; and (8) the Coalition for Affordable Quality Healthcare.

69

257.    The BCBSE is an ongoing organization which engages in, and whose activities affect, interstate commerce.

258.    While the Defendants participate in and are members and part of the BCBSE, and are a part of it, they also have an existence separate and distinct from the enterprise.

259.    In order to successfully retain monies owed physicians in the manner set forth above, Defendants need a system that allows them to manipulate and control reimbursements to physicians and conceal the manner in which that is done.  The BCBSE provides Defendants with that system and ability, and their control of and participation in it is necessary for the successful operation of their scheme.  The Defendants control and operate the BCBSE as follows:

(a)    By sharing and disseminating claims processing, utilization management and physician contracting information through meetings conducted by the Association, including board of directors meetings and committee meetings at which attendees from different Plans around the country share information which is later disseminated by the Association and shared with all of the Plans;

(b)    By developing themselves, and, through the Association, engaging and paying Milliman & Robertson and other third party entities which promulgate purported patient care guidelines to develop, generalized standards and "patient care guidelines" to use as actual criteria to systematically deny claims without regard to medical necessity or coverage;

(c)    By agreeing to use and using those guidelines to deny claims;

70

(d)     By engaging and paying HBOC McKesson and other third party entities which develop automated systems for editing and manipulating the claims information contained in the HCFA/CMS 1500 form;

(e)     By agreeing to and using those systems to process claims and deny or diminish payment;

(f)     By utilizing and supporting trade associations, including the Association, the AAHP and HIAA as vehicles for communication and the exchange and dissemination of information necessary to the scheme, or, in the words of AAHP, to "unify the industry voice" and deliver a "unified message";

(g)     By participating in, and supporting the use of, MedUnite as a common entry point for physician claim data to assist the Defendants in processing doctors' claims in a coordinated fashion;

(h)     By utilizing the Coalition for Quality Healthcare to exchange and disseminate information, take joint action and conceal their wrongdoing.; and;

(i)     By exchanging upper level employees to facilitate unified and concerted action.

260.    As set forth above, the BCBSE has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engage.

## PREDICATE ACTS

261.    Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire

71

fraud).  As set forth below, Defendants have and continue to engage in conduct violating each of these laws to effectuate their scheme.

262.   In addition, in order to make their scheme effective, each of the Defendants sought to and did aid and abet the others' in violating the above laws within the meaning of 18 U.S.C. §2.  As a result, their conduct is indictable under 18 U.S.C. §§ 1341 and 1343, on this additional basis.

## VIOLATIONS OF 18 U.S.C. §§ 1341 AND 1343

263.   For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to agreements, manuals, correspondence, patient lists, payments, EOBs, reports, data, summaries, statements,  and plan materials.

264.   For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants, also in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things which include but are not limited to agreements, manuals, correspondence, patient lists, payments, EOBs, reports, data, summaries, oral and written statements, faxes, and plan materials

265.   The matter and things sent by Defendants via the Postal Service, commercial carrier, wire or other interstate electronic media include, inter alia:

72

    (a)    material containing false and fraudulent misrepresentations that Defendants would pay Plaintiffs and class members for the covered, medically necessary services they provided to Defendants' insured;

    (b)    material containing the false and fraudulent misrepresentations concerning capitation payments described in paragraphs 230-240 above, including lists of capitation patients purportedly assigned to a physician which fail to list all patients assigned in order to avoid the obligation of making capitation payments for those individuals as well as capitation lists that collectively fail to include all patients enrolled in a plan;

    (c)    material which concealed or failed to disclose that Defendants would and did use the techniques and procedures described in paragraphs 213-225 above to deprive Plaintiffs and class members of payment, including the use of cost based criteria rather than medical necessity and coverage to make payment decisions, downcoding, bundling, refusing to recognize modifiers and intentionally delaying payments;

    (d)    material which concealed or failed to disclose the manner in which capitation payments would be manipulated as described in paragraphs 230-240 above; and

    (e)    material constituting explanations for payments made or denied by Defendants, but which, in fact, fail to reveal and/or actively conceal the reasons that payment has been denied, diminished, delayed, or otherwise adjusted from the request for payment as submitted by the physician.

266.    Other matter and things sent through or received from the Postal Service, commercial carrier or interstate wire transmission by Defendants included information or communications in furtherance of or necessary to effectuate the scheme.

267.    The Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and the class and obtaining their property for the Defendants' gain.

268.    The Defendants either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and Plaintiffs and the class relied on the misrepresentations and omissions as set forth above.

269.    As a result, Defendants have obtained money and property belonging to the Plaintiffs and class members, and Plaintiffs and the class have been injured in their business or property by the Defendants' overt acts of mail and wire fraud, and by their aiding and abetting each other's acts of mail and wire fraud.

## PATTERN OF RACKETEERING ACTIVITY

270.    The Defendants have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, i.e. indictable violations of 18 U.S.C. §§ 1341 and 1343 as described above, within the past ten years.  In fact, each of the Defendants has committed or aided and abetted in the commission of thousands of acts of racketeering activity.  Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiffs and class members.

271.    The multiple acts of racketeering activity which Defendants committed and/or conspired to or aided and abetted in the commission of, were related to each other and amount to and

74

pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

272.    Representative examples of the types of predicate acts committed by Defendants pursuant to their scheme to defraud the Plaintiffs and their conspiracy to violate RICO are set forth in the Civil RICO Case Statement Pursuant to Local Rule 12.1.

## RICO VIOLATIONS

### § 1962(a)

273.    Section 1962(a) of RICO provides that "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity … in which such person has participated as a principal within the meaning of § 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

274.    As set forth above, Defendants receive income from their participation as principals in an extensive pattern of racketeering activity.

275.    That income is reinvested to finance future racketeering activity, and the future operation of the Blue Cross and Blue Shield Enterprise.  In addition, Defendants use the income to buy additional health insurance companies or plans, which increases the scope and size of the BCBSE, the reach of their fraudulent scheme, and their power to perpetuate and enforce it.

## § 1962(c)

276.   Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..."

277.   Through the patterns of racketeering activities outlined above, the Defendants have also conducted and participated in the affairs of the BCBSE.

## § 1962(d)

278.   Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c), of this section.

279.   Defendants' conspiracy to secure money due the Plaintiffs and class members for their own use through the fraudulent scheme described above violates 18 U.S.C. §1962(d).

280.   Each of the Defendants agreed to participate, directly or indirectly, in the conduct of the affairs of the BCBSE through a pattern of racketeering activity comprised of numerous acts of mail fraud and wire fraud, and each Defendant so participated in violation of 18 U.S.C. § 1962(c).

281.   Each Defendant further agreed to use or invest, directly or indirectly, part of the income derived from their acts of mail fraud and wire fraud, which constituted a pattern of racketeering activity, in the establishment, operation and expansion of the BCBSE, and has done so in violation of 18 U.S.C. § 1962(a).

## CLASS ALLEGATIONS

## CLASS DEFINITIONS

282.    Plaintiffs bring this action on their own behalf and, pursuant to Fed.R.Civ.P. 23(b)(1)(A), (b)(2), and/or (b)(3), and USDC Southern District of Florida Local Rule 23.1, as a class action on behalf of a nationwide class of persons defined as:

283.    **Global Class**:  All medical doctors who, from May 21, 1993, to the date of certification, provided services to any patient insured by or who was a member or beneficiary of any plan administered by any Defendant.  This class seeks certification of claims for declaratory and injunctive relief, and for damages pursuant to 18 U.S.C. § 1962(d) for conspiracy to violate 18 U.S.C. § 1962(a) and 1962(c), and for aiding and abetting in violation of 18 U.S.C. §1962(a) and 1962(c).

284.    The Court should also certify the following subclasses:

(a)    **National Nonarbitration Subclass:**  All medical doctors who, between May 21, 1993 and the date of certification, provided services to a patient insured by or who was a member or beneficiary of any plan administered by Anthem, Inc., Anthem Blue Cross and Blue Shield of Connecticut pursuant to a contract without an arbitration clause or which contained an unenforceable arbitration clause.  This class seeks certification of claims for declaratory and injunctive relief, and for damages based upon direct violations of 18 U.S.C. §§ 1962(a) and (c).

(b)    **National Noncontract Subclass:**  All medical doctors who, between May 21, 1993 and the date of certification, provided services to a patient insured by or who was a

member or beneficiary of any plan administered by Blue Cross Blue Shield of Florida with whom the doctor had no contract covering treatment of that patient.  This class seeks certification of claims for declaratory and injunctive relief, and for damages based upon direct violations of 18 U.S.C. §§ 1962(a) and (c).

## RULE 23(a)

### Typicality

285.    The named Plaintiffs and the members of the class each and all have tangible and legally protectable interests at stake in this action.

286.    The claims of the named class representatives and the absent class and subclass members have a common origin and share a common basis.  Their claims originate from the same illegal, fraudulent, confiscatory, conspiratorial, and aiding and abetting practices of the Defendants, and the Defendants act in the same way toward the Plaintiffs and the members of the class.  As such, each named Plaintiff has been the victim of one or more of the following illegal practices at the hands of one or more of the Defendants: cost based automated claims denials, bundling, downcoding, refusal to recognize modifiers; delayed payment of claims; and reduction of capitation payments based upon false patient rolls, false prescription drug charges or manipulation of the capitation process.

287.    The proposed class representatives state claims for which relief can be granted that are typical of the claims of absent class and subclass members.  If brought and prosecuted individually, the claims of each class and subclass member would necessarily require proof of the same material and substantive facts, rely upon same remedial theories, and seek the same relief.

78

288.    The claims and remedial theories pursued by the named class representatives are sufficiently aligned with the interests of absent class and subclass members to ensure that the universal claims of the class and subclasses will be prosecuted with diligence and care by the Plaintiffs as representatives of the class.

### Numerosity

289.    The members of the class and subclasses are so numerous that joinder of all members is impracticable.  Defendants offer managed care services to over 81.5 million subscribers and accomplish this through the services of over 622,000 physicians.  The class and subclasses are, however, ascertainable as the names and addresses of all class and subclass members can be identified in business records maintained by the Defendants.

### Commonality

290.    The questions of law and fact common to the class and subclasses include, *inter alia.*

(a)    Whether Defendants conspired and/or aided and abetted each other in furtherance of the unlawful acts alleged herein;

(b)    Whether Defendants have engaged in mail and wire fraud;

(c)    Whether Defendants engaged in a pattern of racketeering activity.

(d)    Whether the BCBSE is an enterprise within the meaning of 18 U.S.C. § 1961 (4).

(e)    Whether Defendants have used or invested income from their racketeering activities to establish or operate the BCBSE in violation of 18 U.S.C. § 1962 (a).

79

(f)      Whether Defendants conducted or participated in the affairs of the BCBSE through a pattern of racketeering activity in violation of 18 U.S.C. § 1962 (c).

(g)      Whether Defendants' overt and/or predicate acts in furtherance of the conspiracy and/or aiding and abetting and/or direct acts in violation of 18 U.S.C. §§ 1962 (a) and (c) proximately caused injury to the Plaintiffs' and class members' business or property.

(h)      Whether Defendants act and/or refuse to act on grounds generally applicable to the Plaintiffs and class members.

(i)      Whether the Defendants set payment rates which are not sufficient to adequately reimburse physicians on a capitation basis for the provision of health services to plan members, participants, and enrollees.

(j)      Whether Defendants falsify patient rolls in connection with capitation plans.

(k)      Whether Defendants falsify prescription drug costs in connection with capitation plans.

(l)      Whether Defendants falsely manipulate incentive payments in connection with capitation plans.

(m)      Whether Defendants bundle.

(n)      Whether Defendants downcode.

(o)      Whether Defendants deny claims on automated cost bases rather than coverage and medical necessity.

(p)      Whether Defendants refuse to recognize modifiers.

(q)      Whether Defendants "pend" claims to delay payment.

     (r)     Whether Defendants intentionally understaff to delay payments

     (s)     Whether Defendants represent that they will pay doctors for rendering covered, medically necessary services.

     (t)     Whether Defendants fail to disclose the material workings of capitation payments.

     (u)     Whether Defendants fraudulently conceal their scheme.

     (v)     Whether Defendants impliedly request that noncontract doctors treat their insureds.

     (w)     Whether noncontract doctors' treatment of Defendants' insureds confers a benefit on Defendants.

## **Adequate Representation**

291.    The named Plaintiffs are willing and prepared to serve the Court and proposed class and subclasses in a representative capacity with all of the obligations and duties material thereto. The Plaintiffs will fairly and adequately protect the interest of the class and have no interests adverse to, or which directly and irrevocably conflict with, the interests of other members of the class.

292.    The self-interests of the named class representatives are co-extensive with and not antagonistic to those of the absent class members. The proposed representatives will undertake to well and truly protect the interests of the absent class members.

293.    The named plaintiffs have engaged the services of counsel indicated below. Said counsel are experienced in complex class litigation, will adequately prosecute this action, and will

assert, protect and otherwise well represent the named class representatives and absent class members.

## RULE 23 (b)(1)(A) AND (B)

294.   The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action, or could substantially impair or impede their ability to protect their interests.

295.   The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the parties opposing the class.   Such incompatible standards and inconsistent or varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow to exist inconsistent and incompatible rights within the plaintiff class.

## RULE 23 (b)(2)

296.   The Defendants have acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

## RULE 23 (b)(3)(2)

297.   The questions of law and fact common to members of the class and subclasses predominate over any questions affecting only individual members.

298.   A class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:

(a)     Individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake.

(b)     As a result, although multiple class actions have been filed, there has been very little individual litigation over the controversies herein, and individual members of the class have no interest in prosecuting and controlling separate actions.

(c)     As evidenced by the actions of the Panel on Multi District Litigation in this case, it is desirable to concentrate litigation of the claims herein in this forum.  The proposed class action is manageable.

## COUNT I

### VIOLATION OF RICO 18 U.S.C. § 1962(D) BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(A) AND (C)

**(All Plaintiffs and Global Class vs. All Defendants)**

299.    Plaintiffs and class members incorporate and reallege paragraphs 1-12, 17-249 and 255-298 above as if fully set out herein.

300.    This claim for relief arises under 18 U.S.C. § 1964(c).

301.    In violation of 18 U.S.C. § 1962(d), Defendants have, as set forth above, conspired to violate:  18 U.S.C. § 1962 (a) by using and investing income received from a pattern of racketeering, directly or indirectly, to establish and operate the BCBSE, which is engaged in, and whose activities affect, interstate commerce; and 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the BCBSE through a pattern of racketeering.

302.    As a direct and proximate result, Plaintiffs and class members have been injured in their business or property by both the predicate acts which make up the Defendants' patterns of racketeering and their investment and reinvestment of income therefrom to operate, expand and perpetuate the BCBSE.

303.    Specifically, Plaintiffs and class members have been injured in their business or property by the denial of payments for covered, medically necessary services that they have rendered to Defendants' insureds, by reductions in such payments when made, by late payments, by having their capitation payments reduced by false patient rolls, false prescription drug costs and other manipulations of the capitation process, and by the loss of interest on both late and withheld payments.

## COUNT II

### VIOLATION OF 18 U.S.C. § 2 BY SEEKING TO AND AIDING AND ABETTING IN THE VIOLATION OF 18 U.S.C. § 1962(A) AND (C)

### (All Plaintiffs and Global Class vs. All Defendants)

304.    Plaintiffs incorporate and reallege the allegation paragraphs 1-12, 17-249, 255-298 above as if fully set out herein.

305.    This claim arises under 18 U.S.C. § 1964(c).

306.    As set forth above, Defendants knowingly, and with shared intent, sought to, and have, aided and abetted each of the other Defendants in the commission of predicate acts, in engaging in a pattern of racketeering activity, and in violating of U.S.C. § 1962(a) and (c) as described in paragraphs 274-278 and 302 above.

307.    As a result, under 18 U.S.C. § 2, the RICO violations of each Defendant are those of the others as if they had been committed directly by them.

308.    As a direct and proximate result of the fact that each Defendant aided and abetted the others in violating 18 U.S.C. § 1962 (a) and (c), Plaintiffs and class members have been injured in their business or property by both the predicate acts which make up the Defendants' patterns of racketeering and their investment and reinvestment of income therefrom to operate, expand and perpetuate the BCBSE.

309.    Specifically, Plaintiffs and class members have been injured in their business or property by the denial of payments for covered, medically necessary services that they have rendered to Defendants' insureds, by reductions in such payments when made, by late payments, by having their capitation payments reduced by false patient rolls, false prescription drug costs and other manipulations of the capitation process, and by the loss of interest on both late and withheld payments.

**COUNT III**

**VIOLATIONS OF RICO 18 U.S.C. § 1962(A) AND (C)**

**(ALL PLAINTIFFS AND THE NATIONAL NONARBITRATION AND NONCONTRACT SUBCLASSES VS. ANTHEM INC., ANTHEM BLUE CROSS AND BLUE SHIELD OF CONNECTICUT, AND BLUE CROSS BLUE SHIELD OF FLORIDA)**

310.    The above Plaintiffs and the National Nonarbitration and Noncontract subclasses reallege and incorporate paragraphs 1-12, 17-249 and 255-298 above as if fully set forth herein.

311.    This claim for relief arises under 18 U.S.C. § 1964 (c).

85

312.    As set forth above, Defendants have violated 18 U.S.C. § 1962 (a) by using and investing income received from a pattern of racketeering, directly or indirectly, to establish and operate the BCBSE, which is engaged in, and whose activities affect, interstate commerce, and have violated 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the BCBSE through a pattern of racketeering.

313.    As a direct and proximate result, Plaintiffs and the Count III subclass members have been injured in their business or property by both the predicate acts which make up the Defendants' patterns of racketeering activity and their investment and reinvestment of income therefrom to operate, expand and perpetuate the BCBSE.

314.    Specifically, Plaintiffs and Subclass members have been injured in their business or property by the denial of payments for covered, medically necessary services that they have rendered to Defendants' insureds, by reductions in such payments when made, by late payments, by having their capitation payments reduced by false patient rolls, false prescription drug costs and other manipulations of the capitation process, and by the loss of interest on both late and withheld payments.

**COUNT IV**

**DECLARATORY AND INJUNCTIVE
RELIEF UNDER 18 U.S.C.  § 1964(A)**

**(All Plaintiffs, the Global Class, the National Nonarbitration
and Noncontract Subclasses and, as to Declaratory
and Injunctive Relief, CSMS vs. All Defendants)**

315.    The Plaintiffs, the Global Class, the National Nonarbitration and Noncontract Subclasses and CSMS reallege and incorporate paragraphs 1-298 above as if set forth fully herein.

316.    This claim arises under 18 U.S.C. § 1964(a), which authorizes the district courts to enjoin violations of 18 U.S.C. § 1962, and under 28 U.S.C. § 2201 which authorizes associated declaratory relief.

317.    As set forth in Counts I – III above, Defendants have violated 18 U.S.C. §§ 1962(a), (c) and (d), and will continue to do so in the future.

318.    Enjoining the Defendants from committing these RICO violations in the future and/or declaring their invalidity is appropriate as the Plaintiffs, the Class, CSMS and the Count IV Subclasses have no adequate remedy at law, and will, as set forth in paragraphs 250-254 above, suffer irreparable harm in the absence of the Court's declaratory and injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, CSMS, the members of the Global Class, and the National Nonarbitration and Noncontract Subclasses pray for the following relief:

**AS TO COUNTS I AND II**:  A judgment in favor of all Plaintiffs and  the Class members against all Defendants, jointly and severally, for treble the amount of damages suffered by reason of payments due them for services rendered on a fee for service or capitation basis having been wrongfully withheld, denied or reduced through Defendants' predicate acts and violations of Sections 1962(a) and (c) of RICO, together with treble the amount of interest due on payments delayed or withheld through the Defendants' predicate acts and RICO violations.

**AS TO COUNT III**:  A judgment in favor of the Count III Plaintiffs and members of the Class against Defendants for treble the amount of damages suffered by reason of payments due them for services rendered on a fee for service or capitation basis having been wrongfully

withheld, denied or reduced through Defendants' predicate acts and violations of Sections 1962(a) and (c) of RICO, together with treble the amount of interest due on payments delayed or withheld through Defendants' predicate acts and RICO violations.

**AS TO COUNT IV:** Injunctive relief preventing Defendants from employing automated processing techniques that use improper cost-based criteria to reject claims, that improperly downcode and bundle procedures, that ignore modifiers and that otherwise improperly alter or adjust claims as a means of denying or reducing payments due Plaintiffs and members of the Class for rendering covered, medically necessary services to Defendants' insureds; injunctive relief preventing Defendants from "pending" claims that are ripe for payment and intentionally understaffing their claims processing departments as a means of delaying payments due Plaintiffs and members of the Class, for rendering covered, medically necessary services to Defendants' insureds; injunctive relief preventing Defendants from withholding capitation payments for enrolled group members until they need medical treatment, charging pharmacy risk pools inflated rather than actual costs of prescription drugs, manipulating incentive payments to reduce capitation payments, and using the automated processing techniques referenced above to improperly reduce calculated payments for services performed by capitated doctors to further reduce future capitation payments due Plaintiffs and members of the Class; and a judgment declaring the above practices to be violative of federal law.

Plaintiffs and the Class and Subclass members further pray for an award of attorneys fees where permitted by law and such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

Respectfully submitted this 22nd day of May, 2003.

KOZYAK TROPIN & THROCKMORTON
200 S. Biscayne Boulevard, Suite 2800
Miami, Florida 33131
Tel:  (305) 372-1800 / Fax:  (305) 372-3508

Harley S. Tropin (Fla. Bar No. 241253)
Janet L. Humphreys (Fla. Bar No. 607258)
Adam M. Moskowitz (Fla. Bar No. 984289

Archie C. Lamb, Jr.
LAW OFFICES OF ARCHIE LAMB
2017 Second Avenue North, 2nd Floor
Birmingham, Alabama 35203

Edith M. Kallas
Joseph P. Guglielmo
MILBERG  WEISS  BERSHAD  HYNES  &
LERACH
One Pennsylvania Plaza
New York, NY 10119

Joe R. Whatley, Jr.
Charlene P. Ford
Othni J. Lathram
WHATLEY DRAKE, LLC
2323 2nd Avenue North
Birmingham, Alabama 35203

Aaron Podhurst
PODHURST ORSECK JOSEFSBERG
EATON MEADOW OLIN & PERWIN
25 West Flagler Street, Suite 800
Miami, Florida 33130

Dennis G. Pantazis
GORDON SILBERMAN WIGGINS & CHILDS
1400 South Trust Tower
420 20th Street North
Birmingham, Alabama 35203

89

Nicholas B. Roth
EYSTER KEY TUBB WEAVER & ROTH
402 E. Moulton Street
Decatur, Alabama 35601

Jeffery A. Mobley
LOWE MOBLEY & LOWE
1210 - 21st Street
Haleyville, Alabama 35565

J. Mark White
WHITE DUNN & BOOKER
2025 3rd Avenue North, Suite 600
Birmingham, Alabama 35203

Mark Gray
GRAY & WEISS
1200 PNC Plaza
Louisville, Kentucky 40202

Guido Saveri
R. Alexander Saveri
Cadio Zirpoli
SAVERI & SAVERI
111 Pine Street, Suite 1700
San Francisco, CA 94111-5619

Kenneth S. Canfield
DOFFERMYRE SHIELDS CANFIELD
 KNOWLES & DEVINE
1355 Peachtree Street, Suite 1600
Atlanta, Georgia 30309

Robert Foote
FOOTE & MEYERS
13 South 7th Street
Geneva, Illinois 60134

James E. Hartley, Jr.
DRUBNER HARTLEY & O'CONNOR
500 Chase Parkway, 4th Floor
Waterbury, CT 06708

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

**03-21296**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS

KENNETH A. THOMAS, M.D. and MICHAEL KUTELL, M.D., on behalf of themselves and all others similarly situated and CONNECTICUT STATE MEDICAL SOCIETY,

## DEFENDANTS

BLUE CROSS AND BLUE SHIELD ASSOCIATION, ET AL.,

MAGISTRATE JUDGE

DUBE   IL

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   CT
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT

(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

1 Ad. 03CV 21296 / Martinez
Dube

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Harley S. Tropin, Esq.   (305) 372-1800
KOZYAK TROPIN & THROCKMORTON, P.A.
200 S. Biscayne Blvd., #2800, Miami, FL 33131

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: (DADE,) MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☒ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | **PERSONAL PROPERTY** | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | B☐ 690 Other | **B SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

18 USC 1962

LENGTH OF TRIAL
via ____ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE  MORENO   DOCKET NUMBER  00-1334-MD

DATE  May 22, 2003

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #____   AMOUNT____   APPLYING IFP____   JUDGE____   MAG. JUDGE____

$150.0   882914
05/22/03

