UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

RICK LOVE, M.D., ET AL., PLAINTIFF

CASE NO. 03-21296-CIV-MORENO/SIMONTON

VERSUS

BLUE CROSS AND BLUE SHIELD ASSOCIATION, ET AL., DEFENDANTS

## UNSWORN DECLARATION OF SCOTT K. SULLIVAN, JR., M.D.

I, Scott K. Sullivan, Jr., M.D., hereby declare under penalty of perjury that the following statements are true and correct to the best of my personal knowledge and belief:

1.   I am 42 years old and reside at 106 Fountainbleau Drive, Mandeville, Louisiana 70471.

2.   I have been a licensed physician practicing in the New Orleans metropolitan area the last eight years.

3.   For the last seven years, I have been a board-certified plastic surgeon. My practice is almost exclusively breast reconstruction surgery for women who have had breast cancer.

4.   Attachment "A" is a true and accurate copy of my CV.

5.   My colleague Frank Dellacroce, M.D., and I formed the Center for Restorative Breast Surgery ("CRBS") in 2003. The practice is currently located at 1717 Charles Avenue, New Orleans, Louisiana.

1

**EXHIBIT**

tabbies®

B

6.     Since at least 2003, I have continuously performed breast reconstruction surgery on an on-going basis for women who are insured by Blue Cross Blue Shield of Louisiana ("BCBSLA") and other Blue Cross/Blue Shield licensees.

7.     In April, 2004, CRBS terminated its in-network relationship with BCBSLA because it refused to pay the usual and customary rate for breast reconstruction surgery.

8.     We tried on repeated occasions in 2005-2006 to negotiate a mutually acceptable pricing structure for breast reconstruction surgery with BCBSLA.   The Louisiana Commissioner of Insurance repeatedly intervened and tried to resolve the pricing dispute between CRBS and BCBSLA, but to no avail.

9.     In July 2006, CRBS instructed its attorneys, Chaffe McCall, LLP, to file suits against BCBSLA in state court in New Orleans.  The principal purpose of these lawsuits was and is for a judge or jury to determine a price that BCBSLA should pay CRBS for breast reconstruction surgical procedures performed for BCBSLA insureds. Because BCBSLA had routinely paid CRBS zero (or pennies on the dollar) for billed charges for breast reconstruction surgeries, CRBS also sought statutory penalties under Louisiana law for the failure of BCBSLA to timely pay billed charges for its insureds' surgical procedures.

10.    I understand BCBSLA acted as a claims adjuster for Blue Cross Blue Shield affiliates around the country ("Home Plans").  Because of the local and national demand for the specialized procedures we perform, a significant number of breast cancer patients insured by Home Plans traveled to New Orleans for breast reconstruction surgery.

999659-1                                          2

11.    CRBS was told by BCBSLA that all billed charges for insureds of a Home Plan for whom we performed breast reconstruction surgery were to be submitted to BCBSLA, not the Home Plan.  I understand that BCBSLA adjusts the claim for billed charges for both BCBSLA and Home Plan insureds.  Because of this centralized adjusting function and the fact that Home Plan is responsible for payment of the billed charges submitted by CRBS, we filed suit against both BCBSLA and the Home Plans for failure to pay the billed charges, and statutory penalties under applicable law.

12.    I understood that all of our claims against BCBSLA for failure to pay and statutory penalties against BCBSLA could only be brought in courts in Louisiana.  On Monday, November 5, 2007, I received word that BCBSLA's attorneys and all of the suits pending in Louisiana by CRBS against BCBSLA were supposedly no longer valid because of class action pending in federal court in Miami, *Rick Love, M.D., et al. v. Blue Cross and Blue Shield Assoc., et al.* ("*Love*"), and that BCBSLA took the position that the CRBS lawsuits against it could and should have been filed in federal court in Miami.

13.    After November 5, 2007, I saw and read the attached Notice for the first time, and understand that the *Love* class action involved violation of a federal statute entitled The Rackateer Influenced and Corrupt Organization Act, 18 USC § 1961, *et seq.* ("RICO").  I have never authorized attorneys for CRBS to file any federal law claims under RICO and hereby reaffirm that CRBS and I waive any legal rights under RICO that we may have against BCBSLA (and Blue Party defendants in the *Love* case) on any matters in any way related to the individual transactions or occurrences involving the matters at issue in the lawsuits filed by CRBS against BCBSLA in 2006 and 2007 (or any other similar transactions or occurrences involving a patient and BCBSLA (and Blue

Party defendants in the *Love* case) that have not been placed in suit for surgeries that were performed in 2003 when CRBS was formed up until today).

14.     CRBS has no interest whatsoever in participation in the *Love* class action and have opted out of it.

15.     I did not receive the attached Notice nor did anyone employed by CRBS to my knowledge.  Had I or anyone on the staff at CRBS, 1717 St. Charles Avenue, New Orleans, received the Notice, we would have immediately transmitted the Notice to our attorneys at Chaffe McCall, LLP, for them to determine what, if anything, should have been done in response to the notice.

11 | 8 | 07
_____
DATE

_____
SCOTT K. SULLIVAN, JR., M.D.

999659-1                                    4

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
Miami Division

| | |
|---|---|
| RICK LOVE, M.D., *et al.*,<br>　　　　　　　　Plaintiffs<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD ASSOCIATION, *et al.*,<br>　　　　　　　　Defendants | Case No. 03-21296-CIV-MORENO/SIMONTON |

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION WITH CERTAIN BLUE CROSS AND BLUE SHIELD PARTIES, OF SETTLEMENT HEARING TO CONSIDER THE PROPOSED SETTLEMENT, AND OF YOUR RIGHTS CONCERNING THE PROPOSED SETTLEMENT**

**IF YOU ARE A PHYSICIAN, PHYSICIAN GROUP, OR PHYSICIAN ORGANIZATION WHO PROVIDED COVERED SERVICES TO ANY INDIVIDUAL ENROLLED IN OR COVERED BY BLUE CROSS AND BLUE SHIELD PLANS AT ANY TIME BETWEEN MAY 22, 1999 AND MAY 31, 2007, PLEASE READ THIS NOTICE CAREFULLY.**

**THIS CLASS ACTION AND THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHTS.**

## I. WHY SHOULD YOU READ THIS NOTICE?

If you are or have been a Physician, Physician Group, or Physician Organization[1] who or which practiced in the United States since May 22, 1999, your rights may be affected by a proposed settlement with certain Blue Cross and Blue Shield parties ("Settlement") in the class action lawsuit known as Love, *et al.* v. Blue Cross and Blue Shield Ass'n, *et al.*, (formerly, Thomas, *et al.* v. Blue Cross and Blue Shield Ass'n, *et al.*), Case No. 03-21296-CIV-MORENO/SIMONTON (the "Action"), which is pending in the U.S. District Court for the Southern District of Florida (the "Court"). The proposed Settlement and the Action involve the Blue Cross and Blue Shield Association ("BCBSA") and certain Blue Cross and Blue Shield Plans and certain current and former Subsidiaries and Affiliates (the "Blue Parties").

The Blue Cross and Blue Shield Plans and their current and former Subsidiaries and Affiliates involved in the proposed Settlement are: Blue Cross and Blue Shield of Alabama, Premera, Premera Blue Cross, PremeraFirst, Inc., LifeWise Health Plan of Washington, LifeWise Health Plan of Oregon, LifeWise Health Plan of Arizona, Inc., Premera Blue Cross Blue Shield of Alaska, Corp., Medical Services Corporation of Eastern Washington, NorthStar Administrators, Inc., CareFirst, Inc., Group Hospitalization and Medical Services, Inc., Access America, Inc., The GHMSI Companies, Inc., CareFirst BlueChoice, Inc., Capital Care, Inc., CareFirst of Maryland, Inc., CFS Health Group, Inc., Blue Cross and Blue Shield of Florida, Inc., Health Options, Inc., Hawaii Medical Service Association, The Regence Group, Regence BlueShield of Idaho, Inc., Regence BlueCross BlueShield of Utah, Regence BlueCross BlueShield of Oregon, Regence BlueShield, Regence Life and Health Insurance Company, RegenceCare, Regence HMO Oregon, Regence Health Maintenance of Oregon, Inc., Healthwise, Asuris Northwest Health, Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa, Wellmark Health Plan of Iowa, Inc., Wellmark Community Insurance, Inc., Wellmark of South Dakota, Inc. dba Wellmark Blue Cross and Blue Shield of South Dakota, Louisiana Health Service & Indemnity Company dba Blue Cross and Blue Shield of Louisiana, HMO Louisiana, Inc., Blue Cross and Blue Shield of Massachusetts, Inc., Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc., Blue Cross Blue Shield of Michigan, BCBSM, Inc. dba BlueCross BlueShield of Minnesota, HMO Minnesota dba Blue Plus, Comprehensive Care Services, Inc., Blue Cross & Blue Shield of Mississippi, HMO of Mississippi, Inc., Blue Cross and Blue Shield of Montana, Inc., Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey, Horizon Healthcare Plan Holding Company, Inc., Horizon Healthcare Insurance Company of New York, Horizon Healthcare of New Jersey, Inc., Horizon Healthcare of New York, Inc., Enterprise Holding Company, Inc., AtlantiCare Administrators, Inc., Horizon Healthcare Administrators, Inc., Horizon AtlantiCare LLC, Horizon Healthcare of Delaware, Inc., NASCO of New Jersey, Inc., Empire HealthChoice Assurance, Inc., d/b/a Empire Blue Cross Blue Shield, Empire HealthChoice HMO, Inc., WellChoice Insurance of New Jersey, Inc., WellChoice Holdings of New York, Inc., WellPoint Holding Corp., Blue Cross and Blue Shield of North Carolina, Hospital Service Association of Northeastern Pennsylvania, HMO of Northeastern Pennsylvania, Independence Blue Cross, AmeriHealth HMO, Inc., La Cruz Azul de Puerto Rico, Keystone Health Plan East, Inc., Triple-S, Inc.; Triple-S, Inc., of Puerto Rico, Triple-S, Inc., Blue Cross Blue Shield of Rhode Island, Blue Cross and Blue Shield of South Carolina, BlueChoice HealthPlan of South Carolina, Inc. f/k/a Companion HealthCare Corporation, Planned Administrators, Inc., Thomas H. Cooper & Co., Inc., BlueCross BlueShield of Tennessee, Inc., Tennessee Health Care

---

[1] All Capitalized terms in this notice are defined in the Settlement Agreement, copies of which are available as described below.

Network, Inc., Health Care Service Corporation, Group Health Maintenance Organization, Inc. d/b/a Bluelincs HMO, Group Health Service of Oklahoma, Inc. d/b/a Blue Cross Blue Shield of Oklahoma, HMO New Mexico, Inc., New Mexico Blue Cross and Blue Shield, Inc. d/b/a Blue Cross and Blue Shield of New Mexico, New Mexico Blue Cross and Blue Shield, Inc., Hallmark Services Corporation, BCI HMO, Inc., HCSC Insurance Services Corporation. (the "settling Blue Plans").

You may be a Class Member (described below) in the Action if you have provided Covered Services to Plan Members enrolled in or covered by a plan offered or administered by any of these Blue Parties or by other primary licensees of the BCBSA.

The Representative Plaintiffs have agreed to settle all claims against the Blue Parties in the Action in exchange for the Blue Parties' commitments regarding their business practices, and the establishment of a Settlement Fund with respect to which Class Members can make claims for settlement payment. The Court has scheduled a hearing to consider the fairness, reasonableness, and adequacy of the proposed settlement with the Blue Parties, together with certain other matters, on Wednesday, November 14, 2007 at 10:00 AM, at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast Fourth Street, Miami, Florida, 33132 (the "Settlement Hearing"). Please note that the Court may adjourn the Settlement Hearing without further written notice to putative Class Members.

You may be a Class Member who would be entitled to receive the benefits of the proposed Settlement. As a Class Member, however, you will also be bound by the release and other provisions of the Settlement if it is approved by the Court. You may elect to Opt-Out of the Class and the Settlement, as explained below. You may also have a right to object to the Settlement or to the applications for attorneys' fees and Representative Plaintiffs' fees that Class Counsel intend to make to the Court, but only if you comply with the procedures described in this notice. **BECAUSE YOUR RIGHT TO PURSUE CERTAIN TYPES OF CLAIMS AGAINST THE BLUE PARTIES, AND CERTAIN OTHERS AFFILIATED WITH THE BLUE PARTIES, MAY BE AFFECTED BY THE SETTLEMENT, YOU SHOULD READ THIS NOTICE CAREFULLY.**

## II. WHAT IS THIS LITIGATION ABOUT?

The Complaint in the Action alleges, among other things, that between 1999 and the present, the Blue Parties, among others, engaged in a conspiracy to improperly deny, delay, and/or reduce payments to physicians, physician groups, and physician organizations by engaging in several types of allegedly improper conduct, including but not limited to:

- Misrepresenting and/or failing to disclose the use of edits to unilaterally "bundle," "downcode," and/or reject claims for medically necessary covered services;

- Failing to pay for "medically necessary" services in accordance with member plan documents;

- Failing and/or refusing to recognize CPT® modifiers;

- Concealing and/or misrepresenting the use of improper guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services;

- Misrepresenting and/or refusing to disclose applicable fee schedules; and

- Failing to pay claims for medically necessary covered services within the required statutory and/or contractual time periods.

The Complaint in the Action claims that the conduct described above violated the federal statute entitled the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* The Blue Parties deny the factual allegations and legal claims asserted in the Complaint in the Action, and deny any liability or wrongdoing relating thereto. If you would like further information about the claims asserted in the Action, you can review a copy of the Complaint at: www.BCBSPhysicianSettlement.com; www.hmosettlements.com; www.WhatleyDrake.com; www.ArchieLamb.com; and www.kttlaw.com

The Action asserting these and other claims against the Blue Parties and other Blue Cross and Blue Shield licensed plans began in approximately 2003 before the federal court in Miami. Since the initial complaint was filed, substantial proceedings have occurred, including the production of a significant number of documents by the defendants and the depositions of various witnesses. As part of the Settlement, the Blue Parties would no longer actively participate in the Action. Other defendants in the Action comprising WellPoint, Inc. and the current and former direct and indirect subsidiaries and affiliates of WellPoint, Inc. and the former Anthem, Inc. agreed to a separate settlement with, among others, the Representative Plaintiffs that was given final approval by the Court in an order entered on December 22, 2005 (and amended on January 3, 2006). Other defendants in the Action who are not WellPoint entities or Parties to this proposed Settlement may continue to defend the claims asserted in the Action on various grounds.

### III. WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

In a settlement agreement dated April 27, 2007 (the "Settlement Agreement"), the Representative Plaintiffs and the Signatory Medical Societies have agreed to settle all claims that were or could have been asserted against the Blue Parties and certain of their Affiliates and Subsidiaries in the Action, in exchange for the Blue Parties' commitments regarding their business practices and for certain monetary consideration. The terms of the Settlement Agreement are summarized in this notice, but a copy of the entire Settlement Agreement can be reviewed at www.BCBSPhysicianSettlement.com. It is also available at www.hmosettlements.com, www.WhatleyDrake.com, www.ArchieLamb.com, and www.kttlaw.com.

#### A. The Settlement Class

The proposed Settlement with the Blue Parties will be on behalf of the following Persons (collectively, the "Class" and each member of the Class a "Class Member"), which Class has been conditionally certified for settlement purposes:

"Class" means any and all Physicians, Physician Groups and Physician Organizations who provided Covered Services to any Plan Member or services to any individual enrolled in or covered by a Plan offered or administered by any Person named as a defendant in the Complaint or by any other primary licensee of the BCBSA or by any of their respective current or former subsidiaries or Affiliates, in each case from May 22, 1999 through May 31, 2007. The Class shall exclude: (i) all Persons who, in accordance with the terms of this Agreement, execute a timely request for exclusion (Opt-Out) from the Class; and (ii) the Blue Parties, their Affiliates and any of their officers, directors, and employees.

#### B. The Settlement Consideration

If the Settlement is approved by the Court, the Settlement Agreement provides for both monetary and other benefits to be provided by the Blue Parties to Class Members.

#### C. Business Practice Commitments

As a part of the Settlement, the Blue Parties have agreed to commitments regarding their business practices. For example, the Blue Parties have agreed, subject to implementation dates described in the Settlement Agreement to: (a) include in their contracts with Physicians a definition of Medical Necessity that bases Medical Necessity determinations on factors including generally accepted standards of medical practice; (b) use clinical guidelines that are based on credible scientific evidence published in peer reviewed medical literature (taking into account Physician Specialty Society recommendations, the views of Physicians practicing in the relevant clinical areas, and other relevant factors) when making Medical Necessity determinations; (c) provide Class Members access to the applicable Blue Party's Medical Necessity external review process; (d) establish an external review process for resolving Billing Disputes with Class Members; (e) make investments designed to facilitate the automated adjudication of claims submitted by Physicians and thereby reduce the average time taken by the Blue Parties to pay valid claims; (f) continue to fund initiatives to reduce the percentage of resubmitted claims for Covered Services; (g) not automatically reduce the intensity coding of evaluation and management codes billed for certain covered services; (h) disclose payment rules and conform bundling and other Edit practices and procedures as specified in the Settlement Agreement; (i) not include "gag clauses" in its contracts with Class Members; (j) continue to devote resources to improve accuracy of information about eligibility of Plan Members; (k) where all necessary information is available to the applicable Blue Plan, ensure the payment of valid Complete Claims within 15 business days for electronically-submitted claims and 30 days for paper claims; (l) provide relevant Class Members with the ability to view applicable fee schedule amounts for billing codes related to their practice; (m) follow protocols for the reimbursement of Physicians providing mental health care services as specified in the Settlement Agreement; and/or (n) establish a Compliance Dispute resolution mechanism to address disputes regarding the Blue Parties' compliance with the Settlement Agreement. The business practice commitments set forth above are subject to Exhibit H of the Settlement Agreement. In addition, the Blue Parties will disclose additional information about their claim administration policies and procedures on their existing websites. These changes, as well as others, are more fully described in the Settlement Agreement.

#### D. The Settlement Fund

As a part of the Settlement, the Blue Parties have agreed to make a settlement payment of $131,209,507 which, together with accrued interest from June 30, 2007, will be distributed to Physicians who are Class Members and who timely file a Claim Form. If the Settlement is approved by the Court, these Class Members will be entitled to payments from the Settlement Fund in accordance with formulas that are set forth in the Settlement Agreement.

- A Physician who provided any Covered Services reimbursed by primary licensees of the BCBSA since May 22, 1999 but who has since become an inactive Physician, retired from the practice of, or otherwise ceased to practice, medicine, or has died as of May 31, 2007 (a "Retired Physician"), will receive a pro rata portion of the amount of the Settlement Fund that has been allocated to such Retired Physicians.

- An actively-practicing Physician (an "Active Physician") whose Gross Receipts for the calendar years 2004, 2005, and 2006 for providing Covered Services to the settling Blue Plans' Plan Members were in the aggregate zero or less than $5,000 will receive a single Base Amount (determined pro rata according to the claims that are filed) from the amount of the Settlement Fund that is allocated to Active Physicians.

- An Active Physician who is a member of the Settlement Class in John R. Gregg, M.D., et al. v. Independence Blue Cross, et al.; Robert P. Good, M.D. v. Independence Blue Cross, et al.; and Pennsylvania Orthopaedic Society v. Independence Blue Cross, et al. ("IBC Class Action Settlement"), who did not opt out of the IBC Class Action Settlement, and who is relying solely on Gross Receipts for providing Covered Services to IBC Members in order to recover from the Settlement Fund will receive only a single Base Amount (determined pro rata according to the claims that are filed) from the amount of the Settlement Fund that is allocated to Active Physicians.

- An Active Physician whose Gross Receipts for the calendar years 2004, 2005, and 2006 for providing Covered Services to the settling Blue Plans' Plan Members were in the aggregate at least $5,000 but less than $50,000 will receive a pro rata portion of five (5) times the Base Amount from the amount of the Settlement Fund that is allocated to Active Physicians.

- An Active Physician whose Gross Receipts for the calendar years 2004, 2005, and 2006 for providing Covered Services to the settling Blue Plans' Plan Members were in the aggregate $50,000 or greater, will receive a pro rata portion of ten (10) times the Base Amount from the amount of the Settlement Fund that is allocated to Active Physicians.

- Alternatively, an Active Physician may establish, through the submission of billing records or similar information, that his or her settlement compensation category (of the three provided and described above) should be based on aggregate payments received for providing Covered Services to the settling Blue Plans' Plan Members over any consecutive three-year period from January 1, 1997 through December 31, 2006.

- In determining Gross Receipts, Physicians should include amounts paid by the settling Blue Plans directly or by intermediaries for providing Covered Services to the settling Blue Plans' Plan Members. For example, a Physician may have provided services through an intermediary that contracted with a Blue Plan to provide the services (for example, an IPA, medical group, organized delivery system, Physician hospital organization, etc.). In determining Gross Receipts for providing Covered Services to the settling Blue Plans' Plan Members, Physicians should also include amounts they received from such intermediaries for treating the settling Blue Plans' Plan Members.

- **Active Physicians against whom a Blue Plan has obtained a final finding of fraud and/or abuse (as that term is defined in Section 8.3(h) of the Settlement Agreement) from a judicial, arbitral, or administrative proceeding and a corresponding final judgment for damages arising from a claim (or claims) for payment for the same time period for which a claim may be asserted are not entitled to payment from the Settlement Fund regardless of their status as Class Members.**

- Physician Groups and Physician Organizations may submit claims on behalf of individual Physicians employed by or otherwise working with them at the time that the claims are made, without the necessity of individual signatures from the individual Physicians, if authorized to do so by such Physicians or the compensation for the Covered Services provided by such Physicians belonged to the Physician Group or Physician Organization. A Physician Group or Physician Organization may only submit claims on behalf of individual Physicians, not on behalf of the Physician Group or Physician Organization itself. No Covered Service provided by an individual Physician may be the subject of more than one Claim. Either the individual Physician or Physician Group or Physician Organization on the Physician's behalf may submit a Claim, but not both Physician Groups and Physician Organizations may make claims on behalf of individual Physicians employed by or otherwise working with them who are Class Members, but not on behalf of, or with respect, to Covered Services provided by any individual Physicians that choose to Opt-Out of the Class and the Settlement. **Nor may Physician Groups or Physician Organizations make claims on behalf of any individual Active Physicians against whom a Blue Plan has obtained a final finding of fraud and/or abuse (as that term is defined in Section 8.3(h) of the Settlement Agreement) from a judicial, arbitral, or administrative proceeding and a corresponding final judgment for damages arising from a claim (or claims) for payment for the same time period for which a claim may be asserted.**

- The Settlement Fund is described in detail in Section 8 of the Settlement Agreement.

If you are a Physician, the heir of a deceased Physician, or a Physician Group or Physician Organization submitting a claim on behalf of an individual Physician, who is eligible to participate in the Settlement Fund, you may submit a claim using the Claim Form and Claim Form Instructions enclosed with this notice, to the Settlement Administrator at the following address:

**Blue Parties'**
**Settlement Administrator**
**PO Box 4349**
**Portland, OR 97208-4349**

### E. Charitable Organizations

Class Members may elect to have the amount of their settlement payment from the Settlement Fund (discussed in the prior section) contributed on their behalf to a charitable organization set forth on Exhibit L to the Settlement Agreement. A list of the charitable organizations that may receive your donation is also attached to the Claim Form Instructions enclosed with this notice.

### F. The Release and Dismissal with Prejudice

Upon final approval of the Settlement, the Action will be dismissed with prejudice as to the Blue Parties. In addition, Blue Parties, and certain others affiliated with the Blue Parties (collectively, the "Released Parties"), will receive a release and discharge from the Class (which would not include putative Class Members who or which timely elect to Opt-Out of the Class and the Settlement, as discussed below) of any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind, source or character whether arising under any federal or state law, which (consistent with the Parties' understanding of the settlements in Shane) includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or nonintentional, (each a "Claim"), arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, course of conduct, business practices, representations, omissions, circumstances, or other matters referenced in the Action, or addressed in the Settlement Agreement, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons. The provisions regarding the discharge of all Released Claims is discussed in Section 13.1 of the Settlement Agreement, to which you should refer if you have any questions as to its applicability.

Excluded from the release are claims for certain Covered Services that are or were in the process of being submitted to, adjudicated or paid by the Blue Parties at or around the time that the Settlement Agreement was entered into and the Court approval process was begun. This provision regarding "Retained Claims" is discussed in more detail in Section 13.6 of the Settlement Agreement, to which you should refer if you have any questions as to its applicability.

Except as described above, nothing in the Settlement Agreement is intended to relieve any Person that is not a Released Party from responsibility for its own conduct or the conduct of other Persons or entities who are not Released Parties for claims that are not Released Claims, or to preclude any Representative Plaintiff from introducing any competent and admissible evidence to the extent consistent with the Settlement Agreement. In addition, except as described above, nothing in the Settlement Agreement prevents the Representative Plaintiffs from pursuing claims to hold any Person that is not a Released Party liable for damages caused by that Party's conduct in a conspiracy involving any Released Party.

Finally, the Settlement Agreement includes a covenant not to sue the Released Parties (including the Blue Parties) for Claims that are subject to the release, with certain limited exceptions which are described in detail in Sections 13.6 and 13.7 of the Settlement Agreement, to which you should refer if you have any questions as to their applicability.

The release provided for in the Settlement Agreement applies to Claims whether they are known or unknown. In this regard, each Class Member and the Class shall be deemed expressly to have waived and relinquished: (a) the provisions, rights and benefits conferred by California Civil Code § 1542, which reads:

"Section 1542. General Release - Claims Extinguished. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;"

and (b) any law of any state or territory of the United States, federal law, or principle of common law, or of international or foreign law which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

## IV. WHAT WILL HAPPEN AT THE SETTLEMENT HEARING?

As noted above, the Settlement Hearing will be held on Wednesday, November 14, 2007 at 10:00 AM, at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast Fourth Street, Miami, Florida, 33132. However, the order scheduling that hearing also provides that it may be adjourned by the Court without any additional notice to putative Class Members other than an announcement in open court.

At the Settlement Hearing, the Court will consider several different issues, including:

First, the Court will consider whether the proposed Settlement of the Action with the Blue Parties that is reflected in the Settlement Agreement is fair, reasonable and adequate to putative Class Members.

Second, the Court will consider whether it should certify the Class for settlement purposes pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. Among other things, this will require the Court to determine (i) whether questions of law or fact common to the putative Class Members predominate over questions affecting only individual putative Class Members, and (ii) whether a class action is superior to other available methods for fair and efficient adjudication of the controversy. If the Court certifies the Class for settlement purposes, putative Class Members who or which have timely elected to Opt-Out of the Class by following the procedures described below will be excluded from it.

Third, the Court will consider whether to enter orders that would prevent Class Members and certain other Persons, including the defendants in the Action other than the Blue Parties, from asserting certain claims against the Blue Parties in the future.

Fourth, the Court will consider the applications for a payment of fees by the Blue Parties to the Representative Plaintiffs and to the Representative Plaintiffs in Other Actions, which is discussed in more detail below.

Fifth, the Court will consider an application by counsel to the Class for attorneys' fees and expenses to be paid by the Blue Parties, which is also discussed in more detail below.

## V. CAN I PARTICIPATE IN THE SETTLEMENT HEARING?

Any putative Class Member, or other interested Person, who or which objects to the proposed Settlement with the Blue Parties, the Settlement Agreement, the applications for attorneys' fees, or the other matters to be considered at the Settlement Hearing may appear and present such objections, provided, however, that Persons who or which have elected to Opt-Out of the Class and the Settlement will not be entitled to object. In order to be permitted to object to the proposed Settlement, however, you must, on or before October 1, 2007 comply fully with the following requirements:

- File with the Court a written statement setting forth your objections to the matters to be considered and the basis for those objections, together with any documentation you want the Court to consider. If you intend to appear at the Settlement Hearing, you must also file a written notice of intention to appear at this same time; and

- Serve copies of all such materials either by hand or overnight delivery upon the following counsel:

| Edith M. Kallas , Joe R. Whatley, Jr., Joseph P. Guglielmo WHATLEY DRAKE & KALLAS LLC 1540 Broadway, 37th Floor New York, NY 10036 | Archie Lamb, Jr. LAW OFFICES OF ARCHIE LAMB, LLC 2017 Second Avenue North, 2nd Floor Birmingham, Al 35203 | Harley S. Tropin Kozyak Tropin & Throckmorton, P.A. 2525 Ponce de Leon Blvd., 9th Floor Miami, Fl 33134 |
|---|---|---|
| Michael A. Pope MCDERMOTT WILL & EMERY LLP 227 W. Monroe Street Chicago, IL 60606 | Chester T. Kamin JENNER & BLOCK LLP 330 North Wabash Chicago, IL 60611 | |

If you do not comply with the foregoing procedures and deadlines for filing and serving a written statement setting forth your objections, and a written notice of your intention to appear at the Settlement Hearing, if applicable, you may lose substantial legal rights, including but not limited to: the right to appear and be heard at the Settlement Hearing; the right to contest approval of the proposed Settlement or the application for an award of attorneys' fees and expenses to Class Counsel; the right to contest approval of the application for the payment of fees to the Representative Plaintiffs and the Representative Plaintiffs in Other Actions; and the right to contest any other orders or judgments of the Court entered in connection with the proposed Settlement.

If the Court does not approve the proposed Settlement, the Settlement Agreement will be null and void. If there are further actions taken in the Action that affect your rights, you will receive notice as determined by the Court.

## VI. HOW DO I FILE A CLAIM?

As discussed above, the proposed Settlement contemplates certain settlement payments to Class Members with respect to Claim Forms that are timely submitted to the Settlement Administrator. In order to qualify for a settlement payment, you must complete the enclosed Claim Form, sign the form, and mail the completed and signed form by NO LATER THAN OCTOBER 19, 2007 to:

**Blue Parties'**
**Settlement Administrator**
**PO Box 4349**
**Portland, OR 97208-4349**

IN ORDER TO BE ENTITLED TO RECEIVE ANY PAYMENT FROM THE SETTLEMENT FUND, YOU MUST COMPLETE AND SIGN THE CLAIM FORM, AND THE ENVELOPE RETURNING YOUR CLAIM FORM MUST BE MAILED TO THE SETTLEMENT ADMINISTRATOR WITH A POSTMARK DATE NO LATER THAN OCTOBER 19, 2007. IF YOUR SIGNED CLAIM FORM IS NOT MAILED TO THE SETTLEMENT ADMINISTRATOR BY THIS DEADLINE, YOU WILL BE DEEMED TO HAVE WAIVED YOUR RIGHT TO RECEIVE ANY PAYMENT FROM THE SETTLEMENT FUND.

IF YOU ARE AN ACTIVE PHYSICIAN AGAINST WHOM A BLUE PLAN HAS OBTAINED A FINDING OF FRAUD AND/OR ABUSE (AS THAT TERM IS DEFINED IN SECTION 8.3(h) OF THE SETTLEMENT AGREEMENT) FROM A JUDICIAL, ARBITRAL, OR ADMINISTRATIVE PROCEEDING AND A CORRESPONDING FINAL JUDGMENT FOR DAMAGES FOR THE SAME TIME PERIOD FOR WHICH A CLAIM MAY BE ASSERTED, YOU ARE NOT ENTITLED TO PAYMENT FROM THE SETTLEMENT FUND, REGARDLESS OF YOUR STATUS AS A CLASS MEMBER.

If you submit a claim, or if a Physician Group or Physician Organization submits a claim on your behalf, you will be electing to be a Class Member and will be bound by all proceedings, orders, and judgments entered in connection with the proposed Settlement and the Settlement Agreement, including the release, covenant not to sue, and dismissal with prejudice described above. Physician Groups and Physician Organizations may make claims on behalf of individual Physicians employed by or otherwise working with them who are Class Members, but not on behalf of, or with respect to Covered Services provided by, any individual Physicians who choose to Opt-Out of the Class and Settlement, or on behalf of individual Physicians who are submitting claims on their own behalf for the same Covered Services.

## VII. WHAT IF I DO NOT WANT TO BE PART OF THE SETTLEMENT?

If you do not want to be a Class Member and participate in the proposed Settlement, then you must send a written request to Opt Out of the Class and the Settlement to the Notice Administrator postmarked NO LATER THAN SEPTEMBER 14, 2007, including your name, business address, telephone number, Federal Tax Identification Number, and signature. Physician Groups or Physician Organizations may exclude themselves, as distinct legal entities, from the Class by submitting a complete and timely request to Opt-Out. Physician Groups or Physician Organizations may not request to Opt-Out individual Physicians, unless the Physician Group or Physician Organization has written authorization to act on behalf of those Physicians, which authorization has been submitted to the Notice Administrator. Individual Physicians seeking to Opt-Out must otherwise submit their own individual, complete and timely request to Opt-Out. Opt-Out requests must be submitted to:

**Blue Parties'**
**Notice Administrator**
**PO Box 4349**
**Portland, OR 97208-4349**

TO BE CONSIDERED TIMELY AND TO EFFECTIVELY OPT-OUT OF THE CLASS AND THE SETTLEMENT, YOUR COMPLETE AND SIGNED OPT-OUT REQUEST MUST BE POSTMARKED BY NO LATER THAN SEPTEMBER 14, 2007. IF IT IS NOT POSTMARKED BY THAT DATE, YOUR RIGHT TO OPT-OUT WILL BE DEEMED WAIVED AND YOU WILL BE BOUND BY ALL ORDERS AND JUDGMENTS ENTERED IN CONNECTION WITH THE SETTLEMENT. THE COURT RESERVES THE RIGHT TO EXTEND THE OPT-OUT DEADLINE TO THE DATE OF THE FINAL FAIRNESS HEARING, NOVEMBER 14, 2007 AT 10:00 AM, IF CLASS MEMBERS SPECIFICALLY REQUEST SO IN WRITING NO LATER THAN SEPTEMBER 4, 2007.

If you choose to Opt-Out of the Settlement and the Class, you will not be entitled to receive the benefits of the proposed Settlement with the Blue Parties, including any payment from the Settlement Fund and any benefit from the business practice commitments specified in the Settlement Agreement. Your claims against the Blue Parties will not be released and you will be free to pursue any claims you believe you have by filing a separate action or request for arbitration if you are subject to an arbitration agreement.

Any putative Class Member who or which timely submits a request to Opt-Out of the Class and the Settlement will have until the Settlement Hearing to deliver to the Notice Administrator a written revocation of the request to Opt-Out and shall thereby become a Class Member.

## VIII.  WHAT ABOUT ATTORNEYS' FEES, COSTS, AND EXPENSES?

If the Court approves the proposed Settlement, Class Counsel will apply to the Court for an award of attorneys' fees, including costs and expenses. In the Settlement Agreement, the Blue Parties have agreed not to oppose such an application in the aggregate amount of up to $50,168,365. If the Court awards attorneys' fees and expenses in an amount no greater than that amount, the Blue Plans will pay the amount awarded by the Court to Class Counsel. This payment is in addition to the settlement consideration to the Class Members that is described above and will not reduce the amount available to Class Members if the Settlement is approved.

## IX.  WHAT ARE THE REPRESENTATIVE PLAINTIFFS' FEES?

In addition to the application by Class Counsel for attorneys' fees and expenses described in the preceding section, in connection with the Court's consideration of the Settlement, the Representative Plaintiffs and the Representative Plaintiffs in Other Actions intend to seek an award from the Court of fees in the amount of up to Seven Thousand and Five Hundred Dollars ($ 7,500) for each Representative Plaintiff and each Representative Plaintiff in Other Actions, which, if awarded, would be in addition to the settlement consideration that will be available to Class Members generally. In the Settlement Agreement, the Blue Parties have agreed not to oppose such an application up to Seven Thousand and Five Hundred dollars ($ 7,500) for each Representative Plaintiff and each Representative Plaintiff in Other Actions. If the Court awards Representative Plaintiffs and Representative Plaintiffs in Other Actions a fee up to that amount, the Blue Parties will pay such amount to the Representative Plaintiffs and the Representative Plaintiffs in Other Actions.

## X.  WHOM CAN I CONTACT WITH QUESTIONS?

If you have questions regarding this notice, the proposed Settlement with the Blue Parties, the Settlement Agreement, or the Action generally, you can obtain additional information from the following sources:

On the Internet, at any of these sites: www.BCBSPhysicianSettlement.com; www.hmosettlements.com; www.WhatleyDrake.com; www.ArchieLamb.com; www.kttlaw.com

By Telephone:

**1-877-893-2643**             **Settlement Administrator**

By Mail:

Whatley Drake & Kallas, LLC
1540 Broadway, 37th Floor
New York, New York 10036
Attention:  Edith Kallas

Law Offices of Archie Lamb, LLC
2017 2nd Avenue
Birmingham, Alabama 35203
Attention:  Archie Lamb

Kozyak Tropin & Throckmorton
2525 Ponce de Leon Blvd., 9th Floor
Miami, Florida 33134
Attention:  Harley Tropin

**PLEASE DO NOT CALL THE BLUE PARTIES, A BLUE PLAN'S PROVIDER RELATIONS REPRESENTATIVE, THE COURT, OR THE CLERK'S OFFICE.**

## XI.  EXAMINATION OF PAPERS

This notice is a summary and does not describe all details of the Settlement with the Blue Parties, the Settlement Agreement, or the proceedings in the Action generally. Complete copies of the Settlement Agreement and certain pleadings and papers filed in the Action can be found for review on the following website:

www.BCBSPhysicianSettlement.com; www.hmosettlements.com; www.WhatleyDrake.com; www.ArchieLamb.com; www.kttlaw.com

In addition, you may review the complete files of papers submitted in the Action at the office of the Clerk of the Court, United States Courthouse, U.S. District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida, 33128, during regular business hours.

## XII.  REQUEST TO FORWARD THIS NOTICE

If you would be a Class Member described in this Notice but you have assigned any claim that might be covered by the proposed Settlement or the release described above, please forward this Notice to the appropriate Person as soon as possible.

BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

# CURRICULUM VITAE

## SCOTT K. SULLIVAN, M.D., F.A.C.S.

| | |
|---|---|
| **Biographical Information:** | Address:<br>1717 St. Charles Avenue<br>New Orleans, LA 70130<br><br>Citizenship: US |
| **Education:** | Undergraduate:<br>Bachelor of Science 1987<br>Tulane University<br>New Orleans, LA |
| **Graduate:** | Doctor of Medicine 1991<br>Louisiana State University Health Science Center<br>New Orleans, LA |
| **Postgraduate Training:** | Internship 1991-1992<br>General Surgery<br>Louisiana State University Health Science Center<br>New Orleans, LA<br>Charity Hospital of New Orleans<br>University Hospital<br>Veterans Administration Hospital<br><br>Residency 1992-1996<br>General Surgery<br>Louisiana State University Health Science Center<br>New Orleans, LA<br>Charity Hospital of New Orleans<br>Children's Hospital of New Orleans<br>University Hospital of New Orleans<br>Veterans Administration Hospital<br>Baton Rouge General<br>University Hospital of Lafayette |

**CURRICULUM VITAE**
**SCOTT K. SULLIVAN, M.D., F.A.C.S.**
**PAGE 2**

| | |
|---|---|
| **Postgraduate Training:** | Residency 1997-1999<br>Plastic & Reconstructive Surgery<br>LSU Health Science Center at New Orleans<br>Charity Hospital of New Orleans<br>Children's Hospital of New Orleans<br>University Hospital<br>Veterans Administration Hospital<br>Memorial Medical Center<br>West Jefferson Hospital |
| **Certification:** | Louisiana State Medical License #21187<br>Board Certified General Surgery<br>Board Certified Plastic Surgery<br><br>Academic Appointments<br><br>Clinical Instructor<br>LSU Department of Surgery<br>Division of Plastic Surgery and Reconstructive Surgery |
| **Professional Organizations:** | Louisiana Society of Plastic and Reconstructive Surgery<br>American Society of Plastic and Reconstructive Surgery<br>Fellow of the American College of Surgeons |
| **Publications:** | Sullivan SS, Heitland AS: Management of Congenital Breast Deformities and Autogenous Breast Augmentation. Seminars in Plastic Surgery. Feb 2002; Vol 16 No 1; pp69-76<br><br>DellaCroce FJ, Allen RJ, Sullivan SS: Deep Inferior Epigastric Perforator Flap Breast Reconstruction. Seminars in Plastic Surgery. Feb 2002; Vol 16 No1; pp727.<br><br>Allen RJ, Sullivan SS, Kaplan, Johnathan L., Guerra, Aldo: Journal of Reconstructive Microsurgery 19 2 2003. |

**CURRICULUM VITAE**
**SCOTT K. SULLIVAN, M.D., F.A.C.S.**
**PAGE 3**

**Publications:**

Journal of Reconstructive Microsurgery, "Management of Significant Venous Discrepancy with Microvascular Venous Coupler.  Author: Sullivan, DellaCroce, Allen, August 2003 Issue, Vol 19 No. 6.

DellaCroce FJ, Sullivan SK:  Application and Refinement of the Superior Gluteal Artery Perforator Free Flap for Bilateral Simultaneous Breast Reconstruction.  Plas Recon Surgery. July 2005; Vol116 No 1; pp 97-105.

**Professional Presentations:**

Breast Cancer Survivors; Lafayette, LA Oct 1999; Autogenous, Muscle Sparing, Breast Reconstruction

Gulf Coast Regional Medical Specialist Convention; Point Clear, AL Oct 2000; Perforator Flap Breast Reconstruction

7th Annual Pediatric Symposium; Biloxi, MS, June 2001; Reconstruction in Pediatric Trauma

Gulf Coast Regional Medical Specialist Convention; Point Clear, AL Oct 2001; Innovations in Autogenous Breast Reconstruction

Breast Reconstruction and Other Convoluted Thoughts given to the American Society of Traveling Surgeons, New Orleans, LA

New Orleans Women's Expo, May 18, 2003, New Orleans, LA, "Advances in Breast Reconstruction for Cancer."

American College of Surgeons, Louisiana Chapter; New Orleans, LA Jan. 2002; Advantages of Perforator Flap Breast Reconstruction

**Memberships:**

Member of American Society for Reconstructive Microsurgery, 2003

New Orleans Surgical Society

Membership of New Orleans Surgical Society
1542 Tulane Avenue
New Orleans, LA 70112

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

RICK LOVE, M.D., ET AL., PLAINTIFF

VERSUS

BLUE CROSS AND BLUE SHIELD
ASSOCIATION, ET AL., DEFENDANTS

CASE NO. 03-21296-CIV-
MORENO/SIMONTON

## UNSWORN DECLARATION OF FRANK DELLACROCE, M.D.

I, Frank Dellacroce, M.D., hereby declare under penalty of perjury that the following statements are true and correct to the best of my personal knowledge and belief:

1.    I am _40_ years old and reside at 303 Sena Drive, Metairie, LA 70005.

2.    I have been a licensed physician practicing in the metropolitan area the last _6_ years.

3.    Attached as Exhibit 1 is my current C.V.

4.    I am fifty percent owner of the Center for Restorative Breast Surgery ("CRBS") in 2003, along with Scott K. Sullivan, Jr., M.D., the other fifty percent owner of CRBS.  CRBS is currently located at 1717 St. Charles Avenue, New Orleans, Louisiana.

5.    I have read the unsworn declarations of Dr. Sullivan the CRBS Manager, Cheri Saltaformaggio, and agree with the statements therein.

6.    After November 5, 2007, I saw and read the attached Notice for the first time, and understand that the *Love* class action involved violation of a federal statute

999663-1                                   1

entitled The Rackateer Influenced and Corrupt Organization Act, 18 USC § 1961, *et seq.*

("RICO"). I have never authorized attorneys for CRBS to file any federal law claims

under RICO and hereby reaffirm that CRBS and I waive any legal rights under RICO that

we may have against BCBSLA (and Blue Party defendants in the *Love* case) on any

matters in any way related to the individual transactions or occurrences involving the

matters at issue in the lawsuits filed by CRBS against BCBSLA in 2006 and 2007 (or any

other similar transactions or occurrences involving a patient and BCBSLA (and Blue

Party defendants in the *Love* case) that have not been placed in suit for surgeries that

were performed in 2003 when CRBS was formed up until today).

7.      CRBS has no interest whatsoever in participation in the *Love* class action

and have opted out of it.

8.      I did not receive the attached Notice nor did anyone employed by CRBS

to my knowledge. Had I or anyone on the staff at CRBS, 1717 St. Charles Avenue, New

Orleans, received the Notice, we would have immediately transmitted the Notice to our

attorneys at Chaffe McCall, LLP, for them to determine what, if anything, should have

been done in response to the notice.

_____
DATE

_____
FRANK DELLACROCE, M.D.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| RICK LOVE, M.D., *et al.*,<br>Plaintiffs<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD ASSOCIATION, *et al.*,<br>Defendants | Case No. 03-21296-CIV-MORENO/SIMONTON |

NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION WITH CERTAIN BLUE CROSS AND BLUE
SHIELD PARTIES, OF SETTLEMENT HEARING TO CONSIDER THE PROPOSED SETTLEMENT, AND OF
YOUR RIGHTS CONCERNING THE PROPOSED SETTLEMENT

IF YOU ARE A PHYSICIAN, PHYSICIAN GROUP, OR PHYSICIAN ORGANIZATION WHO PROVIDED
COVERED SERVICES TO ANY INDIVIDUAL ENROLLED IN OR COVERED BY BLUE CROSS AND BLUE
SHIELD PLANS AT ANY TIME BETWEEN MAY 22, 1999 AND MAY 31, 2007, PLEASE READ THIS NOTICE
CAREFULLY.

THIS CLASS ACTION AND THE PROPOSED SETTLEMENT MAY AFFECT YOUR RIGHTS.

## I. WHY SHOULD YOU READ THIS NOTICE?

If you are or have been a Physician, Physician Group, or Physician Organization[1] who or which practiced in the United States since May 22, 1999, your rights may be affected by a proposed settlement with certain Blue Cross and Blue Shield parties ("Settlement") in the class action lawsuit known as Love, *et al.* v. Blue Cross and Blue Shield Ass'n, *et al.*, (formerly, Thomas, *et al.* v. Blue Cross and Blue Shield Ass'n, *et al.*), Case No. 03-21296-CIV-MORENO/SIMONTON (the "Action"), which is pending in the U.S. District Court for the Southern District of Florida (the "Court"). The proposed Settlement and the Action involve the Blue Cross and Blue Shield Association ("BCBSA") and certain Blue Cross and Blue Shield Plans and certain current and former Subsidiaries and Affiliates (the "Blue Parties").

The Blue Cross and Blue Shield Plans and their current and former Subsidiaries and Affiliates involved in the proposed Settlement are: Blue Cross and Blue Shield of Alabama, Premera, Premera Blue Cross, PremeraFirst, Inc., LifeWise Health Plan of Washington, LifeWise Health Plan of Oregon, LifeWise Health Plan of Arizona, Inc., Premera Blue Cross Blue Shield of Alaska, Corp., Medical Services Corporation of Eastern Washington, NorthStar Administrators, Inc., CareFirst, Inc., Group Hospitalization and Medical Services, Inc., Access America, Inc., The GHMSI Companies, Inc., CareFirst BlueChoice, Inc., Capital Care, Inc., CareFirst of Maryland, Inc., CFS Health Group, Inc., Blue Cross and Blue Shield of Florida, Inc., Health Options, Inc., Hawaii Medical Service Association, The Regence Group, Regence BlueShield of Idaho, Inc., Regence BlueCross BlueShield of Utah, Regence BlueCross BlueShield of Oregon, Regence BlueShield, Regence Life and Health Insurance Company, RegenceCare, Regence HMO Oregon, Regence Health Maintenance of Oregon, Inc., Healthwise, Asuris Northwest Health, Wellmark, Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa, Wellmark Health Plan of Iowa, Inc., Wellmark Community Insurance, Inc., Wellmark of South Dakota, Inc. dba Wellmark Blue Cross and Blue Shield of South Dakota, Louisiana Health Service & Indemnity Company dba Blue Cross and Blue Shield of Louisiana, HMO Louisiana, Inc., Blue Cross and Blue Shield of Massachusetts, Inc., Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc., Blue Cross Blue Shield of Michigan, BCBSM, Inc. dba BlueCross BlueShield of Minnesota, HMO Minnesota dba Blue Plus, Comprehensive Care Services, Inc., Blue Cross & Blue Shield of Mississippi, HMO of Mississippi, Inc., Blue Cross and Blue Shield of Montana, Inc., Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey, Horizon Healthcare Plan Holding Company, Inc., Horizon Healthcare Insurance Company of New York, Horizon Healthcare of New Jersey, Inc., Horizon Healthcare of New York, Inc., Enterprise Holding Company, Inc., AtlantiCare Administrators, Inc., Horizon Healthcare Administrators, Inc., Horizon AtlantiCare LLC, Horizon Healthcare of Delaware, Inc., NASCO of New Jersey, Inc., Empire HealthChoice Assurance, Inc., d/b/a Empire Blue Cross Blue Shield, Empire HealthChoice HMO, Inc., WellChoice Insurance of New Jersey, Inc., WellChoice Holdings of New York, Inc., WellPoint Holding Corp., Blue Cross and Blue Shield of North Carolina, Hospital Service Association of Northeastern Pennsylvania, HMO of Northeastern Pennsylvania, Independence Blue Cross, AmeriHealth HMO, Inc., La Cruz Azul de Puerto Rico, Keystone Health Plan East, Inc., Triple-S, Inc.; Triple-S, Inc., of Puerto Rico, Triple-C, Inc., Blue Cross Blue Shield of Rhode Island, Blue Cross and Blue Shield of South Carolina, BlueChoice HealthPlan of South Carolina, Inc. f/k/a Companion HealthCare Corporation, Planned Administrators, Inc., Thomas H. Cooper & Co., Inc., BlueCross BlueShield of Tennessee, Inc., Tennessee Health Care

---

[1]    All Capitalized terms in this notice are defined in the Settlement Agreement, copies of which are available as described below.

Network, Inc., Health Care Service Corporation, Group Health Maintenance Organization, Inc. d/b/a Bluelincs HMO, Group Health Service of Oklahoma, Inc. d/b/a Blue Cross Blue Shield of Oklahoma, HMO New Mexico, Inc., New Mexico Blue Cross and Blue Shield, Inc. d/b/a Blue Cross and Blue Shield of New Mexico, New Mexico Blue Cross and Blue Shield, Inc., Hallmark Services Corporation, BCI HMO, Inc., HCSC Insurance Services Corporation. (the "settling Blue Plans").

You may be a Class Member (described below) in the Action if you have provided Covered Services to Plan Members enrolled in or covered by a plan offered or administered by any of these Blue Parties or by other primary licensees of the BCBSA.

The Representative Plaintiffs have agreed to settle all claims against the Blue Parties in the Action in exchange for the Blue Parties' commitments regarding their business practices, and the establishment of a Settlement Fund with respect to which Class Members can make claims for settlement payment. The Court has scheduled a hearing to consider the fairness, reasonableness, and adequacy of the proposed settlement with the Blue Parties, together with certain other matters, on Wednesday, November 14, 2007 at 10:00 AM, at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast Fourth Street, Miami, Florida, 33132 (the "Settlement Hearing"). Please note that the Court may adjourn the Settlement Hearing without further written notice to putative Class Members.

You may be a Class Member who would be entitled to receive the benefits of the proposed Settlement. As a Class Member, however, you will also be bound by the release and other provisions of the Settlement if it is approved by the Court. You may elect to Opt-Out of the Class and the Settlement, as explained below. You may also have a right to object to the Settlement or to the applications for attorneys' fees and Representative Plaintiffs' fees that Class Counsel intend to make to the Court, but only if you comply with the procedures described in this notice. **BECAUSE YOUR RIGHT TO PURSUE CERTAIN TYPES OF CLAIMS AGAINST THE BLUE PARTIES, AND CERTAIN OTHERS AFFILIATED WITH THE BLUE PARTIES, MAY BE AFFECTED BY THE SETTLEMENT, YOU SHOULD READ THIS NOTICE CAREFULLY.**

## II. WHAT IS THIS LITIGATION ABOUT?

The Complaint in the Action alleges, among other things, that between 1999 and the present, the Blue Parties, among others, engaged in a conspiracy to improperly deny, delay, and/or reduce payments to physicians, physician groups, and physician organizations by engaging in several types of allegedly improper conduct, including but not limited to:

- Misrepresenting and/or failing to disclose the use of edits to unilaterally "bundle," "downcode," and/or reject claims for medically necessary covered services;

- Failing to pay for "medically necessary" services in accordance with member plan documents;

- Failing and/or refusing to recognize CPT® modifiers;

- Concealing and/or misrepresenting the use of improper guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services;

- Misrepresenting and/or refusing to disclose applicable fee schedules; and

- Failing to pay claims for medically necessary covered services within the required statutory and/or contractual time periods.

The Complaint in the Action claims that the conduct described above violated the federal statute entitled the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* The Blue Parties deny the factual allegations and legal claims asserted in the Complaint in the Action, and deny any liability or wrongdoing relating thereto. If you would like further information about the claims asserted in the Action, you can review a copy of the Complaint at: **www.BCBSPhysicianSettlement.com; www.hmosettlements.com; www.WhatleyDrake.com; www.ArchieLamb.com;** and **www.kttlaw.com**

The Action asserting these and other claims against the Blue Parties and other Blue Cross and Blue Shield licensed plans began in approximately 2003 before the federal court in Miami. Since the initial complaint was filed, substantial proceedings have occurred, including the production of a significant number of documents by the defendants and the depositions of various witnesses. As part of the Settlement, the Blue Parties would no longer actively participate in the Action. Other defendants in the Action comprising WellPoint, Inc. and the current and former direct and indirect subsidiaries and affiliates of WellPoint, Inc. and the former Anthem, Inc. agreed to a separate settlement with, among others, the Representative Plaintiffs that was given final approval by the Court in an order entered on December 22, 2005 (and amended on January 3, 2006). Other defendants in the Action who are not WellPoint entities or Parties to this proposed Settlement may continue to defend the claims asserted in the Action on various grounds.

## III.  WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

In a settlement agreement dated April 27, 2007 (the "Settlement Agreement"), the Representative Plaintiffs and the Signatory Medical Societies have agreed to settle all claims that were or could have been asserted against the Blue Parties and certain of their Affiliates and Subsidiaries in the Action, in exchange for the Blue Parties' commitments regarding their business practices and for certain monetary consideration.  The terms of the Settlement Agreement are summarized in this notice, but a copy of the entire Settlement Agreement can be reviewed at www.BCBSPhysicianSettlement.com.  It is also available at www.hmosettlements.com, www.WhatleyDrake.com, www.ArchieLamb.com, and www.kttlaw.com.

### A.  The Settlement Class

The proposed Settlement with the Blue Parties will be on behalf of the following Persons (collectively, the "Class" and each member of the Class a "Class Member"), which Class has been conditionally certified for settlement purposes:

"Class" means any and all Physicians, Physician Groups and Physician Organizations who provided Covered Services to any Plan Member or services to any individual enrolled in or covered by a Plan offered or administered by any Person named as a defendant in the Complaint or by any other primary licensee of the BCBSA or by any of their respective current or former subsidiaries or Affiliates, in each case from May 22, 1999 through May 31, 2007.  The Class shall exclude: (i) all Persons who, in accordance with the terms of this Agreement, execute a timely request for exclusion (Opt-Out) from the Class; and (ii) the Blue Parties, their Affiliates and any of their officers, directors, and employees.

### B.  The Settlement Consideration

If the Settlement is approved by the Court, the Settlement Agreement provides for both monetary and other benefits to be provided by the Blue Parties to Class Members.

### C.  Business Practice Commitments

As a part of the Settlement, the Blue Parties have agreed to commitments regarding their business practices.  For example, the Blue Parties have agreed, subject to implementation dates described in the Settlement Agreement to: (a) include in their contracts with Physicians a definition of Medical Necessity that bases Medical Necessity determinations on factors including generally accepted standards of medical practice; (b) use clinical guidelines that are based on credible scientific evidence published in peer reviewed medical literature (taking into account Physician Specialty Society recommendations, the views of Physicians practicing in the relevant clinical areas, and other relevant factors) when making Medical Necessity determinations; (c) provide Class Members access to the applicable Blue Party's Medical Necessity external review process; (d) establish an external review process for resolving Billing Disputes with Class Members; (e) make investments designed to facilitate the automated adjudication of claims submitted by Physicians and thereby reduce the average time taken by the Blue Parties to pay valid claims; (f) continue to fund initiatives to reduce the percentage of resubmitted claims for Covered Services; (g) not automatically reduce the intensity coding of evaluation and management codes billed for certain covered services; (h) disclose payment rules and conform bundling and other Edit practices and procedures as specified in the Settlement Agreement; (i) not include "gag clauses" in its contracts with Class Members; (j) continue to devote resources to improve accuracy of information about eligibility of Plan Members; (k) where all necessary information is available to the applicable Blue Plan, ensure the payment of valid Complete Claims within 15 business days for electronically-submitted claims and 30 days for paper claims; (l) provide relevant Class Members with the ability to view applicable fee schedule amounts for billing codes related to their practice; (m) follow protocols for the reimbursement of Physicians providing mental health care services as specified in the Settlement Agreement; and/or (n) establish a Compliance Dispute resolution mechanism to address disputes regarding the Blue Parties' compliance with the Settlement Agreement.  The business practice commitments set forth above are subject to Exhibit H of the Settlement Agreement.  In addition, the Blue Parties will disclose additional information about their claim administration policies and procedures on their existing websites.  These changes, as well as others, are more fully described in the Settlement Agreement.

### D.  The Settlement Fund

As a part of the Settlement, the Blue Parties have agreed to make a settlement payment of $131,209,507 which, together with accrued interest from June 30, 2007, will be distributed to Physicians who are Class Members and who timely file a Claim Form.  If the Settlement is approved by the Court, these Class Members will be entitled to payments from the Settlement Fund in accordance with formulas that are set forth in the Settlement Agreement.

- A Physician who provided any Covered Services reimbursed by primary licensees of the BCBSA since May 22, 1999 but has since become an inactive Physician, retired from the practice of, or otherwise ceased to practice, medicine, or has died as of May 31, 2007 (a "Retired Physician"), will receive a pro rata portion of the amount of the Settlement Fund that has been allocated to such Retired Physicians.

- An actively-practicing Physician (an "Active Physician") whose Gross Receipts for the calendar years 2004, 2005, and 2006 for providing Covered Services to the settling Blue Plans' Plan Members were in the aggregate zero or less than $5,000 will receive a single Base Amount (determined pro rata according to the claims that are filed) from the amount of the Settlement Fund that is allocated to Active Physicians.

- An Active Physician who is a member of the Settlement Class in John R. Gregg, M.D., et al. v. Independence Blue Cross, et al.; Robert P. Good, M.D. v. Independence Blue Cross, et al.; and Pennsylvania Orthopaedic Society v. Independence Blue Cross, et al. ("IBC Class Action Settlement), who did not opt out of the IBC Class Action Settlement, and who is relying solely on Gross Receipts for providing Covered Services to IBC Members in order to recover from the Settlement Fund will receive only a single Base Amount (determined pro rata according to the claims that are filed) from the amount of the Settlement Fund that is allocated to Active Physicians.

- An Active Physician whose Gross Receipts for the calendar years 2004, 2005, and 2006 for providing Covered Services to the settling Blue Plans' Plan Members were in the aggregate at least $5,000 but less than $50,000 will receive a pro rata portion of five (5) times the Base Amount from the amount of the Settlement Fund that is allocated to Active Physicians.

- An Active Physician whose Gross Receipts for the calendar years 2004, 2005, and 2006 for providing Covered Services to the settling Blue Plans' Plan Members were in the aggregate $50,000 or greater, will receive a pro rata portion of ten (10) times the Base Amount from the amount of the Settlement Fund that is allocated to Active Physicians.

- Alternatively, an Active Physician may establish, through the submission of billing records or similar information, that his or her settlement compensation category (of the three provided and described above) should be based on aggregate payments received for providing Covered Services to the settling Blue Plans' Plan Members over any consecutive three-year period from January 1, 1997 through December 31, 2006.

- In determining Gross Receipts, Physicians should include amounts paid by the settling Blue Plans directly or by intermediaries for providing Covered Services to the settling Blue Plans' Plan Members. For example, a Physician may have provided services through an intermediary that contracted with a Blue Plan to provide the services (for example, an IPA, medical group, organized delivery system, Physician hospital organization, etc.). In determining Gross Receipts for providing Covered Services to the settling Blue Plans' Plan Members, Physicians should also include amounts they received from such intermediaries for treating the settling Blue Plans' Plan Members.

- **Active Physicians against whom a Blue Plan has obtained a final finding of fraud and/or abuse (as that term is defined in Section 8.3(h) of the Settlement Agreement) from a judicial, arbitral, or administrative proceeding and a corresponding final judgment for damages arising from a claim (or claims) for payment for the same time period for which a claim may be asserted are not entitled to payment from the Settlement Fund regardless of their status as Class Members.**

- Physician Groups and Physician Organizations may submit claims on behalf of individual Physicians employed by or otherwise working with them at the time that the claims are made, without the necessity of individual signatures from the individual Physicians, if authorized to do so by such Physicians or the compensation for the Covered Services provided by such Physicians belonged to the Physician Group or Physician Organization. A Physician Group or Physician Organization may only submit claims on behalf of individual Physicians, not on behalf of the Physician Group or Physician Organization itself. No Covered Service provided by an individual Physician may be the subject of more than one Claim. Either the individual Physician or Physician Group or Physician Organization on the Physician's behalf may submit a Claim, but not both Physician Groups and Physician Organizations may make claims on behalf of individual Physicians employed by or otherwise working with them who are Class Members, but not on behalf of, or with respect, to Covered Services provided by any individual Physicians that choose to Opt-Out of the Class and the Settlement. **Nor may Physician Groups or Physician Organizations make claims on behalf of any individual Active Physicians against whom a Blue Plan has obtained a final finding of fraud and/or abuse (as that term is defined in Section 8.3(h) of the Settlement Agreement) from a judicial, arbitral, or administrative proceeding and a corresponding final judgment for damages arising from a claim (or claims) for payment for the same time period for which a claim may be asserted.**

- The Settlement Fund is described in detail in Section 8 of the Settlement Agreement.

If you are a Physician, the heir of a deceased Physician, or a Physician Group or Physician Organization submitting a claim on behalf of an individual Physician, who is eligible to participate in the Settlement Fund, you may submit a claim using the Claim Form and Claim Form Instructions enclosed with this notice, to the Settlement Administrator at the following address:

**Blue Parties'**
**Settlement Administrator**
**PO Box 4349**
**Portland, OR 97208-4349**

### E. Charitable Organizations

Class Members may elect to have the amount of their settlement payment from the Settlement Fund (discussed in the prior section) contributed on their behalf to a charitable organization set forth on Exhibit L to the Settlement Agreement. A list of the charitable organizations that may receive your donation is also attached to the Claim Form Instructions enclosed with this notice.

### F. The Release and Dismissal with Prejudice

Upon final approval of the Settlement, the Action will be dismissed with prejudice as to the Blue Parties. In addition, Blue Parties, and certain others affiliated with the Blue Parties (collectively, the "Released Parties"), will receive a release and discharge from the Class (which would not include putative Class Members who or which timely elect to Opt-Out of the Class and the Settlement, as discussed below) of any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind, source or character whether arising under any federal or state law, which (consistent with the Parties' understanding of the settlements in Shane) includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or nonintentional, (each a "Claim"), arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, course of conduct, business practices, representations, omissions, circumstances, or other matters referenced in the Action, or addressed in the Settlement Agreement, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons. The provisions regarding the discharge of all Released Claims is discussed in Section 13.1 of the Settlement Agreement, to which you should refer if you have any questions as to its applicability.

Excluded from the release are claims for certain Covered Services that are or were in the process of being submitted to, adjudicated or paid by the Blue Parties at or around the time that the Settlement Agreement was entered into and the Court approval process was begun. This provision regarding "Retained Claims" is discussed in more detail in Section 13.6 of the Settlement Agreement, to which you should refer if you have any questions as to its applicability.

Except as described above, nothing in the Settlement Agreement is intended to relieve any Person that is not a Released Party from responsibility for its own conduct or the conduct of other Persons or entities who are not Released Parties for claims that are not Released Claims, or to preclude any Representative Plaintiff from introducing any competent and admissible evidence to the extent consistent with the Settlement Agreement. In addition, except as described above, nothing in the Settlement Agreement prevents the Representative Plaintiffs from pursuing claims to hold any Person that is not a Released Party liable for damages caused by that Party's conduct in a conspiracy involving any Released Party.

Finally, the Settlement Agreement includes a covenant not to sue the Released Parties (including the Blue Parties) for Claims that are subject to the release, with certain limited exceptions which are described in detail in Sections 13.6 and 13.7 of the Settlement Agreement, to which you should refer if you have any questions as to their applicability.

The release provided for in the Settlement Agreement applies to Claims whether they are known or unknown. In this regard, each Class Member and the Class shall be deemed expressly to have waived and relinquished: (a) the provisions, rights and benefits conferred by California Civil Code § 1542, which reads:

"Section 1542. General Release - Claims Extinguished. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor;"

and (b) any law of any state or territory of the United States, federal law, or principle of common law, or of international or foreign law which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

## IV. WHAT WILL HAPPEN AT THE SETTLEMENT HEARING?

As noted above, the Settlement Hearing will be held on Wednesday, November 14, 2007 at 10:00 AM, at the United States Courthouse, Courtroom IV, Tenth Floor, Federal Justice Building, 99 Northeast Fourth Street, Miami, Florida, 33132. However, the order scheduling that hearing also provides that it may be adjourned by the Court without any additional notice to putative Class Members other than an announcement in open court.

At the Settlement Hearing, the Court will consider several different issues, including:

First, the Court will consider whether the proposed Settlement of the Action with the Blue Parties that is reflected in the Settlement Agreement is fair, reasonable and adequate to putative Class Members.

Second, the Court will consider whether it should certify the Class for settlement purposes pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. Among other things, this will require the Court to determine (i) whether questions of law or fact common to the putative Class Members predominate over questions affecting only individual putative Class Members, and (ii) whether a class action is superior to other available methods for fair and efficient adjudication of the controversy. If the Court certifies the Class for settlement purposes, putative Class Members who or which have timely elected to Opt-Out of the Class by following the procedures described below will be excluded from it.

Third, the Court will consider whether to enter orders that would prevent Class Members and certain other Persons, including the defendants in the Action other than the Blue Parties, from asserting certain claims against the Blue Parties in the future.

Fourth, the Court will consider the applications for a payment of fees by the Blue Parties to the Representative Plaintiffs and to the Representative Plaintiffs in Other Actions, which is discussed in more detail below.

Fifth, the Court will consider an application by counsel to the Class for attorneys' fees and expenses to be paid by the Blue Parties, which is also discussed in more detail below.

## V.  CAN I PARTICIPATE IN THE SETTLEMENT HEARING?

Any putative Class Member, or other interested Person, who or which objects to the proposed Settlement with the Blue Parties, the Settlement Agreement, the applications for attorneys' fees, or the other matters to be considered at the Settlement Hearing may appear and present such objections, provided, however, that Persons who or which have elected to Opt-Out of the Class and the Settlement will not be entitled to object. In order to be permitted to object to the proposed Settlement, however, you must, on or before October 1, 2007 comply fully with the following requirements:

- File with the Court a written statement setting forth your objections to the matters to be considered and the basis for those objections, together with any documentation you want the Court to consider. If you intend to appear at the Settlement Hearing, you must also file a written notice of intention to appear at this same time; and

- Serve copies of all such materials either by hand or overnight delivery upon the following counsel:

| Edith M. Kallas , Joe R. Whatley, Jr., Joseph P. Guglielmo WHATLEY DRAKE & KALLAS LLC 1540 Broadway, 37th Floor New York, NY 10036 | Archie Lamb, Jr. LAW OFFICES OF ARCHIE LAMB, LLC 2017 Second Avenue North, 2nd Floor Birmingham, Al 35203 | Harley S. Tropin Kozyak Tropin & Throckmorton, P.A. 2525 Ponce de Leon Blvd., 9th Floor Miami, Fl 33134 |
|---|---|---|
| Michael A. Pope MCDERMOTT WILL & EMERY LLP 227 W. Monroe Street Chicago, IL 60606 | Chester T. Kamin JENNER & BLOCK LLP 330 North Wabash Chicago, IL  60611 | |

If you do not comply with the foregoing procedures and deadlines for filing and serving a written statement setting forth your objections, and a written notice of your intention to appear at the Settlement Hearing, if applicable, you may lose substantial legal rights, including but not limited to: the right to appear and be heard at the Settlement Hearing; the right to contest approval of the proposed Settlement or the application for an award of attorneys' fees and expenses to Class Counsel; the right to contest approval of the application for the payment of fees to the Representative Plaintiffs and the Representative Plaintiffs in Other Actions; and the right to contest any other orders or judgments of the Court entered in connection with the proposed Settlement.

If the Court does not approve the proposed Settlement, the Settlement Agreement will be null and void. If there are further actions taken in the Action that affect your rights, you will receive notice as determined by the Court.

## VI.  HOW DO I FILE A CLAIM?

As discussed above, the proposed Settlement contemplates certain settlement payments to Class Members with respect to Claim Forms that are timely submitted to the Settlement Administrator. In order to qualify for a settlement payment, you must complete the enclosed Claim Form, sign the form, and mail the completed and signed form by NO LATER THAN OCTOBER 19, 2007 to:

**Blue Parties'**
**Settlement Administrator**
**PO Box 4349**
**Portland, OR 97208-4349**

IN ORDER TO BE ENTITLED TO RECEIVE ANY PAYMENT FROM THE SETTLEMENT FUND, YOU MUST COMPLETE AND SIGN THE CLAIM FORM, AND THE ENVELOPE RETURNING YOUR CLAIM FORM MUST BE MAILED TO THE SETTLEMENT ADMINISTRATOR WITH A POSTMARK DATE NO LATER THAN OCTOBER 19, 2007.  IF YOUR SIGNED CLAIM FORM IS NOT MAILED TO THE SETTLEMENT ADMINISTRATOR BY THIS DEADLINE, YOU WILL BE DEEMED TO HAVE WAIVED YOUR RIGHT TO RECEIVE ANY PAYMENT FROM THE SETTLEMENT FUND.

IF YOU ARE AN ACTIVE PHYSICIAN AGAINST WHOM A BLUE PLAN HAS OBTAINED A FINDING OF FRAUD AND/OR ABUSE (AS THAT TERM IS DEFINED IN SECTION 8.3(h) OF THE SETTLEMENT AGREEMENT) FROM A JUDICIAL, ARBITRAL, OR ADMINISTRATIVE PROCEEDING AND A CORRESPONDING FINAL JUDGMENT FOR DAMAGES FOR THE SAME TIME PERIOD FOR WHICH A CLAIM MAY BE ASSERTED, YOU ARE NOT ENTITLED TO PAYMENT FROM THE SETTLEMENT FUND, REGARDLESS OF YOUR STATUS AS A CLASS MEMBER.

If you submit a claim, or if a Physician Group or Physician Organization submits a claim on your behalf, you will be electing to be a Class Member and will be bound by all proceedings, orders, and judgments entered in connection with the proposed Settlement and the Settlement Agreement, including the release, covenant not to sue, and dismissal with prejudice described above.  Physician Groups and Physician Organizations may make claims on behalf of individual Physicians employed by or otherwise working with them who are Class Members, but not on behalf of, or with respect to Covered Services provided by, any individual Physicians who choose to Opt-Out of the Class and Settlement, or on behalf of individual Physicians who are submitting claims on their own behalf for the same Covered Services.

## VII.  WHAT IF I DO NOT WANT TO BE PART OF THE SETTLEMENT?

If you do not want to be a Class Member and participate in the proposed Settlement, then you must send a written request to Opt Out of the Class and the Settlement to the Notice Administrator postmarked NO LATER THAN SEPTEMBER 14, 2007, including your name, business address, telephone number, Federal Tax Identification Number, and signature. Physician Groups or Physician Organizations may exclude themselves, as distinct legal entities, from the Class by submitting a complete and timely request to Opt-Out.  Physician Groups or Physician Organizations may not request to Opt-Out individual Physicians, unless the Physician Group or Physician Organization has written authorization to act on behalf of those Physicians, which authorization has been submitted to the Notice Administrator.  Individual Physicians seeking to Opt-Out must otherwise submit their own individual, complete and timely request to Opt-Out.  Opt-Out requests must be submitted to:

**Blue Parties'**
**Notice Administrator**
**PO Box 4349**
**Portland, OR 97208-4349**

TO BE CONSIDERED TIMELY AND TO EFFECTIVELY OPT-OUT OF THE CLASS AND THE SETTLEMENT, YOUR COMPLETE AND SIGNED OPT-OUT REQUEST MUST BE POSTMARKED BY NO LATER THAN SEPTEMBER 14, 2007. IF IT IS NOT POSTMARKED BY THAT DATE, YOUR RIGHT TO OPT-OUT WILL BE DEEMED WAIVED AND YOU WILL BE BOUND BY ALL ORDERS AND JUDGMENTS ENTERED IN CONNECTION WITH THE SETTLEMENT. THE COURT RESERVES THE RIGHT TO EXTEND THE OPT-OUT DEADLINE TO THE DATE OF THE FINAL FAIRNESS HEARING, NOVEMBER 14, 2007 AT 10:00 AM, IF CLASS MEMBERS SPECIFICALLY REQUEST SO IN WRITING NO LATER THAN SEPTEMBER 4, 2007.

If you choose to Opt-Out of the Settlement and the Class, you will not be entitled to receive the benefits of the proposed Settlement with the Blue Parties, including any payment from the Settlement Fund and any benefit from the business practice commitments specified in the Settlement Agreement.  Your claims against the Blue Parties will not be released and you will be free to pursue any claims you believe you have by filing a separate action or request for arbitration if you are subject to an arbitration agreement.

Any putative Class Member who or which timely submits a request to Opt-Out of the Class and the Settlement will have until the Settlement Hearing to deliver to the Notice Administrator a written revocation of the request to Opt-Out and shall thereby become a Class Member.

## VIII. WHAT ABOUT ATTORNEYS' FEES, COSTS, AND EXPENSES?

If the Court approves the proposed Settlement, Class Counsel will apply to the Court for an award of attorneys' fees, including costs and expenses. In the Settlement Agreement, the Blue Parties have agreed not to oppose such an application in the aggregate amount of up to $50,168,365. If the Court awards attorneys' fees and expenses in an amount no greater than that amount, the Blue Plans will pay the amount awarded by the Court to Class Counsel. This payment is in addition to the settlement consideration to the Class Members that is described above and will not reduce the amount available to Class Members if the Settlement is approved.

## IX. WHAT ARE THE REPRESENTATIVE PLAINTIFFS' FEES?

In addition to the application by Class Counsel for attorneys' fees and expenses described in the preceding section, in connection with the Court's consideration of the Settlement, the Representative Plaintiffs and the Representative Plaintiffs in Other Actions intend to seek an award from the Court of fees in the amount of up to Seven Thousand and Five Hundred Dollars ($ 7,500) for each Representative Plaintiff and each Representative Plaintiff in Other Actions, which, if awarded, would be in addition to the settlement consideration that will be available to Class Members generally. In the Settlement Agreement, the Blue Parties have agreed not to oppose such an application up to Seven Thousand and Five Hundred dollars ($ 7,500) for each Representative Plaintiff and each Representative Plaintiff in Other Actions. If the Court awards Representative Plaintiffs and Representative Plaintiffs in Other Actions a fee up to that amount, the Blue Parties will pay such amount to the Representative Plaintiffs and the Representative Plaintiffs in Other Actions.

## X. WHOM CAN I CONTACT WITH QUESTIONS?

If you have questions regarding this notice, the proposed Settlement with the Blue Parties, the Settlement Agreement, or the Action generally, you can obtain additional information from the following sources:

On the Internet, at any of these sites: www.BCBSPhysicianSettlement.com; www.hmosettlements.com; www.WhatleyDrake.com; www.ArchieLamb.com; www.kttlaw.com

By Telephone:

**1-877-893-2643**          **Settlement Administrator**

By Mail:

| | | |
|---|---|---|
| Whatley Drake & Kallas, LLC | Law Offices of Archie Lamb, LLC | Kozyak Tropin & Throckmorton |
| 1540 Broadway, 37th Floor | 2017 2nd Avenue | 2525 Ponce de Leon Blvd., 9th Floor |
| New York, New York 10036 | Birmingham, Alabama 35203 | Miami, Florida 33134 |
| Attention:  Edith Kallas | Attention:  Archie Lamb | Attention:  Harley Tropin |

**PLEASE DO NOT CALL THE BLUE PARTIES, A BLUE PLAN'S PROVIDER RELATIONS REPRESENTATIVE, THE COURT, OR THE CLERK'S OFFICE.**

## XI. EXAMINATION OF PAPERS

This notice is a summary and does not describe all details of the Settlement with the Blue Parties, the Settlement Agreement, or the proceedings in the Action generally. Complete copies of the Settlement Agreement and certain pleadings and papers filed in the Action can be found for review on the following website:

www.BCBSPhysicianSettlement.com; www.hmosettlements.com; www.WhatleyDrake.com; www.ArchieLamb.com; www.kttlaw.com

In addition, you may review the complete files of papers submitted in the Action at the office of the Clerk of the Court, United States Courthouse, U.S. District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida, 33128, during regular business hours.

## XII. REQUEST TO FORWARD THIS NOTICE

If you would be a Class Member described in this Notice but you have assigned any claim that might be covered by the proposed Settlement or the release described above, please forward this Notice to the appropriate Person as soon as possible.

BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

# Curriculum Vitae

### Frank J. DellaCroce, M.D.

**Biographical Information:**

Co-director Center for Restorative Breast Surgery
1717 St. Charles Avenue
New Orleans, LA 70130

**Education:**

Undergraduate:
Bachelor of Science 1990
Northeast Louisiana University

Graduate:
Doctor of Medicine 1994
Louisiana State University Health Science Center

**Postgraduate Training:**

Internship 1994-1995:
General Surgery
University of Texas Health Science Center - Houston
Hermann Hospital
Lyndon B. Johnson Hospital
University of Texas M.D. Anderson Hospital

Residency 1995-1999:
Otolaryngology / Head and Neck Surgery
University of Texas Health Science Center - Houston
Hermann Hospital
Lyndon B. Johnson Hospital
University of Texas M.D. Anderson Hospital

Residency 1999-2001
Plastic & Reconstructive Surgery
LSU Health Science Center at New Orleans
Charity Hospital of New Orleans
Childrens Hospital of New Orleans
University Hospital
Veterans Administration Hospital

## Certification:

Diplomate National Board of Medical Examiners 1996

Texas State Medical License #J9488

Louisiana State Medical License #13291R

Louisiana State Controlled Substances License #27362

Diplomate American Board of Otolaryngology/Head & Neck Surgery

Diplomate American Board of Plastic Surgery

## Academic Appointments

Clinical Instructor
Tulane University Department of Surgery
Division of Plastic and Reconstructive Surgery

Clinical Instructor
LSU Department of Surgery
Division of Plastic and Reconstructive Surgery

## Professional Organizations:

Member American Society of Plastic Surgeons

Texas Medical Association

Texas Association of Otolaryngology / Head and Neck Surgery

Harris County Medical Society

Member Triologic Society

Houston Society of Otolaryngology / Head and Neck Surgery

American Society of Plastic Surgery

Fellow American College of Surgeons

Fellow American Academy of Otolaryngology / Head & Neck Surgery

Member American Academy of Otolaryngology / Head and Neck Surgery

Member American Academy of Facial Plastic and Reconstructive Surgery

Member Louisiana Society of Plastic Surgeons

Member Louisiana State Medical Society

Member American Society for Reconstructive Microsurgery

**Honors and Awards:**

T.H. Harris Merit Scholarship, Northeast Louisiana University

Luffey Memorial Merit Scholarship, Northeast Louisiana University

Who's Who of American College Students

Alpha Epsilon Delta Premedical Honor Society

Phi Kappa Phi Honor Society, Northeast Louisiana University

Omicron Delta Kappa Honor Society, Northeast Louisiana University

Mortar Board, Northeast Louisiana University

Alpha Omega Alpha Medical Honor Society

Nathan Bernstein Merit Scholarship, LSU Health Science Center

Executive Council Representative, LSU Health Science Center

Second place resident research competition 1996, "Auricular Framework Growth Following Grade III Microtia Reconstruction; Is It Real and What are the Implications"

Outstanding resident in training examination score award 1997 & 1998 Department of Otolaryngology/Head & Neck Surgery UT Houston

Third place resident research competition 1999, "Manifestations of Factor VIII Inhibitor in the Head and Neck"

American Society of Plastic and Reconstructive Surgeons Outstanding Scientific Poster Presentation Award 1998 ASPRS annual meeting Boston, MA

Outstanding resident in training examination score 2000 & 2001 Division of Plastic & Reconstructive Surgery LSU Health Science Center – New Orleans, LA

American Society of Plastic Surgery Scientific Paper of the Year Award 2005
Annual Meeting American Society of Plastic Surgery 5/2005 Scottsdale Arizona
Gill PS, Hunt JP, Guerra AB, DellaCroce FJ, et. al:  A 10 Year Retrospective Review of 758 DIEP Flaps for Breast Reconstruction. Plas Recon Surgery. April 2004; Vol 113 No 4; pp1153-1160.


**Publications:**

Lorio JJ, DellaCroce FJ, Ho YC, et al:  Conformational Changes in Transferrin Following Iron Binding as Detected by Fourier Transform Infrared Spectroscopy. Journal Louisiana State Medical Society.  Nov 1993; Vol 145; p 473.

DellaCroce FJ, Aguilar EA:  Auricular Framework Growth Following Microtia Reconstruction;  Is It Real and What are the Implications.  Plastic and Reconstructive Surgery.  Nov 2001; Vol 108 Num 6; pp 1479-84.

DellaCroce FJ, Kountakis S:  Bleeding Complications in the Head and Neck Associated with Factor VIII Inhibitor.  Archives of Otolaryngology / Head and Neck Surgery Nov 1999; Vol 125 Num 11; pp1258.

Allen R.J., Dupin C.L., DellaCroce F.J.:  Perforator Flaps in Breast Reconstruction. Perspectives in Plastic Surgery, Shenaq SM, Hollier LH (ed), Thieme Medical Publishers, New York; Vol 14 Num 2; pp37-54.

DellaCroce FJ, Allen RJ, Sullivan SS:  Deep Inferior Epigastric Perforator Flap Breast Reconstruction.  Seminars in Plastic Surgery.  Feb 2002; Vol 16 No 1; pp7-17.

Sullivan SK, DellaCroce, FJ:  Management of Significant Venous Discrepancy with Microvascular Venous Coupler. Journal of Reconstructive Microsurgery.  Aug 2003; Vol 19(6); pp377-80.

Craigie JE, Allen RJ, DellaCroce FJ, Sullivan SK:  Autogenous Breast Reconstruction with the Deep Inferior Epigastric Perforator Flap.  Clinics in Plastic Surgery.  Jul 2003; 30(3): 359-69.

Gill PS, Hunt JP, Guerra AB, DellaCroce FJ, et. al:  A 10 Year Retrospective Review of 758 DIEP Flaps for Breast Reconstruction.  Plas Recon Surgery.  April 2004; Vol 113 No 4; pp1153-1160.

DellaCroce FJ, Sullivan SK:  Application and Refinement of the Superior Gluteal Artery Perforator Free Flap for Bilateral Simultaneous Breast Reconstruction.  Plas Recon Surgery. July 2005; Vol116 No 1; pp 97-105.

**Professional Presentations:**

"Parathyroid Localization"
University of Texas Health Science Center - Houston
Department of Otolaryngology / Head and Neck Surgery
Grand Rounds 9/95

"Blepharoplasty"
University of Texas Health Science Center - Houston
Department of Otolaryngology / Head and Neck Surgery
Grand Rounds 5/96

"Local Anesthesia of the Head and Neck"
University of Texas Health Science Center - Houston
Department of Otolaryngology / Head and Neck Surgery
Grand Rounds 4/96

"Carotid Body Tumors"
M.D. Anderson Cancer Center
Department of Head and Neck Surgery
Grand Rounds 2/96

"Local Flaps of the Head and Neck"
M.D. Anderson Cancer Center
Department of Head and Neck Surgery
Grand Rounds 10/96

"Peritonsillar Abscess"
University of Texas Health Science Center - Houston
Department of Otolaryngology / Head and Neck Surgery
Grand Rounds 1/97

"Rhytidplasty"
University of Texas Health Science Center - Houston
Department of Otolaryngology / Head and Neck Surgery
Grand Rounds 5/97

"Framework Growth Following Grade III Microtia Reconstruction; Is It Real and What are the Implications"
Robert A. Jahrsdoerfer Lectureship
Department of Otolaryngology / Head and Neck Surgery and The Division of Plastic Surgery
University of Texas - Houston Medical School 7/97

"Lip Reconstruction"
M.D. Anderson Cancer Center
Department of Head and Neck Surgery
Grand Rounds 8/97

"Pediatric Facial Fractures"
University of Texas Health Science Center - Houston
Department of Otolaryngology / Head and Neck Surgery
Grand Rounds 10/98

"Complications of Otitis Media"
University of Texas Health Science Center - Houston
Department of Otolaryngology / Head and Neck Surgery
Grand Rounds 7/99

"Complications of Endoscopic Sinus Surgery"
University of Texas Health Science Center - Houston
Department of Otolaryngology / Head and Neck Surgery
Grand Rounds 10/98

"Framework Growth Following Grade III Microtia Reconstruction; Is It Real and What are
the Implications" Poster Presentation 1998 American Society of Plastic Surgery annual
meeting Boston, MA

"Complications Associated With Hydroxyapatite Cement Use in the Frontal Sinus"
American Society of Plastic Surgery Senior Resident's Conference
Providence, Rhode Island 3/2001

"Breast Reconstruction – A Woman's Right to Know Her Options"
Memorial Medical Center Annual Symposium
New Orleans, LA 10/01

"Perforator Flap Breast Reconstruction – State of the Art"
Womens' Expo Ponchartraine Center
New Orleans, LA 5/03

"Advances in Breast Reconstruction"
Gulfport, Mississippi 11/03

"Application and Refinement of the Gluteal Artery Perforator Free Flap for Bilateral
Simultaneous Breast Reconstruction"
American Society for Reconstructive Microsurgery Annual Meeting
Palm Springs, CA 1/19/2004

"State of the Art Advances in Breast Reconstruction"
Lieselotte Tansey Breast Center Health Symposium
New Orleans, LA 11/16/04

"A 10 Year Retrospective Review of 758 DIEP Flaps for Breast Reconstruction."
American Society of Plastic Surgery Annual Meeting
Scottsdale Arizona 5/2005

"Aesthetic Considerations for the Superior Gluteal Artery Perforator Free Flap Donor Site"
American Society for Reconstructive Microsurgery Annual Meeting
Miami, FL 1/2005

## Postgraduate Courses:

Temporal Bone Anatomy Course
University of Texas Health Science Center - Houston
Department of Otolaryngology / Head and Neck Surgery 4/96, 4/97, 4/98, 4/99

Soft Tissue Surgery Course
University of Texas Health Science Center - Houston
Department of Otolaryngology / Head and Neck Surgery 1/96

AO/ASIF Maxillofacial Course on the Operative Treatment of Fractures and Nonunions
San Antonio, TX 4/97

Laser Safety and Cosmetic Applications of the Carbon Dioxide Laser
University of Texas Health Science Center Dental Branch - Houston 6/97

Reflux in Otolaryngology: State of the Art Diagnosis and Treatment
Sponsored by the Bowman Gray School of Medicine of Wake Forest University
Houston, TX 10/97

Hand Fracture Management Course
LSU Health Science Center
Division of Plastic and Reconstructive Surgery
New Orleans, LA 9/99

Ultrasonic Liposuction Course
New Orleans, LA 10/99

Basic Craniomaxillofacial Surgery Symposium
New Orleans, LA 10/00

## Meetings Attended

Annual Meeting American Academy of Facial Plastic and Reconstructive Surgery
San Francisco, CA 1997

Annual Meeting American Society of Plastic Surgery
Boston, MA 1999

Craniofacial/Cleft Palate Mission Trip
Faith in Practice
Antigua, Guatemala 1999

American Society of Plastic Surgery Senior Resident's Conference
Providence, Rhode Island 3/2001

Annual Meeting American Society of Plastic Surgery
New Orleans, LA 2001

Louisiana Society of Plastic Surgery Annual Meeting
New Orleans, LA 2002

Annual Meeting American Society for Reconstructive Microsurgery
Palm Springs, CA 1/2004

Breast Surgery and Body Contouring Symposium
Santa Fe, New Mexico 8/04