UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE CENTER FOR RESTORATIVE BREAST SURGERY, LLC; CT; AND LH, *Plaintiffs* | CIVIL ACTION<br><br>**NO. 06-9985 and CONSOLIDATED CASES (ALL CASES)** |
| VERSUS | |
| BLUE CROSS BLUE SHIELD OF LOUISIANA; AND BLUE CROSS BLUE SHIELD OF ALABAMA, *Defendants* | JUDGE AFRICK<br><br>SECTION I<br><br>MAGISTRATE JUDGE ROBY (4) |

## MOTION TO REMAND

Plaintiffs--The Center for Restorative Breast Surgery, L.L.C., and all the individually named patient/plaintiffs in this lead case and all the other actions consolidated with it--hereby move this Court to remand all of these cases to the Civil District Court for the Parish of Orleans, State of Louisiana, under 28 U.S.C. § 1447(c), because this Court lacks subject-matter jurisdiction. As plaintiffs more fully set forth in the attached Memorandum, defendants have failed to establish any ground for removing these cases from state court pursuant to 28 U.S.C. § 1441 on the basis of federal-question jurisdiction under 28 U.S.C. § 1331, diversity of citizenship under 28 U.S.C. § 1332, or supplemental jurisdiction under 28 U.S.C. § 1367.

934281-1

**EXHIBIT**

D1

**WHEREFORE,** The Center for Restorative Breast Surgery, L.L.C. and the individually named patient/plaintiffs pray that their Motion to Remand be granted and that the consolidated cases lacking subject-matter jurisdiction be remanded to the Civil District Court for the Parish of Orleans.

Respectfully submitted,

Campbell E. Wallace, T.A. (La. #13195)
Jonathan C. McCall (La. #9227)
Kurt D. Duncan (La. #29842)
-of-
CHAFFE McCALL, L.L.P.
1100 Poydras Street
2300 Energy Centre
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
*Attorneys for Plaintiffs, The Center for Restorative Breast Surgery, LLC*

/s/Darryl M. Phillips
Darryl M. Phillips (La. #19736)
The Cochran Firm-New Orleans
PHILLIPS & MITCHELL, L.L.C.
909 Poydras Street, Suite 1580
New Orleans, LA 70112
Telephone: (504) 588-1580
Facsimile: (504) 588-1589
*Attorneys for Plaintiffs, CT, LH, and all other named patients/plaintiffs in the consolidated cases*

934281-1

2

06-9985 Africk/Roby

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion has been filed with the United States District Court for the Eastern District of Louisiana by the electronic case filing/case management system and served on all counsel of record by either electronic mail or by placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereto.

New Orleans, Louisiana, this 15th day of December, 2006.



934281-1

3

06-9985 Africk/Roby

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

THE CENTER FOR RESTORATIVE
BREAST SURGERY, LLC; CT; AND LH,
       *Plaintiffs*

VERSUS

BLUE CROSS BLUE SHIELD OF
LOUISIANA; AND BLUE CROSS BLUE
SHIELD OF ALABAMA,
       *Defendants*

CIVIL ACTION

**NO. 06-9985 and
CONSOLIDATED CASES
(ALL CASES)**

JUDGE AFRICK

SECTION I

MAGISTRATE JUDGE ROBY (4)

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Plaintiffs--The Center for Restorative Breast Surgery, L.L.C. (the "Center") and all the individual patient/plaintiffs in this lead case and all cases consolidated with it-- urge this Court to remand the cases to the Civil District Court for the Parish of Orleans, State of Louisiana, under 28 U.S.C. § 1447(c), for lack of subject-matter jurisdiction. Neither the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.,* nor any other federal statute provides any basis for federal-question jurisdiction under 28 U.S.C. § 1331. Likewise, complete diversity of citizenship does not exist among the parties to establish jurisdiction under 28 U.S.C. § 1332. Moreover, no

basis for exercising supplemental jurisdiction over parties exists under 28 U.S.C. § 1367. This Court should therefore remand under 28 U.S.C. § 1447(c).

## FACTUAL BACKGROUND

The principals of plaintiff, The Center for Restorative Breast Surgery, L.L.C. ("the Center"), are two plastic surgeons, Drs. Frank Dellacroce and Scott Sullivan. Their practice is located in New Orleans, and they specialize in breast reconstruction surgery for women who have had mastectomies as treatment for breast cancer.  *See* **Exhibit 1** (Unsworn Declaration of Cheri Saltaformaggio submitted under 28 U.S.C. § 1746).

Because only a handful of surgeons nationwide routinely perform the state-of-the-art surgeries that the Center performs, most of the Center's patients are from out-of-state. The co-plaintiffs in these actions are former patients of the Center.  *Id.* at ¶ 6.

Breast reconstruction surgery is expensive.  It can take Drs. Dellacroce and Sullivan working as co-surgeons under a microscope up to eight to ten hours to perform the GAP, DIEP and "Stacked" Chimeric procedures by "harvesting" tissue from a woman and microsurgically reconstructing her breast(s).  *Id.* at ¶ 7.

A large number of patient/plaintiffs of the Center involved in this litigation have health insurance through the Blue Cross Blue Shield licensees in the states where they live (the "Home Plan" defendants).  The Center contracts directly with each Home Plan before each surgery is performed.  After the patient/plaintiff is approved for surgery at the Center by her Home Plan, she travels to New Orleans where the Center performs the reconstructive procedures at area hospitals.  *Id.* at ¶ 8.

2

The Center bills the patient/plaintiff and the Home Plan for her surgical procedures. However, Blue Cross Blue Shield of Louisiana ("BCBSLA") adjusts and prices the Center's billed charges for all the Home Plan patients. *Id.* at ¶ 10.

BCBSLA controls the price for billed charges for BCBSLA and Home Plan patients treated by the Center, who **all** on average pay six cents on the dollar of the Center's billed charges – well below the usual and customary charges for GAP, DIEP and "Stacked" Chimeric procedures. *Id.* at ¶ 11.

BCBSLA has said to the Center that it wants the Center to be in the Blue Cross Blue Shield network (where it could dictate prices for breast reconstruction surgery). BCBSLA has used its position as the exclusive claims adjuster for the Home Plans to slow or deny payment of the Center's billed charges for breast reconstruction surgery. BCBSLA's representatives have even asked the Center why it continues to perform breast reconstruction surgeries for BCBSLA and Home Plan patients when the Center is paid little or nothing and have suggested that if the Center re-entered the BCBS network the payments for billed charges would improve. *Id.* at ¶ 12.

Since the Center left the BCBS network in the Spring of 2004, it has performed breast reconstruction surgeries for which BCBSLA and the Home Plans have paid zero or pennies on the dollar. *Id.* In September 2006, the Center re-submitted most, if not all, of these outstanding billed charges, totaling several million dollars to BCBSLA for payment. To date, however, there have been no significant payments to the Center. *Id.* at ¶ 13.

3

## PROCEDURAL BACKGROUND

The Center has filed 31 Petitions for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana, against defendants, BCBSLA and the Home Plans providing insurance to individual patients in their home states (the "Home Plans").[1]  *See* **Exhibit 2** (summary chart of the removed cases as permitted by Fed.R.Evid. 1006).  In the First Amended and Restated Petitions filed in each of those cases, the Center alleges that the Home Plans paid zero or low amounts owed on open accounts with the Center for breast reconstruction surgery services that it rendered to the affected patients.[2]  The Center has further alleged that it detrimentally relied on the Home Plans' representations that they would pay a reasonable price for the medical services provided, that the Center has been harmed by the Home Plans' failure to pay, that the Center is entitled under quantum meruit to a reasonable price for services performed for each of the patient/plaintiffs, and that the Home Plans will be unjustly enriched if they pay little or nothing for medical services provided by the Center.[3]

In the alternative, the Center has also asserted additional claims as the assignee of each patients' claims.  In some of the cases filed in Louisiana state court, individual patients have joined as named party plaintiffs, who are identified by initials rather than by their full names because of privacy concerns.  In other cases, the patients are not named as parties/plaintiff but are referenced in the petitions and exhibits filed by the Center alone.

---

[1] For ease of reference, concerning claims against BCBSLA for its failure to pay claims by plaintiff/patients in BCBSLA, BCBSLA will be referred to as a Home Plan, just like the other BCBS entities.
[2] *See* First Amended and Restated Petition, ¶¶ 2-4, in Civil Action No. 06-9985.  Except for the affected patients and the Home Plans involved, the allegations of this pleading are substantially similar to the first amended and restated petitions filed in the other 30 cases.
[3] *Id.* at ¶ 7.

The First Amended and Restated Petitions allege that each patient/plaintiff had a contract of health insurance with the Home Plans that obligated the Home Plans to adjust and price billed charges for medical services provided to each affected plaintiff such that the patient/plaintiff would have little or no uninsured liability for these procedures.[4] Plaintiffs have further alleged that the Home Plans in turn had an agreement with BCBSLA to adjust and price medical services for out-of-network providers of medical services in Louisiana that was intended to directly benefit the patient/plaintiffs.[5] The amended petitions allege that BCBSLA and the Home Plans breached their duties to each patient/plaintiff by misrepresenting or miscoding the breast reconstruction procedures performed by the Center (as a lower-priced procedure they are not), that BCBSLA misinformed the Home Plans about the GAP, DIEP and "Stacked" Chimeric procedures, that BCBSLA and the Home Plans incorrectly priced the billed charges of the Center at pennies on the dollar, that BCBSLA incorrectly represented that and treated the Center as a Blue Cross network provider, that both defendants had incorrectly used "allowable amounts" for in-network providers for procedures performed by the Center as an out-of-network provider, and that the defendants violated Louisiana state insurance statutes, including La. R.S. 22:250.17, which requires insurance coverage for reconstructive surgery following a mastectomy and prohibits an insurer from passing on uninsured liability to breast cancer survivors by refusing to pay a fair price for its insured, statutory liability for breast reconstruction surgery.[6]

In their First Amended and Restated Petitions, plaintiffs have emphasized that they bring their claims against the defendants solely in the defendants' capacities as

---

[4] *Id.* at ¶¶ 8-9.
[5] *Id.* at ¶ 10.
[6] *Id.* at ¶¶ 12-18.

5

health insurers subject to state law and are not alleging any claims against the defendants in their capacities as alleged ERISA administrators or fiduciaries subject to ERISA.[7]

The defendant Home Plans have filed Notices of Removal to this Court in their respective cases, asserting that ERISA provides federal-question jurisdiction under the "complete preemption" doctrine and that plaintiffs' allegations concerning non-payment of benefits for medical expenses relate to ERISA plans and health insurance benefits that some – but not all – of the affected patients had obtained through their employers. In addition to this purported federal-question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), some of the removing defendants further assert that diversity jurisdiction exists under 28 U.S.C. § 1332 by arguing that BCBSLA is improperly joined and that its Louisiana citizenship should be disregarded in determining diversity. All removing defendants further apparently contend that this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over any patient/plaintiffs – and the Center as assignee – who were never enrolled in an ERISA plan. In an Order (Doc. 4) entered after a status conference, this Court has consolidated the 31 removed cases for pre-trial purposes only.

## THE ALIGNMENT OF THE PARTIES

In each action, the Center and the patient/plaintiffs -- directly or as assignee – are parties, some of whom might be subject to ERISA employee welfare benefit plans and some whom cannot be:

1.     The Center has its own claims as a non-ERISA entity against the BCBSLA and Home Plans for their failure to pay billed charges.

---

[7] *Id.* at ¶¶ 19-20.

6

06-9985 Africk/Roby

2.    Alternatively, the patient/plaintiffs have assigned their rights under the insurance policies to the Center, and the Center stands in the patient/plaintiffs' shoes. If a patient/plaintiff is not subject to ERISA, then the Center likewise cannot, as assignee, be subject to ERISA for this patient's insurance claims.

3.    In the further alternative, if the patient/plaintiff is enrolled in an employee welfare benefit plan subject to ERISA, then the Center – as assignee only – would arguably be subject to ERISA.  But, as explained herein, ERISA does not preempt these claims or justify the removal of these cases.

## LAW AND ARGUMENT

"The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  Any doubts or ambiguities concerning the removal are construed against it and in favor of remanding the case back to state court. *Id.*; *Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858, 863 (E.D. La. 2003).  The removing defendants have failed to carry their burden in these consolidated cases.  As explained below, neither federal-question nor any other form of federal subject-matter jurisdiction exists in these cases.  ERISA does not preempt plaintiffs' claims, no basis for diversity or supplemental jurisdiction exists, and this Court should remand all these cases governed by state law to Louisiana state court.

### I.    No Federal-Question Jurisdiction Exists

The removing defendants wrongly suggest that ERISA completely preempts the independent claims of the Center and assigned claims of all non-ERISA plaintiffs in all of the consolidated cases.  As the Fifth Circuit has recognized, there are two types of

preemption under ERISA. *Arana v. Ochsner Health Plan,* 338 F.3d 433, 437-39 (5ᵗʰ Cir. 2003) (*en banc*). The first is "complete" preemption under § 502(a) of ERISA, 29 U.S.C. § 1132(a), the civil enforcement provision of the statute, whereby a participant or beneficiary sues to recover benefits, to enforce rights, or to clarify rights to future benefits under the terms of an ERISA plan. *Id.* at 437-38. The second is "conflict" or "ordinary" preemption under § 514 of ERISA, 29 U.S.C. § 1144, which states that the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described" in ERISA. *Id.;* 29 U.S.C. § 1144.

Complete preemption is an exception to the well-pleaded complaint rule such that any civil complaint raising a claim in a completely preempted area is necessarily federal in character. *Id.* at 437. A claim that seeks relief "within the scope of the civil enforcement provisions of § 502(a)" of ERISA is required for removal jurisdiction under this doctrine. *Id.* at 440 (citing *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 66, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987)). On the other hand, as a matter of law, mere conflict preemption under § 514 of ERISA cannot create removal jurisdiction; rather, it is an affirmative defense to claims that are not completely preempted under 28 U.S.C. § 1132(a). *See Ellis v. Liberty Life Assur. Co.,* 394 F.3d 262, 276 n.34 (5ᵗʰ Cir. 2004), *cert. denied,* 545 U.S. 1128 (2005); *Giles v. NYLCare Health Plans, Inc.,* 172 F.3d 332, 337 (5ᵗʰ Cir. 1999).

Under conflict-preemption principles, "a law relates to an ERISA plan 'if it has a connection with or reference to such a plan.'" *Anderson v. Elec. Data Sys. Corp.,* 11 F.3d 1311, 1313 (5ᵗʰ Cir. 1994) (quoting *Ingersoll-Rand Co. v. McClendon,* 498 U.S.

133, 139, 111 S. Ct. 478, 483, 112 L. Ed. 2d 474 (1990)). Although it recognizes that the conflict preemption clause of 29 U.S.C. § 1144(a) is broadly worded, the Supreme Court has "declined to apply an 'uncritical literalism' to the phrase ['relate to'] and instead takes 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.'" *Bank of La. v. Aetna US Healthcare Inc.,* ____ F.3d ___ (5th Cir. 2006), No. 04-30986, 2006 U.S. App. LEXIS 25798, at *9 (5th Cir. Oct. 18, 2006) (quoting *Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141, 147, 121 S. Ct. 1322, 149 L. Ed. 2d 264 (2001)). "[S]ome state laws may affect an ERISA plan in 'too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan.'" *Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Tex., Inc.,* 164 F.3d 952, 954 (5th Cir. 1999) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 485, 496-97, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983)).

In asserting complete ERISA preemption, the defendants bear the burden of proving these elements under a two-prong test:

> A defendant pleading preemption must prove that: (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities-the employer, the Plan, and its fiduciaries, and the participants and beneficiaries."

*Bank of La.,* 2006 U.S. App. LEXIS 25798, at *10 (quoting *Mayeaux v. La. Health Serv. & Indem. Co.,* 376 F.3d 420, 432 (5th Cir. 2004)).

Here, the removing defendants cannot meet their burden of proving complete ERISA preemption. First, the majority of the women who underwent reconstructive surgery at the Center and who are involved in these cases are "non-ERISA" patients who

9

purchased private health care insurance individually and were not enrolled in an employee welfare plan as defined in and subject to ERISA. *See* **Exhibit 3** (summary chart of "ERISA" and "non-ERISA" patients based on the defendants' removal papers). Second, the Center is an independent healthcare provider asserting state-law claims as a result of the Home Plans' failure to pay expenses that they had previously represented to the Center they would pay. Such claims are beyond the scope of ERISA. Third, plaintiffs are asserting rights under a specific Louisiana insurance statute, La. R.S. 22:250.17, which is exempt from ERISA preemption. Fourth, the Center's alternative claims as an assignee of the patients' rights are likewise not preempted.

### A. The majority of the patients affected are not covered under ERISA plans.

A defendant asserting preemption under ERISA must first establish that the health insurance policy at issue is in fact an "employee welfare benefit plan" within the meaning of ERISA. In 29 U.S.C. § 1002(1), ERISA defines such a plan as one "established or maintained by an employer or by an employee organization, or by both, to the extent that such plan . . . was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. . . ." Such ERISA employee welfare benefit "plans" do not include "bare purchases of health insurance" by an individual who buys health insurance for herself or her family under circumstances where an employer "neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." *Taggart Corp. v. Life & Health Benefits Admin.*, 617 F.2d 1208, 1211 (5th Cir. 1980). In such a case, federal subject-matter jurisdiction under

10

ERISA is absent, and the individual claimant is free to pursue the insurance claim in an appropriate state court. *Id.* at 1211-12.

In short, "to constitute an ERISA plan, a plan must be established or maintained by an employer for the benefit of employees." *Meredith v. Time Ins. Co.,* 980 F.2d 352, 358 (5th Cir. 1993). Under the controlling definition of ERISA, health insurance "without employees are, by definition, not regulated by ERISA" and such an insured's "state-law claims are not preempted." *Id.*

The notices of removal in these consolidated cases assert that some – but not all – of the affected patients are enrolled in employee medical benefits plans and that the employers in turn obtained health insurance coverage for administration services through contracts with the Home Plans. But the removing defendants further concede that certain other patients referenced in these cases purchased health insurance policies directly from the Home Plans, and the defendants assert that this Court can exercise "supplemental" jurisdiction over the claims by these non-ERISA parties. Indeed, 69% of the total number of patients who received reconstructive surgery at the Center and whose claims are at issue in these 31 consolidated cases are such "non-ERISA" plaintiffs, who are not enrolled in employee welfare benefit plans and whose claims are beyond the scope of ERISA. Thus, ERISA simply does not apply to those claims and cannot preempt them. *See* **Exhibit 3** (summary chart of "ERISA" and "non-ERISA" patients in each suit). Hence, the claims of any such patients who are not enrolled in employee welfare benefit plans are not subject to ERISA, and the removing defendants have no basis for asserting federal-question jurisdiction over them based on ERISA preemption.

06-9985 Africk/Roby

**B.      The Center is an independent healthcare provider asserting state-law claims.**

"The Supreme Court has recognized two types of civil actions that may be brought against ERISA plans." *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 248 (5th Cir. 1990) (citing *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 832-33, 108 S. Ct. 2182, 100 L. Ed. 2d 836 (1988)). "The first involves enforcement actions under section 502 brought by specified ERISA entities to secure certain specified relief," whereas the second category includes "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan," [which] "all involve claims brought by non-ERISA entities." 904 F.2d at 248 (quoting *Mackey*, 486 U.S. at 822).

In *Mem'l Hosp. Sys.*, the Fifth Circuit held that ERISA's preemptive force did not extend to a claim by a hospital seeking damages from an insurance company and its agents for their negligent misrepresentation of insurance coverage. 904 F.2d at 250. *See also Cypress Fairbanks Med. Ctr. v. Pan-American Life Ins. Co.*, 110 F.3d 280, 283 (5th Cir. 1997) ("ERISA does not preempt a third-party provider's state-law claims if that third party's claim is premised on a finding that the beneficiary is not covered at all by an existing ERISA plan.").

Recently, in *N. Utah Healthcare Corp. v. BC Life & Health Ins. Co.*, 448 F. Supp. 2d 1288, 1290-92 (D. Utah 2006), citing the *Cypress Fairbanks* decision, a federal district court in Utah likewise held that ERISA's preemptive provision does not reach third-party healthcare providers who have relied to their detriment on the misrepresentations of an insurer. In that case, ERISA preemption did not reach a claim by a hospital against an employee health and welfare plan for the unpaid balance of

elective surgery received by the covered employee, where the defendant insurer had led the hospital to believe that all qualifying benefits would be paid and that the plan would cover all costs of treatment.   The healthcare provider's claims devolved from the insurer's alleged misrepresentations, did not implicate the ERISA contract, and instead arose from an alleged oral contract created between the insurer and the healthcare provider during conversations where coverage was discussed.  *Id.* at 1291.  The plaintiff healthcare provider did not qualify as an ERISA plan participant, and the court granted the motion to remand.  *Id.* at 1292-93.  *See also Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.*, 944 F.2d 752, 756 (10th Cir. 1991) (plaintiff Hospice's claims in detrimental reliance, quantum meruit, and as a third-party beneficiary were not preempted by ERISA).  "An action brought by a healthcare provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the insurance plan.  Preemption in this case would stretch the 'connected with or related to' standard too far."  *Hospice of Metro Denver,* 944 F.2d at 756.

In the consolidated cases removed to this Court, the Center is suing on open account for unpaid services rendered for reconstructive breast surgery.  Alternatively, the Center alleges that "the Home Plan represented to the Center by its conduct and words that it would pay a reasonable price for the medical services provided by the Center as an out-of-network provider for the patient/plaintiff(s), the Center detrimentally relied on those representations by providing medical services for the patient/plaintiff(s), the Center has been harmed by the Home Plan's failure to pay and is entitled under quantum meruit to a reasonable price for the services performed by the Center for each of the

patient/plaintiff(s) listed on Exhibit 'A,' and the Home Plan has been unjustly enriched."[8]

Under these allegations, ERISA does not preempt the Center's claims as a third-party

healthcare provider. The Center's direct claims must be remanded.

### C. Plaintiffs' claims under La. R.S. 22:250.17 are saved from preemption under ERISA.

The individually named patient/plaintiffs, and the Center as their assignee, have

alleged that the Home Plans and BCBSLA violated La. R.S. 22:250.17, which requires

insurance coverage for reconstructive surgery after mastectomies, specifies that "such

coverage shall be in a manner determined in consultation with the attending physician

and the patient," and prohibits the health insurer from reducing its coverage obligations

through high deductibles and co-pays:

> ### § 250.17. Required coverage for reconstructive surgery following mastectomies
>
> A.   A group health plan, a health insurance insurer providing health insurance coverage in connection with a group health plan, or health insurance coverage offered by a health insurance insurer in the individual market that provides medical and surgical benefits with respect to a mastectomy shall provide, in the case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for reconstruction . . . and such coverage shall be in a manner determined in consultation with the attending physician and the patient. **The coverage provided in this Section may be subject to annual deductibles, coinsurance, and copayment provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage. . . .**
>
>                 * * *
>
> C.   A group health plan, a health insurance insurer offering group health insurance coverage in connection with a group

---

[8] *Id.* at ¶ 7.

14

> health plan, or health insurance coverage offered by a health insurance insurer in the individual market may not:
>
> * * *
>
> (2)   Penalize or otherwise reduce or limit the reimbursement of an attending provider, or provide monetary or nonmonetary incentives to an attending provider, to induce such provider to provide care to an individual participant or beneficiary in a manner inconsistent with this Section.

(Emphasis added).   ERISA expressly exempts such a state insurance law from preemption under 29 U.S.C. § 1144(a). "ERISA pre-empts all state laws 'insofar as they may now or hereafter relate to any employee benefit plan,' 29 U.S.C. § 1144(a), but state 'laws ... which regulate insurance, banking, or securities' are saved from preemption, § 1144(b)(2)(A)." *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 333, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003).

To be saved from ERISA preemption as a "'law ... which regulates insurance' under § 1444(b)(2)(A)," it "must satisfy two requirements": (1) "the state law must be specifically directed toward entities engaged in insurance," and (2) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured" to come within the scope of ERISA's saving clause. 538 U.S. at 341-42. In *Miller*, a Kentucky insurance law substantially affected the risk-pooling arrangements that insurers may offer and was therefore saved from preemption under ERISA where the state statute provided that health insurers could not discriminate against any provider in the geographic coverage area of the health benefit plan who was willing to meet the terms and conditions for participation in it. *See also Metro. Life Ins. Co. v. Mass.*, 471 U.S.

724, 746, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985) (holding that ERISA did not preempt a state law mandating mental health benefits).

Here, La. R.S. 22:250.17 meets this two-prong test for exemption from ERISA preemption. First, it is a provision of the Louisiana Insurance Code specifically directed toward entities engaged in offering health insurance. Second, it substantially affects the risk-pooling arrangement between the insurer and the insured by imposing Louisiana state-law requirements on coverage for breast reconstructive surgery, by mandating "such coverage shall be in a manner determined in consultation with the attending physician and the patient," by specifying that the coverage provided may be subject to deductibles and copayment provisions "as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage," and by prohibiting a health insurer from penalizing or otherwise reducing or limiting the attending provider's reimbursement. La. R.S. 22:250.17(A).

The First Amended and Restated Petitions allege that the Home Plans and BSBSLA have violated these provisions by failing to adjust and pay the Center a reasonable price for the reconstructive surgeries it performed for these patients as an out-of-network provider. That is, by the insurer paying 6 cents on the dollar for the Center's billed charges, the Home Plans impose uninsured liability on the patients and effectively make the patient responsible for a 94 cent on the dollar "deductible" or "co-pay." Obviously, an insurer who pays six cents on the dollar for billed charges is not providing insurance coverage for breast reconstructive surgery as the Louisiana Legislature intended. The Center's and the non-ERISA plaintiffs' claims based on La. R.S. 22:250.17 do not implicate an employee welfare benefit plan subject to ERISA, are

beyond the preemptive scope of ERISA, and must be remanded, because they form no basis for federal-question jurisdiction over those claims.

**D.  The assignment of the patients' rights to the Center does not subject the Center's or the non-ERISA plaintiffs' independent claims to ERISA preemption.**

"ERISA is silent on the assignability of employee welfare benefits; it neither prohibits assignments nor mandates recognition of assignments." *La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 535 (5th Cir. 2006).  A healthcare provider may simultaneously assert both ERISA claims as an assignee and state-law claims as an independent third-party provider. *See The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008 (9th Cir. 1995); *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994).  "[T]he assignee is placed in the same position as the assignor." *Tango Transp. v. Healthcare Fin. Servs.*, 322 F.3d 888, 893 (5th Cir. 2003). Thus, if an assignor was not subject to ERISA, the assignee who stands in her shoes cannot be.

In these consolidated cases, however, the Center directly and alternatively as assignee only seeks recovery of the Center's unpaid bills for surgical services it rendered in reliance on the Home Plans' representations and seeks reasonable reimbursement that the Home Plans and BCBSLA have unjustly reduced or denied in violation of La. R.S. 22:250.17.  Importantly, as stated in *N. Utah Healthcare Corp.*, "a third-party health care provider, who relies to its [sic] detriment on the misrepresentations of an insurer, is an outside party to an ERISA plan." 448 F. Supp. 2d at 1290.

Further, when the insurer denies coverage to the beneficiary under the healthcare policy in question, there is no complete preemption under ERISA. *Transitional Hosps.*

17

*Corp.*, 164 F.3d at 955. As alleged in the First Amended and Restated Petitions, the Center has received <u>zero payments</u> for many of the surgeries it performed. *See* **Exhibit 4** (summary chart of zero-pay claims).

Although the Center has asserted alternative claims as assignee of the rights of its surgical patients, the First Amended and Restated Petitions clearly state that plaintiffs are making no claims against the defendants in any capacity as ERISA administrators but only as health insurers with a responsibility to pay claims. Those allegations do not preempt the Center's independent, direct state-law claims for money due it on open account or under theories of detrimental reliance, unjust enrichment, or any other statutory, tort, or contractual theory. Indeed, in *N. Utah Healthcare Corp.*, ERISA did not preempt the healthcare provider's claims as an independent third party, even though it alternatively requested the payment of medical bills as an assignee of the patient. 448 F. Supp. 2d at 1293 (stating that a routine assignment "does not remove plaintiff's ability to sue for damages in its capacity as a third-party provider").

Moreover, as to those "non-ERISA" patients in question who purchased private health insurance directly from the Home Plans rather than enrolling in ERISA-covered employee welfare benefit health plans, the claims of those non-ERISA plaintiffs brought by themselves individually or by the Center as their assignees are beyond the scope of ERISA and are not preempted in any way. And, even assuming that the Center were asserting as assignee the § 502 ERISA enforcement rights of patients who are covered by employer-sponsored health plans governed by ERISA, only those discrete claims under § 502 would be preempted, not the Center's own independent claims for non-payment of its surgical fees.

E.     **The FEHBA and the federal officer removal statute do not provide a basis for federal subject matter jurisdiction in this case .**

In one of the consolidated cases, Civil Action No. 06-10025, the removing defendant, Blue Cross Blue Shield of Florida, Inc., asserts that one of the nine affected patients, KG, is a federal employee enrolled in a plan governed by the Federal Employees Health Benefits Act (the "FEHBA"), 5 U.S.C. § 8901, *et seq.* "Neither the United States Supreme Court nor the Fifth Circuit have found complete preemption with respect to all FEHBA claims." *Transitional Hosps. Corp of La. v. La. Health Serv. & Indem. Co.,* No. 02-900, 2002 U.S. Dist LEXIS 14341, at *8 (E.D. La. July 30, 2002) (remanding a suit by an independent third-party medical provider alleging state-law claims of breach of contract and detrimental reliance against Blue Cross for allegedly erroneous representations that the provider would be reimbursed for treatment). In *Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. ___, 126 S. Ct. 2121, 165 L. Ed. 2d 131, 148 (2006), the Supreme Court recognized that FEHBA's preemption provision, § 8902(m)(1), whereby contract provisions supersede and preempt State or local law to the extent that it is inconsistent with such contractual provisions, "is not sufficiently broad to confer federal jurisdiction." Although ordinary preemption might apply to such claims, it is a defense that does not create federal jurisdiction. *See Transitional Hosps. Corp. of La.,* 2002 U.S. Dist. LEXIS 14341, at *8.

The removing defendant's reliance on the federal officer removal statute, 28 U.S.C. § 1442(a)(1), is likewise misplaced. That statute "is designed to protect officers of the federal government." *Transitional Hosps. Corp. of La.,* 2005 U.S. Dist. LEXIS 17823, at *7 (E.D. La. 2005). The Blue Cross Blue Shield defendants were not acting pursuant to a federal officer's directions when they allegedly misrepresented the

19

scope of the benefits to the Center and its patients. *See id.* at *7-13. As a result, Section 1442(a)(1) is not applicable to the facts of this matter.

## II.   No Diversity Jurisdiction Exists

Diversity jurisdiction under 28 U.S.C. § 1332(a)(1) requires parties who are citizens of different states. The longstanding complete diversity rule demands that all plaintiffs must be from different states from all defendants. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). As the Fifth Circuit has remarked, "Until Congress changes our jurisdiction and allows us to hear cases based on something less than complete diversity, we cannot act." *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 576 (5th Cir. 2004).

When removal is based on diversity of citizenship, it is determined from the fact of citizenship of the parties named, not from the fact of service. *N.Y. Life Ins. Co. v. Deshotel,* 142 F.3d 873, 883 (5th Cir. 1998). Even if complete diversity does exist, however, the case may not be removed from state to federal court if any defendant is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b); *Miranti v. Lee,* 3 F.3d 925, 926 n. 1 (5th Cir. 1993); *Getty Oil Corp. v. Ins. Co. of N. Am.,* 841 F.2d 1254, 1258 (5th Cir. 1988).

Complete diversity does not exist in any of the 31 removed cases at issue here. In all of the cases, the Center as plaintiff is not diverse from the defendant BCBSLA, because both of them are Louisiana corporations with their principal places of business in this State. Furthermore, in many of these cases, a named patient/plaintiff is domiciled in

the same state where the defendant Home Plan is domiciled, thereby doubly destroying diversity.[9]

Insofar as the removing defendants argue that BCBSLA is an improperly or "fraudulently" joined defendant whose citizenship should be disregarded, "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood*, 385 F.3d at 574. "To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Id.* at 572. The court's "sole concern" is whether there is a possibility that the plaintiff has set forth a valid cause of action against the in-state defendant. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995). The court must "evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff," and "must then examine relevant state law and resolve all uncertainties in favor of the nonremoving party." *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205-06 (5th Cir. 1983), *cert. denied*, 464 U.S. 1039 (1984).

In order to predict "whether a plaintiff has a reasonable basis of recovery under state law" to preclude a finding of improper joinder, the court should conduct a Rule 12(b)(6)-type analysis, which looks solely at the "allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 572. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* Only where a plaintiff "has

---

[9] *See* Civil Action Numbers 06-9985, 06-10019, 06-10021, 06-10023, 06-10025, 06-10028, 06-10030, and 06-10044.

misstated or omitted discrete facts that would determine the propriety of joinder" may the court "in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.*

Here, plaintiffs' first amended and restated petitions pass muster under Rule 12(b)(6). BCBSLA is a properly joined defendant on claims alleged by the patient/plaintiffs and the Center as the assignee of their claims. Although some defendants have asserted in their notices of removal that BCBSLA is improperly joined because no "contract" exists as the basis for this third-party beneficiary claim, in correspondence to the Louisiana Department of Insurance BCBSLA has admitted that such a contract indeed exists:

> BCBSLA has an agreement with the Blue Cross and Blue Shield Association to participate in the BlueCard Program and Electronic Claims Routing Process (ECRP) Program. The **BlueCard** Program applies to claims for participating providers. It allows the subscriber's Home Plan (plan where subscriber's contract is issued) to receive and process claims incurred by their members outside of their service area while utilizing the Host Plan's (plan area where services were incurred) participating provider's discounts. The BlueCard agreement does not include a fee for the Host Plan for administrative services for routing the claims and an access fee for utilizing the Host Plan's provider contracts. The access fee is based on the Host Plan's discount savings provided through their participating provider contract. The **ECRP** Program is used for non-participating provider claims to route the claim from the Host Plan to the Home Plan for processing. The ECRP agreement includes the administrative service fee only since there is no discount. In this case, The Center is not participating with BCBSLA. Therefore, the ECRP or ECRP Plus agreement would apply. The ECRP Plus computer platform is used when the provider request and 835 remittance which is a HIPAA Compliant Electronic Remittance Advice.

*See* **Exhibit 5** attached (Affidavit of Campbell E. Wallace and attached correspondence dated January 3, 2006, from BCBSLA to the Office of the Commissioner of Insurance at

p. 2). BCBSLA further admits that it receives an administrative fee for electronically forwarding the claim to the Home Plan. *Id.* at 2-3. Under these circumstances, the petitions have stated breach-of-contract claims against BCBSLA.

Furthermore, under Louisiana law, "when a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and . . . he may elect to recover his damages in either of the two actions." *Corbello v. Iowa Prod.,* 850 So. 2d 686, 708 (La. 2003) (citing *Fed. Ins. Co. v. Ins. Co. of N. Am.,* 263 So. 2d 871 (La. 1972)). "There is a general rule that a party can incur liability in tort, notwithstanding a contractual relationship between the parties, for consequential damages . . . where the act causing the damage constitutes both a breach of contract and legal fault." *Borden, Inc. v. Howard Trucking Co., Inc.,* 454 So. 2d 1081, 1096 (La. 1984). Where a contract is breached by negligence, the damaged party may bring his suit either on breach of the contract or on tort. *Certain Underwriters at Lloyd's, London v. Sea-Lar Mgmt., Inc.,* 787 So. 2d 1075, 1079 (La. App. 4 Cir. 2001). Thus, in addition to the contractual claims alleged, plaintiffs in all of these removed cases have possible tort claims against the defendants.

Moreover, violations of a statute can likewise give rise to a duty in tort. A defendant's duty to conform his conduct to a specific standard may be expressed or implied, either statutorily or jurisprudentially. *Porteous v. St. Ann's Café & Deli,* 713 So. 2d 454 (La. 1998). "[W]hile statutory violations are not in and of themselves definitive of civil liability, they may be guidelines for the court in determining standards of negligence by which civil liability is determined." *Gatlin v. Entergy Corp.,* 904 So. 2d 31, 35 (La. App. 4 Cir. 2005). "Violation of a statute is negligence per se and if this

negligence is the legal cause of the accident, it is actionable." *Coleman v. Douglas Pub. Serv., Inc.,* 423 So. 2d 1205, 1207-08 (La. App. 4 Cir. 1982). Here, plaintiffs have alleged violation of a specific provision of the Louisiana Insurance Code, La. R.S. 22:250.17, and have thereby stated claims in tort.

The liberal pleading rule of Fed. R. Civ. P. 8(a)(2) merely requires a plaintiff to recite a "short and plain statement of the claim showing that the pleader is entitled to relief." *Gen. Elec. Capital Corp. v. Posey,* 415 F.3d 391, 396 (5th Cir. 2005). Such a statement simply must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* "[P]arsing the allegations into elements has never been required." *Id.* at 396 n. 5 (citing 2 *Moore's Federal Practice,* § 8.04[1] (3d ed. 2005). Under the lenient standard of notice pleading, a "short and plain statement of the claim" is sufficient. *Id.* at 397. The test is whether the complaint "outlines or adumbrates" a violation of the statute, theory of recovery, or constitutional provision on which the plaintiff relies and connects the violation to the named defendants. *Id.*

Likewise, under Louisiana civil procedure, pleadings "must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice." *Coleman v. Deno,* 787 So. 2d 446, 460 (La. App. 4 Cir. 2001). "Under fact pleading, as opposed to theory pleading, the court is bound to construe allegations of fact under any theory of law that entitles the pleader to relief." *Id.* La. Code Civ. P. art. 891 requires the petition to "contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation. . . ." *Brown v. Adolph,* 691 So.2d 1321, 1325 (La. App. 1 Cir. 1997). "As long as the facts constituting a claim are alleged,

the party may be granted any relief to which he is entitled under the pleadings and the evidence." *Id.*

Louisiana law recognizes a cause of action in tort for negligent misrepresentation that causes economic loss, even where the parties have no privity of contract between them. *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1014 (La. 1993). Under Louisiana law, a negligent-misrepresentation claim "is made out when a person, in the course of his business or other matters in which he has a pecuniary interest, supplies false information, without exercising reasonable care, for the guidance of others, who justifiably and detrimentally rely on such information and thereby suffer a pecuniary loss." *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 292 (5th Cir. 2001). "This tort applies to both non-disclosure and misinformation cases." *Society of Roman Catholic Church of Diocese of Lafayette, Inc.*, 126 F.3d 727, 742 (5th Cir. 1997). The Center has stated a cause of action in negligent misrepresentation against defendants.

Under these pleading standards, the amended petitions in all of these consolidated cases state viable causes of action against BCBSLA. The removing defendants have failed to satisfy their burden of proving improper joinder of this in-state defendant. Complete diversity does not exist in any of the removed cases, and defendants have no valid ground for removal based on original jurisdiction under 28 U.S.C. § 1332.

**III.    No Supplemental Jurisdiction Exists**

The removing defendants erroneously contend that this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the claims concerning non-ERISA patients. The supplemental jurisdiction statute is not a source of original subject matter

jurisdiction, and a defendant may not base a removal petition on it. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996).

As explained above, this Court has no federal-question jurisdiction over the plaintiffs' claims concerning any non-ERISA patient who obtained her health insurance directly from the Home Plan as an individual rather than enrolling in an employee welfare benefit plan as defined in 28 U.S.C. § 1002(1). ERISA does not preempt those parties' claims, and they are free to litigate all their claims in state court. "[A] district court does not have supplemental jurisdiction under 28 U.S.C. § 1367 to entertain the merits of claims in a state court suit which was removed without original jurisdiction." *Zewe v. The Law Firm of Adams & Reese*, 852 F. Supp. 516, 520 (E.D. La. 1993) ("Having determined that removal of Zewe's suit was improper because there is no original jurisdiction over any claim asserted by him, the exercise of supplemental jurisdiction over the claims in this case would violate the provisions of the removal statutes."). *See also Bergeron v. Pan Am. Assurance Co.*, No. 97-1637, 1997 U.S. Dist. LEXIS 13709, at *5-6 (E.D. La. 1997) ("[S]ince there is no dispute that the named Plaintiffs' policies are not subject to ERISA, the court concludes that the named Plaintiffs' state law claims are not subject to ERISA pre-emption, and the matter must be remanded."). Indeed, 28 U.S.C. § 1447(c) expressly provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

This Court must remand all claims asserted by the non-ERISA plaintiffs and the Center's direct claims and claims as assignee of those non-ERISA plaintiffs.

Moreover, even assuming that the removing defendants established that ERISA completely preempts the claims of the "ERISA plaintiffs" as claims to enforce the plan provisions under § 502 of ERISA, this Court still has authority to remand the non-preempted claims under state law.  Under 28 U.S.C. § 1441(c), "[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." *See also Williams v. Spencer*, No. 00-1694, 2001 U.S. Dist. LEXIS 3482, *3-6 (E.D. La. Mar. 21, 2001) (finding that all of plaintiff's claims, except for the claim for contractual medical benefits, were predominated by state law, declining to exercise supplemental jurisdiction over plaintiff's state-law claims, and remanding them to state court under 28 U.S.C. § 1441(c)).  "Otherwise, Plaintiff's claim for contractual medical benefits would be the tail wagging the dog."). *Id.*

In these consolidated cases, state-law claims most certainly predominate, even if ERISA completely preempted the claims of the ERISA plaintiffs.  As discussed above, approximately two-thirds of the total number of affected patients in these consolidated cases are not enrolled in ERISA plans, and all the claims concerning them must be remanded under 28 U.S.C. § 1447(c). The Center has asserted direct claims purely under Louisiana state law in open account, detrimental reliance, quantum meruit, and unjust enrichment.  Additionally, plaintiffs have asserted claims alleging violations of the Louisiana insurance law, La. R.S. 22:250.17, which ERISA expressly exempts from

preemption. According to its authority under 28 U.S.C. § 1441(c), therefore, this Court should remand all these matters "in which State law predominates."

Furthermore, even if supplemental jurisdiction were applicable in these cases, the Court may decline to exercise supplemental jurisdiction over claims related to those within its original jurisdiction if "(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In "deciding whether to remand supplemental claims, a court should examine economy, fairness, convenience, and comity." *Giles,* 172 F.3d at 339.

In *Giles,* the Fifth Circuit affirmed a remand of supplemental state-law claims after completely preempted claims under ERISA were dismissed. The *Giles* court noted that the state common law causes of action "relate to the regulation of healthcare–an area of traditional state regulation" and that the "state courts, being of equal dignity with federal courts, are equally competent to address" a potential defense of ERISA conflict preemption. *Id. See also McClelland v. Gronwaldt,* 155 F.3d 507, 519-21 (5th Cir. 1998) (holding that the district court's continued exercise of jurisdiction over state-law claims would constitute an abuse of discretion where all the federal claims were dismissed or otherwise eliminated from the case before trial, where the claims involved non-compliance with state insurance regulations that might raise novel issues, and where the state-law claims clearly predominated over the federal claims); *Knight v. Am. Med. Sec., Inc.,* No. 2003-1096, 2004 U.S. Dist. LEXIS 12265, *10-11 (D. Utah June 18, 2004)

28

(declining to exercise supplemental jurisdiction where "[t]he court's determination that the Knights' policy is not governed under ERISA effectively disposes of all the Knights' claims arising under federal law. Accordingly, defendant's federal question basis for removing the case to federal court no longer exists.").

Indeed, in urging this Court to exercise supplemental jurisdiction over all claims not preempted by ERISA, the removing defendants ignore the separate nature of the non-ERISA patients and the claims concerning them. Because those patients were not enrolled in employee welfare benefit plans as defined by ERISA, no basis has ever existed for exercising original federal-question jurisdiction over their claims, all of which arise purely under state law. The same holds true for the Center's direct claims for payment for the services performed for those non-ERISA patients. As discussed above, 28 U.S.C. § 1447(c) and 28 U.S.C. § 1441(c) require their remand.

Additionally, Fed. R. Civ. P. 21 gives a trial court broad discretion to sever issues to be tried before it. *Brunet v. United Gas Pipeline Co.,* 15 F.3d 500, 505 (5th Cir. 1994). Rule 21 is not predicated solely upon misjoinder of parties; it is proper where there are other valid reasons for severance. *Carnival Corp. v. Tug W.O. WATSON,* 2003 U.S. Dist. LEXIS 3358, at *5 (E.D. La. Mar. 5, 2003). Under Rule 21, "any claim against a party may be severed and proceeded with separately," and this rule does not distinguish between severing claims and severing parties. *Henderson v. AT&T Corp.,* 918 F. Supp. 1059, 1060-62 (S.D. Tex. 1996). Since this Court has the authority to sever the claims concerning ERISA patients from those concerning non-ERISA patients, this Court likewise has the power and the duty to remand those latter claims to state court, where they rightfully belong. Furthermore, the Center and the named non-ERISA

29

patients/plaintiffs have asked for trial by jury, which would require this Court to bifurcate their claims for trial from those of the ERISA plaintiffs. The removing defendants intend to move to strike the jury demands. Wrongly exercising jurisdiction over plaintiffs' claims in a single proceeding would prejudice them by denying them their right to a jury trial. *See Provident Life & Acc. Ins. Co. v. Sharpless,* 364 F.3d 634, 639-40 (5th Cir. 2004) (an ERISA restitution claim does not provide a right to a jury trial).

For these reasons, this Court should not exercise supplemental jurisdiction over the state-law claims asserted in these consolidated cases. The Center and the non-ERISA plaintiffs should not be deprived of their right to trial by jury in a state forum of their choice.

## CONCLUSION

This Court should grant plaintiffs' Motion to Remand and send all of the removed actions back to Louisiana state court. Alternatively, at the very least, this Court must remand the claims of the Center and all patient/plaintiffs who are not enrolled in ERISA welfare benefit plans and all claims of the Center that it has brought directly or as assignee of any such non-ERISA plaintiffs. Further, in the alternative, even assuming that this Court has original jurisdiction over any claims under the complete preemption provisions of ERISA concerning affected patients enrolled in ERISA plans, this Court should decline to exercise supplemental jurisdiction over the state-law claims in these consolidated cases and should remand those claims to Louisiana state court.

Respectfully submitted,

_____
Campbell E. Wallace, T.A. (La. #13195)
Jonathan C. McCall (La. #9227)
Kurt D. Duncan (La. #29842)
          -of-
CHAFFE McCALL, L.L.P.
1100 Poydras Street
2300 Energy Centre
New Orleans, LA  70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
*Attorneys for Plaintiffs, The Center for Restorative Breast Surgery, LLC*


/s/Darryl M. Phillips
_____
Darryl M. Phillips (La. #19736)
The Cochran Firm-New Orleans
PHILLIPS & MITCHELL, L.L.C.
909 Poydras Street, Suite 1580
New Orleans, LA  70112
Telephone:  (504) 588-1580
Facsimile:  (504) 588-1589
*Attorneys for Plaintiffs, CT, LH, and all other named patients/plaintiffs in the consolidated cases*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion has been filed with the United States District Court for the Eastern District of Louisiana by the electronic case filing/case management system and served on all counsel of record by either electronic mail or by placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereto.

New Orleans, Louisiana, this 15th day of December, 2006.



06-9985 Africk/Roby

# EXHIBIT 1
# TO
# MEMORANDUM IN SUPPORT OF
# MOTION TO REMAND

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE CENTER FOR RESTORATIVE BREAST SURGERY, LLC; CT; AND LH, *Plaintiffs* | CIVIL ACTION |
| | **NO. 06-9985 and CONSOLIDATED CASES (ALL CASES)** |
| VERSUS | |
| BLUE CROSS BLUE SHIELD OF LOUISIANA; AND BLUE CROSS BLUE SHIELD OF ALABAMA, *Defendants* | JUDGE AFRICK |
| | SECTION I |
| | MAGISTRATE JUDGE ROBY (4) |

## <u>UNSWORN DECLARATION</u>

I, Cheri Saltaformaggio, hereby declare under penalty of perjury that the following statements are true and correct:

1.     I reside in Mandeville, Louisiana;

2.     I graduated from Charity Hospital School of Nursing in 1986 and became a Registered Nurse in 1986.

3.     In January 2002, I started managing medical practices.

4.     Since The Center for Restorative Breast Surgery ("Center") was formed, I have been the manager of the practice.

5.     The principals in The Center for Restorative Breast Surgery, L.L.C. ("Center"), are two plastic surgeons, Drs. Frank Dellacroce and Scott Sullivan. Their practice is located in New Orleans, and specializes in breast reconstruction surgery for women who have had mastectomies as treatment for breast cancer.

934836-1                                              1

6.     Because only a handful of surgeons nationwide routinely perform the state-of-the-art GAP and DIEP surgeries like the Center does, most of the Center's patients are from out-of-state. The co-plaintiffs are former patients of the Center.

7.     Breast reconstruction surgery is expensive. It can take Drs. Dellacroce and Sullivan working as co-surgeons under a microscope up to 8 to 10 hours to perform the GAP, DIEP and "Stacked" Chimeric procedures to "harvest" tissue from a woman and microsurgically reconstruct her breast(s).

8.     A large number of patients of the Center have health insurance through a Blue Cross Blue Shield licensee in the state where they live outside of Louisiana. ("Home Plans"). Before the Center agrees to perform surgery for a patient, the Center routinely calls her Home Plan, explains the procedures the Center will perform and the charges for these procedures. After the Center and Home Plan reach an agreement, the Center goes forward with the reconstructive procedures for the patients in New Orleans for surgery.

9.     Separately, the patient assigns her rights to collect billed charges against the Home Plan to the Center.

10.     The Center bills the patients and Home Plan for surgical procedures. In the vast majority of cases, the Home Plan refuses to deal with the Center's billed charges for their Home Plan patients, and requires Blue Cross Blue Shield of Louisiana ("BCBSLA") to price and adjust the billed charges by the Center for Home Plan patients.

11.     In her experience, BCBSLA adjusts and prices the Center's billed charges for all Home Plans insureds treated by the Center. BCBSLA controls the price for billed charges for BCBSLA and Home Plan patients treated by the Center, as BCBSLA and

934836-1                                2

over 30 Home Plans **all** on average pay six cents on the dollar of the Center's billed charges – well below the usual and customary charges for GAP, DIEP and "Stacked" Chimeric procedures at issue in these suits.

12.     BCBSLA has said to the Center it wants it in the Blue Cross Blue Shield network (where it could dictate prices for breast reconstruction surgery). The BCBSLA has used its position as a claims adjuster for the Home Plans to slow or deny payment of billed charges for breast reconstruction surgery. Its representatives have even asked the Center why it continues to perform breast reconstruction surgeries for BCBSLA and Home Plan patients when the Center is paid little or nothing, and suggested that if it re-entered the BCBS network payment for procedures by the Center would improve.

13.     Since the Center left the BCBS network in the Spring of 2004, it has performed breast reconstruction surgeries for which Home Plans have paid zero or pennies on the dollar. *Id.* In September 2006, the Center re-submitted most, if not all, of these outstanding billed charges for Home Plans, totaling several million dollars directly to BCBSLA for payment, and there have been no significant payments since then for these charges.

Executed on: _12.15.06_

CHERI SALTAFORMAGGIO

**EXHIBIT 2**
**TO**
**MEMORANDUM IN SUPPORT OF**
**MOTION TO REMAND**

EXHIBIT 2

SUMMARY REMOVAL CHART

| Federal Ct. Suit No. | State Home Plan | CDC Suit No. | Patients Referenced in Petitions (ERISA/ non-ERISA) | Defendant(s) | Asserted Basis for Removal |
|---|---|---|---|---|---|
| 06-9985 | AL | 06-6663 A-5 | CT (ERISA) LH (ERISA) MEM (non-ERISA) PH (non-ERISA) MLT (non-ERISA) JK (non-ERISA) | BCBSLA BCBS of Alabama | ERISA |
| 06-10017 | IL | 06-6603 B-15 | CB (ERISA) CH (non-ERISA) SR (non-ERISA) | BCBSLA Health Care Service Corp. Illinois State PAC, NFP | 1) ERISA 2) Diversity |
| 06-10018 | IN | 06-6520 B-15 | LMN (ERISA) KF (non-ERISA) KW (non-ERISA) | BCBSLA Anthem Ins. Companies, Inc. | ERISA |
| 06-10019 | NY | 06-6527 G-11 | AMK (ERISA) | BCBSLA Empire HealthChoice HMO, Inc. d/b/a Empire BCBS | ERISA |
| 06-10020 | OR | 06-12304 N-8 | KB (non-ERISA) | BCBSLA Regence BCBS of Oregon, Inc. | Diversity |
| 06-10021 | MT | 06-6516 B-15 | VL (ERISA) | BCBSLA | ERISA |

1

934461-1

| Federal Ct. Suit No. | State Home Plan | CDC Suit No. | Patients Referenced in Petitions (ERISA / non-ERISA) | Defendant(s) | Asserted Basis for Removal |
|---|---|---|---|---|---|
| | | | VR (non-ERISA) PD (non-ERISA) | BCBS of Montana, Inc. | |
| 06-10022 | LA | 06-6512 | 23 patients (not identified by defendants) (ERISA) 35 patients (not identified by defendants) (Non-ERISA) GM, TH, LS, JR, MG, MT, KM, PB, LB, JG, DJ, WC, MRL, JG, BW, MMS, JMA, CW, MR, BH, DA, LC, MC, GH, AR, JM, JK, JN, RV, KMA-D, DD, KH, VW, AS, AF, VS, SH, LW, PO, JJ-M, KD, TH, IP, MB, DM, LR, AMH, KF, KA, TC, BKI, VM, XP, MC, GF, DC, LP, CB | BCBSLA | ERISA |
| 06-10023 | TN | 06-6514 F-10 | JL (ERISA JC (non-ERISA) PH (non-ERISA) PA (non-ERISA) PS (non-ERISA) AM (non-ERISA) JA (non-ERISA) | BCBSLA BCBS of TN | ERISA |
| 06-10024 | KY | 06-6613 E-7 | AM (ERISA) | BCBSLA | 1) ERISA |

Exhibit 2

934461-1

| Federal Ct. Suit No. | State Home Plan | CDC Suit No. | Patients Referenced in Petitions (ERISA / non-ERISA) | Defendant(s) | Asserted Basis for Removal |
|---|---|---|---|---|---|
| | | | KC (ERISA)<br>PK (ERISA)<br>PS (non-ERISA)<br>TK (non-ERISA)<br>AH (non-ERISA) | Anthem BCBS | 2) Diversity |
| 06-10025 | FL | 06-6518 F-10 | JD (ERISA)<br>SD (ERISA)<br>SG (ERISA)<br>SB (ERISA)<br>KG (non-ERISA)<br>LH (non-ERISA)<br>FS (non-ERISA)<br>KN (non-ERISA)<br>CF (non-ERISA) | BCBSLA<br><br>BCBS of Florida, Inc. | 1) ERISA<br>2) FEHBA<br>3) 28 U.S.C. § 1442(a)(1) |
| 06-10026 | IA | 06-6601 F-10 | CH (ERISA)<br>HH (ERISA) | BCBSLA<br><br>Wellmark Inc. d/b/a BCBS of Iowa | 1) ERISA<br>2) Diversity |
| 06-10027 | KY | 06-6484 E-7 | MP (ERISA)<br>RM (non-ERISA)<br>AM (non-ERISA)<br>PS (non-ERISA)<br>LK (non-ERISA)<br>TM (non-ERISA)<br>JV (non-ERISA)<br>KCR (non-ERISA)<br>RP (non-ERISA) | BCBSLA<br><br>Anthem BCBS | 1) ERISA<br>2) Diversity |
| 06-10028 | MI | 06-6486 A-5 | MN (ERISA)<br>PT (non-ERISA) | BCBSLA | ERISA |

3

934461-1

Exhibit 2

| Federal Ct Suit No. | State Home Plan | CDC Suit No. | Patients Referenced in Petitions (ERISA / non-ERISA ) | Defendant(s) | Asserted Basis for Removal |
|---|---|---|---|---|---|
| | | | LJ (non-ERISA) SB (non-ERISA) JU (non-ERISA) JS (non-ERISA) WG (non-ERISA) | BCBS of Michigan PPO | |
| 06-10029 | MI | 06-6483 I-14 | JH (ERISA) JB (non-ERISA) EW (non-ERISA) BR (non-ERISA) EE (non-ERISA) JU (non-ERISA) | BCBSLA BCBS of Michigan | ERISA |
| 06-10030 | CA | 06-6487 D-16 | SS (ERISA) AM (non-ERISA) KLS (non-ERISA) KS (non-ERISA) SW (non-ERISA) SK (non-ERISA) DN (non-ERISA) CVB (non-ERISA) CA (non-ERISA) HH (non-ERISA) DM (non-ERISA) JV (non-ERISA) AL (non-ERISA) MS (non-ERISA) SB (non-ERISA) FD (non-ERISA) | BCBSLA Blue Cross of California | ERISA |
| 06-10032 | GA | 06-6588 L-6 | NW (ERISA) DL (non-ERISA) RG (non-ERISA) | BCBSLA BCBS of Georgia, Inc. | 1) ERISA 2) Diversity |

Exhibit 2

93-461-1

| Federal Ct Suit No. | State Home Plan | CDC Suit No. | Patients Referenced in Petitions (ERISA / non-ERISA) | Defendant(s) | Asserted Basis for Removal |
|---|---|---|---|---|---|
| 06-10033 | CA | 06-6595 B-15 | LD (non-ERISA) CC (ERISA) JP (non-ERISA) | BCBSLA California Physicians' Services d/b/a Blue Shield of California | 1) ERISA 2) Diversity |
| 06-10034 | NJ | 06-6596 B-15 | DP (ERISA) KB (non-ERISA) TBH (non-ERISA) | BCBSLA Horizon BCBS of New Jersey, Inc. | 1) ERISA 2) Diversity |
| 06-10035 | IN | 06-6614 I-14 | DS (non-ERISA) | BCBSLA Anthem Ins. Companies, Inc. | Diversity |
| 06-10036 | GA | 06-6478 G-11 | NW (ERISA) RG (non-ERISA) LD (non-ERISA) | BCBSLA BCBS of Georgia, Inc. | ERISA |
| 06-10037 | MI | 06-6599 F-10 | GW (ERISA) LJ (ERISA) PT(non-ERISA) | BCBSLA BCBS Michigan PPO | ERISA |
| 06-10038 | FL | 06-6594 B-15 | SC (non-ERISA) TD (non-ERISA) KN (non-ERISA) | BCBSLA BCBS of Florida, Inc. | Diversity |
| 06-10039 | MS | 06-12303 I-14 | BF (ERISA) AG (non-ERISA) | BCBSLA BCBS of Mississippi | 1) ERISA 2) Diversity |
| 06-10040 | NY | 06-51793 C | JL (ERISA) | BCBSLA Excellus BCBS | 1) ERISA 2) Diversity |

5

Exhibit 2

| Federal Ct Suit No. | State Home Plan | CDC Suit No. | Patients Referenced in Petitions (ERISA / non-ERISA) | Defendant(s) | Asserted Basis for Removal |
|---|---|---|---|---|---|
| 06-10041 | SD | 06-12305 J-13 | RG (ERISA) | BCBSLA<br><br>Wellmark Inc. d/b/a BCBS of South Dakota | 1) ERISA<br>2) Diversity |
| 06-10042 | MA | 06-6593 L-6 | EF (ERISA)<br>AK (non-ERISA)<br>CF (non-ERISA)<br>SK (non-ERISA)<br>LD (non-ERISA)<br>DH (non-ERISA) | BCBSLA<br><br>BCBS of Massachusetts HMO Blue, Inc. | 1) ERISA<br>2) Diversity |
| 06-10043 | WA | CDC 06-6590 G-11 | LH (ERISA)<br>KC (ERISA)<br>BM (ERISA)<br>CD (non-ERISA) | BCBSLA<br><br>Premera Blue Cross | 1) ERISA<br>2) Diversity |
| 06-10044 | WA | 06-6482 D-16 | PR (ERISA) | BCBSLA<br><br>Premera Blue Cross | 1) ERISA<br>2) Diversity |
| 06-10045 | TX | 06-6597 B-15 | JJ (ERISA)<br>TL (non-ERISA)<br>SC (non-ERISA)<br>RW (non-ERISA)<br>DP (non-ERISA)<br>DR (non-ERISA)<br>CP (non-ERISA)<br>LR (non-ERISA)<br>SO (non-ERISA)<br>ED (non-ERISA)<br>JH (non-ERISA) | BCBSLA<br><br>BCBS of Texas | 1) ERISA<br>2) Diversity |
| 06-10049 | IL | 06-6522 G-11 | KL (ERISA) | BCBSLA | 1) ERISA |

6

Exhibit 2

423461-1

| Federal Ct Suit No. | State Home Plan | CDC Suit No. | Patients Referenced in Petitions (ERISA / non-ERISA) | Defendant(s) | Asserted Basis for Removal |
|---|---|---|---|---|---|
| | | | CW (ERISA)<br>FBH (non-ERISA)<br>MK (non-ERISA)<br>SR (non-ERISA)<br>TC (non-ERISA)<br>PSP (non-ERISA)<br>CO (non-ERISA) | Health Care Service Corp. Illinois State PAC, NFP d/b/a BCBS of Illinois | 2) Diversity |
| 06-10066 | PA | 06-6591 1-14 | MB (ERISA)<br>MN (non-ERISA)<br>AS (non-ERISA)<br>JS (non-ERISA)<br>LB (non-ERISA)<br>JM (non-ERISA)<br>SL (non-ERISA)<br>EV (non-ERISA) | BCBSLA<br>Independence BC | ERISA |

7

934461-1

Exhibit 2

**EXHIBIT 3**
**TO**
**MEMORANDUM IN SUPPORT OF**
**MOTION TO REMAND**

# EXHIBIT 3

## BREAKDOWN OF REFERENCED PATIENTS

| Docket No. | ERISA Patients | Non-ERISA Patients | Total Patients |
|---|---|---|---|
| 06-9985 (AL) | 2 | 4 | 6 |
| 06-10017 (IL) | 1 | 2 | 3 |
| 06-10018 (IN) | 1 | 2 | 3 |
| 06-10019 (NY) | 1 | 0 | 1 |
| 06-10020 (OR) | 0 | 1 | 1 |
| 06-10021 (MT) | 1 | 2 | 3 |
| 06-10022 (LA) | 23 | 35 | 58 |
| 06-10023 (TN) | 1 | 6 | 7 |
| 06-10024 (IN) | 3 | 3 | 6 |
| 06-10025 (FL) | 4 | 5 | 9 |
| 06-10026 (IA) | 2 | 0 | 2 |
| 06-10027 (KY) | 1 | 8 | 9 |
| 06-10028 (MI) | 1 | 6 | 7 |
| 06-10029 (MI) | 1 | 5 | 6 |
| 06-10030 (CA) | 1 | 15 | 16 |
| 06-10032 (GA) | 1 | 3 | 4 |
| 06-10033 (CA) | 1 | 1 | 2 |
| 06-10034 (NJ) | 1 | 2 | 3 |
| 06-10035 (IN) | 0 | 1 | 1 |
| 06-10036 (GA) | 1 | 2 | 3 |
| 06-10037 (MI) | 2 | 1 | 3 |
| 06-10038 (FL) | 0 | 3 | 3 |
| 06-10039 (MS) | 1 | 1 | 2 |
| 06-10040 (NY) | 1 | 0 | 1 |
| 06-10041 (SD) | 1 | 0 | 1 |
| 06-10042 (MA) | 1 | 5 | 6 |
| 06-10043 (WA) | 3 | 1 | 4 |
| 06-10044 (WA) | 1 | 0 | 1 |
| 06-10045 (TX) | 1 | 10 | 11 |
| 06-10049 (IL) | 2 | 6 | 8 |
| 06-10066 (PA) | 1 | 7 | 8 |
| TOTALS | 61 (31%) | 137 (69%) | 198 (100%) |

933556-1

**EXHIBIT 4**
**TO**
**MEMORANDUM IN SUPPORT OF**
**MOTION TO REMAND**

**EXHIBIT 4**

**PAYMENT CHART**

| Federal Ct. Suit No. | State Home Plan | CDC Suit No. | Patients for which the Center has alleged zero payment | Patients for which the Center has alleged partial payment |
|---|---|---|---|---|
| 06-9985 | AL | 06-6663 A-5 | PH (non-ERISA)<br>MLT (non-ERISA) | CT (ERISA)<br>LH (ERISA)<br>MEM (non-ERISA)<br>JK (non-ERISA) |
| 06-10017 | IL | 06-6603 B-15 | CB (ERISA)<br>CH (non-ERISA)<br>SR (non-ERISA) | |
| 06-10018 | IN | 06-6520 B-15 | LMN (ERISA)<br>KF (ERISA)<br>KW (non-ERISA) | |
| 06-10019 | NY | 06-6527 G-11 | AMK (ERISA) | |
| 06-10020 | OR | 06-12304 N-8 | | KB (non-ERISA) |
| 06-10021 | MT | 06-6516 B-15 | VL (or VAL) (ERISA)<br>VR (non-ERISA)<br>PD (non-ERISA) | |
| 06-10022 | LA | 06-6512 | WC, JG, BW, MMS, MR, LC, MC, JK, DD, VW, SH, JJ-M, DM, AMH, BKJ, XP | GM, TH, LS, JR, MG, MT, KM, PB, LB, JG, DJ, MRL, JMA, CW, BH, DA, GH, AR, JM, JN, RV, KMA-D, KH, AS, AF, VS, LW, PO, KD, TH, IP, MB, LR, KF, KA, TC, VM, MC, GF, DC, LP, CB |
| 06-10023 | TN | 06-6514 F-10 | AM (non-ERISA)<br>JA (non-ERISA) | JL (ERISA)<br>JC (non-ERISA)<br>PH (non-ERISA)<br>PA (non-ERISA)<br>PS (non-ERISA) |
| 06-10024 | KY | 06-6613 E-7 | KC (ERISA)<br>PK (ERISA)<br>AH (non-ERISA)<br>AM (ERISA)<br>PS (non-ERISA) | TK (non-ERISA) |
| 06-10025 | FL | 06-6518 F-10 | SD (ERISA)<br>LH (non-ERISA) | JD (ERISA)<br>SG (ERISA)<br>SB (ERISA)<br>KG (non-ERISA)<br>FS (non-ERISA) |

| Federal Ct Suit No. | State Home Plan | CDC Suit No. | Patients for which the Center has alleged zero payment | Patients for which the Center has alleged partial payment |
|---|---|---|---|---|
| | | | | KN (non-ERISA) CF (non-ERISA) |
| 06-10026 | IA | 06-6601 F-10 | HH (ERISA) | CH (ERISA) |
| 06-10027 | KY | 06-6484 E-7 | AM (non-ERISA) PS (non-ERISA) LK (non-ERISA) RP (non-ERISA) | MP (ERISA) RM (non-ERISA) TM (non-ERISA) JV (non-ERISA) KCR (non-ERISA) |
| 06-10028 | MI | 06-6486 A-5 | MN (ERISA) JS (non-ERISA) | PT (non-ERISA) LJ (non-ERISA) SB (non-ERISA) JU (non-ERISA) WG (non-ERISA) |
| 06-10029 | MI | 06-6483 I-14 | EW (non-ERISA) JU (non-ERISA) | JH (ERISA) JB (non-ERISA) BR (non-ERISA) EE (non-ERISA) |
| 06-10030 | CA | 06-6487 D-16 | SS (ERISA) KS (non-ERISA) SK (non-ERISA) DN (non-ERISA) HH (non-ERISA) AL (non-ERISA) MS (non-ERISA) SB (non-ERISA) | AM (non-ERISA) KLS (non-ERISA) SW (non-ERISA) CVB (non-ERISA) CA (non-ERISA) DM (non-ERISA) JV (non-ERISA) FD (non-ERISA) |
| 06-10032 | GA | 06-6588 L-6 | NW (ERISA) RG (non-ERISA) LD (non-ERISA) | DL (non-ERISA) |
| 06-10033 | CA | 06-6595 B-15 | CC (ERISA) JP (non-ERISA) | |
| 06-10034 | NJ | 06-6596 B-15 | DP (ERISA) TBH (non-ERISA) | KB (non-ERISA) |
| 06-10035 | IN | 06-6614 I-14 | | DS (non-ERISA) |
| 06-10036 | GA | 06-6478 G-11 | NW (ERISA) RG (non-ERISA) LD (non-ERISA) | |
| 06-10037 | MI | 06-6599 F-10 | GW (ERISA) LJ (ERISA) PT (non-ERISA) | |
| 06-10038 | FL | 06-6594 B-15 | SC (non-ERISA) KN (non-ERISA) | TD (non-ERISA) |
| 06-10039 | MS | 06-12303 I-14 | | BF (ERISA) |

| Federal Ct Suit No. | State Home Plan | CDC Suit No. | Patients for which the Center has alleged zero payment | Patients for which the Center has alleged partial payment |
|---|---|---|---|---|
| | | | | AG (non-ERISA) |
| 06-10040 | NY | 06-51793 | | JL (ERISA) |
| 06-10041 | SD | 06-12305 J-13 | | RG (ERISA) |
| 06-10042 | MA | 06-6593 L-6 | EF (ERISA)<br>AK (non-ERISA)<br>CF (non-ERISA)<br>SK (non-ERISA)<br>LD (non-ERISA)<br>DH (non-ERISA) | |
| 06-10043 | WA | 06-6590 G-11 | KC (ERISA)<br>EM (ERISA) | LH (ERISA)<br>CD (non-ERISA) |
| 06-10044 | WA | 06-6482 D-16 | PR (ERISA) | |
| 06-10045 | TX | 06-6597 B-15 | TL (non-ERISA)<br>SC (non-ERISA)<br>RW (non-ERISA)<br>SO (non-ERISA)<br>ED (non-ERISA)<br>JH (non-ERISA) | JJ (ERISA)<br>DP (non-ERISA)<br>DR (non-ERISA)<br>CP (non-ERISA)<br>LR (non-ERISA) |
| 06-10049 | IL | 06-6522 G-11 | FBH (non-ERISA) | KL (ERISA)<br>CW (ERISA)<br>MK (non-ERISA)<br>SR (non-ERISA)<br>TC (non-ERISA)<br>PSP (non-ERISA)<br>CO (non-ERISA) |
| 06-10066 | PA | 06-6591 I-14 | MN (non-ERISA)<br>JM (non-ERISA) | MB (ERISA)<br>AS (non-ERISA)<br>JS (non-ERISA)<br>LB (non-ERISA)<br>SL (non-ERISA)<br>EV (non-ERISA) |

# EXHIBIT 5
# TO
# MEMORANDUM IN SUPPORT OF
# MOTION TO REMAND

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE CENTER FOR RESTORATIVE BREAST SURGERY, LLC; CT; AND LH, *Plaintiffs* | CIVIL ACTION |
| | **NO. 06-9985 and CONSOLIDATED CASES (ALL CASES)** |
| VERSUS | |
| BLUE CROSS BLUE SHIELD OF LOUISIANA; AND BLUE CROSS BLUE SHIELD OF ALABAMA, *Defendants* | JUDGE AFRICK |
| | SECTION I |
| | MAGISTRATE JUDGE ROBY (4) |

## AFFIDAVIT OF CAMPBELL E. WALLACE

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, Notary, the undersigned personally came and appeared:

### CAMPBELL E. WALLACE,

who, after being duly sworn, did depose and state that:

1. He is trial counsel for plaintiffs, The Center for Restorative Breast Surgery, L.L.C., individually and as assignee.

934914-1

2.   In August 2005, he filed an administrative complaint in behalf of the Center with the Louisiana Department of Insurance against Blue Cross Blue Shield of Louisiana.

3.   In the course of those administration proceedings, he received the attached letter from Blue Cross Blue Shield of Louisiana.  Attachment A is a true and accurate copy of that letter.

_____
CAMPBELL E. WALLACE

Subscribed and sworn to before me,
Notary, this 15th day of
December, 2006.

_____
Kurt D. Duncan
NOTARY
La. Bar # 29842
My commission expires at death.

# ATTACHMENT A
# TO
# AFFIDAVIT OF CAMPBELL E. WALLACE

**BlueCross BlueShield of Louisiana**

An independent licensee of the Blue Cross and Blue Shield Association.

**HMO Louisiana, Inc.**

A subsidiary of Blue Cross and Blue Shield of Louisiana, independent licensees of the Blue Cross and Blue Shield Association.

| | |
|---|---|
| P. O. Box 98029<br>Baton Rouge, Louisiana 70898-9029<br>Phone 225/295-3307<br>Fax 225/295-2054 | P. O. Box 98024<br>Baton Rouge, Louisiana 70898-9024<br>Phone 800/376-7741<br>Fax 225/295-2494 |

January 3, 2006

**VIA CERTIFIED MAIL NO.** 0000 6988 6623
**RETURN RECEIPT REQUESTED**

Cindy Gehling
Office of Health Insurance
Office of the Commissioner of Insurance
P.O. Box 94214
Baton Rouge, LA 70804-9214

**RECEIVED**

JAN 0 5 2006

OFFICE OF HEALTH INSURANCE

**DOI Case File Number: CA 05-1394**

| | |
|---|---|
| **Insured:** | Multiple Members |
| **Claimant:** | Campbell W. Wallace, counsel for the provider |
| **Provider:** | The Center for Restorative Breast Surgery |
| **NAIC#:** | * Not BCBSLA Members |

Dear Ms. Gehling,

This is in response to your letter dated November 15, 2005 and received on November 17, 2005. Mr. Wallace's complaint concerns the reimbursement for TRAM, DIEP, and GAP procedures.

Blue Cross and Blue Shield of Louisiana (BCBSLA) will answer the questions in the order in which they were presented in your inquiry.

"1.    Confirm compliance with LRS 22:250.17."

BCBSLA and its subsidiaries are in compliance with LRS 2:250.17. Benefits for reconstructive surgery following mastectomies are provided consistent with terms and provisions applicable to other benefits.

"2.    Provide a list of all CPT codes approved by Blue Cross and Louisiana, which allow coverage for reconstructive breast surgery following a mastectomy."

Cindy Gehling
Compliance Examiner
Page 2 / CA 05-1394

The TRAM, DIEP, and GAP procedures each have a CPT code and BCBSLA recognizes all valid CPT codes used for these surgeries. If a claim is filed for one of these reconstructive surgical procedures, or any other reconstructive procedure, using an unlisted or undesignated procedure code, medical records are reviewed to assign the appropriate reimbursement for the procedure which was performed.

"3.    Furnish details on how the reciprocal agreement Blue Cross of Louisiana has with other Blue Cross Plans works."

BCBSLA has an agreement with the Blue Cross and Blue Shield Association to participate in the BlueCard Program and Electronic Claims Routing Process (ECRP) Program. The **BlueCard** Program applies to claims for participating providers. It allows the subscriber's Home Plan (plan where subscriber's contract is issued) to receive and process claims incurred by their members outside of their service area while utilizing the Host Plan's (plan area where services were incurred) participating provider discounts. The BlueCard agreement does include a fee for the Host Plan for administrative services for routing the claims and an access fee for utilizing the Host Plans provider contracts. The access fee is based on the Host Plan's discount savings provided through their participating provider contract. The **ECRP** Program is used for non-participating provider claims to route the claim from the Host Plan to the Home Plan for processing. The ECRP agreement includes the administrative service fee only since there is no discount. In this case, the Center is not participating with BCBSLA. Therefore, the ECRP or ECRP Plus agreement would apply. ECRP Plus computer platform is used when the provider requests an 835 remittance which is a HIPAA Compliant Electronic Remittance Advice.

"4.    Is Blue Cross of Louisiana reimbursed by the other state plans for their claims handling? If yes, how does that reimbursement work? If Blue Cross of Louisiana reduces benefits according to the Louisiana plans determination of what is a reasonable rate, is Blue Cross of Louisiana reimbursed by the other plan at a higher rate than they would be if they paid according to the issue state's plan?"

See the response provided above regarding BCBSLA reimbursement. BCBSLA does not "reduce benefits". The member's insurance contract spells out his benefits, which usually depend on the provider used by the member. Non-participating provider claims are transmitted by the Host Plan to the Home Plan through the ECRP or ECRP Plus platform. When forwarding a non-participating provider's claim through the ECRP or ECRP Plus platform, the Host Plan has the option to include the allowable amount that the Host Plan's participating providers have agreed to accept for those services, in addition to the billed charge that is transmitted. It is BCBSLA's practice to include this allowable information. However, this is for informational purposes only. The Home Plan determines what it will pay the provider. The Host Plan does not receive any incentive or reimbursement based on the amount paid by the Home Plan. As stated

Cindy Gehling
Compliance Examiner
Page 3 / CA 05-1394

previously, for ECRP or ECRP Plus claims, the Host Plan only receives the administrative fee for electronically forwarding the claim to the Home Plan.

"5.     May claims be filed directly with the Home Plan?"

If an out of state provider files a claim with a Blue Plan other than their local Blue Plan, the claim is usually returned to the provider with a request to file the claim with the local Blue Plan.

Please note, the majority of patients listed were other Blue Plan members or Federal Employee Program (FEP) members whose benefits are subject to regulators other than Louisiana regulators. Of all of the patients listed on the spreadsheet from the provider only eight were BCBSLA members. Below is a list of the BCBSLA members with their policy information.

| Insured: | Gaiennie, Daniel | Policy Number: | 4358871007 |
|---|---|---|---|
| Patient: | Gaiennie, Judy | Policy Type: | Group/Self-Funded |
| Claimant: | Campbell E. Wallace | Effective Date: | 08/01/2003 |
| Provider: | Center for Restorative Breast Surgery | Termination Date: | N/A |
| NAIC#: | LHSIC | Date of Service: | 05/18/2005 |

Mr. Gaiennie is not insured by BCBSLA.   Mr. Gaiennie is covered through a self-funded, employer sponsored health plan of Hornbeck Offshore Operators, LLC. BCBSLA provides administrative services only.  BCBSLA has no record of a claim for this date of service from the Center for Restorative Breast Surgery for this patient.

| Insured: | Gautreau, Duane | Policy Number: | 594770x1 |
|---|---|---|---|
| Patient: | Gautreau, Jennifer | Policy Type: | Individual/Fully Insured |
| Claimant: | Campbell E. Wallace | Effective Date: | 05/15/1998 |
| Provider: | Center for Restorative Breast Surgery | Termination Date: | N/A |
| NAIC#: | 81200 | Date of Service: | 06/23/2005 |
| Booklet #: | 40xx0551 R01/05 | Policy Name: | Blue Max |

Mr. Gautreau's contract contains the following definition (page 10):

## "ARTICLE I.                    DEFINITIONS

Allowable Charge – The lesser of the billed charge or the amount established by Us or negotiated as the maximum amount allowed for all Provider services covered under the terms of this Contract."

The Contract also contains the following provision (page 3):

## "When you use Nonparticipating Providers

Cindy Gehling
Compliance Examiner
Page 4 / CA 05-1394

Nonparticipating Providers are Providers who have not signed any contract with Us or any other Blue Cross Blue Shield plan to participate in any Blue Cross Blue Shield network. We establish an Allowable Charge for Covered Services provided by Nonparticipating Providers that is based on the negotiated fee that has been accepted by participating Providers. When You have traditional indemnity or PPO coverage and use a Nonparticipating Provider, this Allowable Charge is used to determine Our payment for Your Covered Services and the amount that You must pay for Covered Services.

**You may pay significant costs when You use a Nonparticipating Provider. This is because the amount that some Providers charge for a Covered Service may be higher than the negotiated fee that has been accepted by Preferred and Participating Providers. Also, Preferred and Participating Providers waive the difference between the actual billed charge for a Covered Service and the Allowable Charge, while Nonparticipating Providers will not."**

| | | | |
|---|---|---|---|
| **Insured:** | Hogue, Lloyd | **Policy Number:** | 4288817091 / 7639699409 |
| **Patient:** | Hogue, Barbara | **Policy Type:** | Group/Fully Insured |
| **Claimant:** | Campbell E. Wallace | **Effective Date:** | 02/01/2002 |
| **Provider:** | Center for Restorative Breast Surgery | **Termination Date:** | 02/01/2005 |
| **NAIC#:** | 81200 | **Date of Service:** | 06/30/2005 |
| **Booklet #:** | 40xx0498 R01/04 | **Policy Name:** | Comprehensive |

Mr. Hogue's employer group policy terminated on February 1, 2005. The above date of service is after the termination of the policy. Therefore, the claim was denied because coverage under this contract was discontinued before the service was rendered.

| | | | |
|---|---|---|---|
| **Insured:** | Krebsback, Kenneth | **Policy Number:** | 7874859549 |
| **Patient:** | Krebsback, Janet | **Policy Type:** | Group/Self-Funded |
| **Claimant:** | Campbell E. Wallace | **Effective Date:** | 01/01/2004 |
| **Provider:** | Center for Restorative Breast Surgery | **Termination Date:** | N/A |
| **NAIC#:** | LHSIC | **Date of Service:** | 07/18/2005 |

Mr. Krebsback is not insured by BCBSLA.   Mr. Krebsback is covered through a self-funded, employer sponsored health plan of James Construction Group.  BCBSLA provides administrative services only.

| | | | |
|---|---|---|---|
| **Insured:** | McCann, Karen | **Policy Number:** | 7674191689 |
| **Patient:** | McCann, Karen | **Policy Type:** | Group/Fully Insured |
| **Claimant:** | Campbell E. Wallace | **Effective Date:** | 10/01/2004 |
| **Provider:** | Center for Restorative Breast Surgery | **Termination Date:** | N/A |
| **NAIC#:** | 81200 | **Date of Service:** | 07/13/2005 |
| **Booklet #:** | 40xx0498 R01/04 | **Policy Name:** | Comprehensive |

| | | | |
|---|---|---|---|
| **Insured:** | Rice, John | **Policy Number:** | 4288619541 / 4014451279 |
| **Patient:** | Rice, Jennifer | **Policy Type:** | Group/Fully Insured |
| **Claimant:** | Campbell E. Wallace | **Effective Date:** | 07/01/1999 |
| **Provider:** | Center for Restorative Breast Surgery | **Termination Date:** | N/A |

Cindy Gehling
Compliance Examiner
Page 5 / CA 05-1394

| | | | |
|---|---|---|---|
| **NAIC#:** | 81200 | **Date of Service:** | 05/06/05 & 05/27/05 |
| **Booklet #:** | 40xx0498 R01/04 | **Policy Name:** | Comprehensive |

The Benefit Plan of the above mentioned members contains the following definition (page 11):

### "ARTICLE I.                         DEFINITIONS

Allowable Charge – The lesser of the billed charge or the amount established by Us or negotiated as the maximum amount allowed for all Provider services covered under the terms of this Benefit Plan."

The Benefit Plan also contains the following provision (page 3):

### "When you use Nonparticipating Providers

Nonparticipating Providers are Providers who have not signed any contract with Us or any other Blue Cross Blue Shield plan to participate in any Blue Cross Blue Shield network. We establish an Allowable Charge for Covered Services provided by Nonparticipating Providers that is based on the negotiated fee that has been accepted by participating Providers. When You have traditional or PPO coverage and use a Nonparticipating Provider, this Allowable Charge is used to determine Our payment for Your Covered Services and the amount that You must pay for Covered Services.

You may pay significant costs when You use a Nonparticipating Provider. This is because the amount that some Providers charge for a Covered Service may be higher than the negotiated fee that has been accepted by Preferred and Participating Providers. Also, Preferred and Participating Providers waive the difference between the actual billed charge for a Covered Service and the Allowable Charge, while Nonparticipating Providers will not. You have the right to file an Appeal with Us to receive Benefits based on a higher Allowable Charge, if You received Covered Services from a Nonparticipating Provider who was the only Provider available to deliver the Covered Service within a seventy-five (75) mile radius of your home or if the Covered Service that You received from the Nonparticipating Provider was an Emergency Medical Service. To file an Appeal, You must follow the Appeal procedures set forth in the Benefit Plan."

| | | | |
|---|---|---|---|
| **Insured:** | Meyer, John | **Policy Number:** | 7737645009 |
| **Patient:** | Meyer, Dora | **Policy Type:** | Group/Fully Funded |
| **Claimant:** | Campbell E. Wallace | **Effective Date:** | 12/01/2003 |
| **Provider:** | Center for Restorative Breast Surgery | **Termination Date:** | N/A |
| **NAIC#:** | 95643 | **Date of Service:** | 06/17/2005 |
| **Booklet #:** | 13100 00003 0104R | **Policy Name:** | Group HMO |

Mr. Meyer's Benefit Plan contains the following definition (page 8):

Cindy Gehling
Compliance Examiner
Page 6 / CA 05-1394

## "ARTICLE I.                DEFINITIONS

Allowable Charge – The lesser of the billed charge or the amount We establish or
negotiate as the maximum amount allowed for all Provider services covered under the
terms of this Contract."

HMO Louisiana (HMOLA) has no record of a claim for this date of service from the
Center for Restorative Breast Surgery for this patient.

| | | | |
|---|---|---|---|
| **Insured:** | Thompson, Mary | **Policy Number:** | 4338233661 / 7145063759 |
| **Patient:** | Thompson, Mary | **Policy Type:** | Group/Fully Funded |
| **Claimant:** | Campbell E. Wallace | **Effective Date:** | 09/01/1998 |
| **Provider:** | Center for Restorative Breast Surgery | **Termination Date:** | N/A |
| **NAIC#:** | 81200 | **Date of Service:** | 04/21/05 & 07/06/05 |
| **Booklet #:** | 40xx0509 R01/04 | **Policy Name:** | Advantage Blue POS |

Ms. Thompson's Benefit Plan contains the following definition (page 7):

## "ARTICLE I.                DEFINITIONS

Allowable Charge – The lesser of the billed charge or the amount We establish or
negotiate as the maximum amount allowed for all Provider services covered under the
terms of this Benefit Plan."

The Benefit Plan also contains the following provision (page 4):

### "(4) What We pay When You use Non-Participating Providers without Our Authorization

Nonparticipating Providers are Providers who have not signed any contract with Us or
any other Blue Cross Blue Shield plan to participate in any Blue Cross Blue Shield
network. We establish an Allowable Charge for Covered Services provided by
Nonparticipating Providers that is based on the negotiated fee that has been accepted
by Participating Providers. When You use a Nonparticipating Provider, this Allowable
Charge is used to determine Our payment for Your Covered Services and the amount
that You must pay for Covered Services.

**You may pay significant costs when You use a Nonparticipating Provider. This is
because the amount that some providers charge for a Covered Service may be
higher than the negotiated fee that has been accepted by Participating Providers.
Also, Participating Providers waive the difference between the actual billed
charge for a Covered Service and the Allowable Charge, while Nonparticipating
Providers will not."**

Cindy Gehling
Compliance Examiner
Page 7 / CA 05-1394

Your inquiry was forwarded to our Provider Audit Department for review. Our Provider Audit Department verified the correct allowable amounts were used for the above referenced BCBSLA members' claims. Please refer to the attached Explanation of Benefits, Schedule of Benefits, and pages from the referenced Benefit Plans and Contracts.

In addition to your letter dated November 15, 2005, we received your letter dated December 13, 2005 requesting further information. Below is in response to the December 13, 2005 letter requesting the following:

"1.     Copies of Explanation of Benefits (EOB) issued to policyholders from April 2004 to the present for any claims paid on behalf of fully insured Louisiana Residents for services provided by the Center for Restorative Breast Surgery."

EOBs are provided to our members. Duplicate EOBs are ordered by the contract number. Since a list of members and contract numbers was not provided, our Information Technology Department ran a report using the provider number. Please see the attached EOBs for Dr. Dellacroce and Dr. Sullivan.

"2.     Are CPT codes listed on the EOB?"

No. BCBSLA and HMOLA's EOBs do not include the CPT code. Our EOBs include the provider name, date of service, amount charged, not covered amount and reason, deductible, coinsurance, other carrier benefits, contracted reimbursement amount, major medical benefits and total benefits.

While reviewing the duplicate EOBs, we noticed that participating provider reason codes (KY1 and MHD) were used for the above the allowed amount. At the time these claims were processed, in order for the claims to pay at the high level benefits we had to use a participating provider reason code. The system has since been corrected. One claim was denied RIA for provider audit review. The review has been completed and this claim is being adjusted.

"3.     Have Louisiana plan members filed appeals regarding reimbursement amounts for services provided by the Center for Restorative Breast Surgery?"

Our Appeals Department advised there was one appeal received in 2004 for Dr. Dellacroce. There were no appeals received for Dr. Sullivan since April 2004.

"4.     How are appeals handled for out of state members? Do they appeal to Blue Cross/Blue Shield of Louisiana or their home plan?"

Appeal requests from out of state members are directed to the member's Home Plan.

Cindy Gehling
Compliance Examiner
Page 8 / CA 05-1394

"5.     Does the home plan receive a copy of the claim at the time of adjudication?"

The Home Plan receives an electronic submission format of the claim for use at the time of adjudication.

"6.     Does the home plan have access to medical records which are either included with the initial claim submission or requested by Blue Cross/Blue Shield of Louisiana?"

Yes. Upon request from the Home Plan, BCBSLA researches to verify if medical records were submitted with the claim. If so, BCBSLA will forward these records to the Home Plan. If medical records were not received or if the records received appear to be incomplete, BCBSLA will request the needed information from the provider and upon receipt forward the information to the Home Plan.

I trust this information is sufficient to close this case. Should you need additional information, please feel free to contact me at (225) 295-2330.

Sincerely,

Terri Vicknair
Compliance Analyst

cc:     Michele Calandro
        Senior Vice President & General Counsel
        Legal Affairs

        Patricia J. Jumonville
        Senior Attorney, Legal Affairs

        Attachments: Schedule of Benefits
                     Explanation of Benefits

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

THE CENTER FOR RESTORATIVE
BREAST SURGERY, LLC; CT; AND LH,
*Plaintiffs*

VERSUS

BLUE CROSS BLUE SHIELD OF
LOUISIANA; AND BLUE CROSS BLUE
SHIELD OF ALABAMA,
*Defendants*

CIVIL ACTION

**NO. 06-9985 and
CONSOLIDATED CASES
(ALL CASES)**

JUDGE AFRICK

SECTION I

MAGISTRATE JUDGE ROBY (4)

## NOTICE OF HEARING

TO:   Covert J. Geary, Esq.
      Richard J. Tyler, Esq.
      Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLC
      201 St. Charles Avenue, 29th Floor
      New Orleans, LA  70170

      James A. Brown, Esq.
      Liskow & Lewis
      701 Poydras Street, 50th Floor
      New Orleans, LA  70139

      Joelle F. Evans, Esq.
      Schonekas, Winsberg, Evans & McGoey, L.L.C.
      650 Poydras Street, Suite 2105
      New Orleans, LA  70130

934281-1

James L. Griffith, Jr., Esq.
Akin Gump Strauss Hauer & Feld LLP
One Commerce Square
2005 Market Street
Philadelphia, PA 19103-7013

Jamie L. Moore
Burr & Forman LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203

PLEASE TAKE NOTICE that Plaintiffs' Motion to Remand will be brought on

for hearing before the Honorable Lance M. Africk in his courtroom at 500 Poydras Street,

New Orleans, Louisiana, on the 10th day of January, 2007, at 9:00 o'clock a.m., or as

soon thereafter as counsel may be heard.

Respectfully submitted,

Campbell E. Wallace, T.A. (La. #13195)
Jonathan C. McCall (La. #9227)
Kurt D. Duncan (La. #29842)
-of-
CHAFFE McCALL, L.L.P.
1100 Poydras Street
2300 Energy Centre
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
*Attorneys for Plaintiffs, The Center for Restorative Breast Surgery, LLC*

/s/Darryl M. Phillips
Darryl M. Phillips (La. #19736)
The Cochran Firm-New Orleans
PHILLIPS & MITCHELL, L.L.C.
909 Poydras Street, Suite 1580
New Orleans, LA 70112
Telephone: (504) 588-1580
Facsimile: (504) 588-1589
*Attorneys for Plaintiffs, CT, LH, and all other named patients/plaintiffs in the consolidated cases*

934281-1                                    2

06-9985 Africk/Roby

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion has been filed with the United States District Court for the Eastern District of Louisiana by the electronic case filing/case management system and served on all counsel of record by either electronic mail or by placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereto.

New Orleans, Louisiana, this 15th day of December, 2006.

_____

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE CENTER FOR RESTORATIVE BREAST SURGERY, LLC; CT; AND LH, *Plaintiffs* | CIVIL ACTION |
| | **NO. 06-9985 and CONSOLIDATED CASES (ALL CASES)** |
| VERSUS | |
| BLUE CROSS BLUE SHIELD OF LOUISIANA; AND BLUE CROSS BLUE SHIELD OF ALABAMA, *Defendants* | JUDGE AFRICK |
| | SECTION I |
| | MAGISTRATE JUDGE ROBY (4) |

## O R D E R

Upon considering the Motion to Remand by plaintiffs, The Center for Restorative Breast Surgery and all named patient/plaintiffs in all of the consolidated cases;

**IT IS ORDERED, ADJUDGED, AND DECREED** that plaintiffs' motion is GRANTED and that all the consolidated cases are hereby REMANDED to the Civil District Court for the Parish of Orleans, State of Louisiana.

New Orleans, Louisiana, this _____ day of _____, 200____.

_____
UNITED STATES JUDGE

934281-1