**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 03-21296-CIV-MORENO-TORRES

RICK LOVE, M.D., *et al.*,

        Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD
ASSOCIATION, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION ON CERTAIN SETTLING DEFENDANTS'**
**MOTION TO ENFORCE THE COURT'S INJUNCTION ORDER**

        This matter is before the Court on Settling Defendants' Motion to Enforce the Court's

Injunction Order and for a Rule to Show Cause Why Plaintiffs and Their Attorneys Should Not

be Held in Contempt [D.E. 1284-1].  The Court has considered the motion, the response, the

reply, the sur-reply, and the pertinent portions of the record.  For the reasons discussed below,

Defendants' Motion should be granted in part and otherwise Denied.

*I.   BACKGROUND*

        A class of doctors alleged that health insurance companies engaged in a conspiracy to

inflate profits by systematically denying, delaying, and diminishing payments due to

physicians.  The HMOs allegedly effected this scheme through the manipulation of

computerized billing programs.  Throughout the pendency of this complex, multi-district, class-

action litigation initiated by scores of physicians against various health insurance companies,

settlements have been reached between numerous physicians and several of the insurers.

Among these is the Settlement Agreement dated as of April 27, 2007 by and among Blue Cross

and Blue Shield of North Carolina ("BCBSNC"), Health Care Service Corporation, Blue Cross

and Blue Shield of South Carolina, and the Blue Cross and Blue Shield Association

(collectively, the "Settling Defendants") and the Representative Plaintiffs, the Signatory

Medical Societies, and Class Counsel (the "Settlement").

On May 31, 2007, the Court entered a Preliminary Approval Order as to the

Settlement, enjoining class members from filing new lawsuits in which "Released Claims" are

asserted against "Released Parties":

> Pending final determination of whether the Settlement and the Settlement
> Agreement should be finally approved and the Class permanently certified, all
> putative Class Members and Signatory Medical Societies are hereby barred and
> enjoined from commencing or prosecuting any action asserting any Released
> Claims, and any other action or proceedings brought by any putative Class
> Members or Signatory Medical Societies asserting any Released Claims are
> hereby stayed and suspended until further order of the Court.

[D.E. 945 at 12].[1]

On February 21, 2008, Dr. John Powderly II and Carolina BioOncology Institute, PLLC

(collectively "Powderly")[2] filed a complaint in North Carolina state court ("North Carolina

Complaint") alleging that BCBSNC failed to provide Powderly "in network" status on its

provider network based on his involvement with clinical trials. *See North Carolina Complaint*

[D.E. 1284-3]. Powderly raised claims for unfair or deceptive practices, tortious interference

with business relationships and contracts, antitrust, and quantum meruit all based on some

or all of the Settling Defendants (i) refusing Powderly's application to participate in the

---

[1]      We note that the very same provisions of this Preliminary Approval Order were
incorporated in the Court's Final Order Approving Settlement on April 20, 2008 [D.E. 1286].
For ease of consideration, as the parties' papers only relied on the Preliminary Approval Order
that was then in place, we will continue to cite to that Order here.

[2]      Dr. Powderly, an oncologist, founded the Carolina BioOncology Institute in 2005.
Carolina BioOncology is solely owned by Dr. Powderly, and was established to administer
clinical trials for cancer patients.

BCBSNC network; (ii) unlawfully coordinating to deny him access to "in network" participation in their plans; and (iii) failing to provide reimbursement for out of network services directly to Carolina BioOncology.  *Id.*

In light of the Preliminary Approval Order, Settling Defendants move this Court to enforce the injunction against Powderly and order that the North Carolina Complaint be dismissed.  Settling Defendants further request that this Court find Powderly and his counsel in contempt for violating the Court's Preliminary Approval Order.  Powderly timely responded to the pending motion to oppose the entry of the injunction because his North Carolina claims were not "fee for service" claims that fell within the scope of the settlement but were, instead, narrower claims arising from the denial of network participation for his clinical trial work.

## II.   ANALYSIS

The language of the Court's Preliminary Approval Order clearly prohibits Class members from initiating lawsuits against Released Parties for any claims released by the Settlement.  This Court, therefore, must grant Settling Defendants' motion if three conditions exist: (1) the North Carolina plaintiffs are class members; (2) Defendants are Released Parties under the Settlement; and (3) the claims at issue in the North Carolina Complaint are Released Claims.

### A.   *Powderly and Carolina BioOncology are Class Members*

The Preliminary Approval Order conditionally certified a nationwide settlement class composed of the following class members:

> any and all Physicians, Physician Groups and Physician Organization who provided Covered Services to any Plan Member or services to any individual enrolled in or covered by a Plain offered or administered by any Person named as a defendant in the Complaint or by any other primary licensee of the BCBSA or by any of their respective current or former subsidiaries or Affiliates, in each case from May 22, 1999 through the Preliminary Approval Date.

[D.E. 945 at 3].  There is no dispute that Dr. Powderly provided covered services to oncology patients, and is therefore a putative class member under the Settlement. It is also undisputed that Dr. Powderly did not opt out of the class, and is therefore bound by the provisions of the Settlement.

Powderly unconvincingly argues that his solely owned business enterprise, Carolina BioOncology, is not a "physician organization" as defined by the Settlement because it has only one taxpayer identification number.  The language at issue from the Settlement is:

> 1.88 "Physician Organization" means any association, partnership, corporation or other form of organizaiton (including without limitation independent practice associations and physician hospital organizations), that arranges for care to be provided to Plan Members by Physicians organized under multiple taxpayer identification numbers.

It is readily apparent that, while Carolina BioOncology may have just one taxpayer identification number, this does not exclude it from the class.  As the Settling Defendants point out, Carolina BioOncology is (i) the professional corporation through which Dr. Powderly bills the Settling Defendants; and (ii) Dr. Powderly and Carolina BioOncology have the same taxpayer identification number.  Carolina BioOncology is the alter ego of Dr. Powderly and, therefore, a class member. [D.E. 1372-1 at 12].  In any event, Powderly did not refute Defendants' position on this issue, and we take this silence as a tacit admission that both Dr. Powderly and Carolina BioOncology are class members, and bound by the terms of the Settlement.

### B.    *Defendants are Released Parties*

The Preliminary Approval Order includes the Settling Defendants as Released Parties. There is no dispute that Settling Defendants are Released Parties for purposes of the Settlement.

### C.     *Only the Quantum Meruit Claim is a Released Claim*

The Settlement defines Released Claims as

> any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind, source or character whether arising under any federal or state law, which ... includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional ... arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action, or addressed in this Agreement, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons, or to the business practices that are the subject of § 7. This includes, without limitation and as to Released Parties only, any aspect of any fee for service claim[.]

[D.E. 1325-3 at 18]. Before we filter the North Carolina Complaint through this release language, we must pinpoint the essence of the *Love* lawsuit. The notice of settlement package sent to all potential class members aptly summarizes the *Love* case:

> The Complaint in the Action alleges, among other things, that between 1999 and the present, the Blue Parties, among others, engaged in a conspiracy to improperly deny, delay, and/or reduce payments to physicians, physician groups, and physician organizations by engaging in several types of allegedly improper conduct, including but not limited to:
>
> • Misrepresenting and / or failing to disclose the use of edits to unilaterally "bundle," "downcode," and/or reject claims for medically necessary covered services;
>
> • Failing to pay for "medically necessary" services in accordance with member plan documents;
>
> • Failing and/or refusing to recognize CPT® modifiers;
>
> • Concealing and/or misrepresenting the use of improper guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services;
>
> • Misrepresenting and/or refusing to disclose applicable fee schedules;

> > • Failing to pay claims for medically necessary covered services within the required statutory and/or contractual time periods.

> The Complaint in the Action claims that the conduct described above violated the federal statute entitled the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

*See Notice of Proposed Settlement of Class Action* [D.E. 1325-2 at 12].  In short, the *Love* case concerned the insurance companies' improper methods of denying, delaying, and diminishing physicians' "fee for service" insurance claims.

Settling Defendants argue here that the causes of action in the North Carolina Complaint are related to the "facts, acts, events ... [and] circumstances" of the *Love* lawsuit, and are thus Released Claims.  They correctly point out that the North Carolina complaint contains factual allegations related to fee for service claims payment and processing, and the refusal and/or denial of benefits.  The complaint alleges that BCBSNC "repeatedly failed to make payments to the Clinic for services provided ... despite those members having assigned their payments to the Clinic." *See North Carolina Complaint* [D.E. 1284-3 at ¶ 63].

Specifically, in Count VIII of the North Carolina Complaint, the Quantum Meruit claim, Plaintiffs allege that "BCBSNC knowingly and voluntarily accepted the services provided to its members by approving the claims for 'out of network' services ... [but Powderly] never received payment for these services, even after making several specific requests to BCBSNC that payment for the 'out of network' services be provided directly to [Powderly] pursuant to the assignments executed by BCBSNC's members." [D.E. 1284-3 at ¶ 123-24].[3] Count VIII is on its face, therefore, a Released Claim.

Even Powderly acknowledges that his claim for Quantum Meruit addresses issues related to payment for "fee for service" claims. [D.E. 1401-2 at 5 n.2].  He fails to convince us,

---

[3]     The claim for Quantum Meruit is the eighth claim in the North Carolina Complaint, but it is misnumbered as Count VI.

however, that the particular fee for service claim he raises in North Carolina was never addressed by the claims in *Love*. To the contrary, the refusal to accept valid assignment of benefits was *expressly* raised as a claim in the Fifth Amended Complaint of the *Love* case. *See Fifth Amended Complaint* [D.E. 786 at ¶ 278-281]. Moreover, the *Love* Settlement addressed this very issue in Section 7.29(o): "[N]othing contained in this Agreement shall otherwise require the Blue Plan to make payment directly to any Non-Participating Physician." Count VIII of the North Carolina complaint squarely falls within the scope of the Settlement. Therefore, Powderly should be enjoined from pursuing that particular claim because it concerns the denial, delay, and diminishment of payment for his services.

Counts I through VII, on the other hand, are based upon particular non-discrimination concepts of North Carolina law that Powderly seeks to benefit from. Powderly, through Carolina BioOncology, participates in a large number of clinical trials for cancer patients. *See North Carolina Complaint* [D.E. 1284-3 at ¶ 12]. Settling Defendants allegedly denied Powderly "in network" status on their provider network based entirely upon the fact that medical services were provided in connection with clinical trials. *Id.* at ¶ 34-38. The denial of "in network" status made it more expensive for patients to seek out Powderly's services because annual deductibles range from $0 to $3000 for "in network" treatment, but range from $4000 to $8000 for "out of network" treatment. *Id.* at ¶ 42. According to the complaint, "[t]he unlawful combination among the [Settling Defendants] with regard to network decisions ... has cut off access to a supply, facility or market — namely access to in network provider status — necessary for Plaintiffs to compete in the market for the provision of general oncology services and clinical trials." *Id.* at ¶ 46. Powderly further alleges that they "have suffered and continue to suffer substantial damages in the form of lost revenue, lost opportunities to participate in

clinical trials, harm to professional reputation, and severe negative treatment impact for many patients." *Id.* at ¶ 17; *see also id.* at ¶ 56-58.

North Carolina law ostensibly requires insurers to make such treatments available to their members, and prohibits discrimination against terminally ill cancer patients, as Powderly summarizes:

> There are a number of provisions of North Carolina law that specifically endorse and protect coverage for the treatments provided by Dr. Powderly. ... N.C. GEN. STAT. § 58-3-200(e) explicitly prohibits the sort of discriminatory behavior against high-risk populations that BCBSNC is practicing in this case. It directs that: [n]o insurer shall establish provider selection or contract renewal standards or procedures that are designed to avoid or otherwise have the effect of avoiding enrolling high-risk populations ... State Statutes mandate that insurance companies such as BCBSNC provide coverage for clinical trials. Specifically, "[e]ach health benefit plan shall provide coverage for participation in phase II, phase III, and phase IV covered clinical trials by its insureds or enrollees whomeet protocol requirements of the trial and provided informed consent. N.C. GEN. STAT. § 58-3-255(b).   Section 58-3-200(d) of the State Statutes explicitly protects insureds from being subject to "out of network" coverage limitations.

*Id.* at ¶ 48-51.  Powderly concludes that Settling Defendants violated these North Carolina statutes, for which damages and relief may be obtained under the auspices of one claim of unfair or deceptive trade practices, two claims for tortious interference with a business relationship, two claims under the Sherman Act, and two claims under North Carolina state antitrust laws.

Uniquely, Counts I-VII of the North Carolina Complaint hinge on whether BCBSNC and its affiliates conspired to exclude Powderly from the provider network, thus hindering his ability to administer clinical trials to cancer patients, contrary to public policy principles arising under that state's law.  Whether that legal theory ultimately has any merit or not, our review of the record demonstrates that the North Carolina Complaint is not "in any way related to ... any fee for service claim" and is unrelated to the allegations made in the *Love* lawsuit.  Powderly's case against Settling Defendants turns on the application of several North

Carolina statutes that supposedly mandate insurance companies to provide coverage for clinical trials.  The North Carolina Complaint raises claims that do not fall within the definition of Released Claims in the Settlement.

It is true, as Settling Defendants point out, that the concept of network and out-of-network status was certainly included within the *Love* allegations and the Settlement.  The *Love* plaintiffs did allege in part that one weapon in the defendants' alleged conspiracy was the threat of being "black-balled" from participation in their health care network.  Thus, to the extent Powderly is raising allegations in the North Carolina complaint that relate generally to the denial, delay, or diminishment of network or out-of-network services, those allegations (specifically paragraphs 59-65 of the Statement of Facts, and Count VIII for Quantum Meruit) are being enjoined.  But Settling Defendants' point can only go that far.  The concept of discriminating against physicians who perform clinical trials is a very particularized allegation that was not at issue in *Love*.  To put it differently, the question whether North Carolina health care policies preclude these Settling Defendants from considering a clinical trial practice as a motivating factor in the network participation decision was neither posed nor answered, one way or the other, in the *Love* settlement.  Though its merits may be in question, these unique claims may be pursued before a North Carolina court.

It must also be acknowledged that damages that may flow from this unique claim may have to be measured against what the *Love* settlement provided.  Settling Defendants can certainly raise a defense in the North Carolina case that Powderly's damages cannot be an end-run around the settlement proceeds that were obtained and cannot be measured inconsistently.  But those defenses should be addressed by the North Carolina court at the appropriate time, assuming that Powderly's discrimination theory survives the light of day on

summary judgment.   We find only that this theory of liability is not foreclosed by the Settlement or this Court's Preliminary Approval Order.

Accordingly, except for the quantum meruit claim, Powderly's remaining claims are not Released Claims, and Powderly should not be enjoined from pursuing those claims in North Carolina.

### III.   CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Settling Defendants' Motion to Enforce the Court's Injunction Order and for a Rule to Show Cause Why Plaintiffs and Their Attorneys Should Not be Held in Contempt [D.E. 1284-1] be **GRANTED in part and DENIED in part.**

1.      Powderly should have twenty (20) days from the date of the Court's final Order to withdraw the claim for Quantum Meruit relief in Count VIII of the North Carolina Complaint.  Specifically, Powderly shall withdraw ¶¶ 59-65 of the Statement of Facts, and Count VIII for Quantum Meruit relief in ¶¶ 119-125.   If Powderly fails to voluntarily withdraw, either through an amended complaint or stipulated order striking these paragraphs from the North Carolina Complaint, Powderly and his counsel may be held in contempt of this Court's Order.

2.      Counts I through VII of the North Carolina complaint are not Released Claims, and therefore Powderly should not be enjoined from pursuing these particular causes of action against Settling Defendants but solely to the extent that they are based on the alleged denial of in network status due to Powderly's clinical trial practice.

3.      Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.   Failure to timely file

objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982)(en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 3rd day of June, 2008.

EDWIN G. TORRES
United States Magistrate Judge