UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-21296-CIV-MORENO/TORRES

RICK LOVE, M.D., *et al.*,

    Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD ASSOCIATION, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON BLUE CROSS AND BLUE SHIELD OF FLORIDA'S MOTION TO ENFORCE THE INJUNCTION AGAINST GARY ROSENBAUM**

    This matter is before the Court on Blue Cross and Blue Shield of Florida's Motion and Supporting Memorandum for an Order Enforcing the Injunction Against Gary Rosenbaum Prohibiting Him from Prosecuting his State Court Action & to Show Cause Why he Should Not be Held in Contempt [D.E. 1304]. The Court has considered the motion, the response, the reply, and the pertinent portions of the record. For the reasons discussed below, this Court recommends that Defendants' Motion be **GRANTED**.

*I.   BACKGROUND*

    A class of doctors alleged that health insurance companies engaged in a conspiracy to inflate profits by systematically denying, delaying, and diminishing payments due to physicians. The HMOs allegedly effected this scheme through the manipulation of computerized billing programs. Throughout the pendency of this complex, multi-district, class-action litigation initiated by scores of physicians against various health insurance companies,

settlements have been reached between numerous physicians and several of the insurers. The Court recently approved one such settlement, the Settlement Agreement dated as of April 27, 2007 ("Final Approval Order") [D.E. 1286]. The Final Approval Order enjoined class members from filing new lawsuits in which "Released Claims" are asserted against "Released Parties":

> The Releasing Parties are permanently enjoined from: (i) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding, or order in any jurisdiction based on any or all Released Claims against one or more Released Parties.

[D.E. 1286 at ¶ 9].

On December 21, 2007, Gary J. Rosenbaum, M.D. ("Dr. Rosenbaum") filed a complaint in Florida State court ("State Court Complaint") that raised several causes of action against Blue Cross and Blue Shield of Florida, Inc. ("BCBSF"): violations of various Florida medical service reimbursement statutes, breach of implied contract, quantum meruit, open account, and declaratory judgment as to the money allegedly owed to Dr. Rosenbaum by BCBSF. *See State Court Complaint* [D.E. 1304-3]. In light of the Final Approval Order, BCBSF now moves this Court to enforce the injunction against Dr. Rosenbaum, and compel withdrawal of his State Court Complaint; BCBSF furthers request that this Court find Dr. Rosenbaum in contempt for violating the Final Approval Order.

## *II.   ANALYSIS*

The language of the Court's Final Approval Order clearly prohibits class members from initiating lawsuits against Released Parties for any claims released by the Settlement Agreement. This Court, therefore, must grant BCBSF's motion if three conditions exist: (i) BCBSF is a Released Party under the Final Approval Order; (ii) the claims at issue in the State Court Complaint are Released Claims; and (iii) Dr. Rosenbaum is a class member.

Dr. Rosenbaum does not refute that BCBSF is a Released Party under the Final Approval Order. Nor does he challenge BCBSF's contention that the claims at issue in the State Court Complaint are Released Claims. Thus, the only dispute before this Court is whether Dr. Rosenbaum is a class member. The answer depends on whether he timely opted out of the *Love* class.

### A. *The* **Love** *Class*

The Final Approval Order certified a nationwide settlement class composed of the following class members:

> Any and all Physicians, Physician Groups and Physician Organization who provided Covered Services to any Plan Member or services to any individual enrolled in or covered by a Plan offered or administered by any Person named as a defendant in the Complaint or by any other primary licensee of the BCBSA or by any of their respective current or former subsidiaries or Affiliates....*The Class shall exclude: (i) all Persons who, in accordance with the terms of this Agreement, execute a timely request for exclusion (Opt-Out) from the Class.*

[D.E. 945 at 3] (emphasis added). Therefore, if Dr. Rosenbaum executed a timely request for exclusion from the Class, he is not bound by the terms of the Final Approval Order. The Notice of Proposed Settlement of Class Action described in detail *how* a putative class member could opt out of the class:

> If you do not want to be a Class Member and participate in the proposed Settlement, then you must send a written request to Opt Out of the Class and the Settlement to the Notice Administrator postmarked NO LATER THAN SEPTEMBER 14, 2007, including your name, business address, telephone number, Federal Tax Identification Number, and signature ... TO BE CONSIDERED TIMELY AND TO EFFECTIVELY OPT-OUT OF THE CLASS AND THE SETTLEMENT, YOUR COMPLETE AND SIGNED OUT-OUT REQUEST MUST BE POSTMARKED BY NO LATER THAN SEPTEMBER 14, 2007. IF IT IS NOT POSTMARKED BY THAT DATE, YOUR RIGHT TO OPT-OUT WILL BE DEEMED WAIVED AND YOU WILL BE BOUND BY ALL ORDERS AND JUDGMENTS ENTERED IN CONNECTION WITH THE SETTLEMENT.

*See Notice of Proposed Settlement of Class Action* [D.E. 1325-2 at 17] (emphasis in original); *see also Notice of Proposed Settlement of Class Action* [D.E. 1349 at 32]. Dr. Rosenbaum does

not contest proper notice. This case turns solely on whether Dr. Rosenbaum opted out before the September 14, 2007 deadline.

### B.     *The Parties' Arguments*

Prior to filing the injunction motion in this Court, BCBSF sought relief in state court, and moved to dismiss the State Court Complaint on grounds that the claims were Released Claims under the Preliminary Approval Order.[1] Just prior to the motion to dismiss hearing,[2] Dr. Rosenbaum turned over a supposed copy of a August 15, 2007 letter ("Opt Out Letter") that expressed his desire to opt out of the *Love* settlement. [D.E. 1304-5 at 2].

According to Dr. Rosenbaum, the Opt Out Letter contained the requisite information to opt out of the class, i.e. name, address, phone number, federal tax ID number, and signature; the letter was placed in a properly addressed envelope; proper postage was placed on the envelope; and the envelope was sent via regular mail to the Notice Administrator at or about the same time it was signed. *See Dr. Rosenbaum's Affidavit* [D.E.1349 at 21-23]. Dr. Rosenbaum also relies on the affidavit of his front office administrator to corroborate his contention that the Opt Out Letter was timely mailed. *See Affidavit of Nora Howell Regarding Mailing of Opt Out Request* [D.E. 1349 at 27]. Dr. Rosenbaum professes that the common law "mailbox rule" applies, and grafts onto his claim a presumption that the Opt Out Letter was received by BCBSF.

---

[1] When BCBSF filed the motion to dismiss the State Court Complaint, the Court had not yet entered the Final Approval Order for *Love*. At that time, the operative document enjoining Released Claims was the Preliminary Approval Order of the *Love* Settlement [D.E. 945]. However, the language enjoining Released Claims is the same in both Orders.

[2] The parties jointly agreed that this Court should resolve the question of whether Dr. Rosenbaum is enjoined from prosecuting his state court action. Although it is unclear from the moving papers, we presume there has been no ruling on the state court motion to dismiss, and that the parties agreed to stay the state court proceedings pending the outcome of this motion.

BCBSF acknowledges that this Opt Out Letter would have been sufficient to opt out of the *Love* class, had the letter in fact been mailed by the September 14, 2007 deadline. However, BCBSF maintains that Dr. Rosenbaum never mailed it, and that the first time BCBSF received the Opt Out Letter was just before the hearing on the motion to dismiss the State Court Complaint, months after the opt out deadline had passed. *See Motion Exhibit 1, Affidavit of Jenny Penning Regarding Service for Gary J. Rosenbaum* [D.E. 1304-2 at ¶ 5]. BCBSF points out that the *Love* Settlement Administrator has stringent procedures and controls over the processing and tracking of all communications. Therefore, if the *Love* Settlement Administrator never received the Opt Out Letter, Dr. Rosenbaum must not have mailed it. *See Reply Exhibit 1, Affidavit of Jenny Penning Regarding Opt Out Processing and Procedures* [D.E. 1396-2]. With respect to the application of the "mailbox rule," BCBSF argues that Dr. Rosenbaum is not entitled to a presumption of receipt of the Opt Out Letter because Dr. Rosenbaum failed to sufficiently prove that he actually addressed, stamped, and timely mailed the letter.

### C. *The "Mailbox Rule" Does Not Apply*

Under the mailbox rule, an item that has been properly addressed, stamped, and mailed establishes a rebuttable presumption that the item was received by the addressee. *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1237 (11th Cir. 2002) (applying the mailbox rule to a medical malpractice claim under the Federal Tort Claims Act where a federal agency failed to timely receive the plaintiff's administrative tort claim) (citing *Konst v. Florida E. Coast Ry. Co.*, 71 F.3d 850 (11th Cir. 1996)). If Dr. Rosenbaum establishes an entitlement to the rebuttable presumption, we must then examine whether BCBSF rebutted the presumption. *See Spencer v. United States Postal Service*, No. 3:07cv150-RS-EMT, 2007 U.S. Dist. LEXIS 64568, at *3-4 (N.D. Fla 2007).

### *1.   Presumption of Receipt*

Dr. Rosenbaum is entitled to a presumption that his Opt Out Letter was received by BCBSF if he can demonstrate three facts: "(1) the document was properly addressed; (2) the document was stamped; and (3) the document was mailed." *Barnett,* 283 F.3d at 1240.  Based upon the lack of evidence submitted, however, we find that Dr. Rosenbaum is not entitled to the "mailbox rule" presumption that the Opt Out Letter was received by BCBSF.  Without some documentary proof of mailing, the testimony of a class member will seldom, if ever, be sufficient to meet the burden of showing a timely request to opt out. *See In re Worldcom, Inc. Securities Litigation*, No. 02 Civ. 3288 (DLC), 1995 U.S. Dist. LEXIS 7958, at *12 (S.D.N.Y. May 6, 2005) ("[Plaintiff] has not carried his burden of showing that he mailed in a request for exclusion.  There is no documentation of [Plaintiff's] mailing.").

For example, in *In re Prudential-Bache Energy Income Partnerships Securities Litigations,* MDL No. 888, 1995 U.S. Dist. LEXIS 5982, at *2 (E.D. La. May 4, 1995), the court refused to find effective a number of elections to opt out supported only by affidavits, stating that "once the affidavit of [the class member] requesting a late opt out is challenged, the Court must require that the investor produce some *additional* proof that the opt-out form properly completed as mailed in a timely manner to the correct address." (emphasis in original).  There is sound policy as to why the plaintiff carries the burden of showing that he mailed in a request for exclusion:

> To allow a party's testimony alone to establish an effort to opt out would set a troubling precedent in this enormous class action litigation.  Thousands of individual are currently pursuing [] claims ... Finding the testimony of a class member sufficient to warrant exclusion from the class invites false claims of mailing.  Without a requirement of documentary corroboration of a class member's efforts to opt out scores of individual credibility determinations may be necessary.  There is no inequity in the imposition of a requirement of documentary corroboration ... Certified or overnight mail would have provided a class member with documentation of an exclusion request with minimal cost and effort.

*See In re Worldcom, Inc. Securities Litigation*, 1995 U.S. Dist. LEXIS 7958, at *16-17; *see also In re Prudential-Bache*, U.S. Dist. LEXIS 5982, at *2 (suggesting that a plaintiff might meet this burden by including a receipt from the United States Postal Service indicating that something was mailed during the opt-out period to the correct address).

Dr. Rosenbaum fails to attach sufficient proof that the Opt Out Letter was properly stamped, properly addressed, and timely mailed. He relies on his own affidavit, a corroborating affidavit from Nora Howell, his front office administrator, and a supposed "copy" of the Opt Out Letter. He does not attach a copy of the envelope, or any other proof of mailing, and admits that such evidence does not exist. Simply put, he fails to "produce some additional proof" that he mailed the Opt Out Letter in a timely fashion.

Dr. Rosenbaum quotes *Barnett* at great length, but that case is distinguishable and illustrates why his argument fails here. In *Barnett*, the presumption of receipt attached because the plaintiff provided uncontradicted evidence that he mailed the necessary document; the document was mailed in a "business reply mail" envelope that was provided by the government agency, proof that the document was properly addressed; and postage on the envelope was pre-paid. *Barnett*, 283 F.2d at 1240. By contrast, Dr. Rosenbaum fails to provide any corroborating documentary evidence that would warrant an entitlement to the mailbox rule presumption.

Further, he fails to distinguish *Spencer,* a factually analogous case where a plaintiff was not entitled to a presumption of mailing because she did not have a copy of the envelope in which her document was supposedly mailed. *See Spencer*, 2007 U.S. Dist. LEXIS 64568, at *11-12. In *Spencer*, the plaintiff's attorney prepared and supposedly mailed a document, but the court found contradictions and inconsistencies in the attorney's affidavit and failed to apply the mailbox rule presumption. The *Spencer* decision turned primarily on the lack of

corroborating documentary evidence of mailing, but the conflicting testimony of the person that allegedly mailed the envelope was also considered. *Id.* at *11-14 ("Given the questionable circumstances surrounding the request for reconsideration and Plaintiff's failure to provide a copy of the properly addressed and stamped envelope in which the request was allegedly mailed ... Plaintiff is not entitled to a presumption that her purported request for reconsideration was received.").

Here, Dr. Rosenbaum fails to provide corroborating documentary evidence that the document was properly addressed, stamped, or mailed. And his supporting affidavit fails to pinpoint who mailed the Opt Out Letter, when it was mailed, and how it was mailed. Dr. Rosenbaum instead states the following:

> "I personally or at my direction, my assistant, Nora Howell, addressed the opt out request envelope ... placed the duly signed request in the proper Notice Administrator envelope ... either in the outgoing mail for the practice and either hand delivered it to the postman that same day or the next mail service day or in the USPS mail drop box routinely used by my medical practice that same day or the next office business day."

[D.E. 1349 at 22-23].  Ms. Howell, on the other hand, does not equivocate, and states affirmatively that *she* addressed the Opt Out Letter, placed it in a properly addressed envelope, and ultimately mailed it. [D.E. 1349 at 27-29]. The inconsistencies are subtle but significant nevertheless given the absence of any corroborating evidence.

We also find it telling that Dr. Rosenbaum alleges to have opted out of two different settlements, yet the Settlement Administrator received neither opt out request. On March 11, 2008, two days before the hearing on the motion to dismiss the State Court Complaint, Dr. Rosenbaum mistakenly provided BCBSF's counsel with a copy of a letter dated December 31, 2007 ("Highmark Opt Out Letter"), purportedly expressing Dr. Rosenbaum's desire to opt out of the *Love* settlement involving co-Defendant Highmark.  *See Highmark Opt Out Letter* [D.E.

1304-4 at 2].³ However, as of April 17, 2008, the Highmark Settlement Administrator had not received a valid opt out request from Dr. Rosenbaum, and the deadline to opt out was January 14, 2008. *See Motion Exhibit 5, Affidavit of Jenny Penning Regarding Service for Gary J. Rosenbaum* [D.E. 1304-5 at ¶ 5]. Dr. Rosenbaum did not refute Defendant's position on this matter, and we take this silence as a tacit admission that he failed to timely mail the Highmark Opt Out Letter. This particular observation is not necessarily dispositive, but it certainly raises questions about the veracity of his affidavit with respect to the Opt Out Letter.

Dr. Rosenbaum also repeatedly points out that his state court case was pending for several months prior to the opt-out deadline. Although he never expressly raises this argument, we reject the implication that pending litigation constitutes an effective opt out of a class action. *See, e.g., Demint v. NationsBank Corp.*, 208 F.R.D. 639, 641 (M.D. Fla. 2002) ("[T]he pendency of a separate, individual action neither excuses a litigant from compliance with an applicable 'opt out' procedure in a related class action nor obligates any party or court to treat the litigant as unique") (citing *Sloan v. Winn Dixie Raleigh, Inc.*, 25 Fed. Appx. 197, 198 (4th Cir. 2002) (rejecting appellants' theory "that the maintenance of their suit in North Carolina was adequate notice of their desire to opt out of the *Dorman* class action in Florida")). Filing a state court complaint is not a valid substitute for a timely mailed opt out letter:

> It is undisputed that pursuing an individual action or arbitration does not constitute notice of an election to opt out of a class action. If the filing of a separate action were treated as an irrevocable election to opt out, class members would risk forfeiting their opportunity to participate in the class action before receiving official notice that the class action even existed. Conversely, without a firm opt-out ate, litigants could wait to see if the class action resulted in a more favorable than anticipated resolution before choosing whether to continue with their own litigation.

---

³ The following day, he turned over the Opt Out Letter for the *Love* Settlement pertaining to BCBSF's settlement.

*See In re Worldcom*, 1995 U.S. Dist. LEXIS 7958, at *9-10 (internal citations omitted). Accordingly, the pendency and prosecution of Dr. Rosenbaum's State Court Complaint has no "opt out" effect with respect to the *Love* class action.

### *2. The Presumption Rebutted*

Because we find that Dr. Rosenbaum is not entitled to a presumption that his Opt Out Letter was received by BCBSF, we need not address whether BCBSF sufficiently rebutted this presumption.

### III. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Blue Cross and Blue Shield of Florida's Motion and Supporting Memorandum for an Order Enforcing the Injunction Against Gary Rosenbaum Prohibiting Him from Prosecuting his State Court Action & to Show Cause Why he Should Not be Held in Contempt [D.E. 1304] be **GRANTED.**

1. Dr. Rosenbaum should have twenty (20) days from the date of the District Court's adoption of this Report and Recommendation to withdraw the State Court Complaint. If he fails to voluntarily withdraw the State Court Complaint, Defendant's contempt motion shall be revisited by this Court.

2. Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993);

*LoConte v. Dugger,* 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

    **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 11th day of June, 2008.

                                            EDWIN G. TORRES
                                            United States Magistrate Judge

Copy to:
All counsel of record