0UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-21296-CIV-MORENO-TORRES

RICK LOVE, M.D., *et al.*,

    Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD ASSOCIATION, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION ON HEALTH CARE SERVICE CORPORATION'S MOTION FOR AN ORDER ENFORCING THIS COURT'S INJUNCTION AGAINST ROBERT KOLBUSZ, M.D. AND THE CENTER FOR DERMATOLOGY AND SKIN CANCER, LTD.**

This matter is before the Court on Health Care Service Corporation's Motion and Supporting Memorandum for an Order Enforcing this Court's Injunction Against Robert Kolbusz, M.D. and the Center for Dermatology and Skin Cancer, Ltd. & to Show Cause why they Should Not be Held in Contempt ("Defendant's Motion") [D.E. 1299-1].[1] The Court has considered the motion, the response, the reply, and the pertinent portions of the records. For the reasons discussed below, this Court recommends that Defendants' Motion be **GRANTED in part and DENIED in part**.

### *I.  BACKGROUND*

A class of doctors alleged that health insurance companies engaged in a conspiracy to inflate profits by systematically denying, delaying, and diminishing payments due to

---

[1] This motion was referred for a Report and Recommendation by the Honorable Federico A. Moreno pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Rules of the Local Rules of the Southern District of Florida.  [D.E. 1419].

physicians. The HMOs allegedly effected this scheme through the manipulation of computerized billing programs. Throughout the pendency of this complex, multi-district, class-action litigation initiated by scores of physicians against various health insurance companies, settlements have been reached between numerous physicians and several of the insurers. The Court recently approved one such settlement, the Settlement Agreement dated as of April 27, 2007 ("Final Approval Order") [D.E. 1286]. The Final Approval Order enjoined class members from filing new lawsuits in which "Released Claims" are asserted against "Released Parties":

> The Releasing Parties are permanently enjoined from: (i) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding, or order in any jurisdiction based on any or all Released Claims against one or more Released Parties.

*See* Final Approval Order at ¶ 9.

On April 9, 2008, Dr. Robert Kolbusz ("Dr. Kolbusz") and the Center for Dermatology and Skin Cancer, Ltd. ("CDSC") (collectively "Illinois Plaintiffs") filed a complaint in Illinois state court ("Illinois Complaint") against Health Care Service Corporation ("HCSC"), asserting four causes of action: (i) breach of contract; (ii) tortious interference with contractual relationships; (iii) tortious interference with prospective economic advantage; and (iv) defamation. *See Illinois Complaint* [D.E. 1299-2].

The allegations for breach of contract in Count I are essentially threefold. First, Illinois Plaintiffs allege that HCSC breached the parties' provider agreement by imposing unreasonable and unjustified burdens before agreeing to process requests for payment, including excessive demands for medical records and photographic images of every treatment. *See Illinois Complaint* at ¶¶ 6, 11-12. Supposedly, the volume of requests for records is so great that Dr. Kolbusz had to employ two full-time administrative personnel just to respond to the requests for patient files. *Id.* at ¶ 16.

Second HCSC allegedly breached the parties' contract by either delaying payment, or altogether failing to pay for services rendered. *Id.* at ¶¶ 15, 17. The Illinois Complaint cites to several examples of specific claims denial, alleges that the denial rate for claims has escalated, and also notes that the average length of time require to pay a claim has risen from less than thirty days, to between three and six months. *Id.*

Third, HCSC allegedly breached the parties' provider agreement by interfering with "the usual physician/patient relationship between the Participating Physician and the Plan Insured." *Id.* at ¶ 6. In specific, representatives from HCSC supposedly told Dr. Kolbusz's patients that he was under investigation, falsified and/or improperly completed billing records, and failed to provide medically necessary treatment. [D.E. 1453 at 4]. The interference with the physician/patient relationship is, according to the Illinois Complaint, a breach of the parties' agreement.

The causes of action for tortious interference with contractual relationships, tortious interference with prospective economic advantage, and defamation stem from the same nucleus of facts:

> HCSC's representatives informed Dr. Kolbusz's patients that he was being "investigated." The HCSC representatives also told the doctor's patients that he submitted incorrect information on their bills; that Dr. Kolbusz had not performed medically necessary treatment; and that such treatment was not covered because it was merely cosmetic. These egregious misstatements were intended to, and in some cases did, destroy the patients' faith and trust in their physician.

[D.E. 1453 at 2-3]. According to the Illinois Complaint, HCSC directly and irreparably interfered with the doctor's contractual relationships with his patients (Count II); interfered with Dr. Kolbusz's future prospects for business because his existing patients stopped referring friends and colleagues (Count III); and defamed Dr. Kolbusz by falsely disparaging his reputation (Count IV). [D.E. 1453 at 3].

In light of the Final Approval Order, and the undisputed fact that Dr. Kolbusz did not opt out of the class, HCSC moves this Court to enforce the injunction against Illinois Plaintiffs and compel withdrawal of the Illinois Complaint. HCSC further requests that this Court find Illinois Plaintiffs in contempt for violating the Court's Final Approval Order. HCSC argues broadly that the causes of action in the Illinois Complaint "arise from allegations that HCSC is attempting to reduce its financial obligations to the Illinois Dermatology Plaintiffs by unfairly denying their claims for reimbursement or engaging in unfair reimbursement practices relating to their denials of the Illinois Dermatology Plaintiffs' fee-for-service claims." [D.E. 1299-1 at 7]. We agree, but only with respect to the breach of contract claim.

## II.   ANALYSIS

The language of the Court's Final Approval Order clearly prohibits Class members from initiating lawsuits against Released Parties for any claims released by the Settlement. This Court, therefore, must grant Settling Defendants' motion if three conditions exist: (i) the Illinois Plaintiffs are class members; (ii) HCSC is a Released Parties under the Settlement; and (iii) the claims at issue in the Illinois Complaint are Released Claims.

### A.   *Plaintiffs are Class Members*

The Final Approval Order permanently certified a settlement class composed of the following class members:

> Any and all Physicians, Physician Groups and Physician Organizations who provided Covered Services to any Plan Member or services to any individual enrolled in or covered by a Plan offered or administered by any Person named as a defendant in the Complaint or by any other primary licensee of the BCBSA or by any of their respective current or former subsidiaries or Affiliates, in each case from May 22, 1999 through May 31, 2007, ...

*See* Final Approval Order at ¶ 2. It is undisputed that the Illinois Plaintiffs did not opt out of the *Love* settlement, and are therefore class members bound by the terms of the Final Approval Order.

### B.     *Defendants are Released Parties*

It is also undisputed that the Final Approval Order includes HCSC as a Released Party.

### C.     *Plaintiffs' Breach of Contract Claim is a Released Claim*

The Final Approval Order defines Released Claims as

> any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind, source or character whether arising under any federal or state law, which ... includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional ... arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action, or addressed in the Settlement Agreement, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons, or to the business practices that are the subject of Section 7 of the Settlement Agreement.  This includes, without limitation and as to Released Parties only, any aspect of any fee for service claim[.]

*See* Final Approval Order at ¶ 5.  Before we filter the Illinois Complaint through this release language, we must pinpoint the essence of the *Love* lawsuit.  The notice of settlement package sent to all potential class members aptly summarizes the *Love* case:

> The Complaint in the Action alleges, among other things, that between 1999 and the present, the Blue Parties, among others, engaged in a conspiracy to improperly deny, delay, and/or reduce payments to physicians, physician groups, and physician organizations by engaging in several types of allegedly improper conduct, including but not limited to:
>
> • Misrepresenting and / or failing to disclose the use of edits to unilaterally "bundle," "downcode," and/or reject claims for medically necessary covered services;
>
> • Failing to pay for "medically necessary" services in accordance with member plan documents;
>
> • Failing and/or refusing to recognize CPT® modifiers;
>
> • Concealing and/or misrepresenting the use of improper guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services;

> • Misrepresenting and/or refusing to disclose applicable fee schedules;
>
> • Failing to pay claims for medically necessary covered services within the required statutory and/or contractual time periods.
>
> The Complaint in the Action claims that the conduct described above violated the federal statute entitled the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*.

[D.E. 1453 at 7]. Simply put, the *Love* case concerns insurance companies' improper methods of denying, delaying, and diminishing physicians' "fee for service" insurance claims. Because the Final Approval Order prohibits Illinois Plaintiffs from filing Released Claims, we need to determine which claims in the Illinois Complaint are "in any way related to" fee for service claims.

### *1.   Count I:  Breach of Contract*

As HCSC correctly points out, the Illinois Complaint contains factual allegations related to fee for service claims payment and processing, and the refusal and/or denial of benefits. The Illinois Complaint alleges that HCSC has "greatly increased numbers of requests for medical records on claims for payment for the Subject Treatments ... denied these claims, has asserted that these procedures were cosmetic and not covered, and has claimed that they were not medically necessary." *See Illinois Complaint* at ¶ 12-13. Specifically, in Count I, Plaintiffs allege that HCSC interfered with the physician/patient relationship, violated the obligation to promptly and reasonably adjudicate and pay justifiable claims, and violated the implied covenant of good faith and fair dealing by performing follow-up reviews on an excessive number of patients, thus increasing Dr. Kolbusz's costs and expenses. *Id*. at ¶ 36. By any measure, these actions (if true) are attempts to deny, delay, or diminish payment on a fee for service claim.

The breach of contract claim in Count I is therefore a Released Claim. Illinois Plaintiffs try to counter this finding by arguing that "Dr. Kolbusz's breach of contract claim for payment

of services rendered is in the form of a collections claim. It solely relates to services that HCSC acknowledges are due (i.e. are medically necessary and properly billed)." [D.E. 1453 at 4]. Nevertheless, a claim for payment for rendered services falls within the purview of the Final Approval Order because such a claim concerns the denial, delay, and diminishment of payment. Coining the breach of contract claim as a "collections claim" does not differentiate Count I from a released fee for service claim. Therefore, Illinois Plaintiffs are enjoined from pursuing the breach of contract claim.

### 2.  *Counts II-IV:  Tortious Business Interference and Defamation*

Counts II through IV, on the other hand, all stem from alleged defamatory statements made by HCSC representatives. According to the Illinois Complaint, in November 2006, HCSC representatives began contacting Dr. Kolbusz's patients and informing them that "Dr. Kolbusz and CDSC are being 'investigated' and that reimbursement for care he provides will be denied for all claims under the 'investigation' is over." *See Illinois Complaint* at ¶ 22. In addition, these representatives have suggested that Dr. Kolbusz is providing unnecessary, inappropriate care and that he is engaging in fraudulent and deceptive billing practices. *Id.* at ¶ 28. Dr. Kolgusz alleges that, as a direct result of these contacts, he has lost a large number of patients "either because [my patients] have decided to obtain care elsewhere from another physician who is not 'under investigation' or because Blue Cross has made them apprehensive that they could become responsible for paying [their own medical bills]." *Id.* at ¶ 30. With respect to damages, "[t]he actions of Blue Cross have and will continue to negatively impact both patient-to-patient referrals and the willingness of patients to access Dr. Kolbusz's practice for follow-up care." *Id.* at ¶ 32.

In light of these factual allegations, Illinois Plaintiffs sued for tortious interference with contractual relationships in Count II. *Id.* at ¶ 42 ("The actions of Blue Cross … wrongly interfere with [patient] relationships by causing patients to cease using Dr. Kolbusz's service

in apprehension that the bill for such a service will not be paid."). In Count III, Illinois Plaintiff brought a claim for tortious interference with prospective economic advantage, *Id.* at ¶ 49 ("The actions of Blue Cross aforedescibed wrongly interfere with [future patient] relationships by discouraging patients from referring other patients to Dr. Kolbusz in apprehension that a bill for his services will not be paid."). The final cause of action in Count IV of the Illinois Complaint is for defamation. *Id.* at ¶ 54-55. ("[T]he statements which Blue Cross has published ... are defamatory and constitute defamation *pro quod* ... these statements are false since Dr. Kolbusz does not provide unnecessary or inappropriate care and since he does not engage in fraudulent or deceptive billing practices.").

Essentially, Counts II-IV of the Illinois Complaint hinge on whether HCSC and its representatives intentionally communicated defamatory and false information to Dr. Kolbusz's patients, thus hindering his ability to retain current patients, and possibly impeding future business in the form of client referrals. With respect to these three causes of action, the Illinois Complaint is not "in any way related to ... any fee for service claim" and is unrelated to the allegations made in the *Love* lawsuit. These claims against HCSC turn on the falsity of the statements made to Dr. Kolbusz's patients, and the resulting immediate and future harm to Dr. Kolbusz's medical practice. They are thus highly specific tort claims that, if true, exceed the scope of the *Love* lawsuit. Their resolution requires a highly factual analysis of events that allegedly took place long after the *Love* lawsuit was filed, and in some instances even after the parties entered into the settlement agreement ultimately approved by the Court. Counts II-IV in the Illinois Complaint, therefore, do not fall within the definition of Released Claims in the Settlement. Accordingly, the causes of action for tortious interference with contractual relationships, tortious interference with prospective economic advantage, and defamation are not Released Claims, and Illinois Plaintiffs are therefore not enjoined from pursuing these claims in Illinois.

### III.    CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Health Care Service Corporation's Motion and Supporting Memorandum for an Order Enforcing this Court's Injunction Against Robert Kolbusz, M.D. and the Center for Dermatology and Skin Cancer, Ltd. & to Show Cause why they Should Not be Held in Contempt [D.E. 1299-1] be **GRANTED in part and DENIED in part.**

1.  Plaintiffs shall have twenty (20) days from the date of the District Court's adoption of this report and Recommendation to withdraw the claim for Breach of Contract in Count I of the Illinois Complaint. Specifically, Plaintiffs shall withdraw ¶¶ 10-21 of the Statement of Facts, and Count I for Breach of Contract in ¶¶ 35-38. If Plaintiffs fail to voluntarily withdraw these paragraphs from the Illinois Complaint, HCSC's contempt motion shall be revisited by this Court.

2.  Counts II through IV of the Illinois Complaint are not Released Claims, and therefore Illinois Plaintiffs are not enjoined from pursuing these causes of action against HCSC.

3.  Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982)(en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 1st day of August, 2008.

/s/ Edwin G. Torres
EDWIN G. TORRES
United States Magistrate Judge

Copy to:
All counsel of record