UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-21296-CIV-MORENO/TORRES

RICK LOVE, M.D., et. al,

    Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD OF
ARIZONA, INC., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT

This matter is before the Court on Defendants Blue Shield of California, BCBSD, Inc., Blue Cross and Blue Shield of Arizona, and Arkansas Blue Cross and Blue Shield's Joint Motion to Dismiss the Sixth Amended Complaint [D.E. 1545][1] and Defendants Blue Cross of Idaho Health Service, Inc., Blue Cross and Blue Shield of Kansas, Premier Health, Inc., Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Nebraska, HealthNow New York, Inc., Blue Cross Blue Shield of North Dakota, Noridian Mutual Insurance Company, and Blue Cross and Blue Shield of Wyoming's Motion to Dismiss the Sixth Amended Complaint [D.E. 1543]. The Court has reviewed the motions, Plaintiffs' response, the replies, related authorities

---

[1] These motions were referred for a Report and Recommendation by the Honorable Federico A. Moreno pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Rules of the Local Rules of the Southern District of Florida. [D.E. 1630 & 1665].

submitted by the parties, and the record in the case. For the foregoing reasons the motion to dismiss should be granted.

## I.   BACKGROUND

A class of doctors alleged that health insurance companies engaged in a conspiracy to inflate profits by systematically denying, delaying, and diminishing payments due to physicians. The HMOs allegedly effected this scheme through the manipulation of computerized billing programs. Throughout the pendency of this complex, multi-district, class-action litigation initiated by scores of physicians against various health insurance companies, settlements have been reached between numerous physicians and several of the insurers.

On April 19, 2008, the Court approved one such settlement agreement, the Settlement Agreement dated as of April 27, 2007 ("Final Approval Order") [D.E. 1286]. Pursuant to the Final Approval Order, the Court dismissed all claims asserted by the Plaintiff class against majority of the Defendants. [D.E. 1287]. The only Defendants remaining in the case were the parties that were not signatories to the Settlement Agreement.

On June 16, 2008, Plaintiffs filed their three-count Sixth Amended Complaint against the remaining Defendants asserting claims for: (1) violation of Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c); (2) violation of 18 U.S.C. § 2 by seeking to and aiding and abetting in the violation of 18 U.S.C. § 1962(c); and (3) declaratory and injunctive relief under 18 U.S.C. § 1964(a). *See* Sixth Amended Complaint ¶¶ 304-18 [D.E. 1499].

The remaining Defendants include thirteen Blue Cross Blue Shield Plans or their parent corporations ("BCBS Plans").  The BCBS Plans are independently owned companies that license the Blue Cross and Blue Shield service marks.  Each of the BCBS Plans operates in a limited service area defined by the terms of that BCBS Plan's license agreement.

The BCBS Plans use two software programs to process the insurance claims that require the cooperation of two or more BCBS Plans.  The first is BlueCard.  BlueCard enables a subscriber of one BCBS Plan to seek treatment from a provider in the service area of another BCBS Plan.  All BCBS Plans participate in BlueCard, a program that is administered and governed by Blue Cross and Blue Shield Association ("BCBSA").[2] The second software program is NASCO.[3]  The BCBS Plans use the NASCO software to process claims for some national insurance accounts.

The Complaint alleges that the Defendants conspired to violate RICO.  Plaintiffs contend that the Defendants acted as an enterprise to commit the RICO predicate acts of mail fraud (in violation of 18 U.S.C. § 1341) and wire fraud (in violation of 18 U.S.C. § 1343).  According to the allegations in the Complaint, Defendants "sought to and did aid and abet the others" in committing mail and wire fraud.  *See* Sixth Amended Complaint ¶ 270.  Plaintiffs claim that the BCBS Plans sent by wire and mail "agreements, manuals, correspondences, patient lists, payments, EOBs, reports, data

---

[2] BCBS is a "released party" under the April 27, 2007 Settlement Agreement, thus any direct claims against it would be barred by the Final Approval Order.  BCBS is, however, listed as a co-conspirator in the Sixth Amended Complaint.

[3] The National Account Service Company was formed in 1987 by BCBSA. *See* Sixth Amended Complaint ¶ 208.

summaries, statements and Plan materials" to the Plaintiffs that contained representations that the "Defendants and other BCBS Entities would pay Plaintiffs and Class Members for the covered, medically necessary services they provided to Defendants' members in accordance with standard medical coding procedures." *See id.* ¶¶ 271-73(a). The Complaint also alleges that Defendants represented to the Plaintiff class that they will be paid in accordance with Current Procedural Terminology ("CPT") standards. *See id.* ¶ 81. Plaintiffs maintain that Defendant BCBS Plans conspired to utilize the BlueCard and NASCO software systems to systemically "reduce, delay and deny" payments in violation of the representations made to Plaintiff class. *See id.* ¶ 267(e). Furthermore, Plaintiffs allege that the "material constituting explanations for payments made or denied by Defendants . . . fail[ed] to reveal and/or actively conceal[ed] the reasons that payment has been denied, diminished, delayed, or otherwise adjusted from the request for payment as submitted by the physician." *Id.* ¶ 273(c). Plaintiffs also allege that "Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Individual Plaintiffs and the class and obtaining their property for the Defendants' gain." *Id.* ¶ 276.

Defendants jointly filed two motions to dismiss.[4] In both motions, Defendants argue, *inter alia*, that Plaintiffs' allegations of conspiracy and of the predicate RICO crimes of mail and wire fraud lack adequate specificity. Because we recommend disposal of the case on these grounds, we will not address other challenges raised by Defendants.

## II.   LEGAL STANDARD

The purpose of a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action

---

[4] Defendants Blue Shield of California, BCBSD, Inc., Blue Cross and Blue Shield of Arizona, and Arkansas Blue Cross and Blue Shield filed Joint Motion to Dismiss Plaintiffs' Sixth Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Defendants Blue Cross of Idaho Health Service, Inc., Blue Cross and Blue Shield of Kansas, Premier Health, Inc., Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Nebraska, HealthNow New York, Inc., Blue Cross and Blue Shield of North Dakota, Noridian Mutual Insurance Company, and Blue Cross and Blue Shield of Wyoming filed Motion of Certain Defendants to Dismiss Plaintiffs' Sixth Amended Complaint.

will not do." *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombley*, 127 S. Ct. at 1964-65). Taking the facts as true, a court may grant a motion to dismiss if no construction of the factual allegations will support the cause of action. *Berry*, 497 F. Supp. 2d at 1364 (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)). A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 127 S. Ct. at 1965 (internal citation omitted).

"The Supreme Curt in *Twombly* explicitly retired the pleading standard set in *Conley v. Gibson*, 355 U.S. 41 (1957), substituting a flexible "plausibility" standard under which a complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Solomon v. Blue Cross and Blue Shield Ass'n.*, 574 F. Supp. 2d 1288, 1291 (S.D. Fla. 2008) (quoting *Twombly*, 127 S. Ct. at 1965). Instead, *Twombly* requires that a complaint must allege a claim that is "plausible on its face." *Twombly*, 127 S. Ct. at 1974. Therefore, a conspiracy allegation must allege facts that infer conspiracy instead of mere "parallel conduct and a bare assertion of conspiracy." *Id.* at 1966.

### III. ANALYSIS

#### A. *Conspiracy Claim*

The gist of a RICO conspiracy claim is that each defendant has *agreed* to participate in the conduct of an enterprise's illegal activities. 18 U.S.C. § 1962(d). Thus, the "proof of an agreement is at the heart of a conspiracy claim." *In re Managed*

*Care Litig.*, 430 F. Supp. 2d 1336, 1345 (S.D. Fla. 2006). A complaint for RICO conspiracy must "[d]escribe the alleged agreement to perform at least two of the predicate acts." *O'Rear v. Am. Family Life Assur. Co.*, 139 F.R.D. 418, 422 (M.D. Fla. 1991). Our Local Rules reiterate the requirement that the plaintiff "describe in detail the conspiracy, including the identity of the co-conspirators, the object of the conspiracy, and the date and substance of the conspiratorial agreement" in the plaintiff's RICO Case Statement. S.D. Fla. Local R. 12.1(14). The Eleventh Circuit has affirmed the dismissal of RICO claims where the allegations of conspiracy were "merely conclusory and unsupported by any factual allegations." *Republic of Panama v. BCCI Holdings (Luxemboug) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997).

The *Twombly* decision adds new bite to the RICO requirement that the plaintiffs describe the agreement to conspire in the complaint. The complaint in *Twombly* relied on allegations of the defendants' parallel behavior to infer conspiracy in an analogous antitrust case. The Supreme Court upheld the dismissal of the complaint stating that mere "conclusory allegations of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 127 S. Ct. at 1966. The Supreme Court explained that "without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory." *Id.* The Supreme Court also emphasized that the complaint "mentioned no specific time, place, or person involved in the alleged conspiracies" leaving defendants "little idea where to begin" in formulating their answers." *Id.* at 1970 n.10.

We thus turn to the Sixth Amended Complaint [D.E. 1499] and Plaintiffs' Supplemental Fifth Amended Civil RICO Case Statement [D.E. 1565] to determine

whether Plaintiffs' allegations pass the *Twombly* test. Both pleadings describe a nationwide conspiracy that consists of virtually every Blue Plan licensed by the BCBSA. *See* Sixth Amended Complaint ¶ 164 & Supplemental Fifth Amended RICO Statement at 7-8. The Court acknowledges that all entities involved in the conspiracy are listed with sufficient specificity. Plaintiffs fail, however, to provide any specific factual allegations regarding exactly how and when Defendants *agreed* to violate RICO through mail and wire fraud. Indeed, all allegations regarding the agreement are conclusory or based upon an inference from Defendants' parallel conduct:

- Each Defendant and member of the conspiracy, with knowledge and intent, *agreed* to the overall objective of the conspiracy, agreed to commit acts of fraud to relieve Individual Plaintiffs of their rightful compensation, and actually committed such acts.

- Defendants' *agreement* is evidenced by their creation and development of the BlueCard Program as well as through their development and participation in NASCO.

- There is direct evidence that Defendants and their co-conspirators, through participation in the Association and specific committees and organizations within the Association, have *agreed* to use specific, wrongful edits in the processing of their claims through NASCO. . . .

- Defendants and their co-conspirator Blue Plans not only *agreed* to use improper edits to cheat doctors in their national business through NASCO and the BlueCard program, but also in their local business as well.

- [D]irect evidence of concerted action, numerous common facts and similar activities, also imply existence of a conspiracy. . . .

Sixth Amended Complaint ¶¶ 165-69 (emphasis added). Clearly, such conclusive allegations and inferences from parallel conduct alone are insufficient to survive a 12(b)(6) motion. *Twombly* 127 S. Ct. at 1966; *see, e.g., Solomon*, 574 F. Supp. 2d at

1292 ("*Twombly* makes clear that the allegations of parallel conduct do not suffice to infer conspiracy.").

Plaintiffs also attempt to infer the existence of conspiracy by reference to various meetings and conferences attended by Defendants. Once again, just like parallel conduct, mere opportunity to conspire alone without direct evidence of agreement is insufficient to infer the existence of a conspiracy. *See United States v. Valera*, 845 F.2d 923, 929 (11th Cir. 1988) ("Association, alone, with the enterprise is, of course, insufficient for violation of RICO: an individual must *agree* to participate in the affairs of the enterprise") (emphasis in original); *see also In re Managed Care Litig.*, 430 F. Supp. 2d at 1352 ("[O]pportunities to conspire alone do not create an inference of an agreement.").

Furthermore, although Plaintiffs contend otherwise, the allegations regarding various seminars and meetings are also drafted in a conclusory manner. According to Plaintiffs, attendance and participation at these meetings, all of which were related to the national claims processing systems such as NASCO or BlueCard, suggest the existence of a conspiratorial agreement between Defendants. *See* Plaintiffs' Response at 11. Plaintiffs also contend that a given Plan's participation in NASCO and NASCO program's joint decision making procedures are direct evidence of the existence of conspiracy. *Id.* at 13. Even if the Court were to accept Plaintiffs' contention, which we do not, Plaintiffs still fail to allege exactly when and which Plans jointly decided to underpay medical providers. Once again, Plaintiffs' allegations regarding NASCO and BlueCard program participation are conclusory and fail to meet the pleading requirements under *Twombly*.

Plaintiffs attempt to distinguish *Twombly* by contending that the alleged parallel conduct in that case was legal conduct, where as the allegations in the Sixth Amended Complaint charge Defendants with illegal parallel conduct of mail and wire fraud. *See* Plaintiffs' Motion at 19. Plaintiffs contend that presence of parallel illegal acts gives unmistakable inference of conspiracy. We find, however, no merit to this argument. As Judge Moreno reasoned in his order granting summary judgement in favor of Defendants in *Shane*, "regardless of the nature of the predicate acts, the Plaintiffs must show that the Defendants entered into an agreement" to conspire. *In re Managed Care Litig.*, 430 F. Supp. 2d 1336, 1346 (S.D. Fla. 2006).

The Supreme Court in *Twombly* concluded that allegations of parallel conduct must be placed in a "context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 127 S. Ct. at 1966. The Court added that because resisting competition is a "routine market conduct . . . there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway." *Id.* at 1971. Similarly, even assuming, *arguendo*, that Defendants' actions amounted to mail and wire fraud, these acts could still have been in each individual Defendant's economic self interest. *In re Managed Care Litig.*, 430 F. Supp. 2d at 1348. Indeed, the alleged claims processing in violation of CPT would have decreased costs and raise profits for Defendants. *Id.* Every Defendant undoubtedly had an economic interest in decreasing reimbursement costs. *Id.* Thus, Defendants' allegedly parallel conduct can be easily explained by a theory of rational independent action. *See id.*

Finally, and quite tellingly, Plaintiffs never directly address the impact of the *Solomon* decision and its dismissal of the RICO conspiracy claim. Just like the conspiracy allegations in the Sixth Amended Complaint in this case, the plaintiffs in *Solomon* attempted to infer a conspiracy to violate RICO from Defendants' participation in NASCO and BlueCard programs. *See, e.g.,* Plaintiffs' Third Amended Complaint - Class Action ¶¶ 103, 113, 118, *Solomon v. Blue Cross and Blue Shield Association*, 574 F. Supp. 2d 1288 (S.D. Fla. 2008) (03-22935-CIV-MORENO). But in the Order dismissing that conspiracy claim, Judge Moreno expressly held that "allegations of parallel conduct do not suffice to infer conspiracy." *Solomon*, 574 F. Supp. 2d at 1292.

Therefore, because this Court finds that the allegations in the Sixth Amended Complaint, even if later proved, do not demonstrate a conspiracy between the Defendants to commit the RICO predicate acts of mail and wire fraud, Count I should be dismissed.

### B.  *Mail and Wire Fraud*

The Sixth Amended Complaint alleges that Defendants committed the predicate RICO acts of mail and wire fraud. Allegations of fraud are subject to a heightened pleading standard. Rule 9(b) mandates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This Rule also applies to RICO fraud allegations. *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988).

In order to pass this heightened pleading requirement, a complaint must allege: (1) precisely what statements were made in what documents or oral representations

or what omissions were made; (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what defendants obtained as a consequence of the fraud. *United States ex rel. Clausen v. Lab. Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

The plaintiff must also allege facts with respect to each defendant's participation in the fraud. *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997). The complaint must, therefore, allege as to each defendant the "who, what, when, where and how" about the fraud that occurred. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

Plaintiffs contend that the heightened pleading standard no longer applies to RICO mail and wire fraud claims, relying on another recent Supreme Court decision, *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131 (2008). *See* Plaintiffs' Response at 22. We, however, disagree with that conclusion and do not find that the holding in *Bridge* removes RICO mail and wire fraud allegations from Rule 9(b) requirements.

In *Bridge*, the plaintiffs and defendants had competed at county auctions for the right to purchase tax liens acquired by the county on the property of delinquent taxpayers. *Id.* at 2135-36. In order to prevent bidders from submitting multiple identical low bids under different names, county adopted a rule that required every bidder to certify that it was submitting its bid in its own name and was not using other entities to submit simultaneous bids for the same parcel of property. *Id.* at 2135. The plaintiffs in *Bridge* alleged that the defendants conspired to falsely submit such

certifications to the county in order to be eligible to bid on, and be awarded, a greater number of liens. *Id.* at 2136. As a result, the defendants allegedly fraudulently obtained a disproportionate number of liens, depriving the plaintiffs of their fair share of the liens. *Id.* Thus, the plaintiffs in *Bridge* alleged that the defendants' actions constituted mail fraud in violation of RICO.

Contrary to our Plaintiffs' interpretation of *Bridge*, the Supreme Court only addressed the question of whether the plaintiffs were required to plead first-party reliance in order to state a valid RICO mail fraud claim. The Court found that reliance is not required to establish that a person has violated 18 U.S.C. § 1964(c) by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of mail fraud. *Id.* at 2139 (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 476 (2006)). Thus the Court concluded that a person can be injured "by reason of" a pattern of mail fraud even if he has not relied on any misrepresentations. *Id.* Nowhere in its order did the Court hold, or even imply, that allegations of RICO mail and wire fraud do not need to comply with the "who, what, when, where and how" requirements mandated by Rule 9(b).

The Eleventh Circuit's decision in *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, No. 07-13421, 2008 WL 2845215 (11th Cir. July 24, 2008), issued a month after *Bridge*, fully supports our understanding of the *Bridge* decision. In *West Coast*, the Eleventh Circuit expressly stated that "Rule 9(b) applies to a RICO action predicated on a pattern of mail and wire fraud; requiring that plaintiff identify the fraudulent representations with particularity." *Id.* at *3 (citing *Brooks*, 116 F.3d at

1380-82). Furthermore the Court reiterated that, in a case with multiple defendants, the complaint must contain specific allegations with respect to each defendant. *Id.* at *4. Generalized allegations lumping multiple defendants together are plainly insufficient. *Id.* (citing *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007)).

Next, Plaintiffs argue that the focus of RICO violation is not on the mailed or wired materials but, rather, on the overall scheme to defraud. *See* Plaintiffs' Response at 24. Therefore, according to Plaintiffs, stating a RICO cause of action requires nothing more than an allegation that defendants engaged in a scheme to defraud and that the defendants engaged in mailings that were incident to an essential part of the scheme. *Id.* Plaintiffs' argument, however, goes too far because it fails to recognize that a RICO cause of action based on mail and wire fraud is subject to particularized pleading required under Rule 9(b). *West Coast Roofing*, 2008 WL 2845215, at *3.

Plaintiffs are correct that an entirely truthful and innocent mailings can constitute mail fraud so long as they are in furtherance of a scheme to defraud. *See Schmuck v. United States*, 489 U.S. 705, 715 (1989). Naturally, if such allegations are made, the complaint need not specify the precise nature of the misleading statements. It must still, however, particularly describe the scheme and how the communications, although facially innocent, furthered that scheme. *See Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 n.6 (8th Cir. 1995) ("In a case of mail or wire fraud that does not involve a misrepresentation of fact, the circumstances [that must be stated with particularity] . . . consist of four elements: (1) a scheme to defraud; (2) intent to defraud; (3) reasonable foreseeability that the mails (or wires) would be used;

and (4) use of the mails (or wires) in furtherance of the scheme.").

And, significantly, those mailings that fall outside the scope of the mail and wire fraud statutes, because they do not in fact further the illegal scheme, are those that: (1) serve to put the defrauded party on notice regarding the fraud; (2) make the execution of the fraud less likely; (3) oppose the scheme; or (4) disclose the nature of the fraud. *United States v. Pacheco-Ortiz*, 889 F.2d 301, 305 (1st Cir. 1989) (quoting *United States v. Leyden*, 842 F.2d 1026, 1028 (8th Cir. 1988)).

This means that, absent some calculated misstatement or perversion of truth, trickery, or other deception in the mails or wires, a breach of contract, in itself, *does not* constitute mail or wire fraud even if mails and wires were used to carry out the contract breach. *See United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980) ("[T]he [mail and wire fraud] statute[s] do[] not reject all business practices that do not fulfil expectations, nor do[] [they] taint every breach of a business contract.").

Now turning back to the Sixth Amended Complaint, and after carefully analyzing what it alleges here, Plaintiffs are alleging that items such as agreements, manuals, claims forms, patient lists, payments, reports and EOBs, all transmitted by mail or wire, contained fraudulent misrepresentations and all assisted in furtherance of the scheme. *See* Sixth Amended Complaint ¶¶ 271-76. Yet, neither the Complaint nor the RICO Case Statement particularly describe how any of these documents fraudulently misled Plaintiffs that they will be paid in accordance with CPT. Furthermore, the Complaint makes only general conclusory allegations that the mailings assisted in furtherance of the scheme without describing exactly how they did so.

The only particularized allegations regarding specific examples of mail and wire fraud involve individual Defendant's mailings of EOBs. *See* Plaintiffs' Supplemental Fifth Amended RICO Case Statement at 23-36. However, the allegations regarding the information contained in the EOBs do not identify any statements that were fraudulent or misleading. The EOBs simply informed Plaintiffs that they were not reimbursed for a given procedure under the CPT code they initially submitted their claim under. In addition, it is not clear how EOBs assisted in furtherance of the fraudulent scheme. If anything, the EOBs helped to reveal the fraud as they put Plaintiffs on alert that they were not properly paid in accordance with CPT. They, therefore, fall outside the scope of the mail and wire fraud statutes and do not further an illegal scheme. *See United States v. Pacheco-Ortiz,* 889 F.2d at 305.

Therefore, the pleading here of the mail and wire fraud predicate acts does not satisfy the Rule 9(b) requirement to plead fraud with particularity. Indeed we hold that the Sixth Amended Complaint does not adequately plead a single incidence of fraudulent conduct. The Sixth Amended Complaint also does not set out for each Defendant how that Defendant participated in the fraud.

Accordingly, Plaintiffs' failure to plead fraud with particularity warrants dismissal of all three of Plaintiffs' counts. All three counts depend on Plaintiffs' properly alleging mail and wire fraud. The conspiracy to commit RICO violation (Count I) under 18 U.S.C. § 1962(d) requires the pleading of the predicate acts of mail and wire fraud. Aiding and abetting in the violation of RICO (Count II) under 18 U.S.C. § 1962(c) requires pleading of the two predicate acts. Finally, the claim for declaratory and injunctive relief (Count III) also depends on adequate pleading of a 18

U.S.C. § 1962(c) RICO violation. These claims should, therefore, be dismissed with prejudice once and for all.[5]

## IV.   CONCLUSION & RECOMMENDATION

For the foregoing reasons, it is hereby recommended as follows:

1.   Defendants' Blue Cross of Idaho Health Service, Inc., *et al.,* Motion to Dismiss the Sixth Amended Complaint [D.E. 1543] should be **GRANTED WITH PREJUDICE**.

2.   Defendants' Blue Shield of California, *et al.,* Motion to Dismiss Sixth Amended Complaint [D.E. 1545] should be **GRANTED WITH PREJUDICE**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

---

[5] Judge Moreno specifically ruled in his May 22, 2008 Order [D.E. 1418] that no further amendments to the Complaint would be permitted after the filing of the Sixth Amended Complaint. Thus, this motion should be granted with prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of February, 2009.

_____
EDWIN G. TORRES
United States Magistrate Judge