UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 03-21296-CIV-MORENO

RICK LOVE, M.D.; et. al.,

    Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD
ASSOCIATION.; et. al.

    Defendants.
_____/

COUNSEL FINANCIAL SERVICES, LLC,

    Intervenor,

v.

KOZYAK TROPIN & THROCKMORTON, P.A.,
as Trustee, WHATLEY DRAKE & KALLAS, LLC,
as Trustee, THE LAMB FIRM, LLC,
BRUCE W. GREER, P.A., and
THE INTERNAL REVENUE SERVICE,

    Defendants.
_____/

### INTERVENOR, COUNSEL FINANCIAL SERVICES, LLC'S, COMPLAINT

Intervenor, COUNSEL FINANCIAL SERVICES, LLC ("Counsel Financial"), by and through undersigned counsel, hereby brings this action against KOZYAK TROPIN & THROCKMORTON, P.A., WHATLEY DRAKE & KALLAS, LLC, THE LAMB FIRM, LLC, BRUCE W. GREER, P.A., and THE INTERNAL REVENUE SERVICE, and alleges as follows:

#### Nature of the Action

1.    This is an action brought by Intervenor, Counsel Financial, to recover amounts due to Counsel Financial by The Lamb Firm, LLC in relation to a secured financial interest and

RM:6698250:4

1

Judgment held by Counsel Financial against The Lamb Firm, LLC, which funds have been deposited in the Court Registry by The Kozyak Tropin & Throckmorton, P.A. and Whatley Drake & Kallas, LLC firms as Trustees of the attorneys' fees and costs awarded to Plaintiffs' counsel in the underlying action against Defendants Blue Cross et al. This action arises out of a New York Judgment and secured interest obtained by Counsel Financial against The Lamb Firm, LLC for $18,769,644.92 plus interest, which Judgment has been domesticated in Florida.

**Parties**

1. Intervenor, Counsel Financial, is a Delaware limited liability company which maintains its principal place of business in New York, and which is authorized to do business in Florida.

2. Counsel Financial is a financing company providing credit lines exclusively to attorneys. Presently, Counsel Financial is the largest provider of attorney loans in the United States.

3. Defendant, KOZYAK TROPIN & THROCKMORTON, P.A. ("KTT"), is a Florida corporation with its principal place of business in Miami, Florida, and served as a Trustee of the attorneys' fees awarded by the court in the underlying action. [*See* D. E. # 1819].

4. Defendant, WHATLEY DRAKE & KALLAS, LLC ("WDK"), is an Alabama limited liability company with its principal place of business in Birmingham, Alabama, and served as a Trustee of the attorneys' fees awarded by the court in the underlying action. [*See* D. E. # 1819].

5. Defendant, THE LAMB FIRM, LLC (the "Lamb Firm"), is an Alabama limited liability company with its principal place of business in Birmingham, Alabama.

6. Defendant, BRUCE W. GREER, P.A. ("Greer"), is a Florida corporation with its principal place of business in Miami, Florida.

7. Defendant, THE INTERNAL REVENUE SERVICE ("IRS"), is an agency of the U.S. government.

## Jurisdiction and Venue

8. Pursuant to 28 USC § 1331 and § 1367, it has been determined that this Court has jurisdiction over the subject matter of this action. [D.E. #1286, p. 2]. Additionally, there is jurisdiction over the subject matter of this action pursuant to 28 USC § 1340 and 28 USC § 2410.

9. Pursuant to 28 USC § 1391, venue is proper in the United States District Court for the Southern District of Florida because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and/or a substantial part of the property that is the subject of this litigation is situated in this judicial district; and Defendants Greer and KTT reside and/or do business in this judicial district.

10. Defendants are subject to personal jurisdiction in the State of Florida because, *inter alia*: KTT and Greer are Florida corporations with their principal place of business in Florida; WDK is acting as a Trustee in Florida in connection with this case; the Lamb Firm appeared as counsel for Plaintiffs in this District in Florida and, accordingly, submitted to this Court's jurisdiction; and the IRS has sought to enforce a tax lien against property located in Florida.

## Background

11. The Lamb Firm was co-lead counsel representing the Plaintiffs in the underlying litigation (the "Blue Cross Litigation") against Blue Cross and Blue Shield Association, et. al. (collectively "Blue Cross").

RM:6698250:4

3

12. The Lamb Firm was working on the Blue Cross litigation on a contingency fee basis.

13. In 2001, the Lamb Firm entered into an agreement to share attorneys' fees entitled "Joint Venture Agreement of Attorney's Representing Provider in Managed Care Litigation" (the "Joint Venture Agreement"). A true and accurate copy of the Joint Venture Agreement is attached hereto as **Exhibit "1"**.

### History of The Lamb Firm's Outstanding and Secured $17.5 Loan from Counsel Financial

14. On or about June 12, 2007, Counsel Financial entered into an agreement to lend $500,000 to the Lamb Firm (the "$500,000 Loan").

15. In connection with the $500,000 Loan, on or about June 12, 2007, the Lamb Firm executed a promissory note in favor of Counsel Financial entitled "Demand Promissory Note Counsel Financial Services, LLC" (the "Original Note"). A true and accurate copy of the Original Note is attached hereto as **Exhibit "2"**.

16. In connection with the $500,000 Loan and Original Note, on or about June 12, 2007, Counsel Financial and the Lamb Firm entered into a security agreement entitled "Security Agreement Counsel Financial Services, LLC" (the "Original Security Agreement"). A true and accurate copy of the Original Security Agreement is attached hereto as **Exhibit "3"**.

17. The Original Security Agreement provided that Counsel Financial had a security interest in the "collateral" which was defined as:

> With respect to Debtor The Lamb Firm, LLC: All right, title and interest of the Debtor, whether now or hereafter acquired or now existing or hereafter arising or accruing, in and to (i) Accounts (including, but not limited to, Accounts consisting of any right to payment of a monetary obligation, disbursements incurred or to be incurred by the Debtor) and General Intangibles (including, but not limited to, any interest in a partnership or limited liability company) related to

such legal services and disbursements, and (ii) to the extent not referred to in clause (i) of this sentence (A) Supporting Obligations incident to, arising or accruing pursuant to or otherwise relating to any of the things referred to in clause (i) of this sentence, whether arising or accruing from any action taken by the debtor or the Secured Party or otherwise, (B) Proceeds and other proceeds of any of the things referred to in clauses (i) and (ii) (A) of this sentence and (C) records (in whatever medium inscribed or stored) relating to any of the things referred to in clause (i) of this sentence. In addition, all personal property and fixtures of the Debtor or in which the Debtor has an interest, in each case whether now or hereafter existing or now owned or hereafter acquired to and whether subject to the Uniform Commercial Code including all goods, money, instruments, Accounts, inventory, equipment, documents, chattel paper, securities and General Intangibles and all interest, dividends and other distributions thereon paid and payment in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all products and proceeds of, all of the foregoing. Debtor is prohibited from granting additional security interest in the collateral or the proceeds of the collateral (Notice to potential competing creditors under Official Note 5 of UCC Section 9-331).

18. On or about June 19, 2007, Counsel Financial entered into an agreement to increase the amount of its loan to the Lamb Firm to $14,000,000 (the "$14M Loan").

19. In connection with the $14M Loan, on or about June 19, 2007, the Lamb Firm executed a promissory note in favor of Counsel Financial entitled "$14,000,000 Promissory Note Counsel Financial Services, LLC" (the "$14M Note"). A true and accurate copy of the $14M Note is attached hereto as **Exhibit "4"**.

20. In connection with the $14M Loan and $14M Note, on or about June 19, 2007, Counsel Financial and the Lamb Firm entered into a security agreement entitled "First Amended and Restated Security Agreement Counsel Financial Services, LLC" (the "First Amended Security Agreement"). A true and accurate copy of the First Amended Security Agreement is attached hereto as **Exhibit "5"**.

21. The First Amended Security Agreement that superseded the Original Security Agreement provided that Counsel Financial had a security interest in the "collateral" which was defined as:

> With respect to Debtor The Lamb Firm, LLC: All right, title and interest of the Debtor, whether now or hereafter acquired or now existing or hereafter arising or accruing, in and to (i) Accounts (including, but not limited to, Accounts consisting of any right to payment of a monetary obligation, disbursements incurred or to be incurred by the Debtor) and General Intangibles (including, but not limited to, any interest in a partnership or limited liability company) related to such legal services and disbursements, and (ii) to the extent not referred to in clause (i) of this sentence (A) Supporting Obligations incident to, arising or accruing pursuant to or otherwise relating to any of the things referred to in clause (i) of this sentence, whether arising or accruing from any action taken by the debtor or the Secured Party or otherwise, (B) Proceeds and other proceeds of any of the things referred to in clauses (i) and (ii) (A) of this sentence and (C) records (in whatever medium inscribed or stored) relating to any of the things referred to in clause (i) of this sentence. In addition, all personal property and fixtures of the Debtor or in which the Debtor has an interest, in each case whether now or hereafter existing or now owned or hereafter acquired to and whether subject to the Uniform Commercial Code including all goods, money, instruments, Accounts, inventory, equipment, documents, chattel paper, securities and General Intangibles and all interest, dividends and other distributions thereon paid and payment in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all products and proceeds of, all of the foregoing. Debtor is prohibited from granting additional security interest in the collateral or the proceeds of the collateral (Notice to potential competing creditors under Official Note 5 of UCC Section 9-331).

22. On June 19, 2007, Counsel Financial filed a UCC-1 Financing Statement (the "UCC-1") to perfect its security interest in the $500,000 Note and any subsequent notes (described below and herein). A true and accurate copy of the UCC-1 is attached hereto as **Exhibit "6"**.

23. Counsel Financial subsequently filed amended UCC Financing Statements. Copies of the amended UCC Financing Statements that Counsel Financial subsequently filed are attached hereto as **Composite Exhibit "7"**.

24. On or about December 20, 2007, Counsel Financial entered into an agreement to increase the amount of its loan to the Lamb Firm to $15,500,000 (the "$15.5M Loan").

25. In connection with the $15.5M Loan, on or about December 20, 2007, the Lamb Firm executed a promissory note in favor of Counsel Financial entitled "$15,500,000 Promissory Note Counsel Financial Services, LLC" (the "$15.5M Note"). A true and accurate copy of the $15.5M Note is attached hereto as **Exhibit "8"**.

26. In connection with the $15.5M Loan and $15.5M Note, on or about December 20, 2007, Counsel Financial and the Lamb Firm entered into a security agreement entitled "Second Amended and Restated Security Agreement Counsel Financial Services, LLC" (the "Second Amended Security Agreement"). A true and accurate copy of the Second Amended Security Agreement is attached hereto as **Exhibit "9"**.

27. The Second Amended Security Agreement that superseded the First Amended Security Agreement provided that Counsel Financial had a security interest in the "collateral" which was defined as:

> With respect to Debtor The Lamb Firm, LLC: All right, title and interest of the Debtor, whether now or hereafter acquired or now existing or hereafter arising or accruing, in and to (i) Accounts (including, but not limited to, Accounts consisting of any right to payment of a monetary obligation, disbursements incurred or to be incurred by the Debtor) and General Intangibles (including, but not limited to, any interest in a partnership or limited liability company) related to such legal services and disbursements, and (ii) to the extent not referred to in clause (i) of this sentence (A) Supporting Obligations incident to, arising or accruing pursuant to or otherwise relating to any of the things referred to in clause (i) of this sentence, whether arising or accruing from any action taken by the debtor or the Secured Party or otherwise, (B) Proceeds and other proceeds of any of the things referred to in clauses (i) and (ii) (A) of this sentence and (C) records (in whatever medium inscribed or stored) relating to any of the things referred to in clause (i) of this sentence. In addition, all personal property and fixtures of the Debtor or in which the Debtor has an interest, in each case whether now or hereafter existing or now owned or hereafter acquired to and whether subject to the Uniform Commercial Code including all goods, money, instruments,

Accounts, inventory, equipment, documents, chattel paper, securities and General Intangibles and all interest, dividends and other distributions thereon paid and payment in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all products and proceeds of, all of the foregoing. Debtor is prohibited from granting additional security interest in the collateral or the proceeds of the collateral (Notice to potential competing creditors under Official Note 5 of UCC Section 9-331).

28. On or about April 2008, Counsel Financial entered into an agreement to increase the amount of its loan to the Lamb Firm to $16,000,000 (the "$16M Loan"). A true and accurate copy of the $16M Loan is attached hereto as **Exhibit "10"**.

29. In connection with the $16M Loan, on or about April 2008, the Lamb Firm executed a promissory note in favor of Counsel Financial entitled "$16,000,000 Promissory Note Counsel Financial Services, LLC" (the "$16M Note").

30. In connection with the $16M Loan and $16M Note, on or about April 2008, Counsel Financial and the Lamb Firm entered into a security agreement entitled "Third Amended and Restated Security Agreement Counsel Financial Services, LLC" (the "Third Amended Security Agreement"). A true and accurate copy of the Third Amended Security Agreement is attached hereto as **Exhibit "11"**.

31. The Third Amended Security Agreement that superseded the Second Amended Security Agreement provided that Counsel Financial had a security interest in the "collateral" which was defined as:

> With respect to Debtor The Lamb Firm, LLC: All right, title and interest of the Debtor, whether now owned or hereafter acquired or now existing or hereafter arising or accruing, in and to (i) Accounts (including, but not limited to, Accounts consisting of any right to payment of a monetary obligation, whether or not earned by performance, for legal services rendered or to be rendered or for legal disbursements incurred or to be incurred by the Debtor) and General Intangibles (including, but not limited to, any interest in a partnership or limited liability company) related to such legal services and disbursements, and (ii) to the extent not referred to in clause (i) of this sentence (A) Supporting Obligations incident

to, arising or accruing pursuant to or otherwise relating to any of the things referred to in clause (i) of this sentence, whether arising or accruing from any action taken by the Debtor or the Secured Party or otherwise, (B) Proceeds and other proceeds of any of the things referred to in clauses (i) and (ii) (A) of this sentence and (C) records (in whatever medium inscribed or stored) related to any of the things referred to in clause (i) of this sentence. In addition, all personal property and fixtures of the Debtor or in which the Debtor has an interest, in each case whether now or hereafter existing or now owned or hereafter acquired and whether subject to the Uniform Commercial Code including all Goods, Money, Instruments, Accounts, Deposit Accounts, Inventory, Fixtures, Equipment, Documents, Chattel Paper, Investment Property, Letter-of-Credit Rights, and General Intangibles and all interest, dividends and other distributions thereon paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all products and proceeds of, all of the foregoing. Debtor is prohibited from granting additional security interest in the collateral or the proceeds of the collateral (Notice to potential competing creditors under Official Note 5 of UCC Section 9-331).

32. On or about April 25, 2008, Counsel Financial entered into an agreement to increase the amount of its loan to the Lamb Firm to $17,500,000 (the "$17.5M Loan").

33. In connection with the $17.5M Loan, on or about April 25, 2008, the Lamb Firm executed a promissory note in favor of Counsel Financial entitled "$17,500,000 Fourth Amended and Restated Revolving Promissory Note Counsel Financial Services, LLC" (the "$17.5M Note"). A true and accurate copy of the $17.5M Note is attached hereto as **Exhibit "12"**.

34. In connection with the $17.5M Loan and $17.5M Note, on or about April 25, 2008, Counsel Financial and the Lamb Firm entered into a security agreement entitled "Fourth Amended and Restated Security Agreement Counsel Financial Services, LLC" (the "Fourth Amended Security Agreement"). A true and accurate copy of the Fourth Amended Security Agreement is attached hereto as **Exhibit "13"**.

35. The Fourth Amended Security Agreement that superseded the Third Amended Security Agreement provided that Counsel Financial had a security interest in the "collateral" which was defined as:

With respect to Debtor The Lamb Firm, LLC: All right, title and interest of the Debtor, whether now owned or hereafter acquired or now existing or hereafter arising or accruing, in and to (i) Accounts (including, but not limited to, Accounts consisting of any right to payment of a monetary obligation, whether or not earned by performance, for legal services rendered or to be rendered or for legal disbursements incurred or to be incurred by the Debtor) and General Intangibles (including, but not limited to, any interest in a partnership or limited liability company) related to such legal services and disbursements, and (ii) to the extent not referred to in clause (i) of this sentence (A) Supporting Obligations incident to, arising or accruing pursuant to or otherwise relating to any of the things referred to in clause (i) of this sentence, whether arising or accruing from any action taken by the Debtor or the Secured Party or otherwise, (B) Proceeds and other proceeds of any of the things referred to in clauses (i) and (ii) (A) of this sentence and (C) records (in whatever medium inscribed or stored) related to any of the things referred to in clause (i) of this sentence. In addition, all personal property and fixtures of the Debtor or in which the Debtor has an interest, in each case whether now or hereafter existing or now owned or hereafter acquired and whether subject to the Uniform Commercial Code including all Goods, Money, Instruments, Accounts, Deposit Accounts, Inventory, Fixtures, Equipment, Documents, Chattel Paper, Investment Property, Letter-of-Credit Rights, and General Intangibles and all interest, dividends and other distributions thereon paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all products and proceeds of, all of the foregoing. Debtor is prohibited from granting additional security interest in the collateral or the proceeds of the collateral (Notice to potential competing creditors under Official Note 5 of UCC Section 9-331).

36. Counsel Financial has made demand for payment pursuant to the $17.5M Loan, the $17.5M Note and the Fourth Amended Security Agreement, which Loan, Note and the Fourth Amended Security Agreement include all amounts loaned by Counsel Financial to the Lamb Firm, plus interest.

37. The amounts due to Counsel Financial by the Lamb Firm exceeds the amount of attorneys' fees and costs awarded to the Lamb Firm as a Plaintiffs' attorney in the Blue Cross Litigation. The Lamb Firm failed to pay the amounts due to Counsel Financial as described fully herein.

38. Pursuant to the relevant security agreements detailed above, Counsel Financial's security interest included, among other things, any and all attorneys' fees earned and awarded to the Lamb Firm in the Blue Cross Litigation.

### Additional Loans to The Lamb Firm by Non Party Ardec

39. In September 2008, after the settlement was reached with Blue Cross, upon information and belief, non-party, Ardec Funding Corporation ("Ardec"), loaned $2,500,000 plus interest at 2% per month to the Lamb Firm.

40. Upon information and belief, at the present time, in addition to the amounts the Lamb Firm owes to Counsel Financial, the Lamb Firm also owes Ardec in excess of $3.1 million.

### Attorneys' Fees Awarded to The Lamb Firm in the Blue Cross Litigation

41. On April 20, 2008, this Court awarded class counsel attorneys' fees and expenses in the amount of $49,776,407.00, less $995,528.14 paid to attorneys prosecuting a parallel state law action, leaving at least $48,780,878.86 to be divided among the relevant attorneys pursuant to the Joint Venture Agreement. [D.E. #1286]

42. Pursuant to the Joint Venture Agreement which was attached to the Order awarding attorneys' fee and expenses, the Lamb Firm was due 12.3% of the net fee due to class counsel. (*See* D.E. #1286).

### The Lamb Firm's Failure to Pay Counsel Financial and the New York Judgment

43. Counsel Financial's security interest attaches to the Lamb Firm's portion of the attorneys' fees awarded in the Blue Cross Litigation.

44. To date, the Lamb Firm has failed to repay Counsel Financial pursuant to the terms of the relevant Loan Agreements, Security Agreements, and UCC-1 filings described in detail above. (*See e.g.* Paragraphs 14 through 38 above).

45. As a result, Counsel Financial filed a lawsuit against the Lamb Firm and Mr. Lamb in New York (the "New York Litigation").

46. The Lamb Firm and Mr. Lamb appeared in the New York Litigation.

47. On or about July 23, 2009, Counsel Financial obtained a Final Judgment in the New York Litigation against the Lamb Firm and Mr. Lamb in the amount of $18,769,644.92 (the "Judgment").

48. On August 10, 2009, Counsel Financial recorded the Judgment in the public records of Miami-Dade County (Bk: 211, p. 1398-1401) and domesticated the Judgment in Florida. A copy of the Judgment which Counsel Financial recorded in the Miami-Dade County public records is attached hereto as **Exhibit "14"**.

### The Escrowed Attorneys' Fees and Deposit in the Court Registry

49. Originally, the Lamb Firm was to be the designated trustee and was to have held the attorneys' fees and costs awarded to all Plaintiffs' counsel in the Blue Cross Litigation (the "Fund") in the Lamb Firm's escrow account.

50. On June 15, 2009, this Court ordered the repository of the Fund of attorneys' fees and costs changed to an escrow account in the names of KTT and WDK (collectively, the "Trustee"). [D.E. #1819].

51. The Trustee filed a Notice to deposit the remaining portion of the Fund into the Court Registry and identified Counsel Financial, Greer and the IRS as the entities or persons who may assert a potential interest in the Fund held in escrow by the Trustee. [D.E. #1828].

RM:6698250:4

12

Ruden, McClosky, Smith, Schuster & Russell, P.A.

52. Based on the Court Docket, the portion of the Fund held by the Trustee as of July 31, 2009 was deposited in the Court Registry on August 14, 2009 [D.E. #1835] (the "Registry Fund").

### Other Potential Interests

53. On information and belief, Greer may assert a claim against the Registry Fund based on work allegedly performed in 2008 and/or 2009.

54. On or about April 22, 2009, the IRS issued its Notice of Federal Tax Lien (the "Tax Lien"), claiming $801,341.83 due by Mr. Lamb, personally, and Mr. Lamb's wife, Debra B. Lamb. A copy of the Tax Lien is attached hereto as **Exhibit "15"**.

55. The taxpayer whose liability created the lien is Archie C. Lamb, Jr. and Debra B. Lamb whose address is 2900 1st Avenue, Birmingham, Alabama, 35233-3033 and is <u>not</u> the Lamb Firm.

56. The IRS' Nashville, Tennessee office filed the Notice of Tax Lien.

57. On or about May 12, 2009, a Notice of Tax Lien was filed in the public records of Jefferson County, Alabama Bk: LR200905, p. 15670. A copy of the Notice of Tax Lien filed in Alabama is attached hereto as **Exhibit "16"**.

58. To the extent Greer and the IRS have any claims against the Lamb Firm, those claims are subordinate to Counsel Financial's secured interest and Judgment described fully above.

59. The Trustee failed to pay Counsel Financial the attorneys' fees which were due to the Lamb Firm, based on Greer's and the IRS' potential assertion of claims to the same funds.

60. As set forth above, on July 31, 2009, the Trustee filed a Motion to Deposit Money with Court Registry (the "Motion to Deposit Money") seeking to deposit $3,799,242.67 into the

RM:6698250:4

13

Court Registry. [D.E. #1828]. In the Motion to Deposit Money, the Trustee acknowledged that Counsel Financial is an interested party. On August 11, 2009, this Court granted the Motion to Deposit Money. [D.E. #1830]. On August 14, 2009, the Trustee deposited $3,794,309.45 into the Court Registry [D.E. #1835].

61. Counsel Financial has the right to any and all of the Registry Fund deposited into the Court Registry by the Trustee.

62. Upon information and belief, the Trustee has not deposited the full amount of attorneys' fees and costs due to the Lamb Firm. Based on the security interests and Judgment described fully herein, the Lamb Firm's share of attorneys' fees and costs awarded are due and payable to Counsel Financial.

63. Counsel Financial has retained the undersigned counsel to represent it in this action and is obligated to pay counsel a reasonable fee for its services.

64. All conditions precedent to the filing of this Complaint and each claim set forth herein have been performed, satisfied, or waived.

## Count I
### Foreclosure of Uniform Commercial Code Security Interest
### Against KTT, WDK, The Lamb Firm, Greer, and the IRS

65. Counsel Financial reincorporates and re-alleges paragraphs 1 through 64 above as if fully set forth herein.

66. Counsel Financial has a valid loan contract and security agreement with the Lamb Firm.

67. The Lamb Firm has breached its contract and the Fourth Amended Security Agreement with Counsel Financial and has failed to pay Counsel Financial sums due to Counsel Financial by the Lamb Firm.

68. Pursuant to the Judgment in the New York Litigation, which was based on the Lamb Firm's breach of contract, the Lamb Firm owes Counsel Financial a liquidated sum of $18,769,644.92 (Eighteen Million Seven Hundred Sixty Nine Thousand Six Hundred Forty-Four Dollars and Ninety Two Cents), plus post-judgment interest.

69. Counsel Financial has perfected its security interest in the Registry Fund deposited into this Court Registry as well as any other funds due to the Lamb Firm in connection with the Blue Cross Litigation, among other potential assets of the Lamb Firm.

70. The Lamb Firm, Greer, and the IRS, each may assert an interest in the Registry Fund as set forth in ¶ 50 above, which if asserted, is subject to, subordinate to, and inferior to Counsel Financial's interest therein.

WHEREFORE, Intervenor, COUNSEL FINANCIAL SERVICES, LLC, demands final judgment against Defendants, KOZYAK TROPIN & THROCKMORTON, P.A., as Trustee, WHATLEY DRAKE & KALLAS, LLC, as Trustee, THE LAMB FIRM, LLC, BRUCE W. GREER, P.A., and INTERNAL REVENUE SERVICE, as follows:

A. Declaring that Counsel Financial's security interest in the funds deposited into the Court Registry is superior to all claims made by Greer, the IRS and the Lamb Firm, and any person claiming by, through or under Greer, the IRS or the Lamb Firm;

B. Declaring that Counsel Financial has the sole right to the Registry Fund, including all funds deposited into the Court Registry by the Trustee and that all other rights, title and interest claimed or unclaimed by any other person are foreclosed;

C. Ordering the Clerk to disburse to Counsel Financial all funds which were deposited in the Court Registry by the Trustee, plus accrued interest;

D. Retaining jurisdiction to determine whether the Trustee has deposited the proper sum of money into the Court Registry;

E. To the extent the Court determines that the funds deposited into the Court Registry were insufficient with respect to the Lamb Firm's share of the attorneys' fees awarded, entering a deficiency judgment in favor of Counsel Financial against the Trustee;

F. Provide for the payment of all attorneys' fees and costs incurred herein against the Lamb Firm pursuant to the Judgment and the Agreements upon which the Judgment is based; and

G. Providing such other relief as this Court deems just and proper in favor of Counsel Financial (and attorneys' fees).

## Count II
### Declaratory Judgment/Quiet Title Act
### Against KTT, WDK, the Lamb Firm, Greer, and the IRS

71. Counsel Financial reincorporates and re-alleges paragraphs 1 through 64 above as if fully set forth herein.

72. This is a claim for declaratory judgment pursuant to 28 U.S.C. § 2201 and to quiet title pursuant to 28 U.S.C. § 2410.

73. Counsel Financial requests a declaration related to a substantial continuing controversy between two or more parties. Specifically, Greer and the IRS allegedly claim an interest in the Registry Fund and as such, KTT and WDK deposited funds that should be paid to Counsel Financial into the Court Registry.

74. The Lamb Firm also may claim an interest in the deposited Registry Fund.

75. The requested declaration pertains to a real and immediate controversy creating a definite threat of future injury.

76. The rights and legal relations of Counsel Financial are dependent upon the facts or the law applicable to the facts.

77. There are persons who have an antagonistic interest in the subject matter either in law or fact, namely, persons claiming rights to the Registry Fund.

78. Counsel Financial's lien and interest as set forth above, has priority over all other potential liens and interest relating to the Registry Fund.

79. As such, Counsel Financial should be paid all of the amounts in the Registry Fund forthwith.

WHEREFORE, Intervenor, COUNSEL FINANCIAL SERVICES, LLC, demands a final judgment declaring as follows:

A. Determining the Lamb Firm's share of attorneys' fees of the $48,780,878.86 previously awarded by this Court, in the Blue Cross Litigation, plus accrued interest;

B  Determining that Counsel Financial has a valid claim to the entirety of Lamb Firm, LLC's share of the attorneys' fees awarded in the Blue Cross Litigation;

C. Determining that Counsel Financial Services, LLC's claim and lien is superior to any potential claim of Bruce W. Greer, P.A., the Internal Revenue Service, and the Lamb Firm;

D. Ordering the Clerk of Court to disburse $3,794,309.45 plus accrued interest to Counsel Financial Services, LLC;

E. Determining the rights of Counsel Financial to obtain a deficiency judgment from any party hereto as provided by law; and

F. Providing such other relief as this Court deems just and proper in favor of Counsel Financial.

## Count III
### Accounting Against KTT, WDK, the Lamb Firm, and Greer

80. Counsel Financial reincorporates and re-alleges paragraphs 1 through 64 above as if fully set forth herein.

81. This is a claim for an accounting.

82. This claim arises from a fiduciary relationship and involves a complex transaction.

83. As Trustees of the escrowed funds and as co-counsel with the Lamb Firm, KTT and WDK, had a fiduciary relation with the Lamb Firm and/or Counsel Financial, who is the real party in interest to the escrowed funds and/or the Lamb Firm's portion of the attorneys' fees and costs awarded to Plaintiffs' counsel that were to be divided in accordance with the Joint Venture Agreement.

84. The Lamb Firm entered into a complex transaction whereby it agreed with other law firms to share certain expenses and the recovery of certain attorneys' fees and costs from the Defendants, namely, the Joint Venture Agreement.

85. Counsel Financial does not have access to the relevant contracts and/or agreements between all of the counsel for Plaintiffs in the Blue Cross Litigation, or the related records of litigation expenses, sharing of litigation expenses, and disbursals of the attorneys' fees and costs awarded by this Court [D.E. #1819].

86. Access to such documents is critical to determine the Lamb Firm's share of the attorneys' fees and costs awarded in the Blue Cross Litigation which amounts are due and payable to Counsel Financial pursuant to its security interest and Judgment.

87. Counsel Financial has no adequate remedy at law, particularly as it must be permitted to review the accounting records, including disbursement records, to determine the amount of funds due to it above and beyond the Registry Fund.

88. The resolution of this accounting claim is not dependent upon and should not delay the entry of a Judgment and/or Order on Counts I and II asserted above in relation to the Registry Fund.

WHEREFORE, Intervenor, COUNSEL FINANCIAL SERVICES, LLC, demands Defendants, KOZYAK TROPIN & THROCKMORTON, P.A., as Trustee, WHATLEY DRAKE & KALLAS, LLC, as Trustee, THE LAMB FIRM, LLC and BRUCE W. GREER, P.A., provide a full accounting of the deposit and disbursal of all attorneys' fees and costs awarded in the Blue Cross Litigation, the basis of such disbursements, the basis of the amounts due to the Lamb Firm, and the basis for amounts sought by and/or paid to Greer in this case, and for such other relief in favor of Counsel Financial as this Court deems just and proper.

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on August 21, 2009 this Complaint was electronically filed and served as an attachment to Counsel Financial's Motion to Intervene with the Court using CM/ECF.

                                                            Respectfully submitted,

                                                            RUDEN, McCLOSKY, SMITH,
                                                            SCHUSTER & RUSSELL, P.A.
                                                            Attorneys for Counsel Financial Services, LLC
                                                           200 East Broward Boulevard, 15th Floor
                                                           Post Office Box 1900
                                                           Fort Lauderdale, Florida 33302
                                                           (954)527-2427; (954)333-4027

                                            By:    s/Beth-Ann E. Krimsky
                                                           Beth-Ann E. Krimsky
                                                           Florida Bar No. 968412
                                                           beth-ann.krimsky@ruden.com
                                                           Daniel Matlow
                                                           Florida Bar No. 384666
                                                           daniel.matlow@ruden.com