UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-21296-CIV-MORENO/TORRES

RICK LOVE, M.D., et. al,

       Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD OF
ARIZONA, INC., et al.,

       Defendants.
_____/

## AMENDED ORDER

This matter is before the Court on the Motion filed by Defendant Horizon Blue Cross and Blue Shield of New Jersey ("Horizon") for Preliminary Injunction, Sanctions, and an Order to Show Cause [D.E. 1825], which Motion was referred for disposition by the Honorable Federico A. Moreno [D.E. 1857], to enforce the Final Judgment and Order approving settlement in the *Love* class action by enjoining further participation by a subset of Love Settlement Class Members in the New Jersey state court action styled *Sutter v. Horizon Blue Cross Blue Shield of New Jersey ("Sutter")* pending in the Superior Court of New Jersey – Law Division, Essex County (L-3685-02). The respondents to the motion, the "Objectors" to Sutter Settlement, filed their response in opposition to the motion [D.E. 1836] to which Horizon replied [D.E. 1854].

Upon the Court's initial review of the parties' positions, a hearing was scheduled for February 23, 2010 [D.E. 1936], at which the parties' counsel argued their positions and helped focus the Court on how best to address the issues raised in the pending Motion. The parties also provided supplemental materials for the Court's consideration at the hearing, as well as supplemental notices regarding the ongoing proceedings in New Jersey.

Following the hearing, and upon further consideration of the parties' divergent views on the proceedings pending in New Jersey, the Court will defer ruling on the Motion for the reasons that follow.

1. To make a very long story short, the pending dispute is about a group of *Love* Settlement Class Members that are proceeding as objectors to a settlement in the *Sutter* litigation. The *Sutter* Objectors, respondents here, have for some time challenged the fairness of the settlement terms in a class action that was filed before *Love,* on April 12, 2002, by a New Jersey physician challenging Horizon's continuing and systematic (1) failure to make prompt and timely payment of medical claims; (2) improper "bundling" of medical claims; (3) unilateral and retroactive reduction of the compensation paid for medical services through "down coding" of claims; (4) refusal to pay the appropriate compensation in cases where additional medical services were required; and (5) failure to immediately assign plan members to those physicians participating in Horizon's capitation programs.

2. On October 13, 2006, prior to the *Love* settlement, Horizon and the *Sutter* Class (which comprised three sub-classes) entered into a settlement agreement. Under

the terms of that Settlement Agreement, Horizon agreed to certain business reforms and to pay attorneys' fees and costs to class counsel in an amount to be decided by the Court, but not to exceed $6.5 million.

  3. The *Sutter* settlement agreement included the following provision that is at the heart of the pending dispute here:

> In the event that Horizon validly terminates its participation in this Agreement, the Parties shall proceed to trial and judgment forthwith. Horizon expressly agrees that until there is a judgment or Final Order and Judgment approving a settlement in this Action, *Horizon will not, through settlement or adjudication of any other litigation in any jurisdiction, including but not limited to the Love action, seek to extinguish the rights of the Class Members and Class Counsel* to proceed to trial and obtain a judgment or Final Order and Judgment approving a settlement in this Action. The terms of this section become effective immediately upon the submission of this Agreement to the Court for Preliminary Approval.

Settlement Agreement ¶12.2 (emphasis added).

  4. The parties have distinct interpretations of the effect of this provision on the Objectors' right to pursue litigation in the New Jersey action notwithstanding the *Love* Settlement that was approved a year later. The *Sutter* Objectors interpret this agreement to mean that Horizon contractually agreed not to, and thus is estopped from, relying on the later-entered *Love* settlement as a basis to impair the New Jersey class's prosecution of their New Jersey claims against Horizon if the objections to the settlement prevail. In other words, because the *Love* settlement was specifically referenced as one means by which Horizon could not "extinguish the rights of the Class Members" in the event that a settlement was not reached in New Jersey, the class, through the *Sutter* Objectors, have the contractually protected right to prosecute their

New Jersey claims to final judgment. They could do so, they contend, once the New Jersey court enters a final ruling on the objections to the *Sutter* settlement, which if successful could result in the reopening of that litigation to final judgment, through trial or otherwise.

5.     Horizon argues, however, that the *Sutter* Objectors are mis-reading and stretching ¶12.2 far beyond what was intended by the parties. Horizon concedes that the *Sutter* litigation was filed earlier in time to *Love,* and that the parties' settlement agreement took into account the *Love* settlement that was then being contemplated in the Florida action. Horizon points out, however, that this obligation (not to extinguish the class's rights to pursue their New Jersey claims through the *Love* action) expired by its own terms once a final judgment approving the settlement was entered by the trial court in the New Jersey action. Once that final judgment was entered, and the settlement agreement finally approved over the *Sutter* Objectors' objections, ¶12.2 of the agreement was no longer operative. And because the *Sutter* Objectors then accepted the benefits of the *Love* settlement, released Horizon from any and all liability, and superseded any prior agreements or understandings, the *Sutter* Objectors (or any *Sutter* class member for that matter) are permanently foreclosed from raising any claims, either through a new action or reopening the original *Sutter* action, based on the settlement and release of all claims approved in *Love*.

6.     It is indeed undisputed that following the *Sutter* settlement, the New Jersey court entered its preliminary approval order on October 24, 2006. The Court then rejected the *Sutter* Objectors' attempts to intervene in the case to object to the

settlement, following which a final order approving the settlement and dismissing the New Jersey action was entered on February 2, 2007, again *before* the *Love* settlement was preliminarily approved. That final order approving the settlement was appealed to the New Jersey appellate court (the Appellate Division) on March 14, 2007, by the *Sutter* Objectors who were prevented from intervening in the trial court proceedings to "argu[e] that the settlement is illusory because it requires nothing more of Horizon than is required under the law and under its contracts [and] further argue that the attorneys' fees awarded to class counsel were grossly excessive." *Sutter v. Horizon Blue Cross Blue Shield of New Jersey,* No. A-3708-06T3 (N.J. Sup. Ct., App. Div., March 25, 2009). That appeal resulted in the final judgment being vacated and remanded to the trial court to hold a more adequate fairness hearing to allow the Objectors to challenge the proposed settlement, as well as the attorneys' fee award. [D.E. 1826-8 at 27]. It is from this remand order and the proceedings that resulted therefrom that sparked the filing of the pending motion.

      7.      From the face of the agreement, Horizon's position is well taken. Horizon persuasively argues that there is no inconsistency between accepting the benefits of both the *Sutter* and *Love* settlement under those circumstances, because the relief granted to the class in *Sutter* was limited whereas the *Love* settlement's relief was far broader and all-encompassing. Having accepted the benefits of each, however, nothing in ¶12.2 of the *Sutter* agreement permits a class member to reopen that litigation to obtain the same or greater relief than was already obtained and settled by the *Love* settlement.

8.  The *Sutter* Objectors, however, contend in response that Horizon's interpretation is itself foreclosed by virtue of the New Jersey court's preliminary order approving the settlement and the final order approving the settlement and entering final judgment. Specifically, ¶23 of the preliminary order provided:

> In the event that the Settlement Agreement is terminated or is not consummated for any reason, the Settlement and all proceedings had in connection therewith shall be null and void, *except as provided by Section 12.2 of the Settlement Agreement,* and without prejudice to the rights of the parties to the Settlement Agreement before it was executed.

[D.E. 1826-6 at 10]. The *Sutter* Objectors interpret this provision in the preliminary approval order to mean that the parties' agreement in section 12.2 of the settlement agreement survives, and is a continuing obligation, *even if* the settlement and the final judgment, once approved, are later vacated at the behest of the Objectors. Thus, contrary to Horizon's position, Horizon's obligation to not extinguish the *Sutter* class's claims through the *Love* settlement remains in place and fully enforceable through the New Jersey proceedings that, by agreement, was carved out of the *Love* settlement's bar order as it relates to claims between Horizon and the New Jersey class members.

9.  Similarly, ¶25 of the final approval order and final judgment that adjudicated the New Jersey action included a similar provision:

> In the event that the Effective Date cannot occur, or the Settlement Agreement is terminated in accordance with the terms and provisions of the Settlement Agreement, then this Order and the Judgment shall be rendered null and void and be vacated and all orders entered in connection therewith by the Court shall be rendered null and void, *subject to Section 12.2 of the Settlement Agreement which shall remain in full force and effect.*

[D.E. 1826-7 at 30].

10. In short, the *Sutter* Objectors rely primarily on the interplay between ¶12.2 of the *Sutter* settlement agreement and the language in the New Jersey court's approval orders as a defense to the motion for preliminary injunction filed in this action. This motion seeks to prevent the Objectors from pursuing any further proceedings in New Jersey following the remand of the settlement and final judgment by the Court of Appeals. If the Objectors' interpretation of the combined effect of these provisions turns out to be correct, the Objectors take the position that they can proceed with litigation in New Jersey if they can convince the trial court to vacate the entire settlement and allow them to proceed with their claims through trial.

11. We have our doubts whether the provisions of the New Jersey court's approval orders that the *Sutter* Objectors rely upon give license to the Objectors to pursue to trial and final judgment the very same claims that they later forever released and discharged through the *Love* settlement. But before reaching that determination, we have even more doubts whether the New Jersey trial court will concur with the Objectors' interpretation of that court's orders and their effect on the Objectors' ability to reopen the New Jersey litigation to pursue these claims. For instance, assuming that the court accepts the fairness arguments raised against the settlement in that case, the New Jersey court could determine that the maximum relief still available to the Objectors is an order vacating in material part the attorneys' fee award, but leaving in place the remaining settlement terms. Horizon concedes that in such an event, no action would be required by this Court because no conflict would then exist between the *Sutter* final judgment and the *Love* bar order. Similarly, no

conflict would exist if the New Jersey court concludes that all of the fairness objections raised on remand should still be overruled and another final judgment entered.

12.   A conflict would *only* arise between the New Jersey action and this federal court's Orders approving the *Love* settlement if the New Jersey court sustained the Objectors' claims, vacated the settlement, and authorized the Objectors to pursue the New Jersey claims from the start. If the New Jersey court determined that the scope of its jurisdiction could extend to that degree, and that the effect of its approval orders and ¶12.2 of the settlement agreement estopped Horizon from raising the *Love* settlement as a bar to such proceedings, then surely a conflict would arise between the New Jersey action and this Court's Orders, requiring our resolution of that conflict one way or the other.

13.   After giving the matter much thought, we conclude that the record before us requires that we defer final ruling on the pending motion to supplement the record in support of this motion and allow the New Jersey court a period of time to address the scope of its own orders and their effect on the scope of relief available to the *Sutter* Objectors. The parties advised the Court at the hearing held on February 23rd that two days of hearings had already been heard by the trial court in the New Jersey action on remand. Additional hearings were scheduled for that same date, which were cancelled based upon this Court's hearing schedule. Thus, proceedings in connection with the fairness objections raised to the *Sutter* settlement will likely be concluded shortly.

14.   Additionally, the trial court has squarely been presented with the issues raised in response to the pending motion here through an action filed in New Jersey

by the Objectors to enjoin Horizon from interfering with the class members' rights under the settlement and approval orders. That new action, which has been transferred to the presiding judge in the *Sutter* class proceeding, is set for hearing on April 23, 2010. These ongoing state court proceedings will likely make clear whether the *Sutter* settlement will be upset or vacated in any way and, if so, whether the scope of the New Jersey action on remand will overlap with claims that have been enjoined and discharged in this case. Allowing additional time to supplement our record with the results of these imminent proceedings, and especially some indication from the trial judge as to the scope of relief that will be at issue in the New Jersey action, will better provide this Court with a record basis to grant or deny the pending motion.

15. Though Horizon acknowledged at the hearing that proceedings in New Jersey could in fact moot the necessity for an anti-suit injunction here against the *Sutter* Objectors going forward, Horizon argued that an immediate resolution of the pending motion should still be granted because Horizon is entitled to relief regardless of what the New Jersey trial judge decides. There are two facets of this case, however, that counsel against a hurried resolution of this motion.

16. First, the pending injunction motion is premised on the relitigation exception to the Anti-Injunction act, 28 U.S.C. § 2283. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 364 (3rd Cir. 2001) (cited at Motion at 14-15). It is well accepted that this exception to the codified general prohibition against federal court injunctions on ongoing state proceedings must be exercised with appropriate caution. "Where a federal court is asked to interfere with pending state court proceedings it must proceed with caution, taking into account general

considerations of federalism and, in particular, the likelihood of seriously disrupting the legitimate functioning of the judicial system of the state. *Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176, 1181 (11th Cir. 1981) (citing *Kugler v. Helfant,* 421 U.S. 117 (1975); *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.,* 546 F.2d 84 (5th Cir. 1977)). Exceptions to the anti-suit injunction act must be construed narrowly to avoid unnecessary conflicts between state and federal courts. *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 286 (1970).

17. A basic principle of comity is that federal court interference in state court litigation is warranted only when truly "necessary" in aid of its jurisdiction, as that term is a prerequisite for relief under section 2283. There is a strong likelihood that if the New Jersey trial court adopts the persuasive reasoning of Horizon as it relates to the interpretation of § 12.2 of the settlement agreement and paragraphs 23 and 25 of the court's approval orders, then an injunction to enforce this federal court's jurisdiction will not be necessary. And certainly where the resolution of the issue depends in great part upon a state court's interpretation of language found in its own orders, that presents a compelling reason to withhold judgment from our part until that state court has an initial opportunity to interpret its own orders. That is the situation we now face here.

18. Second, Horizon's request for immediate resolution of this issue before the state court passes some judgment on the scope of its own case runs counter to the stipulated fact that Horizon has been litigating against the *Sutter* Objectors for well over two years before their resort to a federal court injunction against further proceedings. This is important because an anti-suit injunction must be guided, not

only by principles of federalism, but also on traditional concepts of equity. Hence, requests for injunctions against state court proceedings must be decided by reference to "the traditional equitable tests of threatened irreparable harm for which the petitioner has no adequate remedy at law." *Ultracashmere House,* 664 F.2d at 1181. And a basic principle of that traditional equitable test is that "preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Citibank, N.A. v. Citytrust,* 765 F.2d 273, 276 (2d Cir. 1985). As a result, a plaintiff's delay in seeking an injunction "tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction . . . ." *Id.* Thus, this Court has rejected injunctive relief based upon a party's delay in filing a motion seeking that extraordinary relief. *See, e.g., Seiko Kabushiki Kaisha v. Swiss Watch Intern., Inc.,* 188 F. Supp. 2d 1350, 1355-56 (S.D. Fla. 2002); *see also Badillo v. Playboy Entertainment Group, Inc.,* 2004 WL 1013372, *2 (M.D. Fla. Mar. 22, 2004) ("a nine month delay is fatal in this case to Plaintiff's claims of irreparable harm"); *GTE Corp. v. Williams,* 731 F.2d 676 (10th Cir. 1984) (when the moving party shows no specific harm other than that presumed when there is a likelihood of confusion, delay in bringing suit is an important factor in determining irreparable harm; preliminary injunction reversed); *Tough Traveler v. Outbound Prods.,* 60 F.3d 964 (2nd Cir. 1995) ("leisurely pace" of plaintiff's pursuit of motion for preliminary injunction warranted reversal).

19.     Here, Horizon litigated the appeal filed by the *Sutter* Objectors long after the *Love* settlement was preliminarily approved. No relief was sought from this Court during this process. Following remand, Horizon began litigating over the fairness issues that were returned to the trial court, including participation in two days of evidentiary hearings. Again no relief was sought beforehand. Only when Horizon had to respond to certain discovery requests served by the Objectors did Horizon conclude that a tangible basis existed to seek relief under the *Love* settlement bar order. By then, however, two years of litigation had ensued.

20.     In response to this record, Horizon argues that it cannot be found to have sat on its rights because, relying on the Objectors' own representations, Horizon had no reason to believe that the scope of the New Jersey fairness proceedings could result in reopening the litigation and pursuing the same claims resolved in *Love* until much later in the day. For instance, Horizon points to statements in the Objectors' appellate brief that indicated that a successful resolution of the case below would mean that the fee award would be vacated and the litigation would come to an end. That representation is consistent with Horizon's position that the *Sutter* litigation, following the *Love* settlement, could provide only limited relief agreed upon by the class representatives prior to *Love*. Horizon maintains that only after remand, and in anticipation of continued fairness proceedings, did the Objectors' discovery requests make clear that their intentions materially changed and they would seek to reopen litigation over all the claims originally raised in the *Sutter* litigation. Horizon concludes that only upon its receipt of this "tangible fact" could Horizon return to this court for injunctive relief.

21. Without passing judgment on this argument, which may indeed have some merit, we only point out that it hinges upon what the scope of the post-remand proceedings will be in the *Sutter* litigation. Horizon concedes that had the remand proceedings been limited to the amount of fees class counsel was due, for instance, it would *not* have sought any relief here, which is consistent with how it has litigated the case since 2007. Accordingly, if the state court trial judge agrees that the scope of the remand proceedings will be so limited, then no harm and no foul. Horizon's concerns will then have been quelled without federal court intervention that impairs traditional state and federal court relations. In other words, given Horizon's own stated reasons for delaying, granting the state trial judge additional time to define the scope of his own case would be entirely consistent with Horizon's position. And if in that process the state trial judge decides that the litigation will come to a definitive end and the settlement approved once again, the issue here will be entirely moot. On the other hand, if the state court proceeding will, as Horizon fears, result in a full-fledged relitigation of these claims, those fears may have materialized. At that point, assuming we agree in the end with Horizon's analysis of the facts and the law, this Court's intervention may prove to be inevitable.

22. In short, we see a strong basis in this record to defer resolving the pending motion for a short time to supplement our record with a clear indication from the state court trial judge as to what relief will be available, if any, to the *Sutter* Objectors on remand. That is especially warranted given the fact the state court's own orders must be interpreted to discern whether the Objectors' theory has any legs. Based upon well settled principles of comity, we will defer for a while longer to allow the state court to

make that decision in the first instance. Moreover, as the issue is fairly well teed up by the Objectors' own injunction motion filed in New Jersey, we will have some definitive ruling quite soon that will either render this entire matter moot, or instead possibly give rise to an even stronger reason why federal court intervention is required.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

A. Horizon's Motion for Preliminary Injunction, for Sanctions, and for Order to Show Cause [D.E. 1825] is deferred for further clarification of the record based upon proceedings already underway in the New Jersey action. Horizon has leave to renew or supplement its motion, and supplement the record, in accordance with this Order. The motion is denied, for administrative reasons, without prejudice and no disposition is intended through the entry of this Order.

B. Horizon also has leave to advise the Court as warranted of the status of such proceedings, including whether its renewed motion should be adjudicated based upon the lack of any resolution of these issues in the New Jersey proceedings within a reasonable period of time.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of March, 2010.

EDWIN G. TORRES
United States Magistrate Judge