# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 03-21296-CIV-MORENO-TORRES

RICK LOVE, M.D., *et al.*,

        Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD
ASSOCIATION, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION ON CERTAIN
## SETTLING DEFENDANT'S MOTION TO ENFORCE JUDGMENT

This matter is before the Court on Defendant Empire HealthChoice Assurance, Inc.'s ("Empire") Motion to Enforce Injunction Against Dr. Artandi ("Defendant's Motion") [D.E. 1941].[1]  The Court has considered the motion, the response, the reply, and the pertinent portions of the record.  For the reasons discussed below, this Court recommends that the Defendant's Motion be **GRANTED**.

### *I.  BACKGROUND*

A class of doctors alleged that health insurance companies engaged in a conspiracy to inflate profits by systematically denying, delaying, and diminishing payments due to physicians.  The HMOs allegedly effected this scheme through the

---

[1]  This motion was referred for a Report and Recommendation by the Honorable Federico A. Moreno pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Rules of the Local Rules of the Southern District of Florida. [D.E. 1947].

manipulation of computerized billing programs.  Throughout the pendency of this complex, multi-district, class-action litigation initiated by scores of physicians against various health insurance companies, settlements have been reached between numerous physicians and several of the insurers.  The Court approved one such settlement, the Settlement Agreement dated as of April 27, 2007 ("Final Approval Order") [D.E. 1286].  The Final Approval Order enjoined class members from filing new lawsuits in which "Released Claims" are asserted against "Released Parties:"

> The Releasing Parties are permanently enjoined from: (i) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding, or order in any jurisdiction based on any or all Released Claims against one or more Released Parties.

*See* Final Approval Order ¶ 9.

Dr. John Artandi, appearing *pro se* in this action, is a physician who provides physical therapy services in New York to, among others, members of Empire. Sometime in 2008, Dr. Artandi and his practice, Advanced Orthopedic Rehabilitation, P.C. (together "Plaintiff" or "Artandi"), each filed four small claims court actions against Empire in an effort to obtain additional payments for services allegedly rendered to Empire's members.  *See* Small Claims Action Summonses [D.E. 1941-2]. Although the exact basis for these claims is somewhat unclear, it appears that they were based on Empire's alleged underpayment to Artandi for the services he rendered to Empire's subscribers between December 18, 1996 and July 19, 2004.  *See* Artandi's Opp'n to Empire's Mot. to Enforce Inj. ("Artandi's Response" or "Plaintiff's Response") at 2 [D.E. 1961].  According to Artandi, prior to July 19, 2004, Empire misclassified

him as a participating provider in its Preferred Provider Organization Network ("PPO Network") and reimbursed him at the rates applicable to participating providers in the PPO Network instead of the higher out-of-network rates ("Pre-July 2004 Claims"). *Id.*

Empire responded to the eight small claims court actions filed by Artandi by filing a declaratory judgment action in the New York Supreme Court ("New York Court"), seeking a declaration that Artandi had been a participating provider in Empire's PPO Network prior to July 19, 2004. *See* New York Complaint ¶¶ 18-20 [D.E. 1941-3]. Empire also moved for removal of the eight pending small claims court actions to the New York Court and for consolidation of those claims with its declaratory judgment action. The New York Court granted the removal motion on January 21, 2009.

Instead of requiring Artandi to file a formal answer and counterclaim to Empire's Complaint, the New York Court apparently instructed Artandi to simply list the claims for services for which he contended he had been inadequately reimbursed. Artandi ultimately filed two lists: one list for services he allegedly provided to Empire members prior to July 19, 2004, and a second list for services he allegedly provided to Empire members on or after that date. These lists were deemed by the New York Court to be Artandi's counterclaims against Empire.

Subsequently, the New York Court directed Artandi to come forward with: (1) proof that he was not a participating provider prior to July 19, 2004 and (2) explanation of how Empire had supposedly paid him the wrong amounts for services he provided after July 19, 2004. After Artandi failed to successfully come forward with

such information, Empire moved for summary judgment on the grounds that there were no genuine issues of material fact as to whether: (1) Artandi had been a participating provider in Empire's PPO Network prior to July 19, 2004 and (2) Empire properly processed Artandi's claims for services provided after July 19, 2004 on an out-of-network basis.

Artandi opposed Empire's motion for summary judgment by filing an affidavit that clarified the theories of his claims.  In addition to the Pre-July 2004 claims, Artandi explained that his second category of claims related to Empire's improper reimbursement for his services as a non-participating provider after July 19, 2004[2] ("Post-July 2004 Claims").  *See* Artandi's Aff. in Opp'n to Pl.'s Mot. For Summ. J. ¶¶ 34-35 [D.E. 1941-5].  The affidavit alleged that "Empire used multifaced dishonest reimbursement schemes in a self-serving manner" and "its calculations drastically and blatantly reduced the correct payments for medically necessary covered services."  *Id.* ¶ 35.  Along with the affidavit, Artandi also filed his First Amended Answer with Counterclaim ("FAAC") [D.E. 1941-1].  On January 10, 2009, the New York Court denied Empire's motion for summary judgment.

The FAAC asserts ten causes of actions: (i) declaratory judgment that Artandi was a non-participating physician in Empire's PPO prior to July 19, 2004 and was not properly compensated; (ii) declaratory action that Empire must, from the date of judgment, reimburse Artandi fully and consistently per fee schedule for services rendered to patients subscribed to Empire; (iii) declaratory judgment that Empire

---

[2]     It is undisputed that Artandi has not been a participating provider in Empire's PPO Network since July 19, 2004.

must, from the date judgment, disclose the formula, scheme or payment allowance guidelines for each subscriber's policy and procedure code, such that Empire must explicitly reveal and clear the CPA code used for each subscriber, the explicit basis for allowance, the explicit basis for rejecting procedures and the explicit basis for rejecting reimbursements; (iv) unjust enrichment associated with Empire's underpayment of Artandi's claims; (v) libel as it relates to certain statements made by Empire during the New York litigation; (vi) fraud associated with Empire's underpayment of Artandi's claims; (vii) monetary damages; (viii) punitive damages;[3] (ix) unfair and deceptive business practices under N.Y. Gen. Bus. L. § 349; and (x) breach of contract. *See* FAAC ¶¶ 51-99.

All causes of action stem from Defendant's alleged "multifaceted, dishonest reimbursement schemes" that "significantly reduced or outright rejected without reasonable explanation" majority, if not all, of Artandi's claims. *Id*. ¶¶ 12, 15. According to the FAAC, "from about 1996 to date, Dr. Artandi's reimbursement payments have become unjustifiably low." *Id*. ¶ 12. The FAAC further alleges that Empire:

- Failed to reimburse Dr. Artandi's services per the appropriate UCR fee schedules;

- Misrepresented and failed to disclose the use of edits to unilaterally "bundle" downcode, and or reject claims for medically necessary covered services;

- Failed to pay for medically necessary covered services in accordance with member plan documents;

---

[3]     Claims VII and VIII do not state cognizable causes of action.  Instead, they appear to list the types of legal remedies that Artandi is seeking.

- Concealed and or misrepresented the use of improper guidelines and criteria to deny delay or to reduce payments for medically necessary covered services;

- Failed to pay claims for medically necessary covered services within the required statutory and or contractual time periods.

*Id.*

In light of the Final Approval Order, and the undisputed fact that Artandi and the Advanced Orthopedic Rehabilitation, P.C. did not opt out of the class, Empire moves this Court to enforce the settlement against the Plaintiffs and compel withdrawal of the released claims[4] from their counterclaim in the New York lawsuit. In the alternative, Empire petitions the Court to order Plaintiffs to show cause why they should not be held in contempt. Empire argues that, with the exception of certain Pre-July 2004 claims, the majority of the causes of action in the FAAC "involve any aspect of any fee for services claim and the business practices that are the subject of the Settlement Agreement." *See* Defendant's Motion at 3.

Artandi opposes Defendant's Motion, arguing that his counterclaim in New York rests on "his claim that from December 18, 1996 to July 19, 2004 misclassified and under paid him as if he were a participating provider." *See* Plaintiff's Response at 2. Artandi further contends that from July 19, 2004 Empire misclassified and underpaid him as if he were a physical therapist, not as a physician. *Id.* Artandi emphasizes that "Empire's misclassifications of Dr. Artandi's services and the resulting

---

[4]    Empire concedes that Artandi's counterclaims based on services provided to Empire's members prior to July 19, 2004 arising solely on the theory that Empire mistakenly reimbursed him as a participating provider instead of an out-of-network bases are not released claims and barred by the Final Order.

underpayments [are] the sole causes of [his] lawsuit." *Id.* Artandi's Response also includes a copy of the proposed Second Amended Counterclaim ("SAC"). The SAC essentially mirrors the claims asserted in the FAAC but it also expressly states that the asserted claims fall outside the scope of *Love* settlement.

## II.   ANALYSIS

The language of the Court's Final Approval Order clearly prohibits Class members from initiating lawsuits against Released Parties for any claims released by the Settlement. This Court, therefore, must grant Settling Defendant's motion if three conditions exist: (i) the Plaintiffs are class members; (ii) Empire is a Released Party under the Settlement; and (iii) the claims at issue in the FAAC are Released Claims.

The first and second prongs are not at issue. The Final Approval Order permanently certified a settlement class composed of the following class members:

> Any and all Physicians, Physician Groups and Physician Organizations who provided Covered Services to any Plan Member or services to any individual enrolled in or covered by a Plan offered or administered by any Person named as a defendant in the Complaint or by any other primary licensee of the BCBSA or by any of their respective current or former subsidiaries or Affiliates, in each case from May 22, 1999 through May 31, 2007, . . . .

*See* Final Approval Order ¶ 2. It is undisputed that Dr. Artandi did not opt out of the *Love* Settlement, and is therefore a class member bound by the terms of the Final Approval Order. It is also undisputed that the Final Order includes Empire as a Released Party. The key issue before this Court is whether the causes of action in the FAAC, other than the pre-July 2004 claims based on the alleged improper reimbursement for Artandi's services as a participating provider (Count I), are

Released Claims.[5]

The Final Approval Order defines Released Claims as:

> any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind, source or character whether arising under any federal or state law, which . . . includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional . . . arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action, or addressed in the Settlement Agreement, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons, or to the business practices that are the subject of Section 7 of the Settlement Agreement.  This includes, without limitation and as to Released Parties only, any aspect of any fee for service claim[.]

*See* Final Approval Order ¶ 5.  Before we filter the FAAC through this release language, we must pinpoint the essence of the *Love* lawsuit.  The notice of settlement package sent to all potential class members aptly summarizes the *Love* case:

> The Complaint in the Action alleges, among other things, that between 1999 and the present, the Blue Parties, among others, engaged in a conspiracy to improperly deny, delay, and/or reduce payments to physicians, physician groups, and physician organizations by engaging in several types of allegedly improper conduct, including but not limited to:
>
> · Misrepresenting and/or failing to disclose the use of edits to unilaterally "bundle," "downcode," and/or reject claims for medically necessary covered services;
>
> · Failing to pay for "medically necessary" services in

---

[5]      We also do not address Count V of the FAAC as it appears that the libel claim it is asserting arises solely out of certain statements Empire allegedly made about Plaintiff in the New York proceedings.

accordance with member plan documents;

- Failing and/or refusing to recognize CPT® modifiers;

- Concealing and/or misrepresenting the use of improper guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services;

- Misrepresenting and/or refusing to disclose applicable fee schedule;

- Failing to pay claims for medically necessary covered services within the required statutory and/or contractual time periods.

The Complaint in the Action claims that the conduct described above violated the federal statute entitled the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

[D.E. 1385-5 at 3]. Simply put, the *Love* case concerns insurance companies' improper methods of denying, delaying, and diminishing physicians' "fee for service" insurance claims. Because the Final Approval Order prohibits Artandi from filing Released Claims, we need to determine if his claims are "in any way related to" fee for service claims.

As Empire correctly points out, the FAAC contains multiple factual allegations related to fee for services claims payment and processing, and the refusal and/or denial of benefits. Almost all allegations common to all counts refer to what is at the core of the *Love* lawsuit: allegedly wrongful and improper claims handling practices on behalf of the Defendant. *See* FAAC ¶¶ 1-50.

Now turning to the specific allegations asserted by Plaintiff under each count, it is clear that Counts II-IV and VI-X all pertain to Empire's allegedly improper claims handling:

- Count II (Declaratory Judgment) - Arising out of Empire's alleged failure to reimburse Plaintiffs "per a consistent fee-for-service formula for services rendered to patients subscribed to Empire." *Id.* ¶ 57.

- Count III (Declaratory Judgment) - Requiring that Empire "disclose the formula, scheme or payment allowance guidelines for each subscriber's policy and procedure code, such that Empire must explicitly reveal and clear: a) the CPA code used for each subscriber; b) the explicit basis for allowance; c) the explicit basis for rejecting procedures; and d) the explicit basis for rejecting reimbursements." *Id.* ¶ 63.

- Count IV (Unjust Enrichment) - Arising out of Empire's improper underpayment for professional services rendered to its subscribers. *Id.* ¶ 68.

- Count VI (Fraud) - Arising out of Empire's alleged "repeated false statements in its explanations of benefit sent to Dr. Artandi as justifications for payments made" to him. *Id.* ¶ 74. The FAAC further alleges that "Empire has intentionally and repeatedly made false and dishonest calculations in justifying its reimbursement amounts to Dr. Artandi." *Id.* ¶ 75.

- Count VII-VIII (Monetary and Punitive Damages) - As previously stated, these counts do not recite cognizable causes of action. Instead, they merely recite the types of legal remedies that Plaintiff is seeking as a result of Empire's alleged "long pattern of intentional, bad-faith, oppressive, malicious and outrageous misconduct in failing to pay and underpaying Dr. Artandi for services rendered to patients subscribed to Empire, according to an erratic, inconsistent and arbitrary scheme." *Id.* ¶ 84.

- Count IX (Unfair and Deceptive Business Practices Under N.Y. Gen. Bus. L. § 349) - Arising out of Empire's alleged "false, misleading and deceptive statements of fact" intended to mislead a reasonable consumer. *Id.* ¶¶ 88-90.

- Count X (Breach of Contract) - Arising out of Empire's alleged failure "to reimburse Dr. Artandi as a non-participating physician for medically necessary services rendered, in a fair, reasonable, statutorily timely, consistent and legally acceptable manner, based on a fee-for-service formula calculated under the UCR, RC or prevailing fee standard." *Id.* ¶ 97.

Clearly, a careful analysis of the allegations raised in the FAAC suggests that

Counts II-IV and VI-X clearly fall under the scope of Released Claims under the Final Approval Order because they all relate to the denial, delay, and diminishment of physicians' fee for service claims.  In other words, "but for" Empire's alleged improper claims processing schemes, Counts II-IV and VI-X would simply not survive on their own.  Allowing these claims to go forward will require litigating the merits of the alleged improper claims handling practices, clearly an issue addressed and settled by the Final Approval Order.  Indeed, the Eleventh Circuit has recently emphasized the broad language of the *Love* Settlement and instructed us that the release "extends to any and all causes of action of whatever kind, source, or character that are related to matters addressed in the class action." *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 814, 822 (11th Cir. 2010) (finding Plaintiff Kolbusz's claims of tortious interference and defamation released under the *Love* Settlement regardless of the fact that these claims might "depend on a different legal theory than the claims asserted in the class action or require [plaintiff] to prove matters in addition to or different from the claims asserted in the class action").  Thus, Claims II-IV and VI-X are Released Claims and Plaintiff should be enjoined from pursuing them in the New York Supreme Court.

In his opposition, Artandi concedes that he "borrowed [his claims] by copying the claims from the [*Love*] Class Action court papers" without "any real or specific understanding of Plaintiff's claims (concealing guidelines, or using edits, bundling, and downcoding, etc.)." *See* Plaintiff's Response at 6.  Artandi points out that "in no way [he] intended those descriptions to be considered or construed as his final de facto complaints or claims." *Id*.  According to Artandi, "in reality, none of the descriptions

in the list [borrowed from the *Love* Complaint] were applicable to [his] lawsuit" and "were not [his] real claims or complaints." *Id*. at 7.  Thus, Artandi essentially argues that we should ignore the FAAC filed in the New York court.  Instead, Artandi asks us to analyze his claims as they are recited in the proposed SAC instead.  Plaintiff emphasizes that his "real" claims bear no relationship to the *Love* Settlement because they are "about Empire's misclassifications and wrong categorizations." *Id*. at 3.  Plaintiff's argument has no merit.

We are not technically required to consider the allegations listed in the SAC because there is no evidence in the record that the New York Court granted Plaintiff leave to file amended counterclaim.  In light of the fact that some of the factual allegations in the SAC substantially differ from those listed in the FAAC, it is unclear whether the New York Court will allow such amendment.  We are mindful that Plaintiff is appearing *pro se* in this action without the assistance of counsel.  Notwithstanding this fact, however, Plaintiff is not free to "borrow" allegations from one lawsuit and then simply disown those allegations when possible preclusive effect arises on the horizon.  *See, e.g., Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc.*, 974 F.2d 502, 506 (4th Cir. 1992) (holding that Fed. R. Civ. P. 15(a) "does not afford plaintiffs a tool to engage in the litigation of cases one theory at a time.").

Putting aside the procedural problems associated with the SAC, we find in any event that the claims asserted in it are also released claims under the *Love* Settlement.  Although the SAC expressly pleads that its claims fall outside the scope of the *Love* Settlement, a careful review of the allegations leads us to a contrary conclusion.

The gist of Artandi's claims against Empire still relate to the insurance

company's alleged gross underpayment for the services he rendered to its subscribers. The SAC alleges, *inter alia*, that Empire: (i) intentionally misclassified Dr. Artandi as a physical therapist rather than a physician for the purpose of reducing his reimbursement; (ii) failed to perform on explicit pledges for direct payments to Dr. Artandi in the course of documented phone policy verifications after inducing his detrimental reliance; (iii) failed to properly reimburse him through fraudulent, patently false calculations, defying basic arithmetic on an astonishing magnitude; and (iv) breached its "quasi-contract" with Dr. Artandi by failing to properly reimburse him for the medically necessary services that he provided to Empire subscribers. *See* SAC ¶¶ 3, 11-12, 23, 74-75. The SAC also alleges that Artandi resisted confrontation with Empire for the fear of losing his livelihood because of the many rumors that insurers blacklisted doctors who antagonized them. *Id.* ¶ 16. All these allegations taken together relate to or are based on "any aspect of any Fee for Service Claim submitted by any Class Member to [Empire]." *See* Final Approval Order ¶ 5. In other words, all of Artandi's claims against Empire concern how Empire treated and paid his fee for service claim.

Finally, Artandi argues that a "significant portion" of his counterclaims arose after the effective settlement date of the *Love* Class Action.[6] This argument is likewise unavailing. All of Artandi's claims based on services provided after the effective settlement date are based on an alleged course of wrongdoing by Empire that goes back

---

[6]     The effective date of the *Love* Settlement occurred when the Eleventh Circuit dismissed with prejudice all appeals from the final approval order on June 19, 2009. *Thomas*, 594 F.3d at 822.

to at least July 19, 2004.  *See* SAC ¶ 12 ("From July 19, 2004 to date Empire has continuously misclassified Dr. Artandi for reimbursement purposes.").  Accordingly, Plaintiff's claims are based on alleged pattern of conduct that occurred well before the effective settlement date and are released by the *Love* Settlement.

In conclusion, we find that Artandi could have simply opted out of the settlement and pursued his claims individually in New York Supreme Court but he did not do so.  The allegations raised in Counts II-IV and VI-X of the FAAC clearly implicate the fee for service claims and processing schemes implemented by Empire. Therefore, these claims are Released Claims under the Final Approval Order and Plaintiff is enjoined from prosecuting them in the New York court.

### III.   CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Defendant Empire HealthChoice Assurance, Inc.'s Motion to Enforce Injunction Against Dr. Artandi [D.E. 1941] be **GRANTED**.

1.     Plaintiff should have twenty (20) days from the date of the Court's final Order to withdraw the Counts II-IV and VI-X from the First Amended Answer and Counterclaim.   If Plaintiff fails to voluntarily withdraw these claims, Empire's contempt motion shall be revisited by this Court.

2.     Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.   Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the

parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of May, 2010.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge