UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-21296-CIV-MORENO/TORRES

RICK LOVE, M.D., *et al.*,

      Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD
ASSOCIATION, *et al.*,

      Defendants.

_____/

**REPORT AND RECOMMENDATION ON CERTAIN
SETTLING PLAINTIFF'S MOTION FOR DECLARATORY ORDER**

    This matter is before the Court on Plaintiff Richard Kaul, MD's ("Kaul" or "Plaintiff") Motion for Declaratory Judgment Permitting ERISA Section 502(a) Action ("Plainitiff's Motion") filed on June 4, 2010 [D.E. 1981].[1] Defendant filed a response in opposition on June 21, 2010 [D.E. 1999]. No reply was filed. The Court has considered the motion, the response, and the pertinent portions of the record. For the reasons discussed below, this Court recommends that the Plaintiff's Motion be **DENIED**.

---

[1] This motion was referred for a Report and Recommendation by the Honorable Federico A. Moreno pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Rules of the Local Rules of the Southern District of Florida. [D.E. 1997].

## I. BACKGROUND

### A. *The "Love" Class Action and Settlement*

A class of doctors alleged that health insurance companies engaged in a conspiracy to inflate profits by systematically denying, delaying, and diminishing payments due to physicians. The HMOs allegedly effected this scheme through the manipulation of computerized billing programs. Throughout the pendency of this complex, multi-district, class-action litigation initiated by scores of physicians against various health insurance companies, settlements have been reached between numerous physicians and several of the insurers. The Court approved one such settlement, the Settlement Agreement dated as of April 27, 2007 ("Final Approval Order") [D.E. 1286]. The Final Approval Order enjoined class members from filing new lawsuits in which "Released Claims" are asserted against "Released Parties:"

> The Releasing Parties are permanently enjoined from: (i) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding, or order in any jurisdiction based on any or all Released Claims against one or more Released Parties.

*See* Final Approval Order ¶ 9.

### B. *Plaintiff's New Jersey Lawsuit*

Doctor Richard Kaul is a physician who is 100% shareholder of Interventional Pain, P.C. and Pompton Anesthesia Associates, P.C. Defendant Horizon Blue Cross Blue Shield of New Jersey ("Horizon") underwrites and administers insurances plans for both public and private entities. Kaul and his companies, as "out-of-network" or "non-participating" providers, render various medical services in New Jersey to, among

others, members of Horizon.

On November 15, 2006, Kaul filed a Complaint against Horizon in the New Jersey state court, styled *Richard Kaul, M.D., et al. v. Horizon Blue Cross Blue Shield of New Jersey*, No. MRS-L-3105-06 ("the New Jersey Action"). Subsequently, Kaul filed his five-count Amended Complaint that alleged state law claims for breach of contract, breach of good faith and fair dealing, tortious interference with prospective economic advantage, interference with contract, and interest on overdue claims pursuant to N.J. Stat. § 17B:26-9.1. *See* New Jersey Amended Complaint at 64-71 [D.E. 2000-7]. All of Kaul's claims stemmed from Horizon's allegedly wrongful reimbursement and underpayment of his claims. Specifically, the Amended Complaint alleged that Kaul:

> provided medically necessary and reasonable health care services to Horizon subscribers and submitted claims for reimbursement to [Horizon] only to have their claims either: i) improperly denied in full; ii) partially paid in amounts less than their UCR [usual and customary rate]; iii) partially paid in amounts less than 80% of the Prevailing Health Charges Systems; iv) improperly bundled together or recoded in contravention to AMA CPT and other controlling guidelines; or v) otherwise improperly adjusted by [Horizon]

*Id.* at 5-6 [D.E. 2000-6]. The Amended Complaint included dates of services for one hundred and thirty-one (131) patients ranging from June 10, 2004 to January 28, 2009. *Id.* at 6-7.

On September 9, 2009, the New Jersey court dismissed all of Kaul's claims with prejudice. *See* Order Granting Motion to Dismiss, Ex. L to Def.'s Mem. in Opp. [D.E. 2000-15]. Although the basis for the dismissal is not stated in the Order, judging by the parties' briefs associated with the motion to dismiss it appears that the New Jersey court found Kaul's claims barred by the release in the *Love* Settlement Agreement.

C.    *Declaratory Judgment Motion*

On June 4, 2010, Kaul filed the pending declaratory judgment motion. Plaintiff's motion seeks an Order from this Court declaring that his ERISA Section 502(a) claims are not barred by the Release and Settlement in the *Love* litigation and that Plaintiff may proceed with these claims in the United States District Court for the District of New Jersey. *See* Pl.'s Mot. at 2.[2] In support of his motion, Plaintiff argues that: 1) his ERISA claims fall outside the scope of the *Love* Settlement because they arise from a different set of facts and legal theories; 2) he was deprived of due process of law because he was not properly notified regarding the *Love* class action settlement; and 3) the effective date of the class action settlement only bars claims for services rendered on or before May 31, 2007.

Section 502(a) empowers ERISA[3] participants and beneficiaries to bring a civil action in order to recover benefits, enforce rights to benefits, or clarify rights to future benefits due under the terms of an ERISA-governed welfare benefit plan. 29 U.S.C. § 1132(a)(1)(B); *Land v. CIGNA Healthcare of Fla.*, 339 F.3d 1286, 1290 (11th Cir. 2003). Furthermore, the remedies explicitly authorized in Section 502(a)(1)(B) are akin

---

[2]    Plaintiff states in his motion that the ERISA Section 502(a) claims were dismissed by the New Jersey state court as being barred under the *Love* Settlement agreement. *See* Pl.'s Mot. at 2. This assertion, however, appears to be an error as our careful review of the record reveals that ERISA claims were never asserted in the operative Amended Complaint. Indeed, if the ERISA claims were dismissed by the New Jersey court, our review of the matter may have been barred pursuant to the Rooker/Feldman doctrine, which bars a federal district court from directly reviewing a final judgment of a state court. *Braswell v. Henkel*, 160 Fed. App'x 828, 829 (11th Cir. 2005).

[3]    The Employee Retirement Income Security Act.

to common law breach of contract causes of action. *Jones v. American General Life and Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004).

The gist of Kaul's ERISA claims stems from Horizon's alleged underpayment or denial of payments for the services he rendered to its subscribers. According to Kaul, Horizon's reasons for its denial or underpayment of claims included such bases as: "no record of claim on file," "claim paid to member," "unable to determine which service outstanding," "claim denied, not covered/approved service," "medical records not received," and "duplicate claim." Kaul also bases his ERISA claims on numerous instances where Horizon improperly characterized him as a chiropractor instead of a plenary licensed medical doctor.

## II.   ANALYSIS

The language of the Court's Final Approval Order clearly prohibits Class members from initiating lawsuits against Released Parties for any claims released by the Settlement. This Court, therefore, must deny Plaintiff's declaratory judgment motion if three conditions exist: (i) the Plaintiff is a class member; (ii) Horizon is a Released Party under the Settlement; and (iii) ERISA claims are Released Claims.

The first and second prongs are not at issue. The Final Approval Order permanently certified a settlement class composed of the following class members:

> Any and all Physicians, Physician Groups and Physician Organizations who provided Covered Services to any Plan Member or services to any individual enrolled in or covered by a Plan offered or administered by any Person named as a defendant in the Complaint or by any other primary licensee of the BCBSA or by any of their respective current or former subsidiaries or Affiliates, in each case from May 22, 1999 through May 31, 2007, . . . .

*See* Final Approval Order ¶ 2. It is undisputed that Dr. Kaul did not opt out of the *Love* Settlement, and is therefore a class member bound by the terms of the Final Approval Order. It is also undisputed that the Final Order includes Horizon as a Released Party. The key issue before this Court is whether ERISA claims for services rendered by Plaintiff to Horizon's subscribers between June 10, 2004 to January 28, 2009 are Released Claims.

> The Final Approval Order defines Released Claims as:
>
> any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind, source or character whether arising under any federal or state law, which . . . includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional . . . arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action, or addressed in the Settlement Agreement, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons, or to the business practices that are the subject of Section 7 of the Settlement Agreement. This includes, without limitation and as to Released Parties only, any aspect of any fee for service claim[.]

*See* Final Approval Order ¶ 5. The essence of the *Love* lawsuit is amply summarized in the notice of settlement package sent to all potential class members:

> The Complaint in the Action alleges, among other things, that between 1999 and the present, the Blue Parties, among others, engaged in a conspiracy to improperly deny, delay, and/or reduce payments to physicians, physician groups, and physician organizations by engaging in several types of allegedly improper conduct, including but not limited to:
>
> • Misrepresenting and/or failing to disclose the use of edits to unilaterally "bundle," "downcode," and/or reject claims for

>             medically necessary covered services;
>
> •           Failing to pay for "medically necessary" services in accordance with member plan documents;
>
> •           Failing and/or refusing to recognize CPT® modifiers;
>
> •           Concealing and/or misrepresenting the use of improper guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services;
>
> •           Misrepresenting and/or refusing to disclose applicable fee schedule;
>
> •           Failing to pay claims for medically necessary covered services within the required statutory and/or contractual time periods.
>
> The Complaint in the Action claims that the conduct described above violated the federal statute entitled the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

[D.E. 1385-4 at 3]. Simply put, the *Love* case concerns insurance companies' improper methods of denying, delaying, and diminishing physicians' "fee for service" insurance claims. Because the Final Approval Order prohibits Kaul from filing Released Claims, we need to determine if his ERISA claims are "in any way related to" fee for service claims.

As Horizon correctly points out, the Amended Complaint filed in the New Jersey state court contained multiple factual allegations related to fee for services claims payment and processing, and the refusal and/or denial of benefits. For example, the Amended Complaint alleged that: "Plaintiffs provided medically necessary and reasonable health care services to horizon subscribers and submitted claims for reimbursement to [Horizon] only to have their claims" denied and/or reduced. *See* Amended Complaint at 5-6. In other words, Kaul rendered medical services to Horizon

subscribers and now he attempts to be paid a fee for those services. Such claims, regardless whether asserted pursuant to state or federal law, are released claims under the *Love* Settlement.

Indeed, the Eleventh Circuit has recently emphasized the broad language of the *Love* Settlement and instructed us that the release "extends to any and all causes of action of whatever kind, source, or character that are related to matters addressed in the class action." *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 814, 822 (11th Cir. 2010) (finding Plaintiff Kolbusz's claims of tortious interference and defamation released under the *Love* Settlement regardless of the fact that these claims might "depend on a different legal theory than the claims asserted in the class action or require [plaintiff] to prove matters in addition to or different from the claims asserted in the class action").

Furthermore, it is clear that Kaul's ERISA claims share the same operative nucleus of fact covered by the *Love* Settlement. As previously stated, the *Love* action alleged a nationwide conspiracy by Blue Cross licensees to diminish, delay, and deny proper claims for medically necessary procedures. The thrust of the *Love* action was that Blue Cross intentionally came up with various ways to defraud doctors by refusing to pay for treatments that proved too costly, regardless of their medical necessity. The "primary right and duty" involved was Blue Cross' contractual duty to pay its doctors for medically necessary care given to its clients, and the doctors' contractual right to receive that money. *Thomas v. Blue Cross and Blue Shield Ass'n*, 333 Fed. App'x 414, 418 (11th Cir. 2009). Similarly, Kaul's ERISA claims are essentially breach of contract claims based on his allegation that Horizon breached its contract with him. The

contract required Horizon to reimburse him for covered services. Instead of proper reimbursement, however, Kaul alleges that Horizon underpaid him. Clearly, such claims are released claims under the *Love* Settlement.

Kaul also argues that the *Love* Settlement did not address monetary damages issues and merely required the Blue Plans to implement policy and administrative changes. Therefore, according to Plaintiff, because the ERISA claims seek damages for medical necessity issues, allegations of claims never received, allegations of claims paid to patients, and improper classification of Dr. Kaul as a chiropractor, they fall outside of the *Love* Settlement. Plaintiff's argument has no merit. Contrary to Plaintiff's assertion, the *Love* Settlement contained a Settlement Fund that equaled close to $130,000,000.00. As outlined in the notice of the settlement, each class member was entitled to payments from the Settlement Fund in accordance with formulas that were set forth in the Settlement Agreement. [D.E. 1385-4 at 3].

Next, Plaintiff argues that he is not bound by the *Love* Settlement because he was not properly notified of the settlement. Kaul claims that he never received any notice of the proposed settlement and right to opt-out. He submits a sworn affidavit in which he indicates that neither he nor his corporations received any notice of the case or its settlement.

*Mullan v. Central Hanover Ban & Trust Co.*, and its progeny, established that constitutionally adequate notice is a "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950).

The Preliminary Approval Order in the *Love* action conditionally certified the

class, for purposes of settlement, as "any and all Physicians, Physician Groups and Physician Organizations who provided Covered Services to any Plan Member or services to any individual enrolled in or covered by a Plan offered or administered by any Person named as a defendant . . . from May 22, 1999 through the Preliminary Approval Date." *See* Order Preliminarily Approving Proposed Settlement Agreement at 3 [D.E. 945]. As previously noted, Kaul is clearly a class member.

Here, on July 27, 2007, the *Love* Settlement Administrator sent a Notice of Proposed Settlement, Claim Form, and Claim Form Instructions ("Notice") via U.S. First-Class Mail to potential Class Members, including Doctor Kaul. *See* Certification of Jenny Penning at 2 [D.E. 2001-1]. Moreover, a summary notice was also published in the following periodicals: The Wall Street Journal; USA Today; The Journal of the American Medical Association; and The American Medical News. *See* Published Notice [D.E. 2001-1]. The district court has already found this notice to be sufficient. *See* Final Approval Order at 1, 3-4.

*Mullane* does not require actual receipt of the notice. It requires "notice reasonably calculated . . . to apprise" Doctor Kaul of the Settlement and the opt-out process. Plaintiff proffers no evidence that would suggest the Notice was not provided in accordance with the district court's directive. Furthermore, Kaul could have obtained notice from any of the published sources. *See Weigner v. City of New York*, 852 F.2d 646, 651 (2d Cir. 1988) (notice sent by first class mail is acceptable "[p]articularly where mailing is supplemented by other forms of notice such as posting or publication, the risk of non-receipt is constitutionally acceptable.").

The Settlement Administrator complied with the notice requirements of the

district court. Nothing more was required. *But see, Plemons v. Gale*, 396 F.3d 569, 573 (4th Cir. 2005) ("[W]hen a party required to give notice *knows* that a mailed notice has, for some reason, failed to inform a person holding a property interest of the impending deprivation, the notice does not pass constitutional muster.") (emphasis in original). There is no evidence the Settlement Administrator knew that Kaul did not receive notice of the pending settlement and, as such, did not need to take further action. The Notice was not returned as undeliverable by the postal service. *See* Certification of Jenny Penning at 2. Kaul's intent to object and opt-out is irrelevant. The district court has already determined that it would not allow the opt-out procedure to be extended by individual circumstances in this action. *See* Order Denying Leave to Belatedly Opt-out or File Objections [D.E. 1168]. For these reasons, we find that Kaul's claimed failure to actually receive notice does not excuse his failure to opt-out.

Finally, Plaintiff incorrectly argues that the effective date of the *Love* Settlement Agreement is May 31, 2007, and not June 22, 2009. The Effective Date in the *Love* Settlement Agreement is defined as: "the next business day after the Final Order and Judgment is affirmed, all appeals are dismissed, and no further appeal to, or discretionary review in, any court remains." *See* Settlement Agreement § 14.4. The Final Order and Judgment was affirmed and all appeals of the Love Class Action were dismissed on June 19, 2009, making the Effective Date of the Love Class Action Settlement the next business day, June 22, 2009. *Rick Love, M.D., et al. v. Blue Cross Blue Shild Ass'n, et al.*, 08-12390-NN & 08-12894-NN (11th Cir. June 19, 2009) [D.E. 2000-5]; *see also Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d at 822 ("The

claim release applies to claims 'arising on or before the Effective Date,' and the settlement agreement provides that the effective date is one business day after all appeals from the final approval order are dismissed. We dismissed with prejudice all appeals from the final approval order on June 19, 2009.").

In conclusion, we find that Plaintiff could have simply opted out of the settlement and pursued his claims individually but he did not do so. His ERISA claims clearly implicate the fee for service claims and processing schemes implemented by Horizon. Therefore, these claims are Released Claims under the Final Approval Order.

### III.   CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff Richard Kaul, MD's Motion for Declaratory Judgment Permitting ERISA Section 502(a) Action [D.E. 1981] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of January, 2011.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge