UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **03-21296-CIV-MORENO**

IN RE: MANAGED CARE LITIGATION

RICK LOVE, M.D., et al.,

    Plaintiff,

vs.

BLUE CROSS AND BLUE SHIELD ASSOCIATION, et al.,

    Defendant.

_____/

## ORDER AFFIRMING COMPLIANCE DISPUTE OFFICER'S DECISION

THIS CAUSE came before the Court upon North Carolina Medical Society's Appeal **(D.E. No. 2087)**, filed on **January 18, 2012**. Provider track plaintiff North Carolina Medical Society appeals from the September 17, 2009 decision of a compliance dispute officer relating to Blue Cross Blue Shield North Carolina's implementation of a new pricing policy. This is the second time that NCMS has attempted to appeal from this decision. The last appeal resulted in a Report & Recommendation from Magistrate Judge Torres finding that the decision was not ripe for judicial review. Since that time a new compliance dispute officer has finalized the prior written opinion. According to the Parties' Settlement Agreement, Section 12.6(g), review by the court is limited to whether the decision was "arbitrary and capricious, an abuse of discretion or otherwise not in accordance with law" as defined by 5 U.S.C. § 706(2)(A). The main issue in the dispute is whether BCBSNC gave physicians adequate notice of a fee reduction, which would be a material adverse change under the Settlement Agreement, Section 7.6.

## I. Background

The following facts are culled from the Compliance Dispute Officer's September 2009 decision. In January of 2005, BCBSNC issued a new Pricing Policy that set payment for a certain class of infused prescription drugs at a percentage of the Average Wholesale Price. Concurrently, a new Specialty Pharmacy Program was introduced that allowed physicians to purchase drugs at a low price. However, the Specialty Pharmacy Program had the disadvantage of long delivery times and inflexible application to multiple patients. NCMS points out that "infused drugs represent the largest revenue source as well as the highest cost center for oncologists and rheumatologists." In 2007, BCBSNC updated its policy so that the Specialty Pharmacy Program prices became, in effect, mandatory rather than optional. The CDO's fact section calls this change material and generally adverse for physicians. The variance in wording that signaled the change and thus was the notice of a materially adverse change was subtle and slight.[1] A computer glitch resulted in payments to certain rheumatology and oncology physicians continuing under the old schedule through late 2007. BCBSNC resent the notice to those physician groups in March of 2008 and began to reimburse them under the new plan in July of 2008. NCMS alleges that physicians were confused by the pricing changes or had delays in learning the new scopes of coverage. The Settlement Agreement requires 90 days of notice before reducing any fee schedule. § 7.14(a).

## II. Review Standard

The standard of review for this appeal is high: in order to overturn the CDO's decision, this Court must find that the CDO's decision was arbitrary and capricious. As pointed out in BCBSNC's

---

[1] "Priced according to our standard fee schedule" replaced "will be updated quarterly."

brief, a district court "do[es] not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Widell v. Wolf*, 43 F.3d 1150, 1151 (7th Cir. 1994) (quoting *Paperworkers Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Furthermore, "District Courts hearing [a]rbitration appeals will not re-examine the merits or factual determinations of the underlying arbitration award." *Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1301 (M.D. Fla. 2010). The arbitrary and capricious standard allows a decision to stand "[a]s long as a reasonable basis appears for the decision ... ." *White v. Coca-Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008).

### III. Analysis

The CDO's decision acknowledges that the policy updates were not "models of clarity." But, he concluded, "reasonably apprised" under the Settlement Agreement did not mean "clearest, most felicitous" language. Although he stated BCBSNC deserved criticism, it did all that was legally required. The loss of millions of dollars to BCBSNC, the CDO continued, "would be wildly disproportionate to the wrong, which amounted to using opaque and bureaucratic language."

At heart, NCMS would like the court to vacate or modify the CDO's decision on three grounds. First, it would like the court to overturn the CDO's conclusion that notice was sufficient. Second, it would like the court to correct two errors: that there was no discussion of BCBSNC's obligations of interpretation under the Settlement Agreement and that the CDO misstated BCBSNC's obligation to provide fee schedules. Finally, NCMS would like a ruling that the CDO's decision regarding changes in fee codes applies to seven codes rather than the two listed in his decision.

BCBSNC's main argument instead focuses on the standard of review to be applied to the CDO's decision. The defendant maintains that because the compliance dispute process is an arbitration, and the Eleventh Circuit has recently stated that the court can only review arbitrations

for the grounds laid out in the Federal Arbitration Act, the standard for review is even higher than arbitrary and capricious. *See Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010) (holding that the statutory grounds provided in the FAA are the exclusive means for vacating an arbitrator's award). As such, the defendant continues, the only times the court could vacate the decision would be in the case of (1) fraud, corruption, or coercion; (2) partiality by the CDO; (3) misbehavior where a right of a party was prejudiced; or (4) the CDO exceeded his powers. 9 U.S.C. § 10. BCBSNC's other miscellaneous arguments include that the filing of the appeal was too late, that the error regarding five codes being excluded is moot, and that the assertion of confusion among physicians is not credible.

In support of its argument that the finding was arbitrary, the NCMS asserts that the decision was not supported by items in the record. The CDO's decision reflects otherwise. The CDO based his decision on, among other rationales, BCBSNC's right to implement fee reductions on compliant notice as provided in the Settlement Agreement, BCBSNC's implementation of the same fee reduction on other physician groups without complaint in January of 2007, and the lack of evidence of prejudice to physicians because of the delay in understanding the basis of the fee reductions. These rationales are not without support as laid out by the CDO's findings of fact. Because "a reasonable basis appears for the decision", this Court cannot overturn the decision on appeal. *White v. Coca-Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008).

NCMS also challenges the CDO's interpretation of notice. The CDO stated that "[t]he contemporaneous evidence submitted by BCBSNC that the 3/25/08 notice was mailed ... is more persuasive than the after-the-fact recollections by physician practices as to whether a particular letter has been received." NCMS, on the other hand, maintains that the letters were mailed to payment

locations rather than to the physician's practices. As such, the plaintiff continues, the weight of fairness should have been granted to physicians rather than the insurance company, according to the plaintiffs. BCBSNC insists that, while it operated out of an abundance of caution, that it had no obligation to provide notice to the physicians. Because the Settlement did not go into effect until April of 2008 and June of 2009, the defendant maintains, the March 2008 and November 2006 notice was not required.

The above arguments are ones of discretion and not arbitrariness. An award is arbitrary and capricious only if "a ground for the arbitrator's decision cannot be inferred from the facts of the case." *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992) (quotations omitted). The CDO is free to weigh the credibility of facts in making his determination. The court cannot "re-examine the merits or factual determinations of the underlying arbitration award." *Moye*, at 1301. *See also Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1241-42 (11th Cir. 2002)("[A] party's failure to uncover an item, which it was presumed to have received, does not mean that it never received the item and does not rebut the presumption of delivery."). Regardless of which standard is used, the FAA's or the arbitrary and capricious standard, NCMS cannot prevail in any of its arguments. The appeal is denied.

IV. Conclusion

THE COURT has considered the briefing and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the Compliance Dispute Officer's Decision is AFFIRMED and North Carolina Medical Society's appeal is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 30 day of August, 2012.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record