UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Master File No. 00-1334-MD-MORENO**
**Case Number:  03-21296-CIV-MORENO**

IN RE: MANAGED CARE LITIGATION

RICK LOVE, M.D., *et al.*,

    Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD ASSOCIATION, *et al.*,

    Defendants.

_____/

## ORDER GRANTING MOTION TO ENFORCE INJUNCTION

THIS MATTER came before the Court upon Movant's Renewed Motion for Order Enforcing Injunction **(D.E. No. 2092 )**, filed on **February 16, 2012**. Settling Defendant Blue Cross Blue Shield of Florida moves for an order enforcing injunction against six Plaintiffs: Physicians Surgical Group, LLC, Naples Physicians Surgical Group, LLC, PSG of South Florida, LLC,  PSG of Boca, LLC, Sanctuary Surgical Center, LLC, and Gladiolus Surgical Center. The Movant asserts the Plaintiffs are proceeding in violation of this Court's orders.

**I. Background**

On October 27, 2010, Plaintiffs filed a complaint styled *Sanctuary Surgical Center, LLC, et al. vs. Blue Cross and Blue Shield of Florida, Inc.*, Case No. 10-cv-81260-HURLEY in the Southern District of Florida, alleging violations of ERISA and plan terms by Blue Cross Blue Shield of Florida. The Plaintiffs include six physician groups, four of whom the Defendant alleges practice

through physicians who are *Love* class members. BCBSF filed a motion to enforce injunction on the grounds that the plaintiffs were prohibited from prosecuting the action. This Court referred the motion, and Magistrate Judge Torres entered a Report and Recommendation finding that the motion was incomplete. Judge Torres stated that the record was inadequate to support a finding that the Plaintiffs were releasing parties or that the claims were released claims. The report recommended granting the parties a ninety day discovery period to allow the Court to determine ownership of certain of the Plaintiff entities and the status of the claims. This Court adopted the R&R and granted BCBSF leave to file a renewed motion. BCBSF filed its renewed motion on February 16, 2012, asserting that it had evidence that each Plaintiff was a releasing party. In the meantime, Judge Hurley stayed the action pending before him.

### III. Analysis

The language of the Court's Final Approval Order clearly prohibits class members from initiating lawsuits against released parties for any claims released by the settlement. This Court, therefore, must grant the settling defendant's motion if three conditions exist: (I) the Plaintiffs are class members; (ii) BCBSF is a released party under the settlement; and (iii) the claims at issue in the *Sanctuary Surgical Center* complaint are released claims.

The Final Approval Order permanently certified a settlement class composed of the following class members:

> Any and all Physicians, Physician Groups, and Physician Organizations who provided Covered Services to any Plan Member or services to any individual enrolled in or covered by a Plan offered or administered by any Person named as a defendant in the Complaint or by any other primary licensee of the [entities] or by any of their respective current or former subsidiaries or Affiliates, in each case from May 22, 1999 through May 31, 2007 . . .

Final Approval Order at ¶ 2. The Final Approval Order defines released claims as:

> any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations,

> attorneys' fees, losses, claims, liabilities and demands of whatever kind, source or character whether arising under any federal or state law, which . . . includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional . . . arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action, or addressed in the Settlement Agreement, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons, or to the business practices that are the subject of Section 7 of the Settlement Agreement. This includes, without limitation and as to Released Parties only, any aspect of any fee for service claim[.]

See Final Approval Order ¶ 5

1. The PSG Plaintiffs Are Class Members

The major dispute in this motion is whether or not the six surgical groups are class members as defined in the settlement agreement. Releasing parties in the settlement fall into the classes of "Physicians," "Physician Groups," and "Physician Organizations." Plaintiffs maintain that their corporate structures do not fit into any of these categories. According to the designations as provided by the Plaintiffs, Sanctuary Surgical Center, LLC and Gladiolus Surgical Center, LLC are licensed ambulatory surgical centers, or "Facility Plaintiffs." The rest of the Plaintiffs are referred to as the PSG Plaintiffs and are non-physician owned companies. Because of these corporate structures, the Plaintiffs state that none of the entities received notice of the *Love* Settlement. Additionally, Plaintiffs state that three of the groups (Naples Physicians Surgical Group, PSG of Boca, and PSG of South Florida) were organized after the effective date of the settlement agreement and therefore their claims cannot be barred by the permanent injunction. BCBSF counters that the all of the Plaintiffs fall within the plain meaning of "Physician Groups."

Contract law governs the interpretation of settlement agreements. *Munroe v. U.S. Food Serv.*, 985 So.2d 654, 655 (Fla. 1st DCA 2008). Similarly, a release of claims in a settlement agreement constitutes a contract. *See, e.g., V & M Erectors, Inc. v. Middlesex Corp.*, 867 So.2d 1252, 1253–54

(Fla. 4th DCA 2004). In interpreting a contract, a court is "guided first by the language of the contract itself and where the contract is clear and unambiguous there is no reason to go further." *Lab. Corp. of Am. v. McKown*, 829 So.2d 311, 313 (Fla. 5th DCA 2002). "Language in a document is ambiguous when it is uncertain in meaning and may be fairly understood in more ways than one and is susceptible of interpretation in opposite ways." *Barnett v. Destiny Owners Ass'n, Inc.*, 856 So.2d 1090, 1092 (Fla. 1st DCA 2003). "Where the terms are unambiguous, the parties' intent must be discerned from the four corners of the document." *Dows v. Nike, Inc.*, 846 So. 2d 595, 601 (Fla. 4th DCA 2003).

The settlement agreement defines a "Physician" as anyone who is "duly licensed by a state licensing board as a Medical Doctor or as a Doctor of Osteopathy and shall include both Participating Physicians and Non-Participating Physicians." A "Physician Group" is defined as "two or more Physicians and those claiming by or through them who practice under a single taxpayer identification number."

To show that each party is a physician group, BCBSF attaches exhibits of claims submitted to BCBSF for services provided by multiple physicians under a single taxpayer identification number before the effective date of the settlement. The parties for which BCBSF submits such evidence include all of the PSG Plaintiffs, that is, Physicians Surgical Group, LLC, Naples Physicians Surgical Group, LLC, PSG of South Florida, LLC, PSG of Boca, LLC. The Plaintiffs counter that the PSG Plaintiffs are non-physician owned and that the PSG Plaintiffs have never employed physicians. By the terms of the settlement agreement, this Court finds that these four entities are physician groups and releasing parties. The companies submitted claims to BCBSF and thus would be "those claiming by or through" physicians under a single taxpayer identification number. Whether the entities classify the physicians who are providing services as contractors has no bearing on the plain meaning of the

language in the settlement agreement, which must be interpreted as a contract.

BCBSF also presents evidence of claims ordered by physicians for the two ambulatory facility Plaintiffs. However, the language importantly shifts, to claims for services "ordered" by physicians rather than submitted by physicians. BCBSF asserts by evidence that Sanctuary Surgical Center is owned by a single shareholder in Dr. Arthur Handal, M.D. and that he received notice of the class and did not opt-out, making Sanctuary Surgical Center a releasing party. However, Sanctuary Surgical Center, LLC did not have services by multiple physician submitted under a single taxpayer identification and thus does not fall within the definition of physician group under the settlement agreement. Gladiolus Surgical Center also did not have multiple physicians submitting claims under a single taxpayer identification number. Nevertheless, because more than one physician "ordered" services that resulted in hundreds of claims under their auspices before the effective date without opting out of the settlement agreement, BCBSF asserts that they are a physician group. Additionally, five physicians have ownership interests in Gladiolus. This Court finds that the ownership interests cannot convert these entities into physician groups. By the plain meaning of the language in the settlement agreement, the companies would have had to submit claims by or through physicians under a single taxpayer identification number. The two ambulatory facility Plaintiffs are thus not releasing parties. As to the ambulatory facility Plaintiffs, BCBSF's motion is denied.

2. The Submitted Claims Are Released Claims

BCBSF also asserts that the issues raised in the complaint relate to radical and drastic reductions of amounts paid on claims submitted by the Plaintiffs. According to the Plaintiffs, the claims submitted by the PSG Plaintiffs cannot be released claims because the Plaintiffs were not in existence at the time of the settlement and they are not based upon the same conduct as the settlement.

> The settlement agreement states that upon the effective date, the
> "Released Parties []" shall be released and forever discharged from any and all causes of action of whatever kind, source or character whether arising under any federal or state law, which includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional, arising on or before the Effective Date, that are, were or could have been asserted against of the Released Parties, by reason of, arising out of, or in anyway related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action, or addressed in this Agreement, whether any such claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons as to the business practices that are the subject § 7. This includes, without limitation as to Released Parties only, any aspect of any fee for service claims submitted by any class member to a Blue Plan.

Section 13.1(a). Thus, claims will be enjoined if they relate to "any aspect of any fee for service claims" and arise out of "courses of conduct [or] business practices" that occurred before the effective date of the settlement agreement. The Plaintiffs assert in their complaint that Defendant denied or drastically reduced payments to them. The allegations in the complaint are based on the same business practices underlying the *Shane* complaint, as BCBSF denied their claims as "experimental, investigatory, or not medically necessary." Complaint at ¶20. The Eleventh Circuit has stated that claims are released claims when the Plaintiff's complaint shares the "same operative nucleus of fact" as the *Love* settlement, that is, where the "primary right and duty" are the same. *Thomas v. Blue Cross and Blue Shield Ass'n*, 333 Fed. Appx. 414, 418 (11th Cir. 2009). Those rights and duties were "Blue Cross' contractual duty to pay its doctors for medically necessary care given to its clients, and the doctors' contractual right to receive the money." *Id. See also Doctors Health, Inc., v. Aetna*, et al., 605 F.3d 1146, 1152 (11th Cir. 2010) ("[t]he release language is clear; it concerns only claims that could have been asserted 'based on or arising from the factual allegations of the [*Shane* ] Complaint.'"). The settlement agreement includes broad release language that "includes, without limitation ... any aspect of any fee for service claims submitted by any class member to a Blue Plan." Even though the Plaintiffs as physician groups were formed after the effective date of the settlement agreement, they do not object that the individual physicians were

practicing physicians, received notice of the settlement, and thus were individually class members, before the effective date of the settlement. The PSG Plaintiffs raise fee for service claims submitted by class members to a released party. As such, those claims are released claims and the motion to enforce injunction against those four entities is granted.

### III. Conclusion

THE COURT has considered the motion and the pertinent portions of the record. For the reasons given above, it is

**ADJUDGED** that the motion is GRANTED IN PART and DENIED IN PART. Furthermore, it is

**ADJUDGED** that Plaintiffs Physicians Surgical Group, LLC, Naples Physicians Surgical Group, LLC, PSG of South Florida, LLC, and PSG of Boca, LLC have twenty (20) days from the date of the Court's Order to withdraw all of the claims that are asserted in *Sanctuary Surgical Center, LLC, et al. vs. Blue Cross and Blue Shield of Florida, Inc.*, Case No. 10-cv-81260-HURLEY against Blue Cross and Blue Shield of Florida, Inc. If the claims are not withdrawn and/or dismissed, the Court will order these four plaintiffs be deemed in contempt of the court, at which point a hearing will be scheduled to determine the appropriate remedy before entry of a final order of contempt. It is further

**ADJUDGED** that Blue Cross Blue Shield's Motions for Extension of Time **(D.E. No. 2086, 2113)** are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of September, 2012.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of record