UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Master File No. 00-1334-MD-MORENO
Case Number: 03-21296-CIV-MORENO

IN RE: MANAGED CARE LITIGATION

RICK LOVE, M.D., *et al.*,

    Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD ASSOCIATION, *et al.*,

    Defendants.

_____/

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER came before the Court upon Movant's Amended Motion for Preliminary Injunction **(D.E. No. 2107)**, filed on **March 23, 2012**. Settling Defendant Blue Cross Blue Shield of New Jersey (Horizon) moves for an order enforcing injunction against Plaintiff Dr. Deepak Srinivansan. The Movant asserts the Plaintiff is proceeding with a state court action in violation of this Court's orders.

**I. Background**

On June 22, 2011 Plaintiff Deepak Srinivasan filed a state court action, *Deepak Srinivasan, M.D. v. Blue Cross Blue Shield of New Jersey, Inc.*, in the Superior Court of New Jersey, Law Division, Bergen County (L-D314-11). Included in the complaint are twenty counts ranging from tortious interference to misrepresentation, in addition to several violations of New Jersey statutes and regulations. Horizon filed a preliminary injunction in this court to enjoin Plaintiff from alleging any

claims released in the settlement agreements entered by the Blue Parties in this Court. The Plaintiff subsequently amended its complaint on March 16, 2012. Horizon now moves for a preliminary injunction and order to show cause why the Plaintiff should not permenanetly withdraw his New Jersey action.

In the Amended Complaint, the Plaintiff attempts to carve out an exception to the *Love* settlement based on the timing of when the claims allegedly arose, to wit: "[t]his amended Complaint addresses only those claims which either were not included in the Love Settlement, or arose subsequent to the Effective Date of the Love Settlement, and/or arose post the Termination Date of the Love Settlement." Horizon seeks to enjoin the Plaintiff on the grounds that all of his claims are released claims and that there is no carve-out for his claims under § 7.29(m) of the settlement agreement. Plaintiff responds that each treatment of patients constitutes a new cause of action, and as such, they are not barred by the *Love* settlement.

## II. Analysis

The language of the Court's Final Approval Order clearly prohibits Class members from initiating lawsuits against released parties for any claims released by the settlement. This Court, therefore, must grant Settling Defendant's motion if three conditions exist: (i) the Plaintiff is a class member; (ii) Horizon is a released party under the settlement; and (iii) the claims at issue in the *Srinivasan* complaint are released claims. Because the Plaintiff is a class member, the Defendant is a released party, and his claims are released claims, the Defendant's motion is granted and the Plaintiff has twenty days from the date of this order to withdraw its claims in *Deepak Srinivasan, M.D. v. Blue Cross Blue Shield of New Jersey, Inc.*

*A. Srinivasan is a class member, failed to opt out of the class, and accepted money from the Love*

*Settlement*

Plaintiff Deepak Srinivasan is an invasive cardiologist licensed to practice medicine and surgery in New Jersey. The Plaintiff claims that he knew nothing about the *Love* case until Horizon's initial motion for preliminary injunction was filed in December of 2011. Nevertheless, he does not dispute that he is a class member and that he did not opt out of the class. Srinivasan states that he executed a document from his biller and received $598.98 for pre-effective date claims. He asserts that he would never have signed the documents had he known the extent of the *Love* settlement. Srinivasan alleges in his New Jersey complaint that Horizon still owes over $2,000,000 for services performed since the effective date of the *Love* Settlement.

*B. Horizon is a released party under the settlement*

It is undisputed that Horizon is a released Blue plan under the *Love* settlement.

*C. Srinivasan's complaint includes released claims*

The crux of the main issue before the court comes directly from the language of the *Love* settlement itself. Plaintiff Srinivasan focuses on the first half of the statement in italics; Defendant Horizon focuses on the second half of the statement from the settlement agreement in bold:

> Upon the Effective Date, the "Released Parties []" shall be released and forever discharged from any and all causes of action of whatever kind, source or character whether arising under any federal or state law, which includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional, *arising on or before the Effective Date, that are, were or could have been asserted against of the Released Parties*, **by reason of, arising out of, or in anyway related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations,** *omissions, circumstances or other matters referenced in the Action, or addressed in this Agreement*, whether any such claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons as to the business practices that are the subject § 7. This includes, without limitation

> as to Released Parties only, any aspect of any fee for service claims submitted by any class member to a Blue Plan.

Section 13.1(a) (emphasis added). Thus, Plaintiff focuses on the date on which Dr. Srinivasan was denied payments and Defendant focuses on how the "courses of conduct" behind the alleged payment denials are virtually identical to the factual predicates behind the *Love* allegations.

Specifically, Dr. Srinivasan in his complaint states that the amended complaint only applies to claims made subsequent to the effective date of the *Love* Settlement. Horizon, on the other hand, states that the broad language of release includes conduct arising out of the same courses of conduct as that alleged in the *Love* settlement. Reading Dr. Srinivasan's complaint, his allegations do, in fact, relate to similar conduct as the *Love* allegations. He makes specific arguments regarding a conspiracy to delay, deny, or diminish payments. For example, in ¶ 76 of the complaint he alleged that Horizon engaged in "serial underpayment of out-of-network usual, customary and reasonable ("UCR") amounts [which] also pressured many health care providers, who otherwise would have remained out of network to join Horizon's network of providers and accept Horizon's deeply discounted contract reimbursement rates." Similarly in ¶ 88: "Horizon has failed to disclose that it uses its payment schemes to deny, diminish, and delay payment for covered, medically necessary services." Finally, in ¶ 103: "Horizon, instead of paying plaintiff for covered, medically necessary services in accordance with standard coding practices, has engaged in a scheme to systematically deny, diminish, and delay payments to plaintiff."

The notice of settlement package sent to all potential class members aptly summarizes the *Love* case:

> The Complaint in the Action alleges, among other things, that between 1999 and the present, the Blue Parties, among others, engaged in a conspiracy to improperly deny, delay, and/or reduce payments to
> physicians, physician groups, and physician organizations by engaging
> in several types of allegedly improper conduct, including but not limited to:

> • Misrepresenting and/or failing to disclose the use of edits to unilaterally "bundle," "downcode," and/or reject claims for medically necessary covered services;
> • Failing to pay for "medically necessary" services in accordance with member plan documents;
> • Failing and/or refusing to recognize CPT® modifiers;
> • Concealing and/or misrepresenting the use of improper guidelines and criteria to deny, delay, and/or reduce payment for medically necessary covered services;
> • Misrepresenting and/or refusing to disclose applicable fee schedule.
> • Failing to pay claims for medically necessary covered services within the required statutory and/or contractual time periods.
>
> The Complaint in the Action claims that the conduct described above violated the federal statute entitled the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq.

D.E. 1385-5 at 3.

Contract law governs the interpretation of settlement agreements. *Munroe v. U.S. Food Serv.*, 985 So.2d 654, 655 (Fla. 1st DCA 2008). Similarly, a release of claims in a settlement agreement constitutes a contract. *See, e.g., V & M Erectors, Inc. v. Middlesex Corp.*, 867 So.2d 1252, 1253–54 (Fla. 4th DCA 2004). In interpreting a contract, a Florida court is "guided first by the language of the contract itself and where the contract is clear and unambiguous there is no reason to go further." *Lab. Corp. of Am. v. McKown*, 829 So.2d 311, 313 (Fla. 5th DCA 2002). "Language in a document is ambiguous when it is uncertain in meaning and may be fairly understood in more ways than one and is susceptible of interpretation in opposite ways." *Barnett v. Destiny Owners Ass'n, Inc.*, 856 So.2d 1090, 1092 (Fla. 1st DCA 2003). "Where the terms are unambiguous, the parties' intent must be discerned from the four corners of the document." *Dows v. Nike, Inc.*, 846 So. 2d 595, 601 (Fla. 4th DCA 2003).

With that summary and Florida law in mind, this court must analyze whether the Plaintiff's complaint shares the "same operative nucleus of fact" as the *Love* settlement, that is, where the "primary right and duty" are the same. *Thomas v. Blue Cross and Blue Shield Ass'n*, 333 Fed. Appx. 414, 418 (11th Cir. 2009). Those rights and duties were "Blue Cross' contractual duty to pay its

doctors for medically necessary care given to its clients, and the doctors' contractual right to receive the money." *Id.* According to the plain meaning of the settlement agreement, those claims are released which "in anyway relate[] to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced the Action." Settlement Agreement, § 13.1(a). Thus this court must determine whether Dr. Srinivasan's claims fall within released claims by the plain unambiguous meaning of the document. Given the nearly identical language used in Plaintiff's complaint regarding a scheme to deny, delay, and reduce payments for medically necessary services, this Court must find that the claims are released claims. Released claims include those that "aris[e] out of" the same "course of conduct." The facts as alleged by Srinivasan are that Horizon engaged in payment schemes to deny, diminish and delay payments and engaged in said underpayment not in accordance with standard coding practices. From the original complaint to the amended complaint the Plaintiff removed references to computer systems such as Ingenix used in furtherance of the scheme but still referred to . The facts as alleged in the *Love* settlement were that the Blue Parties failed to disclose the use of edits to reject claims for medically necessary covered services and/or to deny, diminish and reduce payments to physicians. This course of conduct is nearly identical.

The Eleventh Circuit has given clear guidance on the interpretation of the *Love* settlement agreement. "Under the settlement agreement entered in the class action, the relevant inquiry for determining whether a claim is released is not whether the acts giving rise to the complaint occurred after the class action was filed or the settlement agreement was entered, but whether they occurred after the effective date of the settlement agreement." *Thomas v. Blue Cross and Blue Shield Ass'n, et al.*, 594 F.3d 814, 822 (11th Cir. 2010) (*Kolbusz*). Specifically, the Eleventh Circuit focuses on the "acts giving rise to" the complaint, not the individual treatment of plaintiffs. *Id.* In *Kolbusz*, a

class member doctor brought claims in Illinois state court alleging tortious interference and defamation by a settling defendant. Kolbusz alleged that the defendant health insurance company interfered with his patients by wrongfully refusing to pay for medically necessary procedures. *Id.* at 822. In reversing the court's denial of a motion to enforce injunction, the Eleventh Circuit highlighted the breadth of the release language: "The claim release extends to 'any and all causes of action ... of whatever kind, source or character' that are related to matters addressed in the class action, including 'antitrust and other statutory and common law claims, intentional or non-intentional ... that are, were, or could have been asserted against any of the Released Parties.'" *Id. See also Doctors Health, Inc., v. Aetna*, et al., 605 F.3d 1146, 1152 (11th Cir. 2010) ("[t]he release language is clear; it concerns only claims that could have been asserted 'based on or arising from the factual allegations of the [*Shane* ] Complaint.").

Contrary to the Plaintiff's assertion, the court would not be granting Horizon insulation from lawsuits in perpetuity. Instead, such a ruling would focus on the court's determination that these allegations stem from the same nucleus of fact as those discharged by the settling defendants in *Love* that occurred before the effective date of the settlement. As the circuit court stated in *Kolbusz*, the only date the district court should consider "whether [the actions] occurred after the effective date of the settlement agreement." That nucleus of fact is the scheme to deny, diminish, and delay payments through those methods as described in the *Love* complaint. Dr. Srinivasan is free to amend his complaint, if allowed by the New Jersey state court, that would clearly and unequivocally set out his claims without mentioning anything about the same nucleus of fact of conduct that occurred before 1999 but only about claims that were not part of the settlement agreement. Specifically, Dr. Srinivasan can only request payment for treatment provided after the effective date of the settlement agreement. The parties' settlement clearly contemplates as an end of the period of May of 2011 and

thus only claims for treatment after that date should be allowed.

### III. Conclusion

THE COURT has considered the motion and the pertinent portions of the record. For the reasons given above, it is

**ADJUDGED** that the motion is GRANTED. Furthermore, it is

**ADJUDGED** that Plaintiff Dr. Deepak Srinivasan has twenty (20) days from the date of the Court's Order to withdraw or amend all of the claims that are asserted in *Deepak Srinivasan, M.D. v. Blue Cross Blue Shield of New Jersey, Inc.* If the claims are not withdrawn and/or dismissed, the Court will order the plaintiff be deemed in contempt of the court, at which point a hearing will be scheduled to determine the appropriate remedy before entry of a final order of contempt. It is further

**ADJUDGED** that Parties' Joint Motion for New Briefing Schedule (D.E. No. 2098) is DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of September, 2012.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of record