UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 03-21296-CIV-MORENO

RICK LOVE, M.D., *et al.*,

    Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD ASSOCIATION, *et al.*,

    Defendants.

_____/

## ORDER GRANTING DEFENDANT BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA'S MOTION TO ENFORCE INJUNCTION

### I. Background

This action commenced in North Carolina as part of the overarching *Love* case, a multi-district, class-action litigation initiated by physicians against health insurance companies. The physicians in *Love* alleged that health insurance companies engaged in a conspiracy to inflate profits by systematically denying, delaying, and diminishing payments due to the physicians. Throughout the litigation, settlements were reached between numerous physicians and several of the insurers. This Court approved one such settlement, the Settlement Agreement dated as of April 27, 2007 ("Final Approval Order") [D.E. 1286], which enjoined class members form filing new lawsuits in which "Released Claims" are asserted against "Released Parties." *See* Final Approval Order at ¶ 9.

On September 18, 2006, Defendant Blue Cross and Blue Shield of North Carolina ("BCBSNC") filed a complaint against Jemsek Clinic, P.A. and Joseph G. Jemsek, M.D. (collectively, "Jemsek") in North Carolina state court seeking to hold Jemsek liable for breaching the parties' provider agreement. It is undisputed that Jemsek did not opt out of the *Love* settlement, and is therefore a class member. It is also undisputed that the Final Approval Order includes BCBSNC as a Released Party. Jemsek filed for bankruptcy, and the state court case was removed to the United States Bankruptcy Court for the

Western District of North Carolina. Jemsek then filed counterclaims against BCBSNC, raising nine causes of action. Seven of the nine counterclaims were dismissed as Released Claims, and the Court permitted Count V (Defamation) and Count VII (Tortious Interference with Business Relationship) to continue. [D.E. No. 1651, "2008 Order"].

Counts V and VII, as originally pled, alleged that BCBSNC made untrue statements that disparaged Jemsek concerning the treatment of patients suffering from Lyme Disease. Jemsek alleged these statements were made to the Medical Board and the Center for Disease Control, among others, and that the statements were false and damaged Jemsek's reputation and standing in the community. [D.E. 1306-4 at ¶¶ 70, 73, 88]. Pursuant to the 2008 Order, the claims for defamation and tortious interference were not Released Claims, and Jemsek could pursue each cause of action in North Carolina.

## II. BCBSNC's Motion to Enforce Injunction

On January 27, 2014, Jemsek amended the two remaining counterclaims. As part of its defamation count, rather than alleging that the defamatory statements were made to the Medical Board and CDC, Jemsek alleges the statements "were made to, among others, Jemsek['s] patients and other Blue Cross entities." [D.E. 2154-4 at ¶ 96]. Jemsek alleges these statements caused significant damages including damage to their reputation and standing in the community, and were knowingly made to harm Jemsek's business. *Id.* at ¶¶ 97, 99, 100. As part of its tortious interference count, Jemsek alleges BCBSNC's actions "undermined patient confidence . . . and induced these patients to refrain from continuing to seek treatment[,] thus interfering with the contractual relationships, current or prospective, between [Jemsek] and the patients[.]" *Id.* at ¶ 103.

In light of the January 2014 amendments, BCBSNC moves this Court to enforce the Final Approval Order against Jemsek, and dismiss the amended counterclaims as Released Claims under the 2007 Settlement Agreement. BCBSNC first argues that under the language of the Settlement Agreement, the causes of action and the underlying allegations: (1) arise out of and relate to the matters referenced

in *Love*; (2) relate to the business practices that are the subject of the Settlement Agreement; and/or (3) relate to any aspect of a fee for service claim. In support, BCBSNC points to Jemsek's new allegation that BCBSNC's acts were "part of this process to limit the amount of money that it paid to [Jemsek]." *Id.* at ¶ 4. Second, BCBSNC refers to *Thomas v. Blue Cross and Blue Shield Ass'n* (*Kolbusz*), 594 F.3d 814 (11th Cir. 2010), wherein the Eleventh Circuit held that a physician's Illinois state law claims for defamation and tortious interference were barred by the *Love* action's 2007 Settlement Agreement and Court's Final Approval Order. BCBSNC argues Jemsek's amended allegations are the same as those asserted in *Kolbusz*, and therefore this Court must similarly find in BCBSNC's favor.

In response, Jemsek argues the *Kolbusz* decision does not affect this action and is otherwise distinguishable on its facts. Jemsek argues this Court's 2008 Order is the "law of the case" and applies to the amended claims, and that the amendments in any event are not material, but simply elaborate to whom the allegedly defamatory statements were made. Jemsek also argues that BCBSNC has known since 2008 that the claims involve defamatory statements made to Jemsek's patients, and BCBSNC is therefore estopped from bringing a motion to enforce.

### III. Analysis

The Court must grant BCBSNC's motion if three conditions exist: (i) Jemsek is a class member; (ii) BCBSNC is a Released Party; and (iii) the claims at issue in the Counterclaim are Released Claims. The first and second prongs are not at issue. The key issue before this Court is whether the causes of action for defamation and tortious interference are Released Claims.

The facts and legal issues in this case require the Court to follow the Eleventh Circuit's decision in *Kolbusz*. There, a physician asserted claims for defamation and tortious interference and alleged, *inter alia*: (1) the Corporation engaged in improper practices causing the physician to lose existing patients and referrals; (2) the Corporation falsely informed the patients that their claims were denied because Kolbusz had provided unnecessary and inappropriate care, and engaged in fraudulent or deceptive billing

practices; (3) the Corporation drove away the patients by wrongfully refusing to pay for medical procedures; and (4) the Corporation engaged in these practices "solely to reduce its financial obligations" to him. 549 F.3d at 822. This Court held, as it did two years earlier in its 2008 Order in the *Jemsek* action, that the claims for defamation and tortious interference were not Released Claims.

The Eleventh Circuit reversed. It held the two claims were barred by the broad language of the 2007 Settlement Agreement:

> The ruling of the district court to the contrary was an abuse of discretion for two reasons. First, the district court incorrectly reasoned that Kolbusz's claims of tortious interference and defamation are unrelated to the allegations made in the class action because they hinge on whether the Corporation "intentionally communicated defamatory and false information to Dr. Kolbusz's patients." It is irrelevant that Kolbusz's claims depend on a different legal theory than the claims asserted in the class action or require Kolbusz to prove matters in addition to or different from the claims asserted in the class action. The claim release extends to "any and all causes of action . . . of whatever kind, source or character" that are related to matters addressed in the class action, including "antitrust and other statutory and common law claims, intentional or non-intentional . . . that are, were, or could have been asserted against any of the Released Parties." This broad language encompasses Kolbusz's claims of tortious interference and defamation. Second, the district court erroneously reasoned that the claims are not released because they "require[] a highly factual analysis of events that allegedly took place long after the [class action] was filed." Under the settlement agreement entered in the class action, the relevant inquiry for determining whether a claim is released is not whether the acts giving rise to the complaint occurred after the class action was filed or the settlement agreement was entered, but whether they occurred after the effective date of the settlement agreement. The claim release applies to claims "arising on or before the Effective date," and the settlement agreement provides that the effective date is one business day after all appeals from the final approval order are dismissed. We dismissed with prejudice all appeals from the final approval order on June 19, 2009. Kolbusz's claims of tortious interference and defamation arise from acts that occurred before the effective date, which is the only date the district court should have considered.

*Id.* Jemsek attempts to distinguish its allegations from those of *Kolbusz*, arguing first that the flagrancy of the defamatory statements made by BCBSNC reach a degree of intentionality not present in *Kolbusz*, and second that the statements have nothing to do with the matters raised in *Love*.

The Court disagrees. First, the underlying facts of this action are more than sufficiently analogous to those in *Kolbusz*. Jemsek alleges defamatory statements were made to patients that caused injury to Jemsek's reputation and business. Dr. Jemsek alleges his patients were falsely informed that he provided

medically unnecessary and inappropriate care, and that he engaged in fraud. Moreover, Jemsek's counterclaims arise from acts occurring before the June 19, 2009 effective date.

Second, Jemsek's allegations belie the argument that each claim has no relation to the *Love* action. Notably, in paragraph 4 of its Second Amended Counterclaims, Jemsek alleges that "BCBSNC started a campaign to discredit Dr. Jemsek and his practice," and as part of this campaign "made [defamatory] statements to the [Jemsek's] patients," "**as part of this process to limit the amount of money that it paid to [Jemsek].**" [D.E. 2154 at ¶ 4] (emphasis added). Indeed, Jemsek consistently ties BCBSNC's alleged actions to its processing of Jemsek's reimbursement claims. *See, e.g.*, D.E. 2154 at ¶ 52 ("While BCBSNC was performing its medical review of [Jemsek's] claims, it made false and defamatory statements to [Jemsek's] patients . . . that severely damaged [Jemsek].").

The Court rejects Jemsek's argument that the 2008 Order is the "law of the case." Under this doctrine, courts may not revisit issues that were decided explicitly or by implication in a prior appeal. *E.g.*, *Thomas v. U.S.*, 572 F.3d 1300, 1303 (11th Cir. 2009). Jemsek concedes that BCBSNC did not appeal the portion of the 2008 Order addressing defamation and tortious interference, and therefore the Eleventh Circuit "did not [ ] address the two claims which were not enjoined." [D.E. 2160 at 7 n.9]; *see also Thomas*, 572 F.3d at 1304 (holding the law of the case doctrine "does not bar consideration of matters that could have been, but were not, resolved" in a prior appeal) (citation omitted). The Court also rejects Jemsek's estoppel and laches arguments. While the parties have participated in discovery on-and-off since 2008, Jemsek did not file its amended counterclaims until January 27, 2014, and BCBSNC filed its objections and substantive motions within one to three weeks.[1]

---

[1] Jemsek argues BCBSNC should have moved to enjoin the counterclaims once it was put on notice during discovery of Jemsek's potential amendments. While BCBSNC rejects the notion that it was ever on notice, Jemsek's argument ignores the fact that Jemsek waited years to *file* its amended counterclaims. The Court is hesitant to place the burden, during discovery, on the enjoining party to seek court action before the opposing party has filed a single document or otherwise made its legal theories clear.

Accordingly, the Court finds Jemsek's claims for defamation and tortious interference with business relationship are Released Claims where they arise out of and relate to the matters in *Love*, and therefore BCBSNC's motion to enjoin Jemsek must be granted.

**ADJUDGED** that:

(1) Defendant BCBSNC's motion to enforce is GRANTED. Plaintiffs Jemsek Clinic, P.A. and Joseph G. Jemsek, M.D.'s second amended counterclaims for defamation and tortious interference with business relationship are Released Claims under the 2007 Settlement Agreement as approved by this Court in the Final Approval Order, and Jemsek is therefore enjoined from pursuing each claim against BCBSNC.

(2) Jemsek Clinic, P.A. and Joseph G. Jemsek, M.D. shall have twenty (20) days from the date of this Order to withdraw its claims for Defamation and Tortious Interference with Business Relationship. If Jemsek fails to voluntarily withdraw these claims, Jemsek may be held in contempt by this Court.

DONE AND ORDERED in Chambers at Miami, Florida, this 17 day of March, 2014.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record